**DENTONS US LLP**
Lauren Macksoud, Esq.
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile:  (973) 912-7199
lauren.macksoud@dentons.com

and

**DENTONS US LLP**
Geoffrey M. Miller (*pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile:  (212) 768-6800
geoffrey.miller@dentons.com

and

**DENTONS US LLP**
Robert B. Millner (*pro hac vice*)
233 South Wacker Drive,
Suite 5900
Chicago IL 60606
Telephone: (312) 876-8000
Facsimile:  (312) 876-7934
robert.millner@dentons.com

*Attorneys for Liberty Mutual Insurance Company*

**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| In re | Chapter 11 |
|---|---|
| CONGOLEUM CORPORATION, | Case No. 20-18488 (MBK) |
| Debtor. | |

**OBJECTION OF LIBERTY MUTUAL INSURANCE COMPANY TO RENEWED
MOTION OF DVL, INC. AND DVL KEARNY HOLDINGS, LLC FOR ENTRY
OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY
<u>PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE</u>**

Liberty Mutual Insurance Company ("Liberty Mutual"), a party in interest, objects to the *Renewed Motion of DVL, Inc. and DVL Kearny Holdings, LLC For Entry of an Order Granting Relief From the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code* [Docket No. 355] (the "Motion for Stay Relief").

DVL has not shown cause for such relief, as required by § 362(d) of the Bankruptcy Code, for at least three obvious reasons:

a)  It is premature and inappropriate to grant DVL, Inc. and DVL Kearny Holdings, LLC (collectively, "DVL") relief from the automatic stay so that DVL may litigate a principal issue in the separate District Court Action (defined herein) -- liability of Bath Iron Works Corporation ("BIW") for Debtor's operations -- when Congoleum Corporation (the "Debtor") and BIW have announced that they will shortly seek to have that same issue resolved in this Court, with findings binding on DVL;

b)  Lifting the automatic stay is inappropriate prior to the bar date for DVL to file a proof of claim, since such filing (or waiver of claim by not filing) will determine whether the District Court Action is a jury case; and

c)  Since the Debtor is responsible for a significant portion (if not all) of defense and indemnity in the District Court Action, stay relief is inappropriate until the Debtor makes clear that it will contribute to its share of a current, ongoing defense.

In further support of the Objection, Liberty Mutual states as follows:

**Background**

1.  Liberty Mutual issued certain comprehensive general liability insurance policies (the "Policies") under which the Debtor or asserted predecessor entities are named insureds. Bath Iron Works Corporation ("BIW") is also an insured entity under certain of the Policies. The

Debtor and BIW are the defendants in the District Court Action. Historically, subject to reservation of rights, Liberty Mutual has paid 80% of the Debtor's defense costs as to the District Court Action, with the remainder of the Debtor's defense paid by the Debtor. *See* Haines Declaration, attached as **Exhibit A**.

2. The Motion for Stay Relief confirms that Liberty Mutual pays only a portion of such defense. *See* Motion for Stay Relief, ¶ 28 ("While the Debtor's insurer, Liberty Mutual, may not have assumed full responsibility for all costs of defense for the Debtor in the District Court Action, documents produced by Congoleum establish that Liberty Mutual is covering a substantial portion of the Debtor's defense costs."). In fact, Liberty Mutual believes that the Debtor's share of its defense is materially more than the 20%, and Liberty Mutual's coverage analysis based on currently available information is that there is likely no coverage for the claims asserted by DVL.

3. On October 8, 2020, DVL filed the Motion for Stay Relief, seeking "relief from the automatic stay to allow the matter of *DVL, Inc. and DVL Kearny Holdings, LLC v Congoleum Corporation and Bath Iron Works Corporation*, Case No. 2:17-cv-04261-KM-JBC (the "District Court Action"), pending in the [United States District Court for the District of New Jersey], to proceed against the Debtor so that the question of Congoleum's liability to DVL, and the amount of damages owed to DVL, can be determined and liquidated." Motion for Stay Relief, ¶ 2. Under the Motion, DVL seeks "to recover from any applicable insurance proceeds or from non-Debtor parties . . . ." *Id*.

    **A.    It Is Inappropriate and Premature to Lift the Stay So That DVL Can Litigate the Same Issues in the District Court Action That Are Currently Pending Before This Court.**

4.    The Motion for Stay Relief provides that a principal issue facing the Debtor in the District Court Action is "successor liability issues between the Debtor and BIW." *See* Motion for Stay Relief, ¶ 22 ("Those issues [in the District Court Action] include: (a) DVL's claims for damages relating to the remediation of environmental contamination claimed to have been caused by Congoleum, as well as (b) the successor liability issues between the Debtor and BIW.").

5.    However, these successor liability issues are also at issue in the Bankruptcy Case. At the October 13, 2020, hearing before this Court to consider the Debtor's motion to approve a sale of substantially all assets, the Debtor stated that it entered into a settlement with BIW. As part of that agreement, the Debtor will file a motion requesting this Court's approval, including findings, with claim preclusion and res judicata effect, establishing that "BIW is [not] a successor to Congoleum's flooring business or responsible for liabilities arising out of Congoleum's operations." (10/13/20 Hr'g Tr. 16:18-18:18.)

6.    Under the BIW settlement, the findings as to BIW's liability will be included in the confirmation order (10/13/20 Hr'g Tr. 18:2-8), presumably to ensure the broadest possible claim preclusion.[1] Accordingly, once the Debtor files its motion to approve the BIW settlement agreement, the proposed finding that BIW is not a successor to the Debtor or responsible for liabilities arising out of its operations will be a matter squarely before this Court, subject to objection and contest by DVL in this Court.

---

[1] Pages 16 to 18 of the October 13, 2020 hearing transcript, where the Debtor/BIW term sheet was read into the record in full, are attached hereto as **Exhibit B**.

7.  It does not promote judicial economy to litigate the same liability issues in both this Court and in the District Court Action. For this reason, it is inappropriate to lift the stay to allow the District Court Action to proceed. *See In re RCM Global Long Term Capital Appreciation Fund, Ltd*., 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996) (denying stay relief because "[t]he necessity of simultaneously conducting two proceedings in two different courts regarding the enforceability of the Netting Agreement would be neither expeditious nor economical."); *In re Wintroub*, 283 B.R. 743, 745 (B.A.P. 8th Cir. 2002) (affirming decision to deny motion to lift stay to prosecute claim against professional disciplinary commission fund in foreign court, since same issues involving dischargeability of indebtedness were pending in litigation before bankruptcy court).

8.  Lifting the stay to allow the District Court Action to proceed at this time is also prejudicial to Liberty Mutual because Liberty Mutual has paid its share of costs for two separate defense law firms in the District Court Action, one for the Debtor and one for BIW. Until this Court makes a ruling on the issue as to BIW successor liability, Liberty Mutual will not know whether the expense of only one defense law firm (or two defense firms) are needed. *See* Motion for Stay Relief, ¶ 21 (recognizing that courts must consider the "impact of the stay on the parties and the balance of the harms" in deciding whether to lift the stay.).

**B.  Lifting the Stay Is Premature and Inappropriate Until It Is Determined by Claim Activity in This Court Whether the District Court Action Is a Jury Case.**

9.  DVL received an extension of time to file a proof of claim until January 11, 2021. *See Agreed Order Granting DVL, Inc. and DVL Kearny Holdings, LLC Relief From the Order (I) Establishing Deadlines to File Proofs of Claim Against the Debtor Including, But Not Limited To, Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, (II) Approving the Form and Manner of Notice of the Bar Dates, (III) Granting Related Relief (Docketed at Number*

5

*203)* [Docket No. 354]. DVL claims that the District Court Action will proceed to a jury trial. *See* Motion for Stay Relief, ¶ 24 ("DVL's claims are subject to a right to a jury trial, and a jury trial has been demanded.").

10. As DVL acknowledges, there is ample precedent which provides that if DVL files a proof of claim, it will waive its jury trial right in the District Court Action. *See* DVL Motion for Relief from Bar Date Order [Docket No. 305], ¶ 17 (acknowledging that filing a proof of claim could "subject[] the entire District Court Action to the equitable process of bankruptcy claims allowance and [waive DVL's] right to a jury trial in the district court . . . .") (*citing In re Exide Techs.*, 544 F.3d 196, 214 (3d Cir. 2008); *Langenkamp v. Culp*, 498 U.S. 42 (1990); *Granfinanciera, S.A. v. Nordberg*, 442 U.S. 33, 58 (1981); *Kamine/Besicorp Allegany, L.P. v. Rochester Gas & Elec. Co. (In re Kamine/Besicorp Allegany, L.P.)*, 214 B. R. 953, 966 (Bankr. D.N.J. 1997)).

11. Thus, the automatic stay should not be lifted prior to the bar date for DVL to file a claim because Liberty Mutual otherwise will not know whether it has to defend against a jury trial in the District Court Action. Defending against a jury trial is more expensive and a greater undertaking than defending against a non-jury trial. Accordingly, granting the Motion for Stay Relief at this time prejudices Liberty Mutual as to defense in the District Court Action.

12. The issue of applying a bar date to DVL to require its filing a proof of claim will come to a head sooner rather than later. The time for filing such claim was extended for DVL to January 11, 2021. DVL will have to file a motion if it seeks a further extension. DVL seeks damages in the District Court Action which exceed $19 million. Motion for Stay Relief, ¶ 7. The Debtor or liquidating trust cannot administer the claims in this Bankruptcy Case where it is unclear whether DVL's claim of this magnitude will participate in a distribution from the estate

6

or not. The $19 million DVL claim, as described by DVL, is a substantial part of all unsecured claims. *See Amended Declaration of Christopher O'Connor In Support of Debtor's Chapter 11 Petition And First Day Motions* [Docket No. 29], at ¶ 36 ("As of the Petition Date, the Debtor believes that unsecured claims against it are in excess of $47 million."). As stated, based on currently available information, Liberty Mutual's coverage analysis is that there is likely no coverage under the Policies for the claims asserted by DVL. The likelihood that DVL will waive recovery against the estate is small, once a bar date is set.

### C. Stay Relief Should Be Denied Because the Debtor Is Responsible for a Significant Portion of the Defense Costs in the District Court Action and Has Not Indicated How It Will Satisfy This Obligation.

13. DVL recognizes that a significant factor in determining whether to grant stay relief to permit a party in interest to continue prosecuting a matter in another forum is "whether the debtor's insurer has assumed full responsibility for defending it." Motion for Stay Relief, ¶ 22 (*citing In re Mid-Atl. Handling Sys.*, LLC, 304 B.R. 111, 130 (Bankr. D.N.J. 2003)). The Debtor has historically been responsible for a significant portion of its defense costs to defend the DVL claims. Based on applicable New Jersey proration rules and the insurance potentially available, Liberty Mutual has historically paid 80% of the Debtor's defense costs, and the Debtor has paid for the remaining 20% of its defense costs.

14. Liberty Mutual, however, believes that the Debtor is responsible for a materially larger portion of defense in the District Court Action, if there is any coverage at all. These obligations do not arise under the terms of the Policies but, instead, are the Debtor's obligations under applicable New Jersey law. *See e.g., Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1102 (N.J. 2004) ("[T]he insured is required to pay its 'aliquot' share of both defense and indemnification on account of years in which it is uninsured or self-insured, and the insured also is responsible for years in which coverage is exhausted or its insurer bankrupt.").

15. The Debtor has not committed to paying its share of its defense costs in the District Court Action. Lifting the stay at this time, thus, could prejudice the defense of DVL's claims in the District Court Action and may create dispute regarding payment of Debtor's share of defense costs. Granting stay relief is a further invitation to embroil the estate in a dispute and potential contentious proceedings on that front.

**D. If the Stay Is Lifted to Allow the District Court Action to Proceed, Such Stay Relief Should Be Conditioned on Authorizing Liberty Mutual to Commence a Coverage Action Against the Debtor.**

16. As stated, despite historically paying a portion of defense costs subject to a reservation of rights, after further analysis of the claims asserted by DVL in the District Court Action, Liberty Mutual has determined that based on currently available information there is likely no coverage for such claims under the Policies. Section 362(d) permits the Court to impose conditions on the lifting of the automatic stay. Because there is likely no coverage for DVL's claims under the Policies, Liberty Mutual requests that if the Court decides that it is appropriate to grant DVL's Motion for Stay Relief, such stay relief should be conditioned on authorizing Liberty Mutual to commence an action against the Debtor to establish that no coverage exists under the Policies for DVL's claims. Since the Motion for Stay Relief seeks leave "to recover from any applicable insurance" (Motion for Stay Relief, ¶ 2), it is only fair to allow Liberty Mutual to establish now that it has no coverage. Prompt resolution of this issue will likely also serve to promptly resolve the District Court Action.

WHEREFORE, Liberty Mutual respectfully requests that the Court deny the Motion for Stay Relief and also requests that the Court grant such other and further relief as may be just and proper.

Dated:  October 29, 2020

Respectfully Submitted,

**DENTONS US LLP**

*/s/ Lauren Macksoud                .*
Lauren Macksoud, Esq.
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile:  (973) 912-7199
lauren.macksoud@dentons.com

and

Geoffrey M. Miller (*pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile:  (212) 768-6800
geoffrey.miller@dentons.com

and

Robert B. Millner (*pro hac vice*)
233 South Wacker Drive,
Suite 5900
Chicago IL 60606
Telephone: (312) 876-8000
Facsimile:  (312) 876-7934
robert.millner@dentons.com

*Attorneys for Liberty Mutual Insurance Company*

**Exhibit A**

**DENTONS US LLP**
Lauren Macksoud, Esq.
101 JFK Parkway
Short Hills, NJ 07078
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
lauren.macksoud@dentons.com

and

**DENTONS US LLP**
Geoffrey M. Miller (*pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
geoffrey.miller@dentons.com

and

**DENTONS US LLP**
Robert B. Millner (*pro hac vice*)
233 South Wacker Drive,
Suite 5900
Chicago IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
robert.millner@dentons.com

*Attorneys for Liberty Mutual Insurance Company*

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re<br><br>CONGOLEUM CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-18488 (MBK) |

1

US_Active\115757755\V-4

**DECLARATION OF STEFANIE HAINES IN SUPPORT OF OBJECTION OF LIBERTY MUTUAL INSURANCE COMPANY TO RENEWED MOTION OF DVL, INC. AND DVL KEARNY HOLDINGS, LLC FOR ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE**

I, Stefanie Haines, declare that:

1. I am a Senior Account Manager at Resolute Management Inc., which has been appointed by Liberty Mutual Insurance Company ("Liberty Mutual") to handle certain environmental claims. I am over 18 years of age and have personal knowledge as to matters described herein.

2. I submit this declaration in connection with the *Objection of Liberty Mutual Insurance Company to Renewed Motion of DVL, Inc. and DVL Kearny Holdings, LLC for Entry of an Order Granting Relief From the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code*.

3. Liberty Mutual issued certain comprehensive general liability insurance policies (the "Policies") under which Congoleum Corporation (the "Debtor") or asserted predecessor entities are named insureds. Bath Iron Works Corporation is also an insured entity under certain of the Policies.

4. Historically, subject to reservation of rights, Liberty Mutual has paid 80% of the Debtor's defense costs as to the matter of *DVL, Inc. and DVL Kearny Holdings, LLC v Congoleum Corporation and Bath Iron Works Corporation*, Case No. 2:17-cv-04261-KM-JBC, with the remainder of the Debtor's defense costs paid by the Debtor.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 26, 2020

_____
Stefanie Haines

112859736\V-2

3

**Exhibit B**

                In addition, the Committee waives challenges to liens
and waives D&O claims.  And the noteholders have agreed to
waive any deficiency claims.

                So that's the essential terms of the settlement, much
of which has been baked into the proposed sale order, and will
also be incorporated into a liquidating plan.

                THE COURT:  All right.  Thank you, Mr. Prol.  Mr.
Usatine, do you wish to continue?

                MR. USATINE:  Yes.  Yes, thank you, Your Honor.  So
as Your Honor noted on the record, we have received three
formal objections.  One of them is by Bath Iron Works, and I'm
pleased to report that one has been resolved consensually, with
Your Honor's assistance, which we thank you for.  The objection
of BIW, which is Docket Number 366, is being withdrawn as part
of a settlement construct that I will place on the record now
with the Court's permission.

                THE COURT:  Okay.

                MR. USATINE:  It's a ten-point term sheet that has
been agreed to, and I'm going to read it verbatim so there's no
confusion.

                Number one, is BIW withdraws its sale objection.

                Number two, the sale order will contain modified
language that BIW has accepted that preserves BIW's rights in
the Liberty policies.

                Number three, Congoleum withdraws without prejudice

1  the motion to withdraw the reference in the adversary
2  proceeding.  Congoleum's pending motion to dismiss the
3  adversary is held in abeyance pending disposition of the
4  settlement motion described below.  Congoleum will not refile
5  the motion to withdraw the reference in the adversary
6  proceeding unless the Court denies the settlement motion.
7           Number four, Congoleum files a Rule 9019 settlement
8  motion in the bankruptcy case on notice pursuant to the Federal
9  Rules of Bankruptcy Procedure and by publication.
10          Congoleum agrees to support the settlement, although
11 in the motion Congoleum will state that it believes it would
12 prevail on the merits and its reasons therefore, but
13 acknowledges a risk that it might not prevail and that this
14 risk along with other settlement factors has caused it to agree
15 to the settlement.
16          Number five, the settlement agreement will provide
17 that BIW will submit proof of the findings it seeks at the
18 settlement hearing.
19          Number six, BIW proves up the declarations it seeks
20 in the adversary proceeding at the settlement hearing, and the
21 Court issues its ruling.  If the Court cannot make the
22 findings, the settlement agreement is null and void.  Assuming
23 the Court accepts BIW's prove up of the declarations, the order
24 approving the settlement, with findings, would expressly state
25 that the findings are entitled to res judicata and issue

1  preclusive effect.
2         Number seven, assuming the Court enters the
3  settlement order with findings, Congoleum would include these
4  findings in the proposed confirmation order.
5         Number eight, once the confirmation order is entered
6  with the findings and the plan is effective, BIW pays the
7  estate $1 million and withdraws its $14.8 million proof of
8  claim.
9         Number nine, Congoleum and BIW dismiss with prejudice
10 all claims against each other in any pending action, including
11 the DL and Occidental cases.  Congoleum agrees it will not
12 assert in any present or future litigation that BIW is a
13 successor to Congoleum's flooring business or responsible for
14 liabilities arising out of Congoleum's operations.
15        And, Number ten,, BIW and Congoleum exchange mutual
16 general releases upon approval of the settlement that cover all
17 affiliates, officers, directors, employees, equity owners,
18 agents, attorneys, and representatives.
19        I think I've stated that all correctly, but will
20 yield the floor to Mr. Stolz or Ms. Steege to the extent they
21 want to supplement or correct anything I said.
22        THE COURT:  All right, Ms. Steege?
23        MS. STEEGE:  Your Honor, this is Ms. Steege, and what
24 Mr. Usatine read was correct and that is our term sheet.
25        THE COURT:  Thank you very much.  Mr. Stolz, anything