**EXHIBIT A**

**AMENDED PLAN**

**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Warren A. Usatine, Esq.
wusatine@coleschotz.com
Felice R. Yudkin, Esq.
fyudkin@coleschotz.com
Rebecca W. Hollander, Esq.
rhollander@coleschotz.com

*Counsel to the Debtor*
*and Debtor in Possession*

| | |
|---|---|
| In re:<br><br>CONGOLEUM CORPORATION, [1]<br><br>Debtor. | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY HONORABLE MICHAEL B. KAPLAN CASE NO. 20-18488 (MBK)<br><br>Chapter 11 |

**FIRST AMENDED JOINT PLAN OF LIQUIDATION OF CONGOLEUM CORPORATION AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CONGOLEUM CORPORATION PURSUANT TO CHAPTER 11 OF THE <u>BANKRUPTCY CODE</u>**

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTOR, THE ESTATE OR OFFICIAL COMMITTEE OF UNSECURED CREDITORS OR ANY OTHER PARTY IN INTEREST AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.  PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT, YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED HEREIN, OR THE TERMS OF THIS PLAN FOR ANY PURPOSE.**

---

[1] The last four digits of the Debtor's federal tax identification number are 8678.  The Debtor's corporate headquarters is located at 3500 Quakerbridge Road, Mercerville, New Jersey 08619.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME AND GOVERNING LAW ................................. 1

    A. Defined Terms. ..................................................................................... 1

    B. Rules of Interpretation and Computation of Time. ........................... 11

    C. Governing Law. .................................................................................. 12

    D. Reference to Monetary Figures. ........................................................ 12

    E. No Amendment of Final DIP/Cash Collateral Order. ....................... 12

ARTICLE II ADMINISTRATIVE CLAIMS,   AND PRIORITY TAX CLAIMS ......... 13

    A. Administrative Claims. ....................................................................... 13

    B. DIP Claims ......................................................................................... 14

    C. Priority Tax Claims. ........................................................................... 14

    D. Statutory Fees. ................................................................................... 14

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ............................................................................................... 15

    A. Classification of Claims and Interests. .............................................. 15

    B. Summary of Classification. ................................................................ 15

    C. Treatment of Claims and Interests. ................................................... 15

    D. Special Provision Governing Claims that are Not Impaired. ............ 18

    E. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
Code. ................................................................................................... 18

    F. Subordinated Claims. ......................................................................... 18

    G. Elimination of Vacant Classes; Presumed Acceptance by Non-Voting
Classes. ............................................................................................... 19

    H. Controversy Concerning Impairment. ............................................... 19

    I. Acceptance or Rejection of the Plan. ................................................. 19

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN. ........................... 19

    A. Vesting of Assets. .............................................................................. 19

    B. Sources of Consideration for Plan Distributions. ............................. 20

    C. Liquidation Trust. .............................................................................. 20

    D. Dissolution of Liquidation Trust. ...................................................... 26

    E. Liquidation Trust Security Matters. ................................................... 26

    F. Tax Returns. ....................................................................................... 26

    G. Cancellation of Existing Securities. ................................................... 26

61003/0001-21079837v11

H.  Indemnification Obligations. ........................................................................ 27

I.  Effectuating Documents; Further Transactions. ........................................... 27

J.  Exemption from Certain Taxes and Fees. .................................................... 27

K.  Treatment of Causes of Action. ................................................................... 27

L.  Ability to Seek and Obtain Discovery. ........................................................ 28

M.  Debtor's Directors, Officers, and Managers. ............................................... 28

N.  Debtor's Existence. ...................................................................................... 28

O.  Dissolution of Creditors' Committee. .......................................................... 28

P.  Corporate Authority. .................................................................................... 29

ARTICLE V FUNDING AND DISBURSEMENTS ....................................................... 29

A.  Distribution Agent. ...................................................................................... 29

B.  Cash Payments. ............................................................................................ 29

C.  Distribution for Allowed Claims. ................................................................ 29

D.  Interest and Charges. .................................................................................... 29

E.  Compliance with Tax Requirements. ........................................................... 29

F.  Fractional Dollars: De Minimis Distributions. ........................................... 30

G.  Delivery of Distributions to Holders of Allowed Claims. ........................... 30

H.  Unclaimed Distributions. ............................................................................. 30

I.  No Penalty Claims. ...................................................................................... 31

J.  Setoffs and Recoupment. ............................................................................. 31

K.  Distributions by Liquidation Trust. ............................................................. 31

L.  Claims Paid or Payable by Third Parties. .................................................... 31

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ......................................................................................................................... 32

A.  Rejection of Executory Contracts and Unexpired Leases. ........................... 32

B.  Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..... 32

C.  Insurance Policies. ....................................................................................... 33

ARTICLE VII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS ................................................................................................................ 34

A.  Settlement, Compromise, and Release of Claims and Interests. .................. 34

B.  Liabilities to, and Rights of, Governmental Units. ...................................... 35

C.  Exculpation. ................................................................................................. 35

D.  Release ......................................................................................................... 35

E.  Injunction. .................................................................................................... 36

F.  Term of Injunctions or Stays. ...................................................................... 37

61003/0001-21079837v11

ARTICLE VIII CONDITIONS PRECEDENT TO  CONSUMMATION OF THE PLAN
.................................................................................................................................... 37

    A.  Conditions Precedent to the Effective Date. ................................................... 37

    B.  Waiver of Conditions. .................................................................................... 38

    C.  Effect of Failure of Conditions. ..................................................................... 38

ARTICLE IX MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN
.................................................................................................................................... 38

    A.  Modification and Amendments. ...................................................................... 38

    B.  Effect of Confirmation on Modifications. ...................................................... 38

    C.  Revocation or Withdrawal of Plan. ................................................................ 39

ARTICLE X RETENTION OF JURISDICTION ........................................................... 39

ARTICLE XI MISCELLANEOUS PROVISIONS ......................................................... 39

    A.  Immediate Binding Effect. .............................................................................. 39

    B.  Additional Documents. ................................................................................... 39

    C.  Reservation of Rights. .................................................................................... 40

    D.  Successors and Assigns. ................................................................................. 40

    E.  Notices. ........................................................................................................... 40

    F.  Entire Agreement. .......................................................................................... 41

    G.  Exhibits. ......................................................................................................... 41

    H.  Severability of Plan Provisions. ..................................................................... 42

    I.  Closing of Chapter 11 Case. .......................................................................... 42

    J.  No Admission Against Interest. ...................................................................... 42

    K.  No Waiver. ...................................................................................................... 42

    L.  Headings. ........................................................................................................ 42

    M. Conflicts. ........................................................................................................ 43

61003/0001-21079837v11

## INTRODUCTION

Congoleum Corporation, as debtor and debtor in possession in the above-captioned Chapter 11 Case and the Official Committee of Unsecured Creditors of Congoleum Corporation propose this chapter 11 plan of liquidation.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, and assets, as well as a summary and description of this Plan and certain related matters.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A.     *Defined Terms.*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.     *"Administrative Claim"* means any Claim against the Debtor or its Estate for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of the Judicial Code, provided that any Administrative Claim shall expressly exclude any Professional Fee Claim.

2.     *"Administrative Claims Bar Date"* means the date that is twenty-one (21) days from service of the Notice of Effective Date or such other date ordered by the Bankruptcy Court.

3.     *"Affiliate"* means, with respect to any specified Entity, any other Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with, such specified Entity.  For purposes of this definition, "control" (and any similar term) means the power of one or more Entities to direct, or cause the direction of, the affairs of another Entity by reason of ownership of voting stock or by contract or otherwise.

4.     *"Allowed"* means with respect to any Claim against the Debtor or its Estate (including any Administrative Claim) or portion thereof: (a) a Claim that is listed on the Debtor's Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Case, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection to allowance thereof, or Challenge or action to reclassify, subordinate, or otherwise limit recovery with respect thereto, shall have been Filed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim that is allowed pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court or by agreement of the Liquidation Trustee following the Effective Date; or (c) a Claim as to which a Proof of Claim has been Filed and as to which no objection has been Filed or Challenge or action to reclassify, subordinate, or otherwise limit recovery with respect

thereto has been Filed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.  Except for any Claim that is expressly Allowed herein, any Claim that (i) has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which no Proof of Claim has been Filed or (ii) has been assumed by the Buyer pursuant to the Asset Purchase Agreement and the Sale Order, is not considered Allowed and any person or entity holding such Claim shall not be treated as a Creditor with respect to such Claim for the purposes of voting and distributions under the Plan.

5.      *"Assets"* means any and all of the right, title and interest of the Debtor in and to property of whatever type or nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action, and any other general intangibles of the Debtor, as the case may be, including, without limitation, the Debtor's Estate; *provided*, *however*, that any Assets sold to the Buyer pursuant to the Asset Purchase Agreement and the Sale Order shall not be considered Assets of the Estate under this Plan.

6.      *"Asset Purchase Agreement"* means that certain Asset Purchase Agreement, by and between the Debtor and the Buyer dated as of July 15, 2020, together with all amendments and schedules thereto, and related documents, and as may be amended, supplemented or otherwise modified from time to time.

7.      *"Avoidance Actions"* means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

8.      *"Bankruptcy Code"* means title 11 of the United States Code.

9.      *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case or any other court having jurisdiction over the Chapter 11 Case, including, to the extent of the withdrawal of the reference under 28 U.S.C.§ 157, the United States District Court for the District of New Jersey.

10.     *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

11.     *"Beneficial Trust Interests"* means a beneficial interest in the Liquidation Trust, which interest shall be uncertificated and which shall be non-transferable except as expressly provided otherwise in the Liquidation Trust Agreement.

12.     *"BIW Settlement Proceeds"* means the $1 million payable to the Estate under the settlement among the Debtor, the Committee and Bath Iron Works Corporation.

13.     ***"Business Day"*** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

14.     ***"Buyer"*** means Congoleum Acquisition, LLC.

15.     ***"Cash"*** means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks, and legal tender of the United States of America or equivalents thereof.

16.     ***"Causes of Action"*** means any of the Debtor's action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any Challenge; (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim; and *subject*, *however*, to any releases provided in this Plan, the Confirmation Order, the Sale Order, or any other Final Order of the Bankruptcy Court.  For the avoidance of doubt, the Causes of Action shall not include any Causes of Action against the Released Parties or specifically acquired by the Buyer under the Asset Purchase Agreement.

17.     ***"Challenge"*** means to object to, challenge, contest or otherwise invalidate or reduce.

18.     ***"Chapter 11 Case"*** means the case pending for the Debtor under chapter 11 of the Bankruptcy Code administered under Case No. 20-18488 (MBK).

19.     ***"Claim"*** means any claim against the Estate, as such term is defined in section 101(5) of the Bankruptcy Code.

20.     ***"Claims Bar Date"*** means the date or dates established by the Bankruptcy Court by which Proofs of Claim must be Filed.

21.     ***"Class"*** means pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims against or Interests in the Debtor as set forth in Article III.

22.     ***"Cole Schotz"*** means Cole Schotz P.C., counsel for the Debtor.

23.     ***"Collateral"*** means any property or interest in property in the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not avoided under the Bankruptcy Code or applicable state laws.

24.     ***"Confirmation"*** means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

25.      ***"Confirmation Date"*** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

26.      ***"Confirmation Hearing"*** means the hearing held by the Bankruptcy Court, as such hearing may be continued from time to time, to consider entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

27.      ***"Confirmation Order"*** means the order of the Bankruptcy Court, in form and substance acceptable to the Plan Proponents, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

28.      ***"Consensual Third-Party Releases"*** means the releases set forth in Article VII.D of the Plan.

29.      ***"Consummation"*** means the occurrence of the Effective Date.

30.      ***"Creditor"*** has the same meaning as set forth in section 101(10v) of the Bankruptcy Code.

31.      ***"Creditors' Committee"*** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the Office of the United States Trustee [*See* Docket No. 93].

32.      ***"Debtor"*** means Congoleum Corporation, as a debtor and debtor in possession in the Chapter 11 Case.

*33.*      ***"DIP Claim"*** means the Claim arising under or as a result of the DIP Facility.

34.      ***"DIP Documents"*** means the Pre-Petition Loan Agreement (as defined in the Final DIP/Cash Collateral Order), as ratified and amended by that certain Ratification and Amendment Agreement dated as of July 15, 2020, as subsequently amended.

35.      ***"DIP Facility"*** means that certain revolving loan facility with a maximum borrowing amount of $18,485,000 pursuant to the terms and conditions of the DIP Documents.

36.      ***"DIP Lender"*** means Wells Fargo Bank, National Association.

37.      ***"Disclosure Statement"*** means the Disclosure Statement for the Joint Plan of Liquidation of Congoleum Corporation and the Official Committee of Unsecured Creditors of Congoleum Corporation Pursuant to Chapter 11 of the Bankruptcy Code, dated October [•], 2020, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

*38.*      ***"Disputed"*** means, any Claim against or Interest in the Debtor that is (a) listed in the Schedules as disputed, contingent, or unliquidated and for which a Proof of Claim has not been Filed; (b) subject to an objection, Challenge, and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection,

Challenge and/or request for estimation has not been withdrawn or determined by a Final Order; (c) held by a party that is adverse to the Debtor in any litigation or contested matter and as to which no Final Order resolving such litigation or contested matter has been entered; or (d) disallowed pursuant to section 502(d) of the Bankruptcy Code.  A Claim or Interest that is Disputed as to its amount shall not be Allowed in any amount until it is no longer a Disputed Claim or Disputed Interest.

39.     *"Distribution Agent"* means, from the Effective Date, any Person(s) selected by the Liquidation Trustee to make or to facilitate distributions required by this Plan.

40.     *"Distribution Date"* means, with respect to (a) any Claim that is Allowed as of the Effective Date, the date that is as soon as reasonably practicable after the Effective Date; or (b) any Claim that is Allowed after the Effective Date, a date as soon as reasonably practicable after the date on which such Claim becomes Allowed.

41.     *"Effective Date"* means, with respect to the Plan, the date that is a Business Day selected by the Plan Proponents, on which (a) the conditions to the occurrence of the Effective Date have been met or waived in accordance with the Plan and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

42.      *"Entity"* means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

43.     *"Environmental Claim"* means any Claim relating to alleged hazardous materials, hazardous substances, contamination, pollution, waste, fines threatened to be released or present in the environment or ecosystem, including, without limitation, alleged contamination under federal or state environmental laws, codes, orders or regulations, common law, as well as any entitlements to equitable remedies, including, without limitation, investigation, restoration, natural resource damages, reclamation, remediation and cleanup, including without limitation, any Claim by a Governmental Unit.

44.     *"Estate"* means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

45.     *"Exculpated Claim"* means any Cause of Action, arising during the period commencing on the Petition Date through the closing of the Chapter 11 Case, related to any act or omission derived from, based upon, related to or arising from (a) the Chapter 11 Case; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Case, the Disclosure Statement, the Plan, and/or the Plan Supplement; (c) the formulation, preparation, or negotiation of any documents with respect to, or the consummation of, any sale of the Debtor's assets during the Chapter 11 Case; (d) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the foregoing subsections (a), (b), or (c); (e) the pursuit of Consummation; and/or (f) the filing, administration, and/or implementation of the Chapter 11 Case, the Plan, or the distribution of property in connection therewith or thereunder.

61003/0001-21079837v11

46.  ***"Exculpated Party"*** means each of: (a) the Debtor; (b) the Creditors' Committee; (c) the members of the Creditors' Committee solely in their capacities as such; and (c) with respect to each of the foregoing Entities in clauses (a) and (b), such Entity's current officers and directors, managers, members, employees, agents, representatives, financial advisors, professionals, accountants, attorneys, and each of their predecessors, successors, and assigns, but only to the extent that such party served in such a capacity during the Chapter 11 Case.

47.  ***"Executory Contract"*** means a contract to which a Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

48.  ***"File"*** or ***"Filed"*** means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

49.  ***"Final DIP/Cash Collateral Order"*** means the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtor and Debtor in Possession to Obtain Postpetition Financing, (II) Authorizing the Debtor to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lender, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief  [Docket No. 153].

50.  ***"Final Distribution"*** means the distribution under this Plan which, (a) after giving effect to such distribution, results in remaining assets held by such Liquidation Trust, including cash, of a value of less than $500 or (b) the Bankruptcy Court determines that such distribution is the Final Distribution.

51.  ***"Final Order"*** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to seek reconsideration or relief from judgment, appeal, or seek *certiorari* has expired and no request for reconsideration or relief from judgment, appeal, or petition for *certiorari* has been timely taken, or as to which any appeal that has been taken or any petition for *certiorari* that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which *certiorari* could be sought or the reconsideration, relief from judgment, new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

52.  ***"General Unsecured Claim"*** means any Claim against the Debtor that is (i) neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (ii) not an Administrative Claim, a Professional Fee Claim, a DIP Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Priority Claim, an Other Secured Claim, a Pre-Petition Senior Note Claim, a Pre-Petition Exchanged Note Claim, a Subordinated Claim, or an Interest.

53.  ***"Governmental Claim"*** means any Claim against the Debtor Filed by a Governmental Unit.

54.  ***"Governmental Unit"*** means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

-6-

55.     *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

56.     *"Insured Claim*" means that portion of any Claim (including an Environmental Claim) arising out of an incident or occurrence alleged to have occurred prior to the Effective Date: (i) as to which any Insurer is obligated pursuant to the terms, conditions, limitations and exclusions of any Insurance Policy and/or applicable non-bankruptcy law, to pay any judgment, settlement, or contractual obligation with respect to the Debtor, or (ii) that any Insurer otherwise agrees to pay as part of a settlement or compromise of a claim made under the applicable Insurance Policy.

57.     *"Insurer"* means any company or other entity that issued, or is responsible for, an Insurance Policy under which the Debtor could have asserted or did assert, a right to coverage for any claim

58.     "*Insurance Policy*" means any policy of insurance and related agreement under which the Debtor could have asserted or did assert, or may in the future assert, a right to coverage for any claim.

59.     *"Interests"* means any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtor together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

60.     *"Interim Compensation Order"* means the Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court [Docket No. 151].

61.     *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ l-4001.

62.     *"Lien"* has the same meaning as set forth in section 101(10) of the Bankruptcy Code.

63.     *"Liquidation Trust"* means the trust, of which the Liquidation Trustee shall serve as trustee, formed pursuant to this Plan, the Liquidation Trust Agreement, and the Confirmation Order.

64.     *"Liquidation Trust Advisory Board"* means the advisory board, consisting of three (3) members, selected by the Creditors' Committee and established on the Effective Date in accordance with the Liquidation Trust Agreement.

65.     *"Liquidation Trust Agreement"* means the agreement included in the Plan Supplement, as may be amended, established as of the Effective Date, setting forth the terms and conditions of the Liquidation Trust, as may be modified from time to time, which agreement shall be in a form reasonably acceptable to the Creditors' Committee.

61003/0001-21079837v11

66.      ***"Liquidation Trust Assets"*** means the Assets of the Estate as of the Effective Date, including without limitation, the Retained Causes of Action and any proceeds therefrom, the BIW Settlement Proceeds and the UCC Settlement Proceeds.

67.      ***"Liquidation Trust Claims Reserve"*** shall mean the reserve established by the Liquidation Trustee on or after the Effective Date to satisfy in full all Administrative Claims (other than Professional Fee Claims), Statutory Fees, Priority Tax Claims, Secured Tax Claims, Other Priority Claims, and Other Secured Claims not otherwise paid on the Effective Date.

68.      ***"Liquidation Trust Expense Reserve"*** shall mean the reserve established by the Liquidation Trustee on or after the Effective Date comprised of Cash in an amount sufficient to satisfy the costs of administering the Liquidation Trust, and winding down the Debtor's Estate which amount shall not be less than $100,000.

69.      ***"Liquidation Trustee"*** means Dundon Advisers, LLC, the trustee selected by the Creditors' Committee to serve as the liquidation trustee under the Liquidation Trust Agreement, or any successor appointed in accordance with the terms of the Plan and Liquidation Trust Agreement.

70.      ***"Local Rules"*** means the Local Rules of the United States Bankruptcy Court for the District of New Jersey.

71.      ***"Notice, Claims and Balloting Agent"*** means Prime Clerk, LLC.

72.      ***"Notice of Effective Date"*** means a notice to be Filed with the Bankruptcy Court by the Debtor upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article VIII of the Plan.

73.      ***"Ordinary Course Professional Order"*** means the Order Pursuant to 11 U.S.C. §§ 105(a), 327, 330, and 503(b) Authorizing Debtor to Employ and Compensate Professionals Used in the Ordinary Course of Business [Docket No. 226].

74.      ***"Other Priority Claims"*** means any Claim against the Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

75.      ***"Other Secured Claims"*** means any Secured Claim that is not a Pre-Petition Senior Note Claim or Pre-Petition Exchanged Note Claim.

76.      **"Pension Plans"** means the three defined benefit pension plans sponsored by the Debtor, the Congoleum Retirement Plan for Salaried Employees, the Congoleum Hourly Retirement Plan, and the Congoleum Plant 2 Retirement Plan.

77.      ***"Person"*** means a person as such term is defined in section 101(41) of the Bankruptcy Code.

78.      ***"Petition Date"*** means July 13, 2020, the date on which the Debtor commenced the Chapter 11 Case.

79.     *"Plan"* means this Joint Plan of Liquidation of Congoleum Corporation and Official Committee of Unsecured Creditors Pursuant to Chapter 11 of the Bankruptcy Code (as modified, amended or supplemented from time to time).

80.     *"Plan Proponents*" means the Debtor and Creditors' Committee.

81.     *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, whereby the Plan Proponents will file the Liquidation Trust Agreement, in form and substance acceptable to the Debtor and Creditors' Committee.

82.     *"Pre-Petition Exchanged Notes"* means the 9% Senior Secured Notes due December 31, 2020.

83.     *"Pre-Petition Exchanged Note Claim"* means the aggregate balance outstanding under the Pre-Petition Exchanged Notes.

84.     *"Pre-Petition Exchanged Note Trustee"* means Delaware Trust Company, the trustee under that certain Indenture dated as of June 29, 2017 for the Pre-Petition Exchanged Notes.

85.     *"Pre-Petition Senior Notes"* means the 9% Senior Secured Notes due December 31, 2017.

86.     *"Pre-Petition Senior Note Claim"* means the aggregate balance outstanding under the Pre-Petition Senior Notes.

87.     *"Pre-Petition Senior Note Trustee"* means Delaware Trust Company, the trustee under that certain Amended and Restated Indenture dated as of December 1, 2010 for the Pre-Petition Senior Notes.

88.     *"Priority Tax Claim"* means any Claim against the Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

89.     *"Professional"* means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code after motion on notice under that section of the Bankruptcy Code.

90.     *"Professional Fee Claim"* means a Claim for any accrued but unpaid fees and expenses owed to a Professional pursuant to such Professional's engagement letter or otherwise under sections 328, 330, 331, 503(b), 1103, or 503 of the Bankruptcy Code; *provided* that any such Professional Fee Claim shall be reduced by the amount of any retainer held by such Professional.

91.   **"Professional Fee Claim Reserve"** means the reserve established under the Final DIP/Cash Collateral Order and maintained pursuant to the terms of this Plan and the Confirmation Order to be distributed to holders of Allowed Professional Fee Claims.

92.   **"Proof of Claim"** means a written proof of Claim that is Filed against the Debtor in the Chapter 11 Case.

93.   **"Proof of Interest"** means a written proof of Interest that is Filed against the Debtor in the Chapter 11 Case.

94.   **"Rejection Claim"** means a Claim against the Debtor arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

95.   **"Released Party"** means (a) the Debtor; (b) the Creditors' Committee; (c) the members of the Creditors' Committee (but only in their capacity as such); (d) the DIP Lender; (e) the Pre-Petition Senior Note Secured Parties; and (f) the Pre-Petition Exchanged Note Secured Parties; and (g) with respect to each of the foregoing in clauses (a) through (f) such Person's or Entity's predecessors, successors and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in their capacity as such.

96.   **"Retained Causes of Action"** means any Cause of Action other than any Cause of Action that (i) is expressly subject to the release and exculpation provisions of this Plan or (ii) was sold to the Buyer pursuant to the Asset Purchase Agreement and the Sale Order.

97.   **"Sale"** means the sale of substantially all of the Debtor's assets to the Buyer.

98.   **"Sale Order"** means the Order under 11 U.S.C. §§105(a), 363 and 365 (I) Authorizing and Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Interests, (II) Authorizing and Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases of Non-Residential Real Property in Connection with the Sale, and (III) Granting Related Relief [Docket No. 380].

99.   **"Schedules"** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

100.   **"Section 503(b)(9) Claims"** means Administrative Claims arising from Section 503(b)(9) of the Bankruptcy Code.

101.   **"Secured"** means when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interests in such property or to the extent of the amount subject to setoff, as applicable,

as determined pursuant to section 506(a) or (b) of the Bankruptcy Code Allowed as such
pursuant to the Plan.

102.    ***"Security"*** shall have the meaning set forth in section 101(49) of the Bankruptcy
Code.

103.    ***"Subordinated Claim"*** means any Claim that is subordinated, pursuant to section
510(b) of the Bankruptcy Code or otherwise, including any Claims arising from rescission of a
purchase or sale of a Security of the Debtor, which Security is not an Interest, for damages
arising from the purchase or sale of such a Security, or for reimbursement or contribution
allowed under section 502 of the Bankruptcy Code on account of such a Claim.

104.    ***"Tax Code"*** means the Internal Revenue Code of 1986, as amended.

105.    ***"UCC Settlement Proceeds"*** means in addition to the $100,000 in Excluded Cash
(as defined in the Asset Purchase Agreement), the proceeds of the settlement agreement by and
among the Buyer, the Creditors' Committee, the holders of the Pre-Petition Exchanged Notes
and Pre-Petition Senior Notes to be paid to the Estate as follows: (i) $250,000 on or about the
Effective Date of this Plan; (ii) $250,000 on or about 6 months after the Closing (as defined in
the Asset Purchase Agreement) of the Sale; (iii) $500,000 on or about 12 months after the
Closing of the Sale (iv) $300,000 if and when certain monies presently held in a cash collateral
account by Applied Underwriters for a period of when the Debtor was self-insured for workers'
compensation claims are refunded; and (v) the proceeds payable pursuant to paragraph 33(b) of
the Sale Order.

106.    ***"Unclaimed Property"*** means any distribution to any Creditor under this Plan that
is unclaimed sixty (60) days following the date of such distribution under this Plan.

107.    ***"Unclaimed Property Reserve"*** means any Unclaimed Property reserved for a
period of sixty (60) days by the Liquidation Trustee on behalf of holders of Unclaimed Property.

108.     ***"Unexpired Lease"*** means a lease to which the Debtor is a party that is subject to
assumption or rejection under section 365 of the Bankruptcy Code.

109.    ***"Unimpaired"*** means, with respect to a Class of Claims or Interests, a Class of
Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy
Code.

110.    ***"U.S. Trustee"*** means the United States Trustee for Region 3.

111.    ***"Voting Deadline"*** means 11:59 p.m. (ET) on November [•], 2020.

B.    *Rules of Interpretation and Computation of Time.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the
singular or the plural, shall include both the singular and the plural, and pronouns stated in the
masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter
gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other

-11-

agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable law, including the Bankruptcy Code and the Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; and (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated.  Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

C.     *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

D.     *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

E.     *No Amendment of Final DIP/Cash Collateral Order*

Notwithstanding anything else contained in the Plan or the Liquidation Trust Agreement, nothing in the Plan or the Liquidation Trust Agreement is intended to or shall be deemed to amend, modify, alter or supersede any of the provisions of the Final DIP/Cash Collateral Order and the terms of the Final DIP/Cash Collateral Order are hereby incorporated herein in their entirety as a part of this Plan.

## ARTICLE II
## ADMINISTRATIVE CLAIMS,
## AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *Administrative Claims.*

1.    Administrative Claims

Except to the extent that a holder of an Allowed Administrative Claim and the Plan Proponents agree to less favorable treatment with respect to such Allowed Administrative Claim or such Allowed Administrative Claim is assumed by the Buyer under the Asset Purchase Agreement, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.  For the avoidance of doubt, Section 503(b)(9) Claims were assumed by the Buyer.

2.    Professional Fee Claims

Any Person asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than twenty-one (21) days after the Effective Date (with an objection period of at least twenty-one (21) days for objections, if any, to such applications); *provided*, *however* that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order.  Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim. The Professional Fee Claim Reserve shall be maintained in Cole Schotz's IOLTA account to be held for the distribution of Allowed Professional Fee Claims.  Upon entry of a Final Order approving any such application for such Professional Fee Claim, Cole Schotz shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim.  To the extent that any Cash is remaining in the Professional Fee Claim Reserve after payment in full of all Allowed Professional Fee Claims, Cole Schotz shall promptly transfer any such remaining Cash to the Liquidation Trust and such Cash shall become Liquidation Trust Assets and be treated in accordance with the Liquidation Trust Agreement, the Plan, and the Confirmation Order.  To the extent that there are insufficient funds in the Professional Fee Claims Reserve to pay all Allowed Professional Fee Claims in full, the Liquidation Trustee shall pay any shortfall from the Liquidation Trust Assets.

-13-

3.    Administrative Claim Bar Date

Requests for payment of Administrative Claims must be Filed on or before the Administrative Claims Bar Date.  Except as otherwise ordered by the Court, holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property and such Administrative Claims shall be deemed released against the Debtor as of the Effective Date.  For the avoidance of doubt, Governmental Units asserting Administrative Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code shall not be required to File a request for payment prior to the Administrative Claims Bar Date.

B.    *DIP Claims*

The DIP Claims will be satisfied at the closing of the Sale.

C.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or such Allowed Priority Tax Claim is assumed by the Buyer under the Asset Purchase Agreement, in exchange for full and final satisfaction, settlement, and release of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Liquidation Trustee, one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (ii) such other treatment (which treatment shall be no more favorable than the treatment set forth in subsection (i) of this section) as may be agreed upon by such holder and the Liquidation Trustee or otherwise determined upon an order of the Bankruptcy Court.  Allowed Priority Tax Claims shall be paid on or as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim against the Debtor becomes an Allowed Priority Tax Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

D.    *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("**Quarterly Fees**") prior to the Effective Date shall be paid by the Debtor or the Liquidation Trust Claims Reserve.  On and after the Effective Date, the Liquidation Trust shall be responsible for (i) filing post-Confirmation quarterly reports and any pre-Confirmation monthly reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines and (ii) all Quarterly Fees (as defined below) for the Chapter 11 Case until the entry of a final decree or until such Chapter 11 Case are closed or dismissed.

-14-

# ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor.  All Claims and Interests, except for Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

The classification of Claims against and Interests in the Debtor pursuant to the Plan is as set forth below.  All of the potential Classes for the Debtor are set forth herein.

B.    *Summary of Classification.*

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 4 | Pre-Petition Senior Note Claim | Unimpaired | Deemed to Accept |
| 5 | Pre-Petition Exchanged Note Claim | Unimpaired | Deemed to Accept |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Interests | Impaired | Deemed to Reject |

C.    *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect the Debtor, the treatment provided for the holders of such Allowed Claims or Allowed Interests within each class is specified below:

1.    Class 1 – Secured Tax Claims

i.    *Classification*: Class 1 consists of all Secured Tax Claims.

*Treatment*: To the extent not assumed by the Buyer under the Asset Purchase Agreement, each holder of an Allowed Secured Tax Claim shall receive, at the option of the Liquidation Trustee:

-15-

(a) payment in full in Cash of such holder's Allowed Secured Tax Claim; or (b) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five (5) years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Liquidation Trustee to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

ii.    *Voting:* Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 – Other Secured Claims</u>

i.    *Classification:* Class 2 consists of all Other Secured Claims.

ii.    *Treatment*: To the extent not assumed by the Buyer under the Asset Purchase Agreement, each holder of an Allowed Other Secured Claim shall receive, at the option of the Liquidation Trustee, (a) payment in full in Cash of such holder's Allowed Other Secured Claim; (b) the Collateral securing such holder's Allowed Other Secured Claim; (c) Reinstatement of such holder's Allowed Other Secured Claim; or (d) such other treatment rendering such holder's Allowed Other Secured Claim Unimpaired.

iii.    *Voting*: Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.    <u>Class 3 – Other Priority Claims</u>

i.    *Classification*: Class 3 consists of all Other Priority Claims.

ii.    *Treatment*: To the extent not assumed by the Buyer under the Asset Purchase Agreement, each holder of an Allowed Other Priority Claim shall receive payment in full in Cash of such holder's Allowed Other Priority Claim from the Liquidation Trustee or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired.

iii.    *Voting*: Class 3 is Unimpaired by the Plan, and each holder of a Class 3 Other Priority Claim is conclusively presumed to have

61003/0001-21079837v11

accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 3 Other Priority Claims are not entitled to vote to accept or reject the Plan.

4.      <u>Class 4 – Pre-Petition Senior Note Claim</u>

    i.      *Classification*: Class 4 consists of the Pre-Petition Senior Note Claim.

    ii.      *Treatment*: The Pre-Petition Senior Note Claim received payment of its claim in the form of a $28.5 million credit bid under the Asset Purchase Agreement.  The remaining Pre-Petition Senior Note Claim, if any, shall be waived as of the closing of the Sale.

    iii.      *Voting*: Class 4 is Unimpaired by the Plan, and each holder of a Class 4 Pre-Petition Senior Note Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 4 Pre-Petition Senior Note Claims are not entitled to vote to accept or reject the Plan.

5.      <u>Class 5 – Pre-Petition Exchanged Note Claim</u>

    i.      *Classification*: Class 5 consists of the Pre-Petition Exchanged Note Claim.

    ii.      *Treatment*: The Pre-Petition Exchanged Note Claim received payment of its claim in the form of a $28.5 million credit bid under the Asset Purchase Agreement.  The remaining Pre-Petition Exchanged Note Claim, if any, shall be waived as of the closing of the Sale.

    iii.      *Voting*: Class 5 is Unimpaired by the Plan, and each holder of a Class 5 Pre-Petition Exchanged Note Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 5 Pre-Petition Exchanged Note Claims are not entitled to vote to accept or reject the Plan.

6.      <u>Class 6—General Unsecured Claims</u>

    i.      *Classification*: Class 6 consists of all General Unsecured Claims.

    ii.      *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall receive its pro rata share

-17-

of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their pro rata share of the Liquidation Trust Assets.

iii.  *Voting*: Class 6 is Impaired by the Plan.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

7.  Class 7 -Interests

i.  *Classification*:  Class 7 consists of all Interests in the Debtor.

ii.  *Treatment*:  Holders of Interests in the Debtor will receive no distribution under the Plan, and all Interests shall be cancelled.

iii.  *Voting*:  Class 7 is Impaired by the Plan, and each holder of Class 8 Interests is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 7 Interests are not entitled to vote to accept or reject the Plan.

D.  *Special Provision Governing Claims that are Not Impaired.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Claims or Interests that are not Impaired, including all rights of Debtor in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims or Interests that are not Impaired.

E.  *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Plan Proponents shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Plan Proponents reserve the right to modify the Plan in accordance with Article IX of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

F.  *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, and subject to

-18-

the Challenge Deadline as set forth in the Final DIP/Cash Collateral Order, the Liquidation Trust reserves the right to request that the Bankruptcy Court reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

      G.     *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

      H.     *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

      I.     *Acceptance or Rejection of the Plan.*

      1.     Voting Classes

Class 6 is entitled to vote on the Plan.

      2.     Presumed Acceptance of the Plan

Pursuant to the Bankruptcy Code, Classes 1, 2, 3, 4 and 5 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

      3.     Presumed Rejection of the Plan

Class 7 is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

      A.     *Vesting of Assets.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all of the Liquidation Trust Assets shall immediately vest in the Liquidation Trust.

B.    *Sources of Consideration for Plan Distributions.*

Distributions under the Plan on account of the Beneficial Trust Interests will be funded by the Liquidation Trust Assets.  All other distributions under the Plan, other than distributions on account of Beneficial Trust Interests, will be funded by the Liquidation Trust Claims Reserve or the Professional Fee Claims Reserve.  On or after the Effective Date, the Liquidation Trustee shall fund the Liquidation Trust Claims Reserve and the Liquidation Trust Expense Reserve, in full in Cash from the Liquidation Trust Assets.   On the Effective Date, the Debtor shall fund the Professional Fee Claims Reserve in an amount sufficient to pay all Allowed Professional Fee Claims.

C.    *Liquidation Trust.*

1.    Creation of Liquidation Trust. On the Effective Date, the Liquidation Trust shall be created in accordance with the Liquidation Trust Agreement for the benefit of holders of Beneficial Trust Interests.  The Liquidation Trust Agreement shall (i) be in form and substance consistent in all respects with this Plan and (ii) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidation Trust as a grantor trust and the holders of Beneficial Trust Interests as the grantors and owners thereof for federal tax purposes.  On the Effective Date, the Liquidation Trust Assets shall be conveyed or assigned to the Liquidation Trust, including: (a) the Retained Causes of Action; (b) the BIW Settlement Proceeds; (c) the UCC Settlement Proceeds paid to the Debtor prior to the Effective Date; and (d) the UCC Settlement Proceeds coming due after the Effective Date, including the refund from Applied Underwriters.  All relevant parties (including, the Debtor, the Creditors' Committee, the Liquidation Trustee, and the holders of Beneficial Trust Interests) will take all actions necessary to cause title to the Liquidation Trust Assets to be transferred to the Liquidation Trust.  The powers, authority, responsibilities, and duties of the Liquidation Trust and the Liquidation Trustee are set forth and will be governed by the Liquidation Trust Agreement, the Plan, and Confirmation Order.

2.    Transfers to the Liquidation Trust. On the Effective Date, the Debtor and its Estate shall transfer and shall be deemed to have irrevocably transferred to the Liquidation Trust, the Liquidation Trust Assets, which transfer shall be free and clear of Claims, Liens, Interests, encumbrances, and contractually imposed restrictions except as otherwise provided herein.

3.    Purpose of the Liquidation Trust. The Liquidation Trust shall be established for the primary purpose of liquidating its assets and making distributions in accordance with the Plan, Confirmation Order, and the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Liquidation Trust.  The Liquidation Trust, acting through the Liquidation Trustee, shall be authorized to exercise and perform the rights, powers, and duties held by the Estate with respect to the Liquidation Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee, or any similar official who has been appointed to take control of, supervise, manage, or liquidate the Debtor, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Liquidation Trust Assets.

4.      Administration of the Liquidation Trust. The Liquidation Trust shall be administered by the Liquidation Trustee pursuant to the Liquidation Trust Agreement and the Plan.  In the event of any inconsistency between the Plan or the Confirmation Order and the Liquidation Trust Agreement as such conflict relates to anything other than the establishment of a Liquidation Trust, the Plan, or Confirmation Order shall control.

5.      Appointment of Liquidation Trustee. As of the Effective Date, the Liquidation Trustee shall be appointed as trustee of the Liquidation Trust pursuant to the Liquidation Trust Agreement, the Plan, and the Confirmation Order, and section 1123(b)(3) of the Bankruptcy Code, and shall have all of the rights, powers, authority, and obligations set forth in the Liquidation Trust Agreement, the Plan, the Confirmation Order, and the Bankruptcy Code.  The Liquidation Trustee shall be the exclusive trustee of the Estate under Title 11 for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 601(b)(3).

6.      Compensation of the Liquidation Trustee. The Liquidation Trustee shall be compensated pursuant to the terms of the Liquidation Trust Agreement.  Any professionals retained by the Liquidation Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred, subject to approval by the Liquidation Trustee. The payment of fees and expenses of the Liquidation Trustee and its professionals shall be made in the ordinary course of business from the Liquidation Trust Expense Reserve and shall not be subject to Bankruptcy Court approval. The identity of the Liquidation Trustee and the proposed compensation shall be disclosed in the Plan Supplement.

7.      Liquidation Trust Advisory Board. On the Effective Date, the Creditors' Committee shall have appointed the Liquidation Trust Advisory Board to oversee the implementation of the Plan and Liquidation Trust.  The Liquidation Trustee shall consult with the Liquidation Trust Advisory Board with respect to (i) the pursuit, settlement, or resolution of Retained Causes of Action; (ii) the retention of advisors; (iii) objections, compromises, or settlements to any Claims; and (iv) the amount and timing of distributions to holders of Beneficial Trust Interests provided for or contemplated under the Plan or Liquidation Trust Agreement. The identity of the members of the Liquidation Trust Advisory Board shall be disclosed in the Plan Supplement.

8.      Responsibilities of the Liquidation Trustee. The responsibilities of the Liquidation Trustee under the Liquidation Trust Agreement and this Plan shall include those set forth in the Liquidation Trust Agreement, including, without limitation, the following (a) the receipt of the Liquidation Trust Assets; (b) the establishment and maintenance of such operating, reserve, and trust account(s) as are necessary and appropriate to carry out the terms of the Liquidation Trust and the Plan, including the Liquidation Trust Expense Reserve and Liquidation Trust Claims Reserve; (c) the investment of Cash that is a Liquidation Trust Asset; (d) the pursuit of objections to, estimation of, and settlements of all Claims, regardless of whether any such Claim is listed on the Debtor's Schedules, other than Claims that are Allowed pursuant to the Plan; (e)  the prosecution, settlement, or abandonment of any Retained Causes of Action; (f) unless otherwise provided in the Plan, the calculation of all distributions to be made under this Plan; (g) authorizing and making, through the Distribution Agent, all distributions to be made under this Plan, (h) winding down the Debtor's affairs; and (i) such other responsibilities as may be vested in the Liquidation Trustee pursuant to this Plan, the Liquidation Trust Agreement, the

Confirmation Order, other Bankruptcy Court Orders, or as otherwise may be necessary and proper to carry out the provisions of this Plan.

       9.    <u>Powers of Liquidation Trustee</u>. The powers of the Liquidation Trustee, as set forth in the Liquidation Trust Agreement shall include, without limitation and without further Bankruptcy Court approval, each of the following:

    i.    To act on behalf of the Liquidation Trust, including the right to effect all actions and execute all agreements, instruments, and other documents, exercise all rights and privileges previously held by the Debtor, necessary or convenient to implement the provisions of this Plan and the Liquidation Trust Agreement;

    ii.    With respect to any Liquidation Trust Asset, to exercise in a manner not inconsistent with the Plan all power and authority that may be or could have been exercised, commence or continue all proceedings that may be or could have been commenced or continued and take all actions that may be or could have been taken by any member, officer, director, or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors, and shareholders, including, without limitation, the dissolution of the Debtor;

    iii.    To manage, monitor, and enforce all of the Debtor's and the Estate's rights, and interests under the Plan, the Confirmation Order, the Liquidation Trust Agreement, any other agreements of the Debtor, and any other orders of the Bankruptcy Court;

    iv.    To establish, maintain, and adjust as may be appropriate, the Liquidation Trust Expense Reserve, and to authorize and make disbursements from the Liquidation Trust Expense Reserve, including disbursements necessary or appropriate in connection with winding down the Estate;

    v.    To authorize and make, through the Distribution Agent, distributions to holders of Allowed Claims provided for or contemplated in the Plan;

    vi.    To authorize and make through the Distribution Agent, distribution to holders of Beneficial Trust Interests provided for or contemplated under the Plan or Liquidation Trust Agreement;

    vii.    Except to the extent set forth in the Plan, to object to any Claims regardless of whether such Claim was Disputed on the Effective Date, to compromise or settle any Claim regardless of whether such Claim was Disputed on the Effective Date, prior to objection without supervision or approval of the Bankruptcy Court, free of any restriction of the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, and the guidelines and requirements of the U.S. Trustee, other than those restrictions expressly imposed by the Plan, the Confirmation Order, or the Liquidation Trust Agreement; *provided*, *however*, that nothing

-22-

herein shall be deemed to extend the deadline for initiating a Challenge as set forth in the Final DIP/Cash Collateral Order (as such deadline may be extended by Final Order);

viii.     To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees, and consultants by the Liquidation Trust and the Liquidation Trustee and to pay the fees and charges incurred by the Liquidation Trustee on the Liquidation Trust's behalf on or after the Effective Date for fees and expenses of professionals (including those retained by the Liquidation Trustee), disbursements, expenses or related support services relating to the Liquidation Trust;

ix.     To (a) file, if necessary, any and all tax and information returns required with respect to the Liquidation Trust as a grantor trust pursuant to Treas. Reg. 1.671¬4(a) or otherwise, (b) make tax elections by and on behalf of the Liquidation Trust, and (c) pay taxes, if any, payable by the Liquidation Trust;

x.     To take all other actions not inconsistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable with respect to administering the Plan;

xi.     To implement and/or enforce all provisions of the Plan, including entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order, or the Liquidation Trust Agreement;

xii.     To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any Liquidation Trust Asset in the reasonable business judgment of the Liquidation Trustee;

xiii.     Except as otherwise set forth herein, to prosecute and/or settle any Retained Causes of Action, with or without approval of the Bankruptcy Court, and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative, or other nonjudicial proceeding and pursue to settlement or judgment such Retained Causes of Action;

xiv.     To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Liquidation Trustee deems necessary or advisable;

xv.     To collect and liquidate and/or distribute all Liquidation Trust Assets pursuant to the Plan, the Confirmation Order, and the Liquidation Trust Agreement;

xvi.    To hold any legal title to any and all of the Liquidation Trust Assets;

xvii.   If any of the Liquidation Trust Assets are situated in any state or other
jurisdiction in which the Liquidation Trustee is not qualified to act as
trustee, to nominate and appoint a Person duly qualified to act as trustee in
such state or jurisdiction and require from each such trustee such security
as may be designated by the Liquidation Trustee in its discretion; confer
upon such trustee all the rights, powers, privileges and duties of the
Liquidation Trustee hereunder, subject to the conditions and limitations of
the Liquidation Trust Agreement, except as modified or limited by the
Liquidation Trustee and except where the conditions and limitations may
be modified by the laws of such state or other jurisdiction (in which case,
the laws or the state or jurisdiction in which the trustee is acting shall
prevail to the extent necessary); require such trustee to be answerable to
the Liquidation Trustee for all monies, assets, and other property that may
be received in connection with the administration of all property; and
remove such trustee, with or without cause, and appoint a successor
trustee at any time by the execution by the Liquidation Trustee of a written
instrument declared such trustee removed from office, and specifying the
effective date and time of removal;

xviii.  Retain any and all insurance policies of the Debtor providing coverage
with respect to Retained Assets, Liabilities and Causes of Action;

xix.    To wind down the Debtor's affairs and complete all tasks necessary to
dissolve the Debtor;

xx.     Exercise such other powers as may be vested in or assumed by the
Liquidation Trustee pursuant to the Plan, the Liquidation Trust
Agreement, the Confirmation Order, other orders of the Bankruptcy Court,
or as may be necessary and proper to carry out the provisions of the Plan;
and

xxi.    Solely with respect to any Liquidation Trust Asset, the Liquidation
Trustee shall stand in the same position as the Debtor with respect to any
claim the Debtor may have to an attorney-client privilege, the work-
product doctrine, or any other privilege, and the Liquidation Trustee shall
succeed to all of the Debtor's rights to preserve, assert or waive any such
privilege.

10.     <u>Tax Treatment of the Liquidation Trust</u>. The Liquidation Trust shall be structured
to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-
4(f) and in compliance with Revenue Procedure 94-45, and thus, as a "grantor trust" within the
meaning of Sections 671 through 679 of the Tax Code.  Accordingly, the holders of Beneficial
Trust Interests shall be treated for U.S. federal income tax purposes (i) as direct recipients of
undivided interests in the Liquidation Trust Assets (other than to extent the Liquidation Trust
Assets are allocable to Disputed Claims) and as having immediately contributed such assets to

61003/0001-21079837v11

the Liquidation Trust, and (ii) thereafter, as the grantors and deemed owners of the Liquidation Trust and thus, the direct owners of an undivided interest in the Liquidation Trust Assets (other than such Liquidation Trust Assets that are allocable to Disputed Claims).

11.     <u>Tax Reporting</u>.

 i. The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) and in accordance with this section of the Plan.  The Liquidation Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items allocable to any assets allocable to, or retained on account of, Disputed Claims) will be allocated to each holder in accordance with their relative ownership of Beneficial Trust Interests.

 ii. As soon as possible after the Effective Date, the Liquidation Trustee shall make a good faith valuation of the Liquidation Trust Assets, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Liquidation Trust shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any Government Unit for taxing purposes.

 iii. The Liquidation Trust shall be responsible for payment, out of the Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust (including any "disputed ownership fund") or the Liquidation Trust Assets.  In accordance therewith, any taxes imposed on any disputed ownership fund or its assets will be paid out of the assets of the disputed ownership fund and netted against any subsequent distribution in respect of the allowance or disallowance of such Claims.

 iv. The Liquidation Trustee (i) may timely elect to treat any Liquidation Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including the Liquidation Trustee and the holders of Beneficial Trust Interests) shall report for United States federal, state, and local income tax purposes consistently with the foregoing.  The Liquidation Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

12.     <u>Retained Causes of Action</u>. The Liquidation Trustee shall have the sole right to pursue any existing or potential Retained Causes of Action, by informal demand and/or commencement or continuation of litigation.

13.     <u>Costs and Expenses of the Liquidation Trust</u>. The costs and expenses of the Liquidation Trust, including the fees and expenses of the Liquidation Trustee and other professionals retained on behalf of the Liquidation Trust, shall be paid out of the Liquidation Trust Expense Reserve, subject to the terms of the Liquidation Trust Agreement.

14.     <u>Effective Date</u>. On the Effective Date, the Liquidation Trustee shall have the rights and powers set forth herein, in the Confirmation Order and in the Liquidation Trust Agreement to carry out and implement the purposes and intent of the Plan.

D.     *Dissolution of Liquidation Trust.*

The Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date, unless the Bankruptcy Court, upon motion made prior to the fifth (5th) anniversary without the need for a favorable letter ruling from the IRS that any further extension would not adversely affect the status of either as a Liquidation Trust for federal income tax purposes, determines that a fixed period extension, not to exceed five (5) years, is necessary to facilitate or complete the recovery on and liquidation of the Liquidation Trust Assets.  Upon the filing of any motion for an extension of the date of dissolution, such date shall be deemed automatically extended until an order of the Bankruptcy Court is entered with respect to such or motion or such motion is withdrawn.

E.     *Liquidation Trust Security Matters.*

To the extent that the Beneficial Trust Interests are deemed to be "securities," the issuance of such interests under this Plan are exempt pursuant to section 1145 of the Bankruptcy Code, and from registration under the Securities Act of 1933, as amended, and any applicable U.S. federal, state, and local laws requiring registration of securities.  It is currently anticipated that the Beneficial Trust Interests will be uncertificated and non-transferable except to the extent expressly provided otherwise in the Liquidation Trust Agreement.

F.     *Tax Returns.*

After the Effective Date, the Liquidation Trustee shall complete and file all final or otherwise required federal, state, and local tax returns for the Debtor, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

G.     *Cancellation of Existing Securities.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, and purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor related thereto shall be cancelled and deemed null and void; *provided*, *however*, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim

-26-

against the Debtor shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; *provided further*, *however*, that the preceding provision shall not result in any expense or liability to the Debtor, except to the extent set forth in or provided for under this Plan.

H.     *Indemnification Obligations.*

Except as otherwise provided in the Plan, the Confirmation Order, any and all indemnification obligations of the Debtor, whether pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document, or other document or applicable law, shall be rejected as of the Effective Date of the Plan.

I.     *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtor and its directors, members, trustees, officers, and managers are and, after the Effective Date, the post-Effective Date Debtor and the Liquidation Trustee are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

J.     *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

K.     *Treatment of Causes of Action.*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, sold, or settled in the Plan or pursuant to a Bankruptcy Court order, the Debtor reserves and assigns to the Liquidation Trust, any and all Retained Causes of Action, whether arising before or after the Petition Date, and preserve the right to commence, continue, prosecute, or settle such Retained Causes of Action, notwithstanding the occurrence of the Effective Date.  The Liquidation Trustee, on behalf of the Liquidation Trust, may pursue such Retained Causes of Action, in its sole discretion.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Liquidation Trust will not pursue any and all available Retained Causes of Action against them.  No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel

(judicial, equitable or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation or Consummation.

      L.      *Ability to Seek and Obtain Discovery.*

From and after the Effective Date, the Liquidation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

      M.      *Debtor's Directors, Officers, and Managers.*

On the Effective Date, all officers, directors, and managers of the Debtor shall be deemed to have resigned and shall be discharged from any further duties and responsibilities in such capacity.  On and after the Effective Date, the Liquidation Trustee shall serve as the sole officer, sole director, or sole manager of the Debtor, but he or she shall retain and enforce Retained Causes of Action as the representative of the Estate in his or her capacity as the Liquidation Trustee under the Plan pursuant to section 1123(b) of the Bankruptcy Code and not as an officer, director, or manager of the Debtor.  Any and all operating agreements, certificates of organization, and related corporate documents are deemed amended by the Plan to permit and authorize such sole appointment.

      N.      *Debtor's Existence.*

From and after the Effective Date, the Debtor shall continue in existence for the purpose of winding up their affairs as expeditiously as practicable.  Upon the Effective Date, all transactions and applicable matters provided under the Plan shall be deemed to be authorized by the Debtor without any requirement of further action by any Debtor.  On and after the Effective Date, the Debtor's remaining assets and affairs shall be administered and managed by the Liquidation Trustee in accordance with the Plan.

The Liquidation Trustee shall have the authority to take all necessary action to dissolve the Debtor in conjunction with issuance of entry of a Final Decree closing the chapter 11 case or thereafter.  Further, upon the aforementioned certification and entry of Final Decree, the Liquidation Trustee shall be authorized, in his or her sole discretion, to discard or destroy any and all of the Debtor's books and records but in doing so, the Liquidation Trustee must comply with Paragraph 41 of the Sale Order.  Upon the Effective Date, the Debtor shall turn over its books and records to the Liquidation Trustee.

      O.      *Dissolution of Creditors' Committee.*

On the Effective Date, (a) the Creditors' Committee shall dissolve and its members shall be released of their respective duties, responsibilities, and obligations in connection with the Chapter 11 Case or the Plan; and (b) the retention or employment of the Creditors' Committee's respective professionals and agents shall be terminated, other than with respect to the filing and prosecution of applicable fee applications.

P.     *Corporate Authority.*

The Confirmation Order shall constitute full and complete authority for the Debtor and Liquidation Trust to take all other actions that may be necessary, useful, or appropriate to consummate the Plan without any further judicial or corporate authority.

## ARTICLE V
## FUNDING AND DISBURSEMENTS

A.     *Distribution Agent.*

The Distribution Agent, on behalf of the Liquidation Trustee, shall make all distributions under the Plan on account of Allowed Claims against the Debtor pursuant to the terms of the Plan, Confirmation Order and the Liquidation Trust Agreement, *provided*, *however*, that all Allowed Professional Fee Claims shall be paid out of the Professional Fee Reserve.  All distributions to holders of Beneficial Trust Interests shall be made by the Distribution Agent. The Distribution Agent shall act at the direction of the Liquidation Trustee.

B.     *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. funds, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Liquidation Trustee shall determine in his or her sole discretion.

C.     *Distribution for Allowed Claims.*

Except as otherwise provided in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to holders of Allowed Claims shall be made on the Distribution Date.

No holder of a Disputed Claim shall be entitled to a distribution from the Liquidation Trustee, the Liquidation Trust, the Debtor, or the Estate with respect to such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim except as provided in the Plan. The Liquidation Trustee shall establish a reserve in Cash in the full amount of any distributions that would otherwise be payable upon any Disputed Claims if they were Allowed Claims until such time as such Disputed Claims are determined by Final Order to be Allowed or not Allowed.

D.     *Interest and Charges.*

No interest shall accrue or be paid on Allowed Claims.

E.     *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Liquidation Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting

-29-

requirements.  Notwithstanding any provision in the Plan to the contrary, the Liquidation Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including, without limitation, requiring that the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate.  The Liquidation Trust reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

The Liquidation Trust shall not be required to make distributions on any Allowed Claim if the holder thereof has not provided all documentation, that in the Liquidation Trustee's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim.  To the extent such documentation is not provided within sixty (60) days of the respective Distribution Date, the distribution on such Allowed Claim shall be deemed Unclaimed Property.

F.      *Fractional Dollars: De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Liquidation Trust shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar.  In addition, the Liquidation Trustee shall not be required to make any distribution in an amount less than $50.00.  To the extent that such a distribution shall be called for as part of any interim distribution, the Liquidation Trust shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the holder of an Allowed Claim is entitled to a distribution of $50.00 or more, make such distribution at such time.  The Liquidation Trust shall not be required to make any Final Distribution of less than $50.00 and all monies otherwise payable in such amount shall be paid to the other holders of Allowed Claims, in accordance with the terms of the Plan, the Confirmation Order and the Liquidation Trust Agreement.

G.      *Delivery of Distributions to Holders of Allowed Claims.*

Distributions to holders of Allowed Claims shall be made at the address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims filed pursuant to Bankruptcy Rule 3001 or at the last known address of such holders if the Liquidation Trustee has been notified in writing of a change of address.  If the distribution to any holder of an Allowed Claim is returned to the Liquidation Trustee as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Section V.H of the Plan.

H.      *Unclaimed Distributions.*

If any distribution to holders of an Allowed Claim or Beneficial Trust Interest is unclaimed or returned as undeliverable, such Unclaimed Property shall be held by the Liquidation Trustee in the Unclaimed Property Reserve for a period of sixty (60) days.  Once the

-30-

distribution to holders of Allowed Claims or Beneficial Trust Interests becomes Unclaimed Property, the Liquidation Trustee shall, subject to the limitations set forth herein, (i) hold such Unclaimed Property in the Unclaimed Property Reserve solely for the benefit of such holder or holders who have failed to claim such Unclaimed Property, and (ii) release the Unclaimed Property from the Unclaimed Property Reserve and deliver to the holder entitled thereto upon presentation of proper proof by such holder of its entitlement thereto.  After the expiration of sixty (60) days, the holders of Allowed Claims or Beneficial Trust Interests entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan, and such Allowed Claims shall be deemed disallowed and expunged in their entirety and the funds shall become Liquidation Trust Assets and redistributed to the other holders of Allowed Claims in accordance with the terms of this Plan, Confirmation Order and Liquidation Trust Agreement. Such funds shall not be subject to the escheat laws of any state.

If there is any residual Unclaimed Property at the time of dissolution of the Liquidation Trust, such residual Unclaimed Property shall be available for a subsequent distribution on a pro rata basis to holders of Beneficial Trust Interests or donated to a charitable organization at the sole discretion of the Liquidation Trust.

Nothing contained in the Liquidation Trust Agreement, this Plan, or the Confirmation Order shall require the Debtor, the Liquidation Trustee, the Liquidation Trust, or the Distribution Agent to attempt to locate any holder of an Allowed Claim or Beneficial Trust Interest.

I.      *No Penalty Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

J.      *Setoffs and Recoupment.*

The Liquidation Trust may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidation Trust of any such Claim it may have against the holder of such Claim.

K.      *Distributions by Liquidation Trust.*

The Liquidation Trust shall not be obligated to make a distribution on account of the Beneficial Interests that would impair the ability of the Liquidation Trust to pay the expenses incurred by the Liquidation Trust.

L.      *Claims Paid or Payable by Third Parties.*

1.      <u>Claims Paid by Third Parties</u>. The Liquidation Trustee shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and

without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Liquidation Trust.  To the extent a holder of such Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or the Liquidation Trust on account of such Claim, such holder shall repay, return, or deliver any distribution to the Liquidation Trust, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The Liquidation Trust and the Debtor's Estate reserve all of their rights, remedies, claims, and actions against any such holders who fail to repay or return any such distribution.

   2. <u>Claims Payable by Third Parties</u>. Distributions to each holder of an Insured Claim (including Environmental Claims) shall be made on account of an Allowed Claim that is payable pursuant the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's Insurers agrees to satisfy in full or in part a Claim (including Environmental Claims), then immediately upon such Insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

   3. <u>Applicability of Insurance Policies</u>. Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.

**ARTICLE VI**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

   A. *Rejection of Executory Contracts and Unexpired Leases.*

   On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtor; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) has been assumed and assigned to the Buyer.

   Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

   B. *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

   Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after the earlier of (a) service of Notice of the Effective Date, or (b) service of notice of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease on the counterparty thereto.  The Notice of the Effective Date shall indicate that all Executory Contracts and Unexpired Leases

-32-

that do not fall into one of the four clauses set forth in Article VI.A hereof are deemed rejected as of the Effective Date.  The Notice of Effective Date also shall set forth the deadline for filing Proofs of Claim with respect to the same.  Absent order of the Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan.  Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 6 of the Plan, which information shall be included in the Notice of the Effective Date.

C.    *Insurance Policies.*

1.    <u>No Modification of Insurance Policies, or Insurers' Rights or Obligations</u>. Notwithstanding anything to the contrary in the Confirmation Order, the Plan or any Plan Supplement (collectively, the "**Plan Documents**") (including any provision that purports to be pre-emptory or supervening), nothing in any Plan Document modifies any of the terms or conditions of any Insurance Policy, and the Plan Documents shall not impair or diminish, or operate or have effect to impair or diminish, any Insurer's, Debtor's and the Debtor's successors, including the Liquidation Trust's, legal, equitable, or contractual rights or obligations relating to the Insurance Policies or any Claims or claims relating thereto.  The rights and obligations of Insurers shall be determined under the respective Insurance Policies and any applicable settlement by an Insurer and under applicable state and bankruptcy law.  The rights, duties and obligations, if any, of the Insurers under each Insurer's Insurance Policy shall not be impaired, altered, reduced, expanded, or diminished by the exonerations, exculpations, and releases and injunctions contained in the Plan, including Article VII hereof.

2.    <u>No Impairment of Defenses as to Claims or Coverage</u>. Nothing in the Plan Documents shall diminish or impair, or be deemed to diminish or impair, the rights of any Insurer, including the right to assert any claim or defense, to the extent applicable, including, but not limited to: any right of recoupment or any claim or Claim for contribution, indemnity, subrogation, setoff or counterclaim against the Debtor, the Liquidation Trust, other Insurers, the holder of any Claim or any other Person or Entity in connection with any Insurance Policy, subject to the rights and defenses of the Debtor and the Debtor's successors, including the Liquidation Trust.  Without limiting the generality of the foregoing, nothing in the Plan Documents shall, under any theory, (1) constitute a trial, an adjudication on the merits, or evidence establishing the liability of any Insurer in any litigation for any Claim or claim under any Insurance Policy, (2) constitute, or be deemed to constitute, a determination of the reasonableness of the amount of any Claim or claim, either individually or in the aggregate with other Claims or claims, (3) be deemed to grant to any Person or Entity any right to sue any Insurer directly, in connection with any Claim or claim, or any Insurance Policy, (4) constitute a finding or determination that the Debtor or any other Person or Entity is a named insured, or insured in any other Insurance Policy, or (5) constitute a finding or determination that any Insurer has any defense or indemnity obligation with respect to any Claim.

No provision of any Plan Document shall diminish or impair the rights of any Insurer under its Insurance Policy or applicable law to assert any defense as to any claim for coverage. Nothing in any Plan Document shall be deemed to waive any Claims, claims, defenses,

-33-

exclusions, rights or causes of action that any Insurer may have under the provisions, terms, conditions, defenses and/or exclusions contained in the Insurance Policies, without prejudice to any rights and defenses that the Debtor, and its successors, including the Liquidation Trust, can assert.

        3.      <u>Assignment to Liquidation Trust</u>.  Nothing in the Plan Documents, including the Liquidation Trust Agreement, shall impair or prevent the Debtor from transferring Insurance Policies to the Liquidation Trust in accordance with the Plan Documents and such transfer shall be explicitly authorized in the Confirmation Order and the Insurance Policies shall vest unaltered in their entirety in the Liquidation Trust, provided that the Confirmation Order provides that the Liquidation Trust shall be bound by this Insurance Neutrality section and all terms and conditions of the Insurance Policies and Debtor's obligations thereunder and under applicable state and bankruptcy law, and that such transfer is subject to all of Insurers', Debtor's and Debtor's successors, including the Liquidation Trust's rights and defenses under the Insurance Policies and under applicable state and bankruptcy law, notwithstanding anything to the contrary in any Plan Document, including the Liquidation Trust Agreement. Notwithstanding anything to the contrary herein, nothing in this Section VI.C.3 shall be construed as or be deemed to allow or disallow a claim in favor of any Insurer against the Debtor's estate or to determine whether any Entity is a successor to the Debtor.

## ARTICLE VII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

        A.     *Settlement, Compromise, and Release of Claims and Interests.*

        Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, or in any contract, instrument, or other agreement or document created pursuant to or in connection with the Plan, the distributions, rights, and treatment that are provided in the Plan shall, except as expressly provided in the Plan, be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Subject to the occurrence of the Effective Date, the Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests against and in the Debtor.

B.       *Liabilities to, and Rights of, Governmental Units.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (1) any liability to any Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising after the Effective Date; (3) any police power or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of any property after the Effective Date; (4) the rights of any Governmental Unit with respect to the transfer or assignment of any license, permit, registration, authorization, or approval, in each case, to the extent provided under applicable law; and/or (5) any liability to a Governmental Unit on the part of any Entity.

C.       *Exculpation.*

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; *provided*, *however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

D.       *Release*

1.       **Releases by the Debtor**

**Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, and except as otherwise specifically provided in the Plan, including, without limitation the Retained Causes of Action, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is expressly, unconditionally, generally, and individually and collectively released, acquitted, and discharged by the Debtor and its Estate from any and all actions, claims, obligations, rights, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, or any other claim against any Released Party, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase or sale of, or any other transaction relating to any Security of the Debtor, the Debtor, the Debtor's restructuring efforts, the Chapter 11 Case, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation and consummation of any sale of the Debtor's assets during the Chapter 11 Case, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal**

-35-

opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

2.      **Consensual Third-Party Releases**

Unless a holder of a Claim in an Impaired Class that is entitled to vote (i) votes to reject the Plan or (ii) opts out of the Consensual Third-Party Releases, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of an Allowed Claim, shall be deemed to forever release, waive, and discharge the Released Parties of all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, whether direct or derivative, known, or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, including, without limitation, any of the foregoing based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase, sale, or any other transaction relating to any Security of the Debtor, the Debtor, the Debtor's restructuring efforts, the Chapter 11 Case, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation and consummation of any sale of the Debtor's assets during the Chapter 11 Case, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

E.      *Injunction.*

Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, hold or may hold any Interest in the Debtor or a Claim, Cause of Action, or other debt or liability against the Debtor or against any Released Party that have been released and/or exculpated under the this Plan (the "Released Claims and Interests") are permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets, or the Released Parties or their respective predecessors, successors and assigns, subsidiaries, Affiliates, current (as of the Effective

Date) directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their respective capacities as such or any property of the same, on account of such Released Claims and Interests: (i)  commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any Released Claims or Interests; and (c) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; *provided*, *however*, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

F.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

1.      the Bankruptcy Court shall have entered the Confirmation Order; *provided* that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

2.      all documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

3.      the Liquidation Trust Claims Reserve and the Professional Fee Claim Reserve shall have been funded consistent with the terms of the Plan;

4.      the Liquidation Trust shall have been established in accordance with the Liquidation Trust Agreement and shall have been funded with the Liquidation Trust Assets; and

5.      all actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

B.      *Waiver of Conditions.*

The conditions to Consummation set forth in Article VIII of the Plan may be waived only by prior written consent of the Plan Proponents, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.  Upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article VIII of the Plan, the Plan Proponents shall immediately declare the Effective Date and file the Notice of Effective Date.

C.      *Effect of Failure of Conditions.*

Unless expressly set forth herein, if the Consummation of the Plan does not occur on or before the date that is one hundred and eighty (180) days following the Confirmation Date, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtor, any holders or any other Entity; (2) prejudice in any manner the rights of the Plan Proponents, any holders or any other Entity or (3) constitute an admission, acknowledgment, offer, or undertaking by the Plan Proponents, any holder of any Claim or any other Entity in any respect.

## ARTICLE IX
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Plan Proponents reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Plan Proponents expressly reserve their rights, to revoke or withdraw, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

61003/0001-21079837v11

C.      *Revocation or Withdrawal of Plan.*

The Plan Proponents reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file a subsequent plan.  If the Plan Proponents revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Plan Proponents, any holder of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Plan Proponents, any holder or any other Entity.

## ARTICLE X
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case pursuant to sections 105(a) and 1142 of the Bankruptcy Code; *provided, however*, that nothing herein shall grant the Bankruptcy Court any jurisdiction which it lacked prior to the Effective Date.  The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Plan Proponents and any and all present and former holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor each of respective successors and assigns of the foregoing persons and Entities.

B.      *Additional Documents.*

On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Plan Proponents and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Plan Proponents, with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any of their respective rights with respect to the holders of Claims and Interests or each other before the Effective Date.

D.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, if any, of such Entity.

E.      *Notices.*

To be effective, all notices, requests, and demands to or upon the Plan Proponents shall be in writing.  Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

1.      The Debtor:

Congoleum Corporation
3500 Quakerbridge Road
Mercerville, New Jersey 08619

with a mandated copy (which shall not constitute notice) to:

Counsel to Debtor and Debtor in Possession
Cole Schotz P.C.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Attention: Warren A. Usatine and Felice R. Yudkin
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
Email:  wusatine@coleschotz.com and
        fyudkin@coleschotz.com

2.      The Committee:

Nathan Kilbert,
of the United Steel, Paper and Forestry,
 Rubber, Manufacturing, Energy, Allied Industrial and

-40-

Service Workers Union, AFL-CIO, solely in his capacity as
Chairperson of the Committee and not in his personal
capacity
C/O Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068
Attention: Jeffrey D. Prol, Esq.
Email: jprol@lowenstein.com

with a mandated copy (which shall not constitute notice) to:

Counsel to the Committee
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068
Attention: Jeffrey D. Prol, Esq.
Email: jprol@lowenstein.com

3.      The Liquidating Trustee:

Dundon Advisers, LLC
Attention: Matthew J. Dundon
440 Mamaronek Avenue
Harrison, New York 10528
Email: md@dundon.com

with a mandated copy (which shall not constitute notice) to:

Counsel to the Liquidating Trustee
Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, New Jersey 07068
Attention: Jeffrey D. Prol, Esq.
Email: jprol@lowenstein.com

F.      *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous
negotiations, promises, covenants, agreements, understandings, and representations on such
subjects, all of which have become merged and integrated into the Plan.

G.      *Exhibits.*

All exhibits and documents included in the Plan are incorporated into and are a part of the
Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such

61003/0001-21079837v11

exhibits and documents shall be available upon written request to the Debtor's counsel at the address above, from the Notice, Claims and Balloting Agent's website at https://cases.primeclerk.com/congoleum, or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.njb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

        H.      *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holdings, alterations or interpretations, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holdings, alterations or interpretations.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) non-severable and mutually dependent.

        I.      *Closing of Chapter 11 Case.*

The Liquidation Trust shall promptly, after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and Local Rule 3022-1 and any applicable order necessary to close the Chapter 11 Case that have been fully administered.

        J.      *No Admission Against Interest.*

Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside the Bankruptcy Court involving the Debtor.

        K.      *No Waiver.*

Except as otherwise specifically provided herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than the Debtor.

        L.      *Headings.*

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor any matter affects the terms, provisions or interpretation of the Plan.

61003/0001-21079837v11

M.    *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of any other document or any exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "**Plan Related Documents**") conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided* that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern.

Dated: November 10, 2020

Respectfully Submitted,

CONGOLEUM CORPORATION
By:
*/s/ Christopher O'Connor*
Christopher O'Connor
Chief Executive Officer


OFFICIAL COMMITTEE OF UNSECURED
CREDITORS
BY:

*/s/ Nathan Kilbert*

Nathan Kilbert, of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, solely in his capacity as the Chairperson of the Committee and not in his personal capacity