# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is entered into as of the date of the last signature set forth on the signature page below among Bath Iron Works Corporation ("**BIW**") and Congoleum Corporation ("**Congoleum**"). BIW and Congoleum are referred to in this Agreement collectively as the "**Parties**" and each is a "**Party**" to this Agreement.

## RECITALS

A.    **WHEREAS**, on July 13, 2020, Congoleum filed a petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Case**") in the United States Bankruptcy Court for the District of New Jersey (the "**Court**");

B.    **WHEREAS**, on July 28, 2020, the Office of the United States Trustee for the District of New Jersey appointed the Official Committee of Unsecured Creditors;

C.    **WHEREAS**, on August 6, 2020, BIW filed an adversary proceeding docketed as Case No. 20-01439 (MBK) against Congoleum in the Court seeking certain declarations and other relief (the "**Adversary Proceeding**") and Congoleum has moved to withdraw the reference of the Adversary Proceeding ("**Withdrawal Motion**") and to dismiss the Adversary Proceeding ("**Dismissal Motion**");

D.    **WHEREAS**, on September 23, 2020, BIW filed a proof of claim in the Congoleum Bankruptcy Case which claim has been docketed as Claim No. 22 (the "**BIW Proof of Claim**");

E.    **WHEREAS**, Congoleum and BIW are both defendants in certain litigation pending the in the United States District Court of the District of New Jersey and captioned as (i) *DVL, Inc. et al. v. Congoleum Corp. et al.*, and docketed as Case No. 2:17-cv-04261-KM-JBC (the "**DVL Lawsuit**"), and (ii) Occidental Chemical Corp. v. 21st Century Fox America, et al., and docketed as Case No. 2:18-cv-11273-MCA-JAD (the "**Occidental Lawsuit**");

F.    **WHEREAS**, on October 13, 2020, in consideration of the agreements set forth herein, BIW withdrew its *Objection of Bath Iron Works Corporation To Debtor's Proposed Sale of Substantially All Its Assets To Congoleum Acquisition LLC;*

G.    **WHEREAS**, in consideration of the agreements set forth herein, Congoleum has withdrawn without prejudice its Withdrawal Motion and agrees it will not refile the Withdrawal Motion in the Adversary Proceeding unless the Court fails to approve this Agreement; and

H.    **WHEREAS**, the Parties desire to resolve all disputes between them without further expense and litigation in accordance with the terms and conditions set forth in this Agreement recognizing that certain agreements contained herein may have preclusive effect in the DVL Lawsuit and Occidental Lawsuit.

**NOW, THEREFORE**, in consideration of the mutual covenants of the Parties to be faithfully performed, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, BIW and Congoleum intending to be legally bound, agree as follows:

1.      **DEFINITIONS**

In addition to the terms defined above and elsewhere in this Agreement, as used in this Agreement:

    1.1      **"Approval Order"** means the Order to be entered by the Court approving this Agreement containing the findings of fact and conclusions of law set forth in <u>Exhibit 1</u> to this Agreement, to be entered by the Court in the Congoleum Bankruptcy Case.

    1.2      **"Resilient Flooring Business"** means the business involved in the manufacture, sale, distribution, installation, formulation, marketing, transport, handling or any other activity involving in any way flooring, vinyl sheeting flooring or floor tile products of any kind (including but not limited to, battleship linoleum, resilient sheet vinyl flooring and tile flooring) as such activities may have been engaged in by Congoleum or any of its predecessor entities, including, but not limited to, Congoleum-Nairn, Inc., Congoleum Industries Inc., Congoleum Sales, Inc., and Congoleum Fiscal, Inc.; provided, however, that the Resilient Flooring Business does not include the shipbuilding operations or any other operations of BIW or of Bath Industries, Inc. (it being agreed that such operations exclude the products of the Resilient Flooring Business). For clarity, the Parties agree that the above defined business operated continuously in Kearny, New Jersey, from at least 1886 to 1987. Accordingly, the Resilient Flooring Business, as defined herein, encompasses all of Congoleum's historic flooring operations that occurred in Kearny, New Jersey, regardless of which corporate "Congoleum" entity conducted the operations.

    1.3      **"Effective Date"** means the date on which a plan of reorganization for Congoleum goes into effect pursuant to the Final Confirmation Order.

    1.4      **"Final Confirmation Order"** means the order to be entered by the Court confirming a plan of reorganization for Congoleum and containing the findings of fact and conclusions of law set forth in the Approval Order, which order is final and no longer subject to appeal or certiorari proceedings.

    1.5      **"Settlement Motion"** means the motion to be filed by Congoleum in the Congoleum Bankruptcy Case seeking approval of this Agreement and entry of the Approval Order, the form of which shall be reasonably acceptable to BIW.

    1.6      **"Settlement Payment"** means One Million Dollars and No Cents ($1,000,000.00).

## 2.     PAYMENT AND OTHER TERMS.

2.1     **Approval of Agreement.** Within two business days following the date of this Agreement, Congoleum will file the Settlement Motion. Congoleum agrees to serve notice of the hearing on the Motion in accordance with Rule 2002 of the Federal Rules of Bankruptcy Procedure, including to all scheduled creditors and all creditors who have filed claims against Congoleum, all counsel of record in the Bankruptcy Case, all parties in any lawsuits pending against Congoleum (including the DVL Lawsuit and Occidental Lawsuit), all shareholders, the United States Environmental Protection Agency  and New Jersey Department of Environmental Protection and all other parties in interest. In addition, Congoleum shall publish notice of the hearing to approve this Agreement in the New York Times at least seven days before the scheduled hearing date. Congoleum agrees that it will use reasonable good faith efforts to obtain approval of the Settlement Motion, including in connection with any appeals. At the hearing on the Settlement Motion, BIW will have the burden of proof with regard to the findings and conclusions set forth in the addendum to the Approval Order.  If, after considering BIW's evidence and the evidence of any party objecting to the Settlement Motion, the Court finds the facts as presented as by BIW and determines that it can enter the Approval Order, this Agreement will become effective. If the Court determines that it cannot make the findings required by this Agreement as contained in the Approval Order, this Agreement will be null and void.

2.2     **Congoleum's Covenant.** Congoleum, on behalf of itself and its past, present, and future representatives, fiduciaries, officers, directors, employees, attorneys, agents, owners, shareholders as well as the predecessors and successors to each of the foregoing, including the Liquidation Trust and Trustee (the "**Congoleum Parties**") covenants and agrees that the Congoleum Parties will not allege or assert in any already-pending or future proceeding (in whatever form, including but not limited to administrative, civil, arbitral proceedings), including in the DVL Lawsuit and the Occidental Lawsuit, that BIW is a successor to the Resilient Flooring Business or responsible for liabilities arising out of the Resilient Flooring Business or its operations.

2.3     **Withdrawal of Dismissal Motion And Closing of Adversary Proceeding.** Two business days following the entry of the Approval Order, Congoleum shall withdraw its Dismissal Motion and BIW shall submit an order dismissing the Adversary Proceeding with prejudice.  Two business days following the entry of the Approval Order, Congoleum and BIW shall dismiss with prejudice the claims asserted against each other in the DVL Lawsuit and Occidental Lawsuit.

2.4     **Settlement Payment and Withdrawal Of Proof of Claim.** Provided the Court has entered the Approval Order and the Final Confirmation Order, on the Effective Date, BIW will transfer the Settlement Payment to the entity designated in the joint plan of orderly liquidation (the "**Plan**") to receive it and will withdraw with prejudice the BIW Proof of Claim. In the event that the order confirming the

Plan is not a Final Confirmation Order on the Effective Date, BIW will transfer the Settlement Payment to the entity designated in the Plan to receive it and will withdraw with prejudice the BIW Proof of Claim two business days following the date on which such confirmation order becomes the Final Confirmation Order.

3.    **RELEASES**

3.1    **Congoleum's Release of BIW.** Effective upon the date the Settlement Payment is paid, the Congoleum Parties hereby fully and forever RELEASE, ACQUIT, and DISCHARGE BIW and its past, present, and future representatives, fiduciaries, employees, attorneys, agents, partners, administrators, and assigns, as well as the predecessors and successors to each of the foregoing, both individually and collectively (the "**BIW Parties**"), from and for any and all rights, claims, controversies, damages, expenses, costs, obligations, causes of action, counterclaims, cross-claims, rights of set-off and recoupment, suits, debts, sums of money, accounts, torts, breaches of duty, covenants, contracts, agreements, promises, judgments, executions, demands and liabilities of any nature whatsoever, in law or otherwise, whether known or unknown, that have ever existed, that now exist, or that may exist in the future, from the beginning of the world until the end of time related in any way to the operation of the Resilient Flooring Business through the date of the release. Notwithstanding any other provision of this Agreement, including the release in this section 3.1, the Congoleum Parties are not releasing any claims they have for insurance coverage against any insurance companies.

3.2    **BIW's Release of Congoleum.** Effective upon the date the Settlement Payment is paid, the BIW Parties hereby fully and forever RELEASE, ACQUIT, and DISCHARGE the Congoleum Parties from and for any and all rights, claims, controversies, damages, expenses, costs, obligations, causes of action, counterclaims, cross-claims, rights of set-off and recoupment, suits, debts, sums of money, accounts, torts, breaches of duty, covenants, contracts, agreements, promises, judgments, executions, demands and liabilities of any nature whatsoever, in law or otherwise, whether known or unknown, that have ever existed, that now exist, or that may exist in the future, from the beginning of the world until the end of time related in any way to the operation of the Resilient Flooring Business through the date of the release. Notwithstanding any other provision of this Agreement, including the release in this section 3.2, the BIW Parties are not releasing any claims they have for insurance coverage against any insurance companies.

4.    **REPRESENTATIONS AND WARRANTIES**

4.1    **Representations, Warranties and Covenants of Congoleum.** Congoleum represents and warrants that it (i) holds and controls and has not assigned or transferred to any other entity or person any of the rights and claims which are being released, altered or otherwise affected by this Agreement; and (ii) has all requisite power and authority to execute, deliver and perform this Agreement and

the transactions contemplated herein and the execution, delivery and performance by it of this Agreement, subject to the approval of the Court.

**4.2** **Representations, Warranties, and Covenants of BIW.**  BIW represents and warrants that it (i) holds and controls and has not assigned or transferred to any other entity or person any of the rights and claims which are being released, altered or otherwise affected by this Agreement; and (ii) has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement.

## 5.   COURT APPROVAL

**5.1** **Approval.** This Agreement is subject to and conditioned upon the entry of the Approval Order by the Court.

**5.2** **Best Efforts.** BIW and Congoleum agree to use reasonable good faith efforts to obtain the entry of the Approval Order and Confirmation Order.  Congoleum and BIW further agree not to cause any other person or entity to object to or otherwise oppose the entry of the Approval Order or Confirmation Order.

## 6.   MISCELLANEOUS

**6.1** **Entire Agreement, Amendments, and Waivers.** This Agreement including its Exhibit constitutes and contains the entire agreement among the Parties and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the settlements contained herein. This Agreement may be amended or modified or one or more provisions hereof waived only by a written instrument signed by the Parties. No delay or omission by any Party in exercising any right or power arising from any default by the other Party shall be construed as a waiver of such default, nor shall any single or partial exercise thereof preclude any further exercise thereof or the exercise of any other right or power arising from any default by a Party. No waiver of any breach of any covenant or other condition shall be construed to be a waiver of or consent to any previous or subsequent breach of the same or of any other covenant or condition.

**6.2** **Captions.** The captions to this Agreement are for convenience only and are to be of no force or effect in construing and interpreting the provisions of this Agreement.

**6.3** **Jurisdiction, Governing Law.** This Agreement is made and entered into in the State of New Jersey and shall, in all respects, be interpreted, enforced and governed by the laws of the State of New Jersey, without regard to choice of law principles. The Parties further agree that any dispute arising out of this Agreement shall be adjudicated in the federal courts of New Jersey.

**6.4**    **Notices.** Any notice required or permitted under this Agreement shall be given in writing and shall be sent to the following Parties via electronic mail with a copy sent by overnight mail or hand delivery:

To BIW:

> Michael A. Doornweerd
> Catherine Steege
> Wade A. Thomson
> Jenner & Block LLP
> 353 N. Clark Street
> Chicago, IL 60654
> mdoornweerd@jenner.com
> csteege@jenner.com
> wthomson@jenner.com

> and

> Daniel Stolz
> Wasserman, Jurista & Stolz, P.C.
> 110 Allen Road, Suite 304
> Basking Ridge, New Jersey 07920
> dstolz@wjslaw.com

To Congoleum:

> Warren A. Usatine
> Felice R. Yudkin
> Cole Schotz P.C.
> 25 Main Street
> Hackensack, NJ 07602-0800
> wusatine@coleschotz.com
> fyudkin@coleschotz.com

To the UCC:

> Jeffrey Prol, Esq.
> Lowenstein Sandler LLP
> One Lowenstein Drive
> Roseland, New Jersey 07068
> jprol@lowenstein.com

**6.5**    **No Party Deemed Drafter.** Except with the exception of Exhibit I which was drafted exclusively by BIW, the Parties shall jointly be deemed to be the drafters of this Agreement and the rule that any ambiguity in a contract shall be construed against the drafter of the contract shall not apply to this Agreement.

6.6     **Voluntary Settlement.** The Parties acknowledge and agree that each of them is entering into this Agreement freely and voluntarily and not acting under any misapprehension as to the effect hereof, and has acted and does hereby act freely and voluntarily and not under any coercion or duress.

6.7     **No Mistake of Fact or Law.** In entering into this Agreement, each Party recognizes that no facts or representations are ever absolutely certain. Accordingly, each Party assumes the risk of any mistake, and if it should subsequently discover that any understanding of the facts or of the law was incorrect, each Party understands and expressly agrees that it shall not be entitled to set aside this Agreement by reason thereof, regardless of any mistake of fact or law.

6.8     **Counterparts.** This Agreement may be executed in multiple counterparts and by facsimile and/or by e-mail, and all executed counterparts together shall constitute the original instrument. Faxed or emailed signatures shall be binding.

6.9     **Limitations.** Notwithstanding the Releases referred to in Section 3 herein, nothing in this Agreement, including but not limited to the Releases, shall release any Party from its obligations under this Settlement Agreement or prevent any Party from taking action to enforce the terms of this Settlement Agreement.

*[Remainder of Page Left Intentionally Blank]*

IN WITNESS WHEREOF the Parties have caused this Agreement to be executed on the
respective dates hereinafter set forth.

**BATH IRON WORKS CORPORATION**    **CONGOLEUM CORPORATION**

By: _____    By: _____

   Its:  Vice President General Counsel       Its: _____

Date: _11/18/2020_____    Date: _____

IN WITNESS WHEREOF the Parties have caused this Agreement to be executed on the respective dates hereinafter set forth.

**BATH IRON WORKS CORPORATION**     **CONGOLEUM CORPORATION**

By:_____     By:_____

    Its:_____        Its:___President & CEO_____

Date: _____     Date: ___11/17/2020_____

# EXHIBIT 1

# EXHIBIT 1

Set forth below are each of the findings that are a condition to the Settlement Agreement:

## I.  Congoleum's First Bankruptcy Filing.

A.  On December 31, 2003, Congoleum along with two affiliates, Congoleum Sales, Inc. and Congoleum Fiscal, Inc., filed petitions for relief under chapter 11 of title 11 of the United State Code in the United States Bankruptcy Court for the District of New Jersey. The cases were jointly administered and captioned *In re Congoleum Corporation*, 03-51524 (KCF) (the "**First Bankruptcy Case**").[1]

B.  To fund its plan of reorganization in the First Bankruptcy Case, Congoleum entered into settlement agreements with a number of its insurance carriers pursuant to which the carriers "bought back" their policies as to liabilities for the Congoleum flooring business in exchange for cash contributions into a trust established under Congoleum's plan. [Dist. Dkt. No. 625, at ¶¶69-70, 72 (Feist Declaration).] The policy "buybacks" completely released coverage for any and all claims against the policies as to liabilities for the Congoleum flooring business, including environmental claims. [*Id*. at ¶72.]

## II.  The Century Settlement.

C.  One of those policy buyback settlements was with Century Indemnity Company, individually and as successor to CCI Insurance Company, as successor to Insurance Company of North America ("**Century**"). [First Bankr. Dkt. No. 4439, the (the "**Century Motion**"); First Bankr. Dkt. No. 4439-2 (the "**Century Settlement Agreement**").] Century had issued excess

---

[1] References to materials from the Bankruptcy Court Docket in the First Bankruptcy Case (03-51524) are to "**First Bankr. Dkt.**" and references to materials from the District Court Docket in the First Bankruptcy Case (09-04371) are to "**Dist. Dkt.**" References to materials from the Bankruptcy Court Docket in the Second Bankruptcy Case (20-18488) are to "**Second Bankr. Dkt.**"

general liability insurance policies to Congoleum and several additional named insured parties, including BIW, for bodily injury or property damage liability, including as to asbestos and environmental claims, and including those claims stemming from the operation of Congoleum's Kearny, New Jersey property. [*Id*.; First Bankr. Dkt. No. 4446, at ¶10.]

D.     On August 21, 2006, Congoleum filed a motion seeking an order authorizing and approving a settlement and buyback agreement and release with Century Indemnity Company, individually and as successor to CCI Insurance Company, as successor to Insurance Company of North America. [First Bankr. Dkt. No. 4439.]

E.     Under the Century Settlement Agreement, Century agreed to pay $16,950,000 to a "Plan Trust" to be established under a confirmed plan of reorganization for Congoleum. [First Bankr. Dkt. No. 4439, ¶15.] Because BIW (and other entities) were also named insured under the Century policies, the Century Settlement Agreement required Congoleum to obtain two findings in any order confirming a plan of reorganization for Congoleum: (1) that Congoleum had full authority to negotiate and sell the Century policies as to Congoleum flooring business liabilities; and (2) "Bath Iron Works Corp. [and certain other entities] have no responsibility for any of the liabilities of the Congoleum Flooring Business." [First Bankr. Dkt. No. 4439, at Ex. A, §II ¶D, §I ¶J(iv), XI H, I.]

F.     Century also required that its buyback cover non-asbestos environmental claims. Century submitted the Declaration of Maria Matteo Thompson in support of the Century Motion. Ms. Thompson, who participated in the negotiation of the Century Settlement Agreement on behalf of Century, testified that that "[a]s a condition of the Settlement and Buyback Agreement, Century will pay the Settlement and Buyback Amount only if it can have certainty that the Century Entities will be released fully from, and have injunctive protection against, all Claims, *including non–*

*asbestos claims . . . .*" [First Bankr. Dkt. No. 4446, at ¶7 (Emphasis in original).] Congoleum also

represented in the Century Motion that Century had conditioned its agreement to the Century

Settlement Agreement upon being "released fully from, and hav[ing] injunctive protection against

all Claims, *including non-asbestos claims*, that may be based on, or derive from, the Subject

Policies." [First Bankr. Dkt. 4439 at ¶52 (original emphasis).] When Congoleum presented it plan

of reorganization for approval, its Chief Financial Officer Howard N. Feist III testified that

insurance carriers, like Century, which provided coverage for non-asbestos claims along with

coverage for asbestos claims insisted that their settlement buy-backs include a release of all

asbestos and non-asbestos claims. [Dist. Dkt. No. 625, at ¶72.]

      G.      Congoleum agreed with Century to seek a finding in the First Bankruptcy Case

confirming that BIW had no responsibility for any liabilities of its resilient flooring business in

Kearny, New Jersey (the "**Congoleum Flooring Business**"), including at the site of Congoleum's

former operations in Kearny, New Jersey (the "**Kearny Site**"). [First Bankr. Dkt. No. 4439, at Ex.

A at ¶¶I.J, I.L, II.D, XI I.] Congoleum also represented and warranted in the Century Settlement

Agreement that "Bath Iron Works Corp. ha[s] no responsibility for any of the liabilities of the

Congoleum Flooring Business." [First Bankr. Dkt. No. 4439, at Ex. A, at XI I.] In support of its

representation in the Century Settlement Agreement and to support the requested finding,

Congoleum offered into evidence the testimony of Mr. Feist, who testified under oath that BIW

had "no responsibility for any of the liabilities of the Congoleum Flooring Business" as defined in

the Century Settlement Agreement. [First Bankr. Dkt. No. 4439, at Ex. B, at ¶14(B).]

      H.      The Century Settlement Agreement defined the phrase "Congoleum Flooring

Business" to mean "the business involved in the manufacture, sale, distribution, installation,

formulation, marketing, transport, handling or any other activity involving in any way flooring,

vinyl sheeting flooring or floor tile products of any kind (including but not limited to, battleship linoleum, resilient sheet vinyl flooring and tile flooring) as such activities may have been engaged in by one or more of the Congoleum Entities; provided, however, that Congoleum Flooring Business does not include carpets within its definition or the definition of flooring and does not include the shipbuilding operations of Bath Iron Works Corp., or of Bath Industries, Inc., if any, (it being understood that such operations exclude the products of the Congoleum Flooring Business). Solely for informational purposes and to assist the parties, but not to restrict or limit the definition of the term 'Congoleum Flooring Business,' the Debtors represent that the above defined business was headquartered continuously in Kearny, New Jersey, from before 1965 to 1987 and none of the Congoleum Entities conducted a Congoleum Flooring Business from a headquarters other than in Kearny, New Jersey during this time." [First Bankruptcy Case, ECF 4439, at Ex. A, §I ¶L.]

I.    Congoleum represented to the bankruptcy court through Mr. Feist's testimony that "Congoleum is the successor in interest to the entity Congoleum-Nairn Inc. named in Policies XBC-1838 and XBC- 40971" as well as other entities named in other Century policies, and that "with respect the Congoleum Flooring Business, [Congoleum] is the sole successor in all respects with regard to coverage, and that [Congoleum] . . . owns the rights to coverage under the [Century Policies] identified on Exhibit C to the Settlement and Buyback Agreement as may ever have been held by such entities with and in all respects to the Congoleum Flooring Business." [First Bankr. Dkt. No. 4439, Ex. B, at ¶14(A).

J.    Mr. Feist also testified that "[t]he flooring operations of the Congoleum Entities [defined to include Congoleum-Nairn] to which they succeeded, including the manufacture, sale, distribution, installation, formulation, marketing, transport, handling or any other activity

involving in any flooring, vinyl sheeting flooring or floor tile products of any kind were headquartered in Kearney [sic], New Jersey, continuously from *before 1965 to 1987*." [First Bankr. Dkt. No. 4439, Ex. B, at ¶14(C) (emphasis added).]

K.    Congoleum published notice of the hearing on the motion to approve the Century Settlement Agreement in the national and international editions of *USA Today* on August 24, 2006 and August 28, 2006. [First Bankruptcy Case ECF 4521.] Congoleum provided broad mail/e-mail notice of the hearing on the motion to the Master Service List, which included counsel for Occidental Chemical Corp. [First Bankruptcy Case, ECF 1940, 4469, 4544.] When it approved the Century Settlement Agreement, the Bankruptcy Court found that adequate notice of the Motion and of the hearing on the Motion was given by mailing, or emailing in the case of the Master E-Mail service list, and by publication, and that "such publication notice, together with the notices described in the preceding paragraph, are adequate and reasonable under the circumstances, and no other or further notice is required or need be sent." [Bankr. Dkt. 4572, at 3.]

L.    Certain excess insurance carriers objected to the Century Motion, in part, based on the concern that an additional named insured, like BIW, could one day be faced with liability and demand coverage under the policies that Century sought to buy back in the Century Settlement Agreement. [First Bankr. Dkt. Nos. 4515 at ¶¶11-16; 4517 at ¶12; 4531 at ¶¶1-4; 4568 at 27:12-23; 30:1-31:21; 41:8-42:24; 45:13-22; 52:1-3.] At the September 11, 2006 hearing before the bankruptcy court, Congoleum's attorneys argued in response that Congoleum was the only successor to the liabilities related to Congoleum's Flooring Business, including non-asbestos claims such as environmental claims, stating:

> After a great deal of due diligence **there is no question in my client's mind that we are the successor, the company that is now called Congoleum is the successor to all of the flooring businesses that had been run by predecessors**. We've given that representation to Century in this agreement, and we've told other

people, anybody who could have been a predecessor, "If you think we're wrong come in here and object.

[...]

So Your Honor, what's being sought . . . is a sale of the, **of nonasbestos coverages, as well as asbestos coverages here for flooring business claims**.

[...]

It's very clear that insurance policies, **not just the asbestos parts of them, but all of the insurance policies** are property of the estate and as such can be sold if you comply with 363.

[First Bankr. Dkt. No. 4568 at 51:3-52:14 (emphasis added).]

M.     On September 20, 2006, the bankruptcy court entered an order approving the Century Settlement Agreement. [First Bankr. Dkt. No. 4572; *see also* First Bankr. Dkt. No. 4568, at 61:23-67:24.] The order approving the Century Settlement Agreement is a final order and no longer subject to appeal. [*See generally* First. Bankr. Dkt.] The question of BIW's responsibility for the liabilities of the Congoleum Flooring Business was actually litigated at the hearing to approve the Century Settlement Agreement and a ruling on this issue was necessary to the relief granted because the Century Settlement Agreement was conditioned upon a finding that BIW had no responsibility for any of the liabilities of the Congoleum Flooring Business.

**III.   The Confirmation Order.**

N.     On June 7, 2010, the United States District Court for the District of New Jersey entered an "*Order Confirming Fourth Amended Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of The Debtors, The Official Asbestos Claimants' Committee, The Official Committee Of Bondholders For Congoleum Corporation, Et Al., And The Futures Representative Dated As Of March 11, 2010 (As Modified)*" (the "**Confirmation Order**") in the First Bankruptcy Case. [Dist. Dkt. No. 664.]

O.      The District Court presiding over the First Bankruptcy Case found in paragraph 104 of the Confirmation Order that Bath Iron Works Corp. has "no responsibility for *any* of the liabilities of the Congoleum Flooring Business (as defined in the Century Settlement)." [Dist. Dkt. No. 664, at ¶104 (emphasis added).]

P.      The basis for the finding contained in paragraph 104 of the Confirmation Order was Mr. Feist's Declaration filed in support of the Century Settlement Agreement and the bankruptcy court's Order approving the Century Settlement Agreement. [First Bankr. Dkt. Nos. 4439, at Ex. B; 4572.] Mr. Feist also testified in 2019 as the corporate representative for Congoleum that the representations he made in his 2006 Feist Declaration are true and accurate.

Q.      The district court's finding of fact that BIW was not responsible for any the liabilities of the Congoleum Flooring Business (as defined in the Century Settlement Agreement) was necessary to confirm Congoleum's Fourth Amended Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of The Debtors, The Official Asbestos Claimants' Committee, The Official Committee Of Bondholders For Congoleum Corporation, Et Al., And The Futures Representative Dated As Of March 11, 2010 (the "**Plan**") because the Plan was dependent upon the Century Settlement Agreement which in turn was dependent upon this finding. [Dist. Dkt. No. 664, at Ex. A (Plan), at Art. X, 10.1(a)(xix), 10.1(b), 10.2.] Mr. Feist testified in a Declaration that he filed in support of the Plan that Congoleum's settlements with its insurers, including Century, were critical to the success of Congoleum's reorganization and that, without the settlements, Congoleum would not have been able to reorganize. [Dist. Dkt. No. 625, at ¶73.] The finding contained in paragraph 104 allowed Congoleum: (i) to strip BIW of its interests in insurance coverage for the Congoleum Flooring Business (as defined in the Century Settlement Agreement) as a named insured on the Century insurance policies (and on other of the Century insurance

policies in which it was not a named insured but would have had rights if it had been a successor to any of the liabilities of the Congoleum Flooring Business); and (ii) to obtain nearly $17 million from Century to help fund its plan of reorganization. [Dist. Dkt. No. 664, at ¶104.]

R.    The District Court could not have allowed for the sale of the Century policies and others free of any of BIW's contractual rights as to coverage for the Congoleum Flooring Business without providing BIW with protection in the form of the finding from liability related to the Congoleum Flooring Business. *See, e.g.*, *In re SportStuff, Inc.*, 430 B.R. 170 (Bankr. App. P. 8th Cir. 2010) (holding debtor could not sell insurance policies back to carrier without providing protection for non-debtor additional insured); *In re Forty-Eight Insulations, Inc.*, 149 B.R. 860 (Bankr. N.D. Ill. 1992) (same). BIW did not object to such a sale in reliance upon the protection of a finding that would confirm, consistent with the fact that BIW had never owned or operated the Resilient Flooring Business or the Kearny, New Jersey property, that BIW had no responsibilities for the Congoleum Flooring Business liabilities covered by those policies. [BIW 30(b)(6) (Ferguson) Dep. Tr. at 76:5-80:7.]

S.    On July 2, 2011, the transactions contemplated in Congoleum's Plan were consummated and the Plan because effective. [Dist. Dkt. 703.] As a result, Congoleum emerged from bankruptcy and was able to discharge over $300 million in asbestos liabilities using the $16,950,000 it obtained from Century to fund its Plan, along with hundreds of millions it netted from similar settlement with other insurers. [Dist. Dkt. No. 664 at 18-19 ¶29(iv); 46-47, ¶¶103-04.] Also as a result of the Plan becoming effective, BIW lost its interests in the Century insurance policies, and many other historical liability insurance policies, as to coverage for the Congoleum Flooring Business.

T.      The Confirmation Order entered in the First Bankruptcy Case is a final order which is no longer subject to appeal or review.

U.      Notice of the hearing on the plan of reorganization that resulted in the entry of the Confirmation Order in the First Bankruptcy Case was given to numerous parties, including Occidental Chemical Corporation, the EPA, and the New Jersey Department of Environmental Protection. [First Bankr. Dkt. No. 8023.] Congoleum published notice of the confirmation hearing in *USA Today* [First Bankr. Dkt. No. 6432], which notice the District Court found "good and sufficient" [Dist. Dkt. No. 664 at 5]. All of the above entities and BIW, plus unknown creditors such DVL Inc. and DVL Kearny Holdings (collectively, "**DVL**"), LLC through publication notice, were parties to the First Bankruptcy Case.

**IV.  The Confirmation Order's Finding That BIW Was Not Responsible For "Any Of the Liabilities" of The Congoleum Flooring Business Included Environmental Liabilities.**

V.      The Confirmation Order's finding that BIW was not responsible for "*any* of the liabilities" of the Congoleum Flooring Business included all liabilities of any kind or nature, including environmental liabilities. Merriam Webster defines the word "any" to mean "every." *See* https://www.merriam-webster.com/dictionary/any. By using the phrase "*any* of the liabilities," the Confirmation Order absolved BIW of liability for *every* liability of the Congoleum Flooring Business, including environmental liabilities.

W.       Mr. Feist, who provided the testimony that was the basis for this finding also testified as the corporate representative for Congoleum and in his personal capacity that his representation to the bankruptcy court in the First Bankruptcy Case, that BIW was not responsible for "*any* of the liabilities of the Congoleum Flooring Business," included the "environmental liabilities" of the Congoleum Flooring Business. [Congoleum 30(b)(6) (Feist) Dep. Tr. at 14:23-

15:12; Feist Dep. Tr. at 57:17-23; 60:17-23; 108:22-110:2.] Mr. Feist testified in 2019 that the

First Bankruptcy Case and the Century Settlement Agreement involved environmental claims,

testifying that Congoleum's coverage action against Century, which was filed prior to the First

Bankruptcy Case, and the First Bankruptcy Case were "largely intertwined," that Congoleum

brought its "disputes for environmental liabilities into the [insurance] coverage action," including

claims relating to the Passaic River, and that in 2006, Century and Congoleum corresponded

regarding Congoleum's "environmental exposure," and then "negotiated for [Congoleum's]

environmental rights to be extinguished." (*Id.*) Congoleum also admitted in its response to BIW's

request for admission in the DVL litigation that "the [insurance coverage action] addressed

coverage disputes related to alleged environmental claims (including claims concerning the

Passaic River)." [Sept. 25, 2019 Congoleum Responses to BIW's Second RFAs, No. 55.]

X.      Concluding that the Confirmation Order found that BIW was not responsible for

any of the liabilities of the Congoleum Flooring Business, including environmental liabilities, also

is consistent with the fact that the Century Settlement Agreement extinguished Century's

obligation to provide coverage for environmental liabilities as to the Congoleum Flooring

Business. The Court therefore finds that the Confirmation Order found that BIW was not

responsible for any of the liabilities of the Congoleum Flooring Business, including any

environmental liabilities.

**V.    Mr. Feist's Testimony That BIW Was Not Responsible For Any Of The Liabilities
Of The Congoleum Flooring Business Is Supported By BIW's And Congoleum's
Operations, Corporate History, And Congoleum's Conduct Prior To And After The
Entry Of The Confirmation Order.**

**a.    Congoleum's and BIW's Operations.**

Y.      Although it is not necessary to determine whether Mr. Feist's testimony was

accurate for purposes of concluding that the finding contained in paragraph 104 of the

Confirmation Order is entitled to res judicata effect and binding, the finding that BIW was not responsible for any of the liabilities of the Congoleum Flooring Business is consistent with the historical operations of BIW and Congoleum. BIW was incorporated in Maine in 1884. BIW operates a shipbuilding facility located in Bath, Maine. For more than a century, BIW has manufactured recreational, commercial, and military ships. For a brief period of time, BIW and Congoleum were part of the same corporate family, but during that period, BIW did not operate the Resilient Flooring Business, as that term is defined in the Agreement, nor has it ever owned or operated any business in Kearny, New Jersey, or along the Passaic River.

Z.      Congoleum, through various corporate forms, first began developing flooring products in the 1800s in Scotland. Michael Nairn was the original inventor of its first floor covering product. [Second Bankr. Dkt. 18, at ¶¶10-12 (O'Conner First Day Declaration).] In 1886, Congoleum established the U.S. headquarters of its business in Kearny, New Jersey and operated its resilient flooring business, the Congoleum Flooring Business, in Kearny, New Jersey. [September 25, 2019 Congoleum Responses to BIW's Second Requests for Admission ("**RFA**"), Nos. 53 and 56; Second Bankr. Dkt. 18, at ¶11 (O'Conner First Day Declaration).] As a result of various acquisitions in 1924, Congoleum operated under the name Congoleum-Nairn Inc. [Second Bankr. Dkt. 18, at ¶11 (O'Conner First Day Declaration).] Mr. Feist also testified in the First Bankruptcy Case that the debtor Congoleum was the successor in interest to Congoleum-Nairn, Inc. and that the flooring operations to which the debtor Congoleum succeeded "were headquartered in Kearney [sic], New Jersey continuously from before 1965 to 1987." [First Bankr. Dkt. 4439, at Ex. B, ¶14(A), (C).] The Debtor's current President Christopher O'Conner made the same representation in his First Day Declaration stating that "[o]ver the course of the last century, Congoleum-Nairn acquired several companies and underwent multiple ownership changes and

mergers. The Debtor is the sole surviving company." [Second Bankr. Dkt. No. 18, at ¶12.]

AA.     The Court finds that BIW never operated any business in Kearny, New Jersey or
owned any real property in Kearny, New Jersey.

### b.   Congoleum's and BIW's Corporate History.

BB.     Mr. Feist's testimony that BIW is not responsible for any liabilities of the
Congoleum Flooring Business also is consistent with the corporate transactional history. Prior to
1968, the parent entity of the Congoleum businesses was Congoleum-Nairn, Inc. [*See* January 15,
1998 Congoleum Response to EPA, CONG_0005990 at CONG_0005992, CONG_0006010,
CONG_0006014.] In 1968, Congoleum-Nairn Inc. changed its name to Congoleum Industries Inc.
("**CII**"). Between 1968 and 1986, BIW and the business which operated the historic resilient
flooring business or the "Congoleum Flooring Business" were owned by the same corporate
parent, CII.

CC.     In 1986, CII engaged in an internal restructuring to separate the assets and liabilities
of each of its four operating business units into separate corporations, and then sold each business
to different third-party entities (the "**1986 Restructuring**").

DD.     The primary drafter of the 1986 Restructuring transactional documents, Gregory
Milmoe, a former partner at Skadden, Arps, Slate, Meagher & Flom LLP, confirmed that the
Debtor Congoleum assumed all relevant flooring-related liabilities, including any liabilities that
were unknown in 1986, as a result of the 1986 Restructuring. Specifically, Mr. Milmoe testified in
2019 that the overall business purpose of the transaction was to sell the complete flooring *business*
"known as Congoleum," which "included the assets, the liabilities, the goodwill associated with
the business." [Milmoe Dep. Tr. at 66:15-20; *see also id.* at 67:15-68:14 (explaining that all
flooring related liabilities and assets were transferred via a 1986 merger agreement to the buyer

now known as Congoleum); *id.* at 108:17-109:13 (confirming that Congoleum "assumed the liabilities related to the [flooring business]").] Mr. Milmoe also testified that no "flooring-related assets or liabilities" were transferred to BIW as a result of the 1986 Restructuring. [*Id.* at 68:8-14.]

EE.    At the time of the 1986 Restructuring, CII owned four operating businesses. CII directly owned Congoleum Corporation ("**1984 Congoleum**"), which held the Congoleum Flooring Business's assets and liabilities and the Kinder assets. Congoleum Corporation owned BIW and Curtis Industries, which were two stand-alone subsidiaries. CII wanted to sell each of its four businesses as separate businesses so it underwent a series of internal corporate steps to do so. The first step was to transfer the historical Congoleum Flooring Business assets and liabilities to a new corporation Resilco Inc. Similarly, the Kinder assets and liabilities were transferred to Kinder Manufacturing Corporation. After the Resilco assignment, any remaining assets and liabilities held by the middle-tier company Congoleum Corporation were transferred to the parent, CII. Once all of Congoleum Corporation's assets and liabilities were transferred to Resilco Inc., Kinder Manufacturing Corporation, or CII, Congoleum Corporation became an empty shell. That empty shell subsequently merged into BIW, with BIW as the surviving corporation.

FF.    After these transactions, CII owned four subsidiaries directly with all of the assets and liabilities of the Congoleum Flooring Business held by Resilco, Inc. On June 20, 1986, BIW was sold via merger to a private equity firm, Gibbons Green van Amerongen ("**GGvA**") (the "**GGvA Merger Agreement**"). [GGvA Merger Agreement, BIW 022000; Milmoe Dep. Tr. at 84:10-14.] Under the GGvA Merger Agreement, CII represented and warranted that GGvA was not assuming any liabilities relating to any non-shipbuilding business, including the Congoleum

Flooring Business.  [GGvA Merger Agreement at BIW 022048-49; Milmoe Dep. Tr. at 164:25-168:11.]

GG.    On July 1, 1986, CII sold the Congoleum Flooring Business via merger to Hillside Capital Inc. ("**Hillside**") (the "**Resilient Merger Agreement**"). [Resilient Merger Agreement, BIW 001649.] The Congoleum entity that was sold via merger to Hillside is the same Congoleum entity that is the Debtor in this action. The overall business purpose of the Resilient Merger Agreement was to sell the Resilient Flooring Business. [Milmoe Dep. Tr. at 66:15-68:7.] According to its drafter, the Resilient Merger Agreement did effectuate the sale of the historic Congoleum Flooring Business in full, including the environmental liabilities stemming from the Kearny Site. [Milmoe Dep. Tr. at 108:17-109:13.]

HH.    In the Resilient Merger Agreement, Congoleum also explicitly assumed the assets and liabilities related to the Congoleum Flooring Business, which it continued to operate, and Congoleum agreed to defend, indemnify, and hold BIW harmless against any losses or claims arising out of or related to the resilient flooring operations. [Resilient Merger Agreement, Section 5.04(d) at BIW 001649.]

II.    The 1986 Restructuring Documents demonstrate that Congoleum (the Debtor in the First Bankruptcy Case and in this bankruptcy case) is responsible for all of the Congoleum Flooring Liabilities and that BIW has never been responsible for any of the liabilities of the Congoleum Flooring Business.

### c.  Congoleum's Post-1986 Restructuring Conduct.

JJ.    Congoleum's conduct following the 1986 Restructuring is consistent with the finding that BIW is not responsible for any of the liabilities of the Congoleum Flooring Business. Following the 1986 Restructuring, Congoleum maintained ownership over a portion of the Kearny

Site and it accepted responsibility for workers' compensation, asbestos, and environmental claims related to the Kearny Site that pre-dated the 1986 Restructuring, including accepting a tender of one such claim from BIW. Congoleum also listed these liabilities on its books and records and reported the liabilities on its financial statements. For 31 years, until it took a contrary position in the DVL litigation (*DVL Inc. et al. v. Congoleum Corp.*, 2:17-04261-KM-JBC (D.N.J.)), Congoleum consistently took the position that it was responsible for all liabilities related to the Kearny, New Jersey property and the Congoleum Flooring Business.

KK.    The Court also has reviewed the competing corporate expert opinions that Congoleum and BIW obtained and rejects the opinion of Congoleum's expert and accepts the opinions of BIW's experts. The evidence demonstrates that BIW is not responsible for any of the liabilities of the Congoleum Flooring Business.

***

LL.    Having considered the evidence presented at the Approval Hearing, the Court hereby finds and reaffirms the 2010 finding in the First Bankruptcy Case that BIW has no responsibility for any of the liabilities of the Congoleum Flooring Business, as defined above and in the Century Settlement Agreement, or for the Resilient Flooring Business as defined in the Agreement, and BIW is not a successor of the Resilient Flooring Business, including its former operations in Kearny, New Jersey.

MM.    Additionally, the Court hereby finds:

    a.    Liabilities of the Resilient Flooring Business, for which BIW has no responsibility, include environmental liabilities, including, but not limited to, environmental liabilities allegedly stemming from the former Resilient Flooring Business operations in Kearny, New Jersey.

    b.    Congoleum is the only successor entity potentially liable for any alleged environmental liabilities arising the former Resilient Flooring Business operations in Kearny, New Jersey, including those complained of in the

DVL and Occidental Lawsuits pending against Congoleum and BIW, as previously determined by the court in the First Bankruptcy Case, and as reaffirmed by Congoleum in this bankruptcy case; BIW is not responsible for environmental liabilities stemming from the Resilient Flooring Business operations in Kearny, New Jersey.

NN.    All of the Court's findings of fact made herein, including those related to successorship, were actually litigated and are necessary to the Court's decision to enter this settlement order. The foregoing findings are intended to have preclusive effect under the doctrines of res judicata and collateral estoppel.