**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**WASSERMAN, JURISTA & STOLZ, P.C.**
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Phone: (973) 467-2700
*Local Counsel for Bath Iron Works Corporation*
**DANIEL M. STOLZ, ESQ.**
**DONALD W. CLARKE, ESQ.**

**CALCAGNI & KANEFSKY, LLC**
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
Phone: (862) 397-1796
*Local Counsel for Bath Iron Works Corporation*
**RALPH J. MARRA, ESQ.**
**ERIC T. KANEFSKY, ESQ.**

**JENNER & BLOCK**
353 N. Clark Street
Chicago, IL 60654-3456
Phone: (312) 222-9350
*Counsel for Bath Iron Works Corporation*
**WADE A. THOMSON, ESQ.**
**CATHERINE L. STEEGE, ESQ.**
**MICHAEL A. DOORNWEERD, ESQ.**

| | |
|---|---|
| In Re: | Chapter 11<br>Case No. 20-18488 (MBK) |
| **CONGOLEUM CORPORATION,** | Honorable Michael B. Kaplan |
| Debtor.[1] | |

---

**BATH IRON WORKS CORPORATION'S BRIEF IN OPPOSITION TO DVL'S
MOTION FOR A STAY PENDING A DECISION BY THE UNITED STATES DISTRICT
COURT ON DVL'S MOTION TO WITHDRAW THE REFERENCE OF THE
DEBTOR'S MOTION TO APPROVE A SETTLEMENT WITH BATH IRON WORKS
CORPORATION AND THE ADVERSARY PROCEEDING NO. 20-01439 FILED BY
BATH IRON WORKS CORPORATION, OR IN THE ALTERNATIVE TO STAY
PENDING APPEAL**

---

[1] The last four digits of the Debtor's federal identification number are 8678. The Debtor's corporate headquarters is located at 3500 Quakerbridge Road, Mercerville, New Jersey 08619.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................. 3

I.    Legal Standard. ................................................................................. 3

II.   DVL Has Failed To Establish That It Is Entitled To A Stay Pending The District Court's Consideration Of Its Withdrawal Motion. ................................................ 4

    A.   DVL Is Unlikely To Prevail On The Merits Of Its Withdrawal Motion. ............................ 4

        i.    DVL Cannot Satisfy The Requirements For Mandatory Withdrawal Because Ruling On The Settlement Motion Or The Adversary Proceeding Does Not Require Consideration Of Any Federal Law Other Than Title 11. ............................... 5

        ii.   DVL Cannot Satisfy The Requirements For Permissive Withdrawal Because Cause Does Not Exist To Withdraw The Settlement Motion Or The Adversary Proceeding From The Bankruptcy Court. ...................................................... 8

            1.   The Settlement Motion And Adversary Proceeding Present A Core Proceeding And The Bankruptcy Court Has Authority To Rule On It. .................. 9

            2.   None Of The Other Factors Courts Consider Demonstrate Cause To Withdraw The Reference Here. ........................................................... 15

        iii.  DVL Lacks Standing To Move To Withdraw The Adversary Proceeding. ................ 19

    B.   DVL Will Not Be Irreparably Harmed If A Stay Is Not Granted. .................................. 20

    C.   BIW And Congoleum Will Be Substantially Harmed By A Stay. .................................. 20

    D.   A Stay Is Not In The Public Interest. .................................................................. 21

III.  DVL Has Failed To Establish That It Is Entitled To A Stay Pending Appeal. ........................ 22

CONCLUSION ......................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re American Reserve Corp.*,
841 F.2d 159 (7th Cir. 1987) ..................................................................................21

*In re Ambac Financial Group, Inc.*,
457 B.R. 299 (Bankr. S.D.N.Y. 2011), *aff'd*, No. 10-B-15973 SCC, 2011 WL
6844533 (S.D.N.Y. Dec. 29, 2011), *aff'd*, 487 F. App'x 663 (2d Cir. 2012)..........12

*In re Antioch Co.*,
435 B.R. 493 (Bankr. S.D. Ohio 2010)..................................................................1, 3

*Bordeaux v. LTD Financial. Services, L.P.*,
No. CV2160243KSHCLW, 2018 WL 1251633 (D.N.J. Mar. 9, 2018) ..................20

*In re Chateaugay Corp.*,
193 B.R. 669 (S.D.N.Y. 1996)....................................................................6, 7, 8, 10

*In re Christ Hospital*,
502 B.R. 158 (Bankr. D.N.J. 2013), *aff'd*, No. CIV.A. 14-472 ES, 2014 WL
4613316 (D.N.J. Sept. 12, 2014) .......................................................................7, 10, 14

*Citizens for Responsibility & Ethics in Washington v. Federal Election
Commission*,
904 F.3d 1014 (D.C. Cir. 2018) ...............................................................................1

*In re Connie's Trading Corp.*,
No. 14 CIV. 376 LAK GWG, 2014 WL 1813751 (S.D.N.Y. May 8, 2014)............2, 9, 12, 18

*In re Continental Airlines*,
138 B.R. 442 (D. Del. 1992)......................................................................................5

*Appeal of Continental Steel Corp.*,
968 F.2d 1218 (7th Cir. 1992) .................................................................................22

*In re Corrugated Container Antitrust Litigation*,
752 F.2d 137 (5th Cir. 1985) ...................................................................................18

*Cory v. Leasure*,
491 B.R. 476 (W.D. Ky. 2013), *aff'd* (June 18, 2014) .....................................14, 20

*In re Derosa-Grund*,
567 B.R. 773 (Bankr. S.D. Tex. 2017) ......................................................................9

*In re Doctors Hospital of Hyde Park, Inc.*,
   376 B.R. 242 (Bankr. N.D. Ill. 2007) ...................................................................21

*DVL, Inc. v. Congoleum Corp.*,
   2018 U.S. Dist. LEXIS 143437 (D.N.J. 2018) .......................................................15

*In re Energy Future Holdings Corp.*,
   648 F. App'x 277 (3d Cir. 2016) .............................................................................9

*Executive Benefits Insurance Agency v Arkison*,
   134 S. Ct. 2165 (2014).............................................................................................18

*In re Extended Stay, Inc.*,
   466 B.R. 188 (S.D.N.Y. 2011).................................................................................18

*Feldman v. ABN AMRO Mortgage Group Inc.*,
   515 B.R. 443 (E.D. Pa. 2014) ...........................................................................17, 18

*In re Full Spectrum Management, LLC*,
   No. BT 19-00613, 2020 WL 6552056 (Bankr. W.D. Mich. Nov. 6, 2020)............14

*In re GEO Specialty Chemicals, Inc.*,
   No. 16-8405/16-8463 (JLL), 2017 WL 66387 (D.N.J. Jan. 5, 2017) .......................9

*Halvajian v. Bank of New York, N.A.*,
   191 B.R. 56 (D.N.J. 1995) ...............................................................................9, 15

*In re Hilsen*,
   404 B.R. 58 (Bankr. E.D.N.Y. 2009)................................................................18, 21

*Hudson Palmer Homes, Inc. v. Crum & Foster Specialty Ins. Co.*,
   No. MC 20-64, 2020 WL 6737241 (E.D. Pa. Nov. 16, 2020)............................2, 10

*In re Infiltrator System, Inc.*,
   No. 3:98CV1534 RNC, 1998 WL 1574648 (D. Conn. Nov. 6, 1998) ....................22

*In re Jasmine, Ltd.*,
   258 B.R. 119 (D.N.J. 2000) ....................................................................................21

*In re Ladder 3 Corp.*,
   581 B.R. 7 (Bankr. E.D.N.Y. 2018).................................................................11, 12

*In re Lazy Days' RV Center Inc.*,
   724 F.3d 418 (3d Cir. 2013)...........................................................................10, 13, 14

*In re Millennium Lab Holdings II, LLC*,
   575 B.R. 252 (Bankr. D. Del.), *aff'd*, 945 F.3d 126 (3rd Cir. 2019) .......................13

*In re Murray Energy Holdings Co.*,
  615 B.R. 461 (Bankr. S.D. Ohio 2020) .................................................................................12

*Naughton v. Harmelech*,
  No. 09-CV-5450 (KM)(MAH), 2016 WL 7045712 (D.N.J. Dec. 1, 2016) ..............................4

*In re New Century TRS Holdings, Inc.*,
  544 F. App'x 70 (3d Cir. 2013) ........................................................................................9, 17

*In re Nortel Networks, Inc.*,
  539 B.R. 704 (D. Del. 2015) .................................................................................................5

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982) ..............................................................................................................13

*In re Northwest Institute of Psychiatry, Inc.*,
  268 B.R. 79 (Bankr. E.D. Pa. 2001) ...................................................................................3, 4

*In re Pruitt*,
  910 F.2d 1160 (3d Cir. 1990) .............................................................................................8, 9

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) .................................................................................................20

*In re Residential Capital LLC*,
  497 B.R. 720 (Bankr. S.D.N.Y. 2013) ....................................................................................7

*Russian Media Group, LLC v. Echostar Communications Corp.*,
  No. 3:03-CV-1263 (WWE), 2009 WL 4036849 (D. Conn. Nov. 19, 2009) ..........................11

*S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*,
  927 F.3d 763 (3d Cir. 2019) ...................................................................................................4

*In re Sandia Resorts, Inc.*,
  557 B.R. 217 (Bankr. D.N.M. 2016) .....................................................................................11

*Schreiber v. Kellogg*,
  839 F. Supp. 1157 (E.D. Pa. 1993) .........................................................................................4

*Stern v. Marshall*,
  564 U.S. 462 (2011) .................................................................................................11, 12, 13

*In re Storick*,
  No. 18-01455-MAM, 2020 WL 211471 (Bankr. S.D. Fla. Jan. 13, 2020) ...........................11

*Travelers Indemnity Co. v. Bailey*,
  557 U.S. 137 (2009) .............................................................................................................14

*United States v. Reader's Digest Association, Inc.*,
662 F.2d 955 (3d Cir. 1981)................................................................................18

**Statutes**

28 U.S.C. § 151.................................................................................................11

28 U.S.C. § 157.......................................................................................5, 6, 8, 10

28 U.S.C. § 1334.............................................................................................3, 17

**Court Rules**

Fed. R. Bankr. P. 5011 ...............................................................................3, 4, 22

Fed. R. Bankr. P. 7024 .......................................................................................22

Fed. R. Bankr. P. 8007 .........................................................................................4

Fed. R. Bankr. P. 9019 .........................................................................7, 9, 12, 18

Fed. R. Civ. P. 24...............................................................................................22

Bath Iron Works Corporation's ("**BIW**") respectfully submits its Opposition to DVL, Inc. and DVL Kearny Holdings, LLC's (collectively, "**DVL**") *Motion For A Stay Pending A Decision By The United States District Court On DVL's Motion To Withdraw The Reference Of The Debtor's Motion To Approve A Settlement With Bath Iron Works Corporation And The Adversary Proceeding No. 20-01439 Filed By Bath Iron Works Corporation, Or In The Alternative To Stay Pending Appeal* (Dkt. 509, the "**Stay Motion**").

## INTRODUCTION

Granting a stay pending a decision on a motion to withdraw the reference or a stay pending appeal without posting a bond are both extraordinary remedies that are the exception rather than the rule. *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (declining to grant stay pending appeal); *In re Antioch Co.*, 435 B.R. 493, 496, 504 (Bankr. S.D. Ohio 2010) (declining to grant stay pending withdrawal motion). DVL's Stay Motion does not come close to establishing that DVL's request is such an exception.

While it is clear that DVL strenuously opposes the settlement agreement that Congoleum Corporation ("**Congoleum**" or the "**Debtor**") and BIW have asked this Court to approve in the Debtor's Motion for an Entry of an Order Approving the Settlement (the "**Settlement Motion**," Dkt. No. 483), that fact alone is not reason to stop this bankruptcy case in its tracks. As this Court recognized when it denied DVL's Motion to Intervene, there are "avenues" available to DVL to have its objections heard: "The hearing on the settlement, number one; the confirmation hearing, number two; the District Court." (Dkt. 484 (Nov. 10, 2020 Hearing Tr.) at 55-56 (Ex. 1 hereto).) But instead of simply raising its objections at the settlement hearing now scheduled for December 28, 2020, and allowing this Court to decide the merits of those objections, DVL has filed a flurry of motions and an appeal all aimed at preventing this Court, which is presiding over Congoleum's

bankruptcy case and has all of the necessary parties before it, from reaching the merits of its objections.

The fallacy of DVL's approach is that none of its filings will make the settlement agreement go away. At most, these filings might only change which court addresses the settlement in the first instance. And on that central question—which court, the bankruptcy court or the district court, is the appropriate court to address the Settlement Motion in the first instance—the case law is clear. A settlement motion is within the constitutional authority of the bankruptcy court to decide and therefore, there is little likelihood that the district court will withdraw the reference of the Settlement Motion or the adversary proceeding initiated by BIW against Congoleum in Case No. 20-18488 (the "**Adversary Proceeding**"). *See, e.g.*, *Hudson Palmer Homes, Inc. v. Crum & Foster Specialty Ins. Co.*, No. MC 20-64, 2020 WL 6737241, at *2 (E.D. Pa. Nov. 16, 2020) (declining to withdraw the reference of a settlement motion); *In re Connie's Trading Corp.*, No. 14 CIV. 376 LAK GWG, 2014 WL 1813751, at *8 (S.D.N.Y. May 8, 2014) (same).

Denying the Stay Motion and proceeding to a hearing on the Settlement Motion in the first instance also in no way prejudices DVL because, as this Court already noted, DVL will have a full opportunity to raise its objections to the settlement at the settlement and confirmation hearings and if it disagrees with the Court's ruling, it can appeal. (Ex. 1 at 55-56.) But for Congoleum, granting the Stay Motion brings its chapter 11 case to a screeching halt. Because the settlement is tied to confirmation of Congoleum's plan, a stay of the hearing on the Settlement Motion also stops the confirmation hearing, prejudicing creditors and increasing the administrative expenses of the estate. It also does nothing to advance DVL's objections; indeed a stay delays DVL from presenting its case. Moreover, at the heart of the bankruptcy system is a strong public policy favoring the timely and economical resolution of claims. To that end, settlements are strongly

favored in bankruptcy cases. Here, DVL seeks to upset the settlement of significant claims in this

bankruptcy case in favor of protracted litigation in the district court.

DVL's Stay Motion fails and should be denied.

## ARGUMENT

## I.    Legal Standard.

DVL asks this Court to either stay the Settlement Motion pending a ruling on DVL's

Motion to Withdraw the Reference or, alternatively, to stay the Settlement Motion pending its

appeal of this Court's Order denying its Intervention Motion. Bankruptcy Rule 5011(c) establishes

a presumption that the filing of motion to withdraw the reference will not stay matters in the

underlying bankruptcy case. It states:

> The filing of a motion for withdrawal of a case or proceeding or for abstention
> pursuant to 28 U.S.C. §1334(c) *shall not stay the administration of the case or any*
> *proceeding therein* before the bankruptcy judge except that the bankruptcy judge
> may stay, on such terms and conditions as are proper, proceedings pending
> disposition of the motion.

FED. R. BANKR. P. 5011(c) (emphasis added). "[I]t is clear from the plain language of the Rule that

the granting of a stay should be the exception—not the general rule." *Antioch Co.*, 435 B.R. at 496.

"The burden on such a motion rests with the party seeking the stay to establish that a stay under

the circumstances would be appropriate." *Id.* (citing *Miller v. Vigilant Ins. Co. (In re Eagle Enters.,*

*Inc.)*, 259 B.R. 83, 86 (Bankr. E.D. Pa. 2001)).

"While the term 'may' in the Rule appears to grant the bankruptcy court broad discretion

in determining such a motion, the case law applying the Rule has limited the circumstances under

which a stay may be granted to essentially the circumstances under which a preliminary injunction

would be appropriate…." *Id.* at 497. "Thus, the movant must demonstrate the likelihood of

prevailing on the merits; that it will suffer irreparable harm if the stay is denied; that the other party

will not be substantially harmed by the stay; and that the public interest will be served by granting

the stay." *In re Nw. Inst. of Psychiatry, Inc.*, 268 B.R. 79, 83 (Bankr. E.D. Pa. 2001).

Similarly, stays pending an appeal absent the posting of a bond also are the exception, not

the rule. *See Schreiber v. Kellogg*, 839 F. Supp. 1157, 1159 (E.D. Pa. 1993) (appellant must show

that "extraordinary circumstances" warrant a stay absent a supersedeas bond); *accord Naughton*

*v. Harmelech*, No. 09-CV-5450 (KM)(MAH), 2016 WL 7045712, at *1 (D.N.J. Dec. 1, 2016)

(same). Like a stay pursuant to Bankruptcy Rule 5011, a stay pending appeal pursuant to

Bankruptcy Rule 8007 requires the Court to determine: "(1) whether the stay applicant has made

a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be

irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other

parties interested in the proceeding; and (4) where the public interest lies." *See S.S. Body Armor*

*I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 771 (3d Cir. 2019).

## II.    DVL Has Failed To Establish That It Is Entitled To A Stay Pending The District Court's Consideration Of Its Withdrawal Motion.

DVL has not established any of the requirements that are necessary to obtain a stay pending

the ruling on its Motion to Withdraw the Reference of the Debtor's Settlement Motion and

Adversary Proceeding filed by BIW (the "**Withdrawal Motion**," Dkt. No. 508).

### A.    DVL Is Unlikely To Prevail On The Merits Of Its Withdrawal Motion.

DVL argues that it is likely to prevail on the merits of its Withdrawal Motion because it

claims it satisfies the standards for both mandatory and permissive withdrawal. (Stay Motion, 13-

14.)  But as explained below, it does not.

4

      **i.**      **DVL Cannot Satisfy The Requirements For Mandatory Withdrawal Because Ruling On The Settlement Motion Or The Adversary Proceeding Does Not Require Consideration Of Any Federal Law Other Than Title 11.**

Withdrawal of the reference is mandatory under section 157(d) only when "(1) consideration of law outside of Title 11 [] is necessary for the resolution of the case or proceeding; and (2) the consideration of federal law outside the Bankruptcy Code necessary to resolve the proceeding is substantial and material." *In re Nortel Networks, Inc.*, 539 B.R. 704, 708 (D. Del. 2015) (quoting *In re Cont'l Airlines*, 138 B.R. 442, 444-45 (D. Del. 1992)). "As the party seeking withdrawal of the reference, [DVL] bears the burden of demonstrating that a substantial and material consideration of nonbankruptcy law is necessary to resolve the case." *Cont'l Airlines*, 138 B.R. at 445. Under that standard, courts distinguish "between meaningful consideration[] of federal law outside the Bankruptcy Code and its 'simple application'." *Nortel Networks*, 539 B.R. at 708 (quoting *In re CM Holdings, Inc.*, 221 B.R. 715, 721 (D. Del. 1998)). "When only a 'simple application of well-settled law is required, withdrawal is not mandatory.'" *Id.* (quoting *In re CM Holdings*, 221 B.R. at 721).

Or as the Seventh Circuit explained in *In re Vicars Insurance Agency, Inc.*, "[o]verwhelmingly courts and commentators agree that the mandatory withdrawal provision cannot be given its broadest literal reading, for sending every proceeding that required passing 'consideration' of non-bankruptcy law back to the district court would 'eviscerate much of the work of the bankruptcy courts.'" 96 F.3d 949, 952 (7th Cir. 1996) (internal citation omitted). Creating such an escape hatch out of the bankruptcy courts would encourage "delaying tactics" that would "drain[] the resources of the debtor" and promote "forum shopping, and generally unnecessary litigation." *Id.* Thus, the Seventh Circuit concluded that mandatory withdrawal of the reference "must involve more than mere application of existing law to new facts." *Id.* at 954;

accord *In re Chateaugay Corp.*, 193 B.R. 669, 673-74 (S.D.N.Y. 1996) ("[w]ithdrawal is not required when consideration of non-[Bankruptcy ]Code law entails only the straightforward application of settled law to the facts of a particular case").

Here, DVL has not and cannot demonstrate that the Court's consideration of the Settlement Motion will require even a "simple application" of non-bankruptcy federal law, let alone a "substantial and material" consideration of such law. DVL posits that to rule on the Settlement Motion the Court "must of necessity consider and apply the various federal and state statues and common law under which DVL's claims and BIW's and the Debtor's crossclaims arise." (Withdrawal Motion, 14.) According to DVL, "in particular" the Court will be required to pass upon issues of "successor liability under CERCLA and New Jersey state law." (Withdrawal Motion, 15.)

As an initial matter, DVL's references to state law are irrelevant as mandatory withdrawal of the reference only applies when "laws of the United States regulating organizations or activities affecting interstate commerce" are at issue. 28 U.S.C. §157(d). And whether this matter is core or not, this Court plainly may consider issues of state law. 28 U.S.C. § 157(b)(3). Further, DVL's general references to the entirety of CERCLA are similarly misplaced because DVL never points to an unsettled legal issue arising under CERCLA that this Court must decide to rule on the pending Settlement Motion.  Instead DVL argues that "BIW falls squarely within" certain CERCLA rules regarding successor liability and claims that because these "legal issues" "do not implicate bankruptcy law," the district court must decide them. (Withdrawal Motion, 15.) But by conceding that the federal statute "squarely" applies and that bankruptcy law does not apply (*id.*, 14), DVL has argued itself outside of the standards for mandatory withdrawal as section 157(d) requires consideration of "*both* title 11 *and* other laws of the United States...." 28 U.S.C. § 157(d) (emphasis

added). And the "overwhelming[]" authority holds that the consideration of "other laws of the United States" must involve more than applying settled legal principles to the facts. *Vicars Ins.*, 96 F.3d at 952.

More fundamentally, DVL's argument for mandatory withdrawal fails because it has not explained why this Court must address CERCLA to decide the Settlement Motion or the Adversary Proceeding. DVL's Motion appears to assume without explanation that when the Court decides the Settlement Motion or the Adversary Proceeding it will also be deciding DVL's claims under CERCLA currently at issue in DVL's pending district court action, the DVL Lawsuit. Not so. Instead, with respect to considering the Settlement Motion, what this Court will be deciding is whether the Settlement Agreement meets the standards for approval under Rule 9019 of the Federal Rules of Bankruptcy Procedure, which is a matter "arising under title 11." *In re Residential Capital LLC*, 497 B.R. 720, 744-45 (Bankr. S.D.N.Y. 2013) (holding settlement motion arises under title 11 and is a core matter).

In addition, as part of approving the Settlement Agreement, the Court also will be considering the enforceability of the confirmation order entered in Congoleum's prior bankruptcy case (the "**2010 Confirmation Order**," *In re Congoleum Corporation*, 03-51524 (KCF), Dkt. No. 664). This exercise of the Court's "historic and time-honored jurisdiction to interpret and enforce its own prior orders," "principally aris[es] under title 11." *In re Christ Hospital*, 502 B.R. 158, 182-83 (Bankr. D.N.J. 2013), *aff'd*, No. CIV.A. 14-472 ES, 2014 WL 4613316 (D.N.J. Sept. 12, 2014). Likewise, if the Adversary Proceeding were to continue, the Bankruptcy Court would be deciding the meaning and enforceability of the 2010 Confirmation Order, which again has nothing to do with CERCLA and which is an issue that "principally aris[es] under title 11." *Id.*

*Chateaugay,* 193 B.R. at 669, is directly on point. There, a former debtor sought a bankruptcy court order that its liability for certain environmental claims arising under CERCLA had been discharged in its prior bankruptcy case. *Id.* at 671. Certain of the parties seeking to hold the former debtor liable moved to withdraw the reference arguing that deciding whether the discharge applied to their claims would require application of CERCLA, triggering mandatory withdrawal of the reference. *Id.* at 671-72. The district court disagreed, concluding that the analysis of whether the movants were creditors subject to the discharge turned on bankruptcy laws, making that a matter the bankruptcy court should decide. *Id.* at 674-75. In reaching this conclusion, the district court in *Chateaugay* rejected the argument that DVL makes here—that because the bankruptcy court's interpretation of the confirmation order might impact a lawsuit pending in another court, the bankruptcy court could not proceed.

So too here. This Court is being asked to determine the meaning and reach of the 2010 Confirmation Order entered in Congoleum's prior bankruptcy case. As this Court succinctly stated when it denied DVL's Intervention Motion, "the transaction at issue is not any environmental contamination. The transaction at issue is the agreement reached and the finding and ultimately the order of the Court confirming the initial Chapter 11 plan in 2010." (Ex. 1 at 55.) In short because DVL has not and cannot identify any unsettled issue of non-federal bankruptcy law that must be decided to rule on the Settlement Motion (or the Adversary Proceeding), it has not established that it is likely to prevail on its argument that the Settlement Motion or the Adversary Proceeding are subject to mandatory withdrawal of the reference.

>        **ii.    DVL Cannot Satisfy The Requirements For Permissive Withdrawal Because Cause Does Not Exist To Withdraw The Settlement Motion Or The Adversary Proceeding From The Bankruptcy Court.**

DVL also cannot establish that it is likely to prevail on its request for permissive withdrawal. Section 157(d) "requires in clear terms that cause be shown before the reference can

be withdrawn." *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990). "For permissive withdrawal of the reference the Court must first ascertain if the proceeding is a 'core' or 'non-core' matter." *In re GEO Specialty Chemicals, Inc.*, No. 16-8405/16-8463 (JLL), 2017 WL 66387, at *2 (D.N.J. Jan. 5, 2017). "The distinction between 'core' and 'non-core' is the single most important factor in considering whether permissive withdrawal is warranted." *Id.* Beyond the core/non-core distinction, when determining whether "cause" exists, "courts have considered such factors as 'the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.'" *Halvajian v. Bank of N.Y., N.A.*, 191 B.R. 56, 57 (D.N.J. 1995) (quoting *Pruitt*, 910 F.2d at 1168). Where a party seeks to withdraw the reference both to a settlement motion and the adversary proceeding to be settled, these same factors are equally applicable to both requests. *Connie's Trading Corp.*, 2014 WL 1813751, at *11-12 (using same analysis to deny withdrawal of settlement motion and underlying adversary proceeding). Here, each of these factors weighs heavily against withdrawal.

1.    **The Settlement Motion And Adversary Proceeding Present A Core Proceeding And The Bankruptcy Court Has Authority To Rule On It.**

It is well-settled that a settlement motion under Bankruptcy Rule 9019 "clearly constitutes a core proceeding, and the Bankruptcy Court's resolution of any disputes over the settlement are also clearly core proceedings related to the underlying settlement." *In re New Century TRS Holdings, Inc.*, 544 F. App'x 70, 72-74 (3d Cir. 2013); *accord In re Energy Future Holdings Corp.*, 648 F. App'x 277, 280-81 (3d Cir. 2016) ("a bankruptcy court has the authority to 'approve a compromise or settlement' of a claim"); *In re Derosa-Grund*, 567 B.R. 773, 780-81 (Bankr. S.D. Tex. 2017) (settlement motion was "a core proceeding because it is governed by Rule 9019" and "could arise only in the context of a bankruptcy case"). That courts uniformly hold settlement

motions to be core proceedings is unsurprising. The settlement process itself is rooted in the
Bankruptcy Rules. *See* FED. R. BANKR. P. 9019. And a settlement of a claim against a debtor
*necessarily* "concern[s] the administration of the estate," which is fundamental to a bankruptcy
court's core functions. *See* 28 U.S.C. §157(b)(2)(A); *accord Hudson Palmer Homes, Inc. v. Crum
& Foster Specialty Ins. Co.*, No. MC 20-64, 2020 WL 6737241, at *2 (E.D. Pa. Nov. 16, 2020)
(motion to approve a settlement agreement is "a core proceeding" that "fits into [several]
subsections of 28 U.S.C. section 157(b)(2)").

Beyond that, the underlying subject matter of the Settlement Motion and the Adversary
Proceeding it seeks to settle—the interpretation of the 2010 Confirmation Order—also constitutes
a core proceeding. A bankruptcy court has "historic and time-honored jurisdiction to interpret and
enforce its own prior orders." *Christ Hosp.*, 502 B.R. at 182-83; *accord In re Lazy Days' RV Ctr.
Inc.*, 724 F.3d 418, 423-24 (3d Cir. 2013) (bankruptcy court was proper court to interpret effect of
prior order "because the bankruptcy court was 'well suited to provide the best interpretation of its
own order'") (internal citation omitted).

*Chateaugay*, 193 B.R. at 669, again is instructive. In addition to seeking mandatory
withdrawal, the movants also sought permissive withdrawal for cause, claiming that the
application of the former debtor's confirmation order to their claims was not a "core" matter within
the bankruptcy court's constitutional authority to decide. *Id*. at 675-78. The movants argued, like
DVL has argued here, that the reference should be withdrawn to allow the issue to be decided in
an already-pending action in a federal district court involving the same environmental liabilities,
but the district court disagreed. *Id*. The court noted that "accrual of the EPA's CERCLA claims
against bankrupt parties is determined by bankruptcy law, and does not require interpretation of
the substantive provisions of CERCLA." *Id.* at 673. Even the ancillary issues to be decided in the

proceeding, "although not dependent on the Bankruptcy Code," still should be decided by the

bankruptcy court because they involved the bankruptcy court's interpretation and review of the

effects of its own prior orders. *Id.* at 674. The court further held that the existence of the pending

CERCLA case in a federal district court "d[id] not strengthen the motion to withdraw" because a

bankruptcy court ruling would "merely instruct[]" the district court how to proceed based on the

effects of the prior bankruptcy court orders. *Id.* at 677-78.

Again, so too here. In connection with approving the Settlement Agreement, the Court will

be required to interpret a prior order that impacts the bankruptcy estate—a ruling which is squarely

within this Court's jurisdiction and constitutional authority to enter. *Id.* at 673. Nor does it matter

that there already is an action pending in the district court; the Court's ruling here would "merely

instruct[]" the district court how to proceed based on the proper interpretation of the prior order.

*Id.* at 677-78.[2]

DVL also asserts that the Supreme Court's decision in *Stern v. Marshall,* 564 U.S. 462

(2011), somehow strips the Court of its inherent jurisdiction to interpret the 2010 Confirmation

---

[2] Although it does not make this argument in its Stay Motion, DVL argued at the hearing on its
Intervention Motion that this Court does not have jurisdiction to interpret the 2010 Confirmation
Order because it was entered in Congoleum's prior bankruptcy case by a different judge. "This
argument must be rejected because '[e]nforcement and interpretation of orders issued in core
proceedings are also considered core proceedings within the bankruptcy court's jurisdiction. []
*[T]his is true even when a second court is asked to enforce the order." In re Ladder 3 Corp.*, 581
B.R. 7, 13-14 (Bankr. E.D.N.Y. 2018) (emphasis added) (internal citations omitted); *accord
Russian Media Group, LLC v. Echostar Commc'ns Corp.*, No. 3:03-CV-1263 (WWE), 2009 WL
4036849, at *5 (D. Conn. Nov. 19, 2009) (collecting cases). Indeed, bankruptcy courts presiding
over a second chapter 11 case routinely are called upon to interpret orders entered in the first
chapter 11 case and do so even where the judges are different. *See In re Storick*, No. 18-01455-
MAM, 2020 WL 211471 (Bankr. S.D. Fla. Jan. 13, 2020) (holding claim preclusion applied to
debtor's claim against creditor based on interpretation of order entered by different judge in
debtor's prior bankruptcy case); *In re Sandia Resorts, Inc.*, 557 B.R. 217, 222–23 (Bankr. D.N.M.
2016) (order in prior case had preclusive effect on parties in case at bar). The fact that the different
judge was a district court judge also is irrelevant as this Court acts as a unit of the district court.
28 U.S.C. § 151.

Order or approve the Settlement Motion (Withdrawal Motion, 18-21), but that too is wrong. According to DVL, the Court's approval of the Settlement Motion would "bring final resolution to the non-core corporate successorship dispute" at play in the DVL Lawsuit, thereby creating "a constitutionally impermissible result" in light of the Court's holding in *Stern.* (Withdrawal Motion, 19.)

As an initial matter, a bankruptcy court's authority to approve settlement motions remains intact post-*Stern.* "*Stern v. Marshall* has become the mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court." *In re Ambac Fin. Grp., Inc.*, 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011), *aff'd*, No. 10-B-15973 SCC, 2011 WL 6844533 (S.D.N.Y. Dec. 29, 2011), *aff'd*, 487 F. App'x 663 (2d Cir. 2012). But "[w]hatever *Stern v. Marshall* may ultimately be held to mean, . . . it most certainly does not stand for the proposition that the bankruptcy court cannot approve the compromise and settlement of a claim which is indisputably property of a debtor's estate." *Id.*; *accord In re Connie's Trading Corp.*, 2014 WL 181751, at *8 ("*Stern* does not affect the bankruptcy court's constitutional authority to resolve [an] adversary proceeding pursuant to Bankruptcy Rule 2019"); *In re Murray Energy Holdings Co.*, 615 B.R. 461, 464-65 (Bankr. S.D. Ohio 2020) (collecting cases and noting that "[t]he Court also has the constitutional authority after *Stern v. Marshall* [] to enter final orders approving settlements under Bankruptcy Rule 9019(a)"). Notably, a bankruptcy court maintains its jurisdiction to rule on a settlement motion *even if* the underlying adversary proceeding being settled is not a core proceeding. *Ladder 3 Corp.*, 581 B.R. at 13-14 ("whether or not this Court had constitutional authority to enter final judgment on the contract claims asserted by the Trustee in the 2010 Adversary Proceeding, it is clear that the Court was authorized to approve the Stipulation under Bankruptcy Rule 9019 as 'arising under' or 'arising in' the 2010 Bankruptcy Case").

Here, though, the underlying Adversary Proceeding to be settled by the Settlement Motion also is a core proceeding squarely within the jurisdiction of the Court. In *In re Lazy Days' RV Center Inc.*, 724 F.3d 418 (3d Cir. 2013), the Third Circuit held that a bankruptcy court possesses the constitutional authority post-confirmation to clarify the meaning of its prior orders notwithstanding the impact that clarification will have on pending state court lawsuits. The Third Circuit reasoned that clarifying the impact of a confirmation order on an assigned lease was not deciding a question of state common law; instead it was deciding a dispute based on the interpretation and enforcement of an order entered in the bankruptcy case. *Id*. at 423-24.

Similarly, *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252 (Bankr. D. Del.), *aff'd*, 945 F.3d 126 (3rd Cir. 2019), a disgruntled creditor in the same position as DVL argued that the bankruptcy court lacked the constitutional authority to confirm a plan because of the effect the confirmation order would have on that creditor's pending litigation against a non-debtor party. Like DVL argues here, the creditor in *Millenium Lab* took the position that it is "unconstitutional for a bankruptcy judge to enter a final order in any context if that final order might affect a lawsuit filed by a creditor against a third party." 575 B.R. at 275. After exhaustively analyzing *Stern v. Marshall*, *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), and their respective progeny, the bankruptcy court concluded that for purposes of deciding whether it had the constitutional authority to enter judgment, the operative proceeding was confirmation of the plan. *In re Millennium,* 575 B.R. at 261-75. Because the operative proceeding was within the bankruptcy court's authority to decide, the court held that "*Stern* does not prevent a bankruptcy judge from entering final orders in statutorily core proceedings notwithstanding the orders' collateral impact on state law claims." *Id*. at 275-76.

Under similar reasoning, courts routinely reject movants' attempts to thwart a proposed settlement merely because of some collateral effect it will have on litigation in a separate forum. In *In re Full Spectrum Mgmt., LLC*, No. BT 19-00613, 2020 WL 6552056, at *9 (Bankr. W.D. Mich. Nov. 6, 2020), for example, the court overruled a party's objection to a settlement on the grounds that a party "would be barred by res judicata or collateral estoppel" from raising a defense in a separate action. The court noted that the settlement's preclusive effect would be decided "if and when it arises" but, for purposes of approving the settlement, "the concern that the settlement could be prejudicial to [a party]'s ability to raise a future, hypothetical legal argument is too speculative . . . to weight against approval of the settlement agreement, which is otherwise fair and equitable." *Id.* at *9.

Similarly, in *Cory v. Leasure*, 491 B.R. 476, 485-86 (W.D. Ky. 2013), *aff'd* (June 18, 2014), the district court affirmed a bankruptcy court's determination that "the potential collateral effect on [a third party] was not an appropriate basis to deny approval of the Settlement Agreement." The court noted that "'[i]f [the Bankruptcy Court] were governed by what might happen to other non-bankrupt entities that are part of this estate . . . then a court sitting in bankruptcy could never approve settlements, because they always have collateral effect, both positive and negative on others." *Id.* (citation omitted).

Here, too, the Court has the constitutional authority to decide the Settlement Motion. The Court is being asked to decide the enforceability of the 2010 Confirmation Order and approve a settlement that resolves BIW's claims against the estate and Congoleum's rights under the 2010 Confirmation Order. These matters are within the Court's constitutional "core" authority. *See Lazy Days' RV*, 724 F.3d at 423-24; *accord Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *In re Christ Hosp.*, 502 B.R. at 182. Therefore, it does not matter if the order may impact other

14

litigation; this Court may still proceed. Because DVL cannot establish that neither the Settlement

Motion nor the Adversary Proceeding is a non-core proceeding, it has not met the most important

requirement for permissive withdrawal and its Motion should be denied.

> **2.      None Of The Other Factors Courts Consider Demonstrate
> Cause To Withdraw The Reference Here.**

Finally, none of the other factors that courts consider when deciding a motion to withdraw

the reference support withdrawal here. As discussed above, courts "consider[] such factors as 'the

goals of promoting uniformity in bankruptcy administration, reducing forum shopping and

confusion, fostering the economical use of the debtors' and creditors' resources, and expediting

the bankruptcy process.'" *Halvajian*, 191 B.R. at 57 (internal citation omitted).

> *(i)      Uniformity In Bankruptcy Administration.*

Oddly, DVL asserts that withdrawing the Settlement Motion and the Adversary Proceeding

to the district court will *promote* uniformity because "the District Court is the court 'already

familiar with' the 1986 transactions and with BIW's estoppel and *res judicata* arguments related

to the Debtor's prior bankruptcy." (Withdrawal Motion, 22.) But these issues have *never* been

before the court hearing the Withdrawal Motion. Prior to Congoleum's bankruptcy filing, the

parties already were litigating in multiple forums. The DVL Lawsuit was (and is) pending before

Judge McNulty and the Occidental Lawsuit before Judge Arleo.[3] Congoleum's bankruptcy had

the effect of essentially consolidating those actions before this Court and bringing all interested

entities into one forum. But granting DVL's Withdrawal Motion would now introduce a *fourth*

judge into the mix, placing the issues anew before a separate forum. Further because the lawsuits

involving DVL and Occidental are stayed by the automatic stay (11 U.S.C. §362(a)), it is not

---

[3] *DVL Inc. et al. v. Congoleum Corp. and Bath Iron Works Corp.*, 2:17-04261-KM-JBC (D.N.J.)
(the "**DVL Lawsuit**") and *Occidental Chemical Corp. v. 21st Century Fox America, Inc., et. al,*
No. 2:18-cv-11273-JLL-JAD (D.N.J.) (the "**Occidental Lawsuit**").

possible to consolidate the district court actions in front of one judge without violating the automatic stay. In short, introducing a fourth court into the mix would serve only to further complicate the administration of Congoleum's bankruptcy case and would run counter to the practical considerations underpinning the factors courts consider when deciding a motion to withdraw the reference. The matter should stay in this Court before the judge most familiar with confirmation orders and bankruptcy settlements and importantly, the judge who is charged with overseeing Congoleum's bankruptcy case and has all of Congoleum's creditors before it.

*(ii)      Reducing Forum Shopping.*

DVL claims repeatedly in its Withdrawal Motion that BIW's participation in Congoleum's bankruptcy case before this Court—a forum BIW did not choose—constitutes forum shopping. (Withdrawal Motion, 5, 11-12, 23.) But missing from DVL's over the top rhetoric is how BIW and Congoleum could possibly be forum shopping by presenting a motion to approve a settlement to the bankruptcy court presiding over Congoleum's chapter 11 case or bringing an adversary proceeding against Congoleum in its bankruptcy case. If anyone is forum shopping it is DVL. Instead of presenting its objections to the proposed Settlement to this Court, where they belong, DVL is using a motion to withdraw the reference to move the dispute to a different forum. This is exactly the type of forum shopping that the court in *Vicars Insurance* warned district courts to guard against. 96 F.3d at 952-54.

Further, contrary to DVL's protestations, no court has ruled on the enforceability of the 2010 Confirmation Order entered in Congoleum's prior bankruptcy case. The district court presiding over the DVL Lawsuit declined to address the issue on a motion to dismiss. *See DVL, Inc. v. Congoleum Corp.*, 2018 U.S. Dist. LEXIS 143437, *8, 15 (D.N.J. 2018). The issue has not yet been raised in the lawsuit involving Occidental. And now that Congoleum's second bankruptcy has intervened, this Court, which is presiding over Congoleum's chapter 11 case, and which has

16

"exclusive jurisdiction" over Congoleum's property, including Congoleum's rights under the 2010 Confirmation Order, is the court that is best situated to and has both the jurisdiction and constitutional authority to interpret that prior order. 28 U.S.C. §1334(e).

### (iii)    Economical Use Of Resources.

The entirety of DVL's judicial economy argument is based on the faulty premise that the Court will need to decide substantial issues of non-bankruptcy law to rule on the Settlement Motion. (Withdrawal Motion, 24-25.) For all of the reasons already discussed, that is wrong. Contrary to DVL's assertions, placing the Settlement Motion or the Adversary Proceeding in a brand new forum will be a tremendous waste of the courts' and the parties' resources by forcing yet another district court to come up to speed on issues already briefed at length before this Court. *See Feldman v. ABN AMRO Mortg. Grp. Inc.*, 515 B.R. 443, 453-54 (E.D. Pa. 2014) ("the economy of withdrawal [is] gradually eroded as the bankruptcy court's experience and expertise in these matters [has] increased").

### (iv)    Expediting The Bankruptcy Process.

Once again, DVL's entire argument that withdrawal would expedite the bankruptcy premise rests on the incorrect assertion that the Court does not have jurisdiction to enter a final order on the Settlement Motion or in the Adversary Proceeding. As discussed above, that is wrong. *See New Century TRS Holdings*, 544 F. App'x at 72-74. The Court has scheduled a hearing on the Settlement Motion and the parties are prepared to proceed. DVL has received notice of that hearing and can raise its concerns with the settlement there. Halting that process only to restart litigation in a new venue would add unnecessary delay and undermine the very benefits that settlements provide. But importantly, even if there was some question on this point (and there is not), not every non-core matter or even most non-core matters are heard in the District Court. Instead, the matters proceed before the bankruptcy court with the court issuing proposed findings of fact and

conclusions of law. *See* 28 U.S.C. §157(c)(1); *Executive Benefits Ins. Agency v Arkison*, 134 S. Ct. 2165 (2014).

*(v)      DVL's Claimed Right To A Jury.*

Finally, DVL argues that it is entitled to a jury trial, which the Court cannot provide, thereby weighing in favor of withdrawal. (Withdrawal Motion, 26-29.) As an initial matter, courts reject "the notion that the need for a jury trial should trump the interest in judicial economy" when deciding whether withdrawal is appropriate. *In re Extended Stay, Inc.*, 466 B.R. 188, 206 (S.D.N.Y. 2011); *accord Feldman*, 515 B.R. at 453-54 ("we do not agree with the Trustee that the prospect of a jury trial at some later date mandates immediate withdrawal"); *In re Hilsen*, 404 B.R. 58, 75 (Bankr. E.D.N.Y. 2009) (approving settlement agreement and noting that a *benefit* of the agreement would be avoiding "a jury trial, which is likely to necessitate additional delay and expense.").

In any event, DVL has no right to a jury trial on the matters at issue in the Settlement Motion or the underlying Adversary Proceeding for several reasons. *First*, DVL is not a party to the Adversary Proceeding. *See Connie's Trading Corp.*, 2014 WL 1813751, at *10 ("[T]he question of whether they have 'consented to trial' before the bankruptcy court is irrelevant as they are not even parties to the adversary proceeding."). *Second*, and more fundamentally, there is no right to a jury trial at a hearing to approve a settlement motion. *See In re Corrugated Container Antitrust Litig.*, 752 F.2d 137, 143-45 (5th Cir. 1985); *accord* FED. R. BANKR. P. 9019(a) (vesting authority to "approve a compromise or settlement" with the court). Similarly, construing the meaning of an order, "even an ambiguous one, is a question of law for the court, capable of resolution in summary judgment proceedings." *United States v. Reader's Digest Ass'n, Inc.*, 662 F.2d 955, 960-61 (3d Cir. 1981).

### iii. DVL Lacks Standing To Move To Withdraw The Adversary Proceeding.

Further, DVL's request to withdraw the Adversary Proceeding is unlikely to succeed on the merits for the additional reason that DVL is not a party to the Adversary Proceeding. Because it is not a party, it lacks standing to make motions with respect to the Adversary Proceeding. *See In re Innovative Comm'n Corp.*, No. 2007-130, 2010 WL 2868500, at *3 (D.V.I. July 20, 2010) (collecting cases and noting that, "as non parties, [movants] do not have standing to file a motion to withdraw the automatic reference to the Bankruptcy Division"); *F.T.C. v. Amer. Instit. for Research*, 219 B.R. 639, 646-47 (D. Mass. 1998) (nonparty did not have standing to move for withdrawal). DVL has previously conceded this point. When it unsuccessfully moved to intervene in the Adversary Proceeding, its stated purpose in doing so was to file a motion to withdraw the reference. [Adv. Dkt. No. 14 at 2 ("DVL seeks to intervene solely so that it might then move the district court pursuant to 28 U.S.C. §157(d) to withdraw the reference of the adversary proceeding...).] Having lost the intervention motion, DVL is not entitled to turn around and pretend that it prevailed. DVL's request to withdraw the Adversary Proceeding is not likely to succeed for the additional reason that it lacks standing in the Adversary Proceeding.

\*\*\*

None of the factors courts consider when deciding a motion to withdraw favor withdrawal here. There is no cause to withdraw the Settlement Motion or the underlying Adversary Proceeding from the Court, DVL does not have standing to seek withdrawal of the Adversary Proceeding, and thus DVL's Withdrawal Motion is unlikely to succeed on the merits.

**B.     DVL Will Not Be Irreparably Harmed If A Stay Is Not Granted.**

Nor is DVL likely to suffer any harm much less irreparable harm absent a stay. DVL summarily argues in its Stay Motion that it will be harmed absent a stay because it "will be forced to spend significant funds preparing" for the hearing on the Settlement Motion before the Court and any attempts to reverse the Court's findings "will require substantial time and cost through appellate avenues." (Stay Motion, 14-15.) But "[l]itigation costs will generally not rise to the level of irreparable harm." *Bordeaux v. LTD Fin. Servs., L.P.*, No. CV2160243KSHCLW, 2018 WL 1251633, at *2 (D.N.J. Mar. 9, 2018). And they *certainly* do not here. Whether the Settlement Motion or the Adversary Proceeding advances in this Court or the district court, DVL "will be forced to spend significant funds preparing" as the settlement motion will still go forward, just in a different court. (*See* Stay Motion, 14-15.) And the district court could approve the Settlement Motion leaving DVL in the same position of having to incur "substantial time and cost through appellate avenues." (*See id.*) In sum, absent a stay, DVL would be "left in no worse a position ... than if the case had proceeded to the merits and reached a judgment." *See Cory v. Leasure*, 491 B.R. 476, 486 (W.D. Ky. 2013), *aff'd* (June 18, 2014). DVL has not shown irreparable harm absent a stay and this factor weighs in favor of denial of the Stay Motion.

**C.     BIW And Congoleum Will Be Substantially Harmed By A Stay.**

Because DVL cannot establish the first two factors necessary for a stay, the inquiry ends and the Court should deny the Stay Motion. "[A] movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits . . . and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Only "[i]f these gateway factors are met," does "a court then consider[] the remaining two factors and determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested

preliminary relief." *Id.* Accordingly, DVL's Stay Motion fails because it is unlikely to succeed on the merits of its Motion to Withdraw and it has not articulated a likelihood of irreparable harm.

Regardless, the final two factors also favor denial of the Stay Motion. DVL asserts that neither Congoleum nor BIW will suffer any harm if the Withdrawal Motion is granted and Congoleum's bankruptcy proceedings stayed. (Stay Motion, 15.) As this Court is aware, in bankruptcy, time is money regardless of whether a debtor is reorganizing or liquidating. Indeed, it is well settled that it is in the best interests of an estate to wind up a liquidation proceeding quickly and efficiently. *See In re Am. Reserve Corp.*, 841 F.2d 159, 159-61 (7th Cir. 1987) (it is in the estate's best interests to avoid "expense, inconvenience, and delay"); *accord In re Hilsen*, 404 B.R. 58, 75 (Bankr. E.D.N.Y. 2009) (avoiding "expense, burden, and delay" are "of particular consequence in the bankruptcy context, where the prompt administration of a bankruptcy estate, for the benefit of the debtor and creditors alike, is among a trustee's central objectives"). Here, the parties have worked diligently in this bankruptcy case to resolve their dispute quickly and efficiently. Those efforts would be wasted if DVL were allowed to halt the proceedings at the eleventh hour while it tilts at windmills in the district court. Thus, Congoleum and BIW would be harmed by a stay and this factor favors denial of the Stay Motion.

### D.    A Stay Is Not In The Public Interest.

Similarly, the delay that DVL would inject into these proceedings if the Stay Motion were granted violates the public policy at the core of bankruptcy. A central aim of the Bankruptcy Code is the administration of the estate "within a reasonable time." *In re Doctors Hosp. of Hyde Park, Inc.*, 376 B.R. 242, 249 (Bankr. N.D. Ill. 2007). "[D]elay is contrary to that public policy, and therefore would not be in the public interest." *Id.* Thus, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'" *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 2000) (quoting *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)).

Here, DVL seeks to thwart the Court's ability to rule on the parties' proposed compromise and instead withdraw the matter to district court for further litigation. DVL's request is antithetical to the central aims of the Bankruptcy Code. Public policy therefore militates against granting the Stay Motion.

Because DVL has not made a sufficient showing on any of the four factors necessary to obtain a stay, this Court should not stray from the general rule that a motion to withdraw the reference does not stay matters in a pending bankruptcy case. DVL's request for a stay pursuant to Bankruptcy Rule 5011(c) should be denied.

### III.    DVL Has Failed To Establish That It Is Entitled To A Stay Pending Appeal.

DVL's alternative request for a stay pending its appeal of this Court's Order denying its Intervention Motion also should be denied. DVL does not separately argue this request; instead it relegates its arguments in support of its request for a stay pending appeal to two footnotes. (*See* Stay Motion, notes 11, 12.) For all of the same reasons outlined above, DVL's request for a stay pending appeal should be denied. Two additional factors also warrant denial of a stay pending appeal.

*First*, DVL will be unable to show that it has a likelihood of prevailing on appeal because its intervention motion was untimely. Bankruptcy Rule 7024, which incorporates Rule 24 of the Federal Rules of Civil Procedure, requires a "timely motion." FED. R. CIV. P. 24(a), (b). Because courts uniformly hold that intervention is untimely if it is requested after the parties to the case have settled, DVL's motion was untimely and DVL therefore cannot show that it will prevail on the merits of its appeal. *See Appeal of Cont'l Steel Corp.*, 968 F.2d 1218 (7th Cir. 1992) (collecting cases).

*Second*, DVL cannot show any prejudice. As this Court ruled and the case law holds, DVL's rights are "safeguarded by inherent protections contained in the Bankruptcy Code, such as

a creditor's right to notice of any proposed settlement" and its ability to object. *In re Infiltrator Sys., Inc.*, No. 3:98CV1534 RNC, 1998 WL 1574648, at *4-5 (D. Conn. Nov. 6, 1998). Because DVL can protect its interest in the subject matter of the Adversary Proceeding by objecting at the settlement hearing, it cannot show it will be harmed if a stay pending appeal is not granted. Accordingly, DVL's alternative request for stay relief should be denied too.

## CONCLUSION

For all of the reasons stated herein, BIW respectfully requests that the Court deny DVL's Stay Motion and grant such other relief as the Court deems just and reasonable.

Dated:  December 7, 2020

Respectfully submitted,

/s/ *Daniel M. Stolz*
Daniel M. Stolz
WASSERMAN, JURISTA & STOLZ
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
(973) 346-7600

Ralph J. Marra
Eric T. Kanefsky
CALCAGNI & KANEFSKY, LLC
1085 Raymond Blvd.
14th Floor
Newark, NJ 07102
(862) 397-1796

Catherine L. Steege (*pro hac vice*)
Michael A. Doornweerd (*pro hac vice*)
Wade A. Thomson (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Bath Iron Works Corporation*