| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Eitan D. Blanc, Esquire<br>Anthony R. Twardowski Esquire (*admitted Pro Hac Vice*)<br>Earl M. Forte, Esquire (*admitted Pro Hac Vice*)<br>Zarwin Baum DeVito Kaplan Schaer Toddy, P.C.<br>2005 Market Street, 16th Floor<br>Philadelphia, PA 19103<br>215-569-2800<br>edblanc@zarwin.com<br>artwardowski@zarwin.com<br>emforte@zarwin.com<br><br>Counsel for DVL, Inc. and DVL Kearny Holdings, LLC | |
| In Re:<br><br>CONGOLEUM CORPORATION,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 20-18488 (MBK)<br>Hearing Date: December 11, 2020 |

**REPLY OF DVL, INC. AND DVL KEARNY HOLDINGS, LLC TO OPPOSITION OF BATH IRON WORKS CORPORATION AND DEBTOR TO MOTION FOR A STAY**

DVL, Inc. and DVL Kearny Holdings, LLC (together, "DVL"), creditors and parties-in-interest in the chapter 11 case of Debtor, Congoleum Corporation ("Congoleum" or the "Debtor"), submit this reply in response to "Bath Iron Works Corporation's Brief In Opposition to DVL's Motion for A Stay Pending A Decision By the United States District Court On DVL's Motion to Withdraw the Reference of the Debtor's Motion to Approve A Settlement With Bath Iron Works Corporation and the Adversary Proceeding No. 20-01439 Filed By Bath Iron Works Corporation, or In The Alternative to Stay Pending Appeal" [docket no. 534] and the Debtor's Joinder [docket no. 535] (together, the "Opposition").

---

[1] The last four digits of the Debtor's federal tax identification number are 8678. The Debtor's corporate headquarters is located at 3500 Quakerbridge Road, Mercerville, New Jersey 08619

1

## I. The Proposed Settlement Between BIW and the Debtor Is No Ordinary Settlement

The proposed Settlement[2] between BIW and Congoleum is not a typical bankruptcy settlement that resolves a debtor-creditor relationship. Rather, it goes much farther than that; it seeks to use the Rule 9019 settlement approval process to absolve BIW of all liability for environmental cleanup in the Passaic River region of New Jersey, specifically, from the CERCLA and state law environmental claims brought in the DVL and Occidental Lawsuits, both of which are pending in the District Court, the former before Judge McNulty and the latter before Judge Arleo. This purpose, which serves only the interests of BIW and not the interests of the Debtor or its creditors, is plainly stated in the terms of the Settlement itself, which require, as a pre-condition to BIW's obligation to pay the Debtor's estate $1,000,000, that the bankruptcy court must make extensive findings of fact and conclusions of law that, based on a series of corporate transactions governed by state law contracts entered into over 30 years ago, BIW is not the corporate successor to Congoleum's Resilient Flooring Business and therefore is not liable to DVL or OCC in their respective lawsuits against BIW. *See* Settlement Motion, Exhibit A, Bankruptcy Dkt. 22-2 at pp. 23-27 of 27. Based on such findings of fact, the Settlement then requires the bankruptcy court to conclude:

- "that BIW has no responsibility for any liabilities of the Congoleum Flooring Business, as defined above and in the Century Settlement Agreement, or for the Resilient Flooring Business as defined in the Agreement, and BIW is not the successor of the Resilient Flooring Business, *including its former operations in Kearny, New Jersey*."

- "a.    Liabilities of the Resilient Flooring Business, for which BIW has no responsibility, include environmental liabilities, including, but not limited to, environmental liabilities allegedly stemming from the former Resilient Flooring Business *operations in Kearny, New Jersey*."

- "b.    Congoleum is the only successor entity potentially liable for any alleged environmental liabilities arising the former Resilient Flooring

---

[2] Capitalized or defined terms in this reply have the same meaning as in DVL's supporting memorandum of law. Bankruptcy Dkt. No. 509-2.

> Business operations in Kearny, New Jersey, *including those complained of in the DVL and Occidental Lawsuits pending against Congoleum and BIW*, as previously determined by the court in the First Bankruptcy Case, and as reaffirmed by Congoleum in this bankruptcy case; BIW is not responsible for environmental liabilities stemming from the Resilient Flooring Business operations in Kearny, New Jersey."

- "NN.    All the Court's findings of fact made herein, including these related to successorship, were actually litigated and are necessary to the Court's decision to enter this settlement order. *The foregoing findings are intended to have preclusive effect under the doctrines of res judicata and collateral estoppel*."

*See* Settlement Motion, Bankruptcy Dkt. No. 22-2 at ¶ LL-NN. p. 26-27 of 27 (emphasis added).

The Debtor and BIW also seek findings of fact and conclusions of law on several other specific matters, notably on a settlement entered into by Congoleum and a group of its insurance carriers on August 17, 2006, during its prior bankruptcy (known as the "Century Settlement") as well as the plan confirmation order entered by the District Court in that proceeding on June 7, 2010. BIW and the Debtor seek to use these findings to further support the conclusion that they have no liability to DVL or OCC. BIW and the Debtor seek this relief even though there is no evidence in the record they have presented showing that DVL was a creditor of Congoleum in 2006 or 2010 (DVL did not become aware of its claims in the DVL Lawsuit until 2015)[3], that DVL was a party to the Century Settlement (it was not), or that DVL was ever given proper notice of those matters. Absent the ability to raise its claims in the prior Congoleum bankruptcy and absent proper notice of that proceeding, DVL's claims, as asserted in the DVL Lawsuit, cannot be barred either by the Century Settlement or the June 7, 2010 confirmation order. *In re Kara Homes, Inc*. 2016 Bankr. LEXIS 191, **8 (Bankr. D. N. J. 2016); *In re Weiland Auto. Indus*., 612 B. R. 824, 847-48 (Bankr. D. Del. 2020)*; CoreStates Bank, N.A. v. Huls Am., Inc*., 176 F. 3d 187, 197, 202 (3d Cir. 1999).

Thus, the proposed Settlement does not simply seek to resolve "a matter integral to the debtor-

---

[3] DVL Lawsuit, Amended Complaint, Dkt. No. 18 at 7, ¶ 47.

creditor relationship between BIW and Congoleum, but to adjudicate and determine the outcome of DVL's (and OCC's) claims against BIW currently pending in the District Court. *In re Millennium Lab Holding II, L.C.*, 945 F. 3d 126, 137 (3d Cir. 2019).

Another unusual feature of the Settlement is the $1,000,000 cash component – BIW is paying the $1,000,000 to the Debtor even though it has also agreed to withdraw its proof of claim seeking $14,811,203.23 in indemnity for legal fees purportedly incurred by BIW in defending the DVL sand OCC Lawsuits. Typically, when the debtor-creditor relationship is adjusted, the debtor would be the party agreeing to pay the creditor on a negotiated allowed proof of claim amount. Instead, the $1,000,000 in cash in this case is being used by BIW literally to purchase the Debtor's acquiescence and assistance in obtaining the findings of fact and conclusions of law it desires to use to avoid liability to DVL and OCC. It is doing this by paying the Debtor to stand down from the legal position it has firmly asserted against BIW in the DVL Lawsuit for over three years.

Given the exceptional nature of the Settlement and the fact that it attempts to obtain relief for a non-Debtor that the non-Debtor (BIW) will then use in a separation action against a third-party (DVL) and *requires* as a settlement term a specific preclusive judicial outcome and analysis by the bankruptcy court on numerous matters that have nothing to do with the Debtor's title 11 case, a stay while the District Court decides DVL's motion to withdraw the reference is well warranted.

## II.   The Reference Should Be Withdrawn On Mandatory Grounds

In order to make a decision on the Settlement Motion and adjudicate with respect to the findings of fact and conclusions of law currently presented, the bankruptcy court will be required to consider more than the mere application of CERCLA to the facts. This is so because the bankruptcy court will be required to decide whether the findings of fact and conclusions or law proposed, and that BIW will then use in the District Court to avoid CERCLA liability to DVL and to OCC, violate CERCLA's prohibition on avoidance of liability by contract. This involves far more than "[t]he

4

application of established federal law to particular facts." *Antioch Co. Litig. Trust v. Miller (In re Antioch Co.)*, 435 B. R. 493, 497 (Bankr. S.D. Ohio 2010)[4]. CERCLA prohibits liability avoidance through transfer by contract. It is DVL's long held position that when BIW merged with 1984 Congoleum, it succeeded to Congoleum-Nairn's liabilities as an Owner and Operator under CERCLA. *See Occidental Chemical Corporation v. 21st Century Fox America, et al.*, Civil Action No. 18-11273 (D. N.J. September 11, 2020) (*citing United States v. General Battery Corp.*, 423 F.3d 294, 297-98 (3d Cir. 2005) (exception to successor non-liability includes liability by merger or consolidation); *United States v. Bestfoods*, 524 U.S. 62-64, 118 S. Ct. 1876 (1998).[5] BIW falls squarely within the exception by merger and bears all liability for Congoleum-Nairn's activities under CERCLA (and the New Jersey Spill Act). Nor did the 1986 transactions (on which BIW and the Debtor seek extensive findings and conclusions from the bankruptcy court) extinguish BIW's liability to DVL for Congoleum-Nairn's activities, even if BIW's interpretation of the subject contracts prevails. Under § 107(e)(1) of CERCLA, 42 U.S.C. § 9607(e)(1), which incorporates federal common law, a liable party cannot divest itself of CERLCA liability by attempting to transfer

---

[4] BIW attempts to use *Antioch* against DVL on the stay question. However, in *Antioch* the complaint at issue did not assert on its face a cause of action under non-bankruptcy federal law. In this case, DVL clearly pleaded CERCLA in Count I of its Amended Complaint. *See* Exhibit B to the Certification of Anthony R. Twardowski, Esq. In Support of the Renewed Motion of DVL, Inc. and DVL Kearny Holdings, LLC for Entry of An Order Granting Relief From the Automatic Stay Pursuant to Section 362 of the Bankruptcy Code at 8-10. Bankruptcy Dkt. 355-6. Moreover, in *Antioch* the complaint at issue pleaded state law causes of action, causes of action under ERISA and causes of action under the Bankruptcy Code (equitable subordination under § 510(c) and preferences under § 547). The movants in *Antioch* argued that the state law causes of action pleaded against them were pre-empted by ERISA, leading the bankruptcy court to note that "[i]f the non-bankruptcy causes of action are pre-empted y ERISA, those causes of action would be dismissed and the Bankruptcy Court would not be presiding over non-bankruptcy causes of Action." *Antioch*, 435 B. R. at 498. There is no pre-emption issue or Bankruptcy Code causes of action pleaded in DVL's Amended Complaint and *Antioch* is simply inapposite. *See* footnote 4.

[5] New Jersey courts have applied the same successor non-liability exceptions under the New Jersey Spill Act. *See State, Dept. of Environmental Protection v. Ventron Corp.*, 94 N.J. 473, 503, 468 A.2d 150, 165 (1983)*; DOT v. PSC Resources, Inc.*, 175 N.J. Super. 447, 470, 419 A.2d 1151, 1164 (N.J. Super. 1980).

that liability to another party. *See Occidental Chemical Corporation v. 21st Century Fox America, et al.*, Civil Action No. 18-11273 (D. N.J. September 11, 2020); *United States v. General Battery Corp.*, 423 F.3d 294, 297-98 (3d Cir. 2005). Such an agreement simply adds another liable party, and the two parties become jointly and severally liable for the entire clean-up.[6] *SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 158 (3d Cir.1996). The fact that BIW (as successor to Owner/Operator Congoleum-Nairn) and the Debtor (as asset/liability purchaser) may have a common share of liability to DVL does not change the fact that BIW is also fully liable to DVL for that share. While DVL expects BIW to disagree with its analysis, that disagreement, which involves applying CERCLA, a non-title 11 federal statute, should be decided in the District Court.

Thus, when considering the Settlement, the bankruptcy court will be required to interpret CERCLA's liability avoidance prohibitions in the context of the 1986 transaction documents and determine the impact of its analysis in two separate CERCLA actions pending in the District Court. This is a far more extensive analysis than a routine application of CERCLA to a set of facts and presents potentially novel and substantial CERCLA issues.[7] Because a "substantial and material" examination of non-bankruptcy federal law is essential here to resolve the issues raised in the Settlement Motion (and in the BIW Adversary if it is ever adjudicated), withdrawal of the reference must be granted. *See In re Anthony Tammaro, Inc.*, 56 B.R. at 1003 (finding withdrawal of reference mandatory where "resolution of the proceeding requires a substantial and material consideration of both Title 11 and non-code Federal law"); *see also In re Federated Dep't Stores, Inc.*, 189 B.R. 142, 144 (S.D. Ohio 1995) ("[T]he law requires the Court withdraw reference of a proceeding from the bankruptcy

---

[6] If BIW's interpretation of the 1986 transactions is correct, then those transactions had the effect of adding the Debtor as a party liable to DVL for the former Congoleum-Nairn Flooring Business under the first common law exception to successor non-liability recognized at federal and New Jersey common law, which is liability by contract.

[7] *LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.)*, 193 B. R. 669, 673-74 (S.D.N.Y. 1990) (involving question of the bankruptcy discharge).

court when the proceeding requires consideration of both bankruptcy law and non-bankruptcy federal law."); *In re C-TC 9th Ave. P'ship*, 177 B.R. 760, 754 (N.D.N.Y. 1995) (finding mandatory withdrawal where "complicated interpretive issues. . . have been raised under non-Title 11 federal laws").

### III.    The Reference Should Also Be Withdrawn On Permissive Grounds

BIW argues that DVL cannot obtain permissive withdrawal of the reference because the Settlement Motion is "core" for the simple reason that it is titled and presented to the bankruptcy court in the form of a settlement approval motion under Fed. R. Bankr. P. 9019.  This ignores reality.

Rather than rely solely on how a proceeding is titled or presented to determine its core or non-core status, the Third Circuit takes a functional approach, explaining that "a proceeding is core (1) if it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999).  Non-core proceedings "include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." *Id.* at 837 (citing 28 U.S.C. § 157(c)(1)); *but see Stern v. Marshall*, 564 U.S. 462, 469, 493 (2011) (Article III of the constitution prohibits Congress from vesting a bankruptcy court with authority to finally adjudicate certain claims, such as private common law claims, even though they may be listed as "core" in 28 U.S.C. § 157(b)). *In re Millennium Lab Holdings II, L.C.*, 945 F. 3d at 136 ("The third take away from *Stern* is that, when determining whether a bankruptcy court has acted within its constitutional authority, courts should generally focus not on the category of the 'core' proceeding but rather on the content of the proceeding.").  Under this functional standard, the Settlement Motion is not "core."

The principal matters that the Debtor and BIW attempt to resolve through the Settlement

7

Motion and the BIW Adversary do not invoke substantive rights under title 11 and can just as easily arise in the DVL Lawsuit, where they have in fact arisen previously and where BIW agrees in its opposition, they could arise again.[8] There is nothing in any of the lengthy proposed findings of fact and conclusions of law sought by the Settlement Motion that have anything whatsoever to do with the Debtor's substantive rights under title 11; rather, all ultimately deal with BIW's environmental liabilities to non-debtors under other federal (and state) law and/or BIW's successor liability pursuant to a series of corporate transactional documents that are governed by state law. Nor does the interpretation of the June 7, 2010, confirmation order from Congoleum's prior chapter 11 case invoke any substantive title 11 rights *per se* and should be interpreted by the District Court, which wrote the confirmation order, and is the tribunal where DVL, BIW and the Debtor have been located since June 2017.

### IV.  A Stay Will Not Stop This Chapter 11 Case "In Its Tracks."

DVL seek**s** a stay of only the Settlement Motion and the BIW Adversary. The rest of the Debtor's chapter 11 case would not be subject to the stay and could proceed. BIW (a wholly-owned subsidiary of General Dynamics Corporation) is well able to hold onto its $1,000,000 while this matter is adjudicated in the District Court. The Debtor's assets and entire operations have been sold and any aspects of that transaction that remain to be completed may proceed. The DVL Lawsuit in the District Court is also stayed at present and BIW and OCC agreed long ago to hold off on litigating against one another in the Occidental Lawsuit. There is no material harm to BIW or the Debtor from a stay being granted under these circumstances.

### V.  DVL Has Timely and Appropriately Asserted Its Rights In This Matter

BIW complains that DVL's rights are fully protected by its ability to participate in the

---

[8] "At most, these filings might only change which court addresses the settlement in the first instance." Opposition at 2.

8

upcoming hearing on the Settlement Motion and the confirmation of the Debtor's liquidating plan. This is a non-argument. Courts routinely criticize parties or weigh their decisions against parties for failing to act to protect their rights to the utmost in multi-faceted chapter 11 litigation, even concluding at times that parties' rights have been waived by their failure to act more fully. *E.g. Musilnov v. Alabama Marble Co.*, 534 B. R. 820, 832 (N. D. Al. 2015) (noting failure of party to seek a stay pending appeal of a confirmation order). If DVL had not moved for relief from the stay, sought an extension of the claims bar date, moved to intervene in the BIW Adversary, appealed the denial of that intervention motion, moved to withdraw the reference and taken the other steps that it has taken to date in this case, it would surely have been met with arguments from BIW and the Debtor at the confirmation and settlement hearing that it somehow relinquished its rights by not having acted more extensively. BIW has shown its colors on this issue before when it objected to DVL's motion to intervene in the BIW Adversary, arguing that DVL had been dilatory by not moving to intervene until three months after BIW's adversary complaint had been filed, despite the absence of any responsive pleadings or discovery in the case.[9]

## VI. DVL Will Be Harmed If A Stay Is Not Entered

If a stay is not entered and DVL's motion to withdraw the reference is not decided before the Settlement hearing, DVL's only likely recourse if the Settlement is approved, is to appeal that decision to the District Court under a near-impossible "abuse of discretion" standard, which is far more difficult than the standard of review it would face following an adjudication in the District Court, whose opinion would be reviewed based on a "clearly erroneous" standard for issues of fact and a *de novo* review standard for issues of law. *Will v. Northwestern University (In re Nutraquest, Inc.)*, 434 F. 3d 639, 644 (3d Cir. 2006); *W. R. Grace & Co. v. Chakarian (In re W. R. Grace & Co.)*, 591 F. 3d 164, 170, n. 7 (3d Cir. 2009). And if DVL were to wait until after plan confirmation to

---

[9] BIW Adversary, Dkt. No. 16 at 3.

appeal the Settlement, it would most surely face a "mootness" argument. *See Samson Energy Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 728 F. 3d 314, 320 (3d Cir. 2013).

There is obvious harm to DVL from the denial of a stay and no concomitant harm of any measure to BIW or the Debtor if a stay is granted.

## VII. BIW Is Forum Shopping

In an effort to "turn the tables", BWI denies the obvious by arguing that DVL, not BIW, is the former shopper. The record shows otherwise.

All DVL has ever done since this chapter 11 case commenced on July 13, 2020, is attempt to have the DVL Action proceed in the District Court where it began on June 12, 2017 – twice it has moved for relief from the stay, once it has moved to extend the proof of claim bar date, it has requested that the District Court lift the discovery stay as to BIW and has now moved to withdraw the bankruptcy reference, all with one aim in mind – to have the DVL Lawsuit in the District Court proceed. BIW, on the other, has sought refuge in two separate tribunals other than the District Court in its pursuit of its desired result, the United States District Court for the District of Maine[10] and now the bankruptcy court, where it filed both the BIW Adversary[11] and the Settlement Motion as its attempted vehicles. BIW has, and always has had, the ability to fully and fairly litigate the same issues it now presents through the Fed. R. Bankr. 9019 settlement process in the District Court, but has twice attempted to go elsewhere.

## VIII. DVL Has Standing to Withdraw the Reference Of the BIW Adversary

DVL is a creditor and party-in-interest in the Debtor's chapter 11 case, being listed as a contingent claimant three different times on the Debtor's Schedules.[12] As such, DVL has an absolute

---

[10] *Bath Iron Works Corporation v. Congoleum Corporation*, Civil Action No. 18-cv-00405-GZS, United States District Court for the District of Maine, Dkt. 1.
[11] BIW Adversary, Dkt. 1.
[12] Bankruptcy Dkt. No. 198, Schedule E/F at p. 144, No. 3416.

10

right to intervene in any adversary proceeding in this case. *In re Marin Motor Oil, Inc*., 689 F. 2d 445, 447, 453 (3d Cir. 1982). Denial of intervention when an absolute right to do so is claimed, is a final and appealable decision. *Id*. at 447. Hence, in the bankruptcy context there is no reason or requirement that DVL intervene to assume the role of a plaintiff or a defendant in a specific adversary proceeding when its standing to be heard does not depend on that status. 11 U.S.C. § 1109(b). Moreover, 28 U.S,C. § 157(e) permits the withdrawal of the reference of a title 11 case "in whole or in part" "on timely motion of any party" and does not require that DVL be a named plaintiff or defendant in a specific adversary proceeding to seek to have the reference of that adversary proceeding withdrawn. The Settlement Motion was also filed in the BIW Adversary, in which BIW specifically asks the bankruptcy court to declare that BIW is not liable to DVL in the DVL Lawsuit; DVL's interest being plain and obvious. *See* BIW Adversary, Dkt. No. 1 at 23, 25; No. 22.

### IX.    Reply to Certain Authorities Cited By BIW

BIW cites *In re Millennium Lab Holdings, II, LLC*, 575 B. R. 252, 261-76 (Bankr. D. Del. 2017) to support its argument that the bankruptcy court needn't be concerned about the constitutional limits on its powers addressed in *Stern* and related opinions. BIW overstates its case.

*Millennium Lab* (BIW cites to the bankruptcy court opinion rather than the Third Circuit opinion) involved a large, complex plan of reorganization that was being challenged on appeal by certain creditors. The plan of reorganization at issue in *Millennium Lab* involved $100 million of secured debt, consummation of a myriad of complex restructuring transactions, including payments having been made to numerous unsecured creditors, new equity investments and "more than two million commercial transactions, many of which are with new counterparties", which the creditors/appellants were effectively seeking to unwind. Due to these unique circumstances, the Third Circuit denied the creditors relief, but specifically limited its opinion to the "exceptional facts of this case." *In re Millennium Lab*, 945 F. 3d at 126, 141-42.

11

Here, the Debtor has sold its entire operation and all of its assets in a § 363 sale and no longer has employees, customers, investors or financiers. The Debtor is a liquidating shell and the only party at all impacted by a stay or withdrawal of the reference might be BIW, which would suffer no true hard, as it would remain free to advocate its position in the District Court. *Millennium Lab* is a completely different case and simply doesn't apply.

BIW cites to *Schreiber v. Kellogg*, 839 F. Supp. 1157 (E.D. Pa. 1993) to criticize DVL for not offering to post a bond to obtain a stay while its motion to withdraw the reference is pending in the District Court. *Schreiber* is not like this case because it involved the question of whether a bond should have been provided by an appellant pursuant to Fed. R. Civ. P. 62(d) to obtain a stay of a money judgment pending appeal. In *Schreiber* a fixed money judgment had been entered by the district court after a bench trial. In it opinion, the district court discussed the discretionary nature of requiring a bond under Fed. R. Civ. P. 62 and the power courts have to waive the requirement of a bond. *Id*. at 1159. Ultimately, the district court in *Schreiber* required a bond. *Id* at 1162.

DVL's motion for a stay is brought under Fed. R. Bankr. P. 5011(c), which does not state that a bond is required. To the extent DVL's motion seeks a stay pending its appeal to the District Court of the denial of its motion to intervene in the BIW Adversary, Fed. R. Bankr. P. 8007(a)(1)(B) refers only to "a bond or other security provided to obtain a stay of judgment" and Fed. R. Bankr. P 8007(c) grants the bankruptcy court and the District Court discretion on the question of whether or not to require an appeal bond. Fed. R. Bankr. P. 5011(c), 8007.

There is no judgment outstanding in this case. BIW could simply hold its $1,000,000 quite easily as the District Court decided DVL's motion to withdraw the reference. Moreover, Fed. R. Bankr. P. 5011(c) does not state that a bond is required when a stay is sought for a determination in the District Court of a motion to withdraw the reference.

## X.     **Conclusion**

The bankruptcy court should grant a stay while DVL's motion to withdraw the reference is decided.

                                                         Respectfully submitted,

Dated: December 10, 2020                              *Eitan D. Blanc*
                                                     Eitan D. Blanc, Esq.
                                                       Anthony R. Twardowski, Esq. (admitted *pro hac vice)*
                                                       Earl M. Forte, Esq. (admitted *pro hac vice*)
                                                     **Zarwin Baum DeVito Kaplan Schaer Toddy, P.C.**
                                                     2005 Market Street, 16th Floor One Commerce Square Philadelphia, PA 19103
                                                     Tel: (215) 569-2800
                                                     E-mail: eblanc@zarwin.com
                                                     artwardowski@zarwin.com
                                                     emforte@zarwin.com

                                                     Attorneys for DVL, Inc. and DVL Kearny Holdings, LLC

13