UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE: | . | Case No. 20-18488(MBK) |
| | . | |
| CONGOLEUM CORPORATION, | . | |
| | . | |
| Debtor. | . | |
| . . . . . . . . . . . . . . | . | |
| | . | Adv. No. 20-01439 (MBK) |
| BATH IRON WORKS | . | |
| CORPORATION, | . | |
| | . | |
| Plaintiff, | . | |
| | . | Clarkson S. Fisher |
| v. | . | U.S. Courthouse |
| | . | 402 East State |
| CONGOLEUM CORPORATION, | . | Trenton, NJ 08608 |
| | . | |
| Defendant. | . | December 11, 2020 |
| . . . . . . . . . . . . . | . | 11:50 a.m. |

TRANSCRIPT OF MOTION HEARING
BEFORE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

For the Debtor:          Cole Schotz P.C.
                         By:  WARREN A. USATINE, ESQ.
                              FELICE R. YUDKIN, ESQ.
                         25 Main Street
                         Hackensack, NJ 07602

Audio Operator:          Kathleen Morris

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311     Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES (Cont'd):

For the U.S. Trustee:          Office of the U.S. Trustee
                               By:  JEFFREY M. SPONDER, ESQ.
                               One Newark Center
                               Newark, NJ 07012

For DVL, Inc. and DVL          Zarwin Baum DeVito Kaplan Schaer &
Kearney Holdings, LLC:          Toddy, P.C.
                               By:  EARL M. FORTE, ESQ.
                                    ANTHONY R. TWARDOWSKI, ESQ.
                                    EITAN D. BLANC, ESQ.
                               One Commerce Square
                               2005 Market Street, 16th Floor
                               Philadelphia, PA 19103

                               Post & Schell, PC
                               By:  PAUL M. SCHMIDT, ESQ.
                               Four Penn Center
                               1600 John F. Kennedy Boulevard
                               Philadelphia, PA 19103

For Simplon                    Wollmuth Maher & Deutsch, LLP
International, Ltd.:            By:  JAMES N. LAWLOR, ESQ.
                               500 Fifth Avenue
                               New York, NY 10110

For the Official               Lowenstein Sandler, LLP
Committee of                   By:  JEFFREY D. PROL, ESQ.
Unsecured Creditors:           One Lowenstein Drive
                               Roseland, NJ 07068

For General Dynamics-          Wasserman Jurista & Stolz, PC
Bath Iron Work Corp.:          By:  DANIEL STOLZ, ESQ.
                               110 Allen Road, Suite 304
                               Basking Ridge, NJ 07920

                               Jenner & Block
                               By:  CATHERINE L. STEEGE, ESQ.
                                    WADE THOMPSON, ESQ.
                                    MICHAEL A. DOORNWEERD, ESQ.
                               353 N. Clark Street
                               Chicago, IL 60654

For Liberty Mutual             Dentons US, LLP
Insurance Company:             By:  ROBERT B. MILLNER, ESQ.
                               1221 Avenue of the Americas, 25th Fl.
                               New York, NY 10020

TELEPHONIC APPEARANCES (Cont'd):

For Occidental            Richards, Layton & Finger
Chemical Corporation:     By:  RUSSELL C. SILBERGLIED, ESQ.
                          One Rodney square
                          920 North King Street
                          Wilmington, DE 19801

                          Langsam Stevens Silver & Hollaender
                          By:  LARRY D. SILVER, ESQ.
                          1818 Market Street, Suite 2430
                          Philadelphia, PA 19103


                          - - -

4

1          THE COURT:  Okay.  Good afternoon, everyone.  This is

2    Judge Kaplan.  Thank you for working with the Court on its

3    calendar issues and accommodating the Court as well as

4    participating through CourtSolutions.

5          As a reminder, I'll ask that everyone please remain

6    muted unless you are speaking or need to raise a concern to the

7    Court.  That way, we reduce any negative feedback and have a

8    proper recording.

9          Kathy, I'm going to ask that you tag this hearing.

10          THE CLERK:  Okay, Judge.

11          THE COURT:  All right.  Thank you.

12          We are here on several Congoleum matters,

13    specifically a motion to stay docketed at Number 28 in the

14    adversary proceeding filed on behalf of DVL, a stay pending the

15    District Court's determination of a withdrawal of the reference

16    motion.  We are also here on a stay filed on behalf of DVL

17    seeking a stay pending appeal of this Court's prior order

18    denying DVL the opportunity to intervene in the adversary

19    proceeding.  There's also a -- a continuing adjourned stay

20    relief motion in the -- with respect to the DVL litigation in

21    the District Court.  And we're also going to discuss as a

22    pre-hearing conference how we will proceed on the 28th with

23    respect to the evidentiary hearing on a -- on the proposed

24    settlement.

25          Let me have appearances now.  I'll start asking for

1 appearances by the debtor.

2          MR. USATINE:  Good afternoon, Your Honor.  Warren

3 Usatine, Felice Yudkin, Cole Schotz, on behalf of the debtor.

4          THE COURT:  All right.  Thank you.

5          On behalf of the committee?

6          MR. PROL:  Good afternoon, Your Honor.  Jeffrey Prol,

7 Lowenstein Sandler, for the committee.

8          THE COURT:  Thank you.

9          On behalf of Simplon?

10          MR. LAWLOR:  Good afternoon, Your Honor.  James

11 Lawlor, Wollmuth Maher & Deutsch.

12          THE COURT:  Thank you.  Good afternoon.

13          On behalf of Bath Iron Works and General Dynamics?

14          MR. STOLZ:  Good afternoon, Your Honor.  Daniel

15 Stolz, Wasserman, Jurista & Stolz, local counsel.  I'll let my

16 co-counsel make their appearances, because they will be

17 primarily arguing today.

18          THE COURT:  All right.  Thank you.

19          MS. STEEGE:  Good afternoon, Your Honor.  Catherine

20 Steege on behalf of Bath Iron Works.

21          THE COURT:  Thank you.

22          MR. WADE:  Hello, Your Honor.  This is Wade Thompson,

23 also, on behalf of Bath Iron Works.

24          THE COURT:  Good afternoon.  Thank you.

25          On behalf of --

6

1          MR. DOORNWEERD:  And Mike Doornweerd, Your Honor,

2 also --

3          THE COURT:  Oh, I'm sorry.

4          MR. DOORNWEERD:  -- on behalf of Bath -- yeah, Mike

5 Doornweerd, also on  behalf of Bath Iron Works, although

6 Ms. Steege and Mr. Thompson will be primarily speaking.  Thank

7 you.

8          THE COURT:  All right.  Thank you.

9          On behalf of DVL?

10          MR. TWARDOWSKI:  Anthony Twardowski, Your Honor.  And

11 I'm here with Earl Forte.  And Eitan Blanc is also on the line.

12          THE COURT:  All right.  Thank you, gentlemen.

13          MR. SCHMIDT:  And, Your Honor, also --

14          THE COURT:  Oh, go ahead.

15          MR. SCHMIDT:  Also Paul Schmidt from Post & Schell on

16 behalf of DVL.

17          THE COURT:  All right.  I do have noted on --

18 there's -- there are certain pro hac vice applications that are

19 pending.  For purposes of today's hearing, I am welcoming you

20 all to New Jersey.  We don't need to address the pro hac

21 issues.

22          On behalf of Occidental?

23          MR. SILBERGLIED:  Thank you, Your Honor.  It's Russ

24 Silberglied at Richards, Layton & Finger.  I think I'm one of

25 those pro hac motions that's pending.

7

1          THE COURT:  All right.  Thank you.

2          MR. SILVER:  And, Your Honor, this is --

3          THE COURT:  And -- yes?

4          MR. SILVER:  Your Honor, this is Larry Silver of

5    Langsam Stevens Silver & Hollaender, also pro hac vice.

6          THE COURT:  All right.  Thank you.

7          On behalf of Liberty Mutual?

8          MR. MILLNER:  It's -- good afternoon, Your Honor.

9    It's Robert Millner on behalf of Liberty Mutual.

10          THE COURT:  Good afternoon.

11          And I should not forget the Office of the U.S.

12   Trustee.

13          MR. SPONDER:  Thank you, Your Honor.  Good afternoon.

14   Jeff Sponder from the Office of the United States Trustee.

15          THE COURT:  All right.  Are there -- have I missed

16   anyone?  Good.  Then let's proceed.

17          Does anybody take issue with the matters identified

18   as being on the docket and on the calendar for today?  Do I

19   have them all?

20          MR. TWARDOWSKI:  I think you do, Your Honor.

21          THE COURT:  All right.  So silence is always good.

22   All right.  Thank you.

23          Then let me -- I'm going to treat the two motions for

24   seeking the stay, one pending the withdrawal motion -- a

25   resolution of the withdrawal motion -- withdrawal of the

1 reference and also the stay pending appeal of the Court's prior

2 order denying DVL the right to intervene, I'm going to treat

3 them together for argument purposes.

4          I have, at the outset, I guess, some clarifications I

5 want to make in my own mind as to what's going on in these

6 matters and also some questions.  And then those questions can

7 lead into the presentation on behalf of DVL first since they

8 are the movant joined, as they were, I believe, by Occidental.

9 And let me start with -- and then counsel can correct me if I

10 err or can expand upon my comments.

11          At issue in the one single count in the adversary

12 proceeding brought by Bath Iron Works before the Bankruptcy

13 Court is a single count seeking, in essence, to absolve Bath

14 Iron Works of liability, looking to -- for environmental

15 liabilities in connection with the District Court action that's

16 pending.  More specifically, the count seeks a declaratory

17 ruling by this Court that, as a result of the Bankruptcy Court

18 order approving a sale of the policy -- I believe it was a

19 Century -- and the confirmation order entered by the District

20 Court in 2010, there was determinations made by those courts

21 that Bath Iron Works was not liable for any liabilities, "any"

22 being the key, arising from the Congoleum floor business or

23 Resilient Flooring.

24          The proposed settlement that has been reached between

25 the debtor, the committee in support and Bath Iron Works

1  provides for a withdrawal of a approximately 14 --

2  14-and-a-half-million-dollar claim by Bath Iron Works, a $1

3  million payment.  The settlement is bottomed on a requirement

4  that this Court approve a settlement that includes findings of

5  facts and conclusions regarding the scope of Bath Iron Works'

6  liability under the 2010 confirmation order or the potential

7  liability.

8          In essence, my understanding is that the parties have

9  agreed to have this Court rule, essentially, on the scope and

10  parameters of the 2010 confirmation order and the preceding

11  2006, I believe, sale order.  My further understanding is that,

12  if the Court chooses not to undertake this effort to rule on

13  the scope of the orders entered in the initial -- the first

14  bankruptcy of Congoleum or doesn't make the findings sought and

15  favorable to Bath Iron Works, there will be no settlement.

16  There will be no payment of the million dollars or withdrawal

17  of the claim.

18          So my question would be, if I take that route -- and

19  if I were to not approve the settlement or not make those

20  findings, then there seems to be little point in Bath Iron

21  Works continuing the adversary proceeding.  It's not going to

22  get any better for Bath Iron Works than it would at the hearing

23  on the settlement.  And, thus, there would be a termination of

24  the adversary proceeding.  If I approve the settlement, of

25  course, then DVL and Occidental and others can appeal that

1  ruling and also argue the relevancy or the appropriateness of

2  my findings in the District Court or any other forum.

3        So -- and -- so I guess my first question directed

4  towards DVL would be, if the Court doesn't approve the

5  settlement and -- or doesn't agree to the findings that are

6  sought, why are you all here today?  What's the purpose in --

7  there won't be an adversary proceeding going forward in either

8  event.  Either it's going to be settled or there really won't

9  be anything for Bath Iron Works to pursue.  So why are we --

10 why is there a withdrawal of the reference effort, and why is

11 there an intervention effort?

12       Let me also, before I turn to you, have you also

13 address another concern I have as -- and -- as part of your

14 presentation.  If I look at -- bear with me -- a chronology of

15 what's gone on here since mid-October, I look at the fact that

16 on October 21, DVL filed a motion to intervene.  And in their

17 brief in support of the motion docketed at ECF Number 14 on

18 pages 2 and 3 and 14 and also in the proposed order, it's

19 clear -- it's repeated several times -- that DVL seeks to

20 intervene solely that it might then move the District Court,

21 pursuant to 28 U.S.C. 157(d), to withdraw the reference of the

22 adversary proceeding filed by BIW against the debtor.

23       Then on November 10th, I deny the motion to

24 intervene.  And then two weeks later, on November 24th, the

25 motion to withdraw the reference is filed.  So my other

1   question is, what was the purpose in filing the motion to

2   intervene?  If it was only -- if it was necessary to file a

3   motion to withdraw the reference, then why did -- why was it

4   simply the next step to file the withdrawal -- the motion to

5   withdraw the reference in any event?  It seems that kind of

6   ignored my ruling.

7           MR. FORTE:  Your Honor --

8           THE COURT:  So --

9           MR. FORTE:  Okay.

10          THE COURT:  -- let me turn to DVL.

11          MR. FORTE:  Okay.  Your Honor, thank you.  First of

12  all, this is Earl Forte.  I want to emphasize the fact that we

13  are continuing to object to the entry of final orders and

14  judgments to the Bankruptcy Court.  We have to do that, and

15  that's what we're doing, notwithstanding the procedures we've

16  been discussing with Bath Iron Works.

17          Since Your Honor denied our motion to intervene, the

18  settlement motion was filed in the main case.  So we renew --

19  we filed a motion to withdraw the reference, because that was

20  filed in the main case, and it seeks to settle the adversary.

21  We filed in the adversary namely as a precautionary matter,

22  because we're not a plaintiff; we're not a defendant.  We

23  simply could have filed that in the main case, but we elected

24  to request the right to intervene.

25          We thought that was the more appropriate way to do

1   it, and that's what we did.  And then we had to react to the

2   filing of the settlement motion which we didn't know was coming

3   until October 13th, I believe.  That's the explanation.  So

4   that's the history of that.

5          And I don't -- if the Court has any more questions, I

6   can certainly answer them.  If Your Honor denies the settlement

7   and doesn't enter all the findings and conclusions, et cetera,

8   then we'll decide what we're going to do.  Obviously, that's a

9   result that DVL would want.

10          If Your Honor approves the settlement, presumably we

11  would have some right to appeal.  But, of course, the standard

12  of review would be far more difficult for us.  It's a 9019.  It

13  would most likely be reviewed on an abuse of discretion stance.

14  Over at the District Court where we started all this, the

15  District Court has addressed these issues previously and could

16  do it again.  If we were unhappy with the result, and we had a

17  right to appeal, it would be de novo review on issues of law

18  and clearly erroneous on issues of fact.

19          So we have to think that through in the way we do

20  things.  We weren't intending to make extra work or to ignore

21  the Court at all in the steps we were taking.  So that's an

22  explanation.  I can answer any questions the Court may have

23  about that.

24          THE COURT:  All right.  Well, I certainly want to

25  give you the opportunity to argue the motion or supplement your

1  arguments.  Because I have read the papers, including the reply

2  that was filed yesterday, so I'm cognizant of what's been

3  argued in the papers.

4       Let me ask this.  There is several decisions both

5  cited by Bath Iron Works and also that the Court has been able

6  to identify which holds that a non-party to an adversary

7  proceeding does not have standing to file a motion to withdraw

8  the reference of that particular proceeding.  I know Bath Iron

9  Works cited to In Re Innovative Commercial Corp. (sic), which

10  is District of the Virgin Islands.  There's FTC vs. American

11  Institute of Research (sic), 219 B.R. 639.

12       My staff -- my clerk has assisted in identifying

13  In Re New Energy Corp., 2013 WL 1192774, a Bankruptcy Court

14  decision from the Northern District of Indiana in 2013.  And as

15  well as Sharifeh vs. Fox, S-H-A-R-I-F-E-H vs. Fox, 2012 WL

16  469980, Northern District of Illinois, again 2012.

17       And they all stand, and they all cite, the

18  proposition that a non-party does not have standing to withdraw

19  the reference.  So can you point to me authority specific to an

20  adversary proceeding where a party that is neither a plaintiff

21  or a defendant has standing to withdraw the reference?  I think

22  this becomes relevant when I have to make a decision as to --

23  as -- a ruling on whether or not there's a likelihood of

24  success on the motion to withdraw the reference.

25       MR. FORTE:  Your Honor, could I --  I saw those

1  cites.  And I didn't read all the opinions.  I'm not going to

2  say I had a chance to read all of those.  I don't think any of

3  them are binding.  I would like an opportunity to brief that

4  issue more thoroughly specifically.  I can do that promptly.

5         But it's difficult to understand that when the

6  statute says any party has a right to seek withdrawal of any

7  proceeding.  And, in fact, you do see opinions out there where

8  withdrawal of the reference of adversaries was sought in the

9  main case.  And it's typically where motions to withdraw the

10 reference are filed.

11        And it strikes me as a difficult position, because if

12 we had intervened as a plaintiff or defendant in the case, what

13 we would have heard was we submitted to the claims process and

14 the Court, and we would have lost our right to have a jury

15 trial in the District Court.  That's exactly what would have

16 happened.  And we can't afford to let that go.  We made that

17 demand three years ago.

18        THE COURT:  All right.  I'm going to -- obviously --

19        UNIDENTIFIED SPEAKER:  And Your Honor --

20        THE COURT:  -- allow your adversary to respond, but

21 why don't you continue in support of your motions.

22        MR. FORTE:  Okay.  Your Honor, well, first of all, we

23 are seeking to withdraw -- we're seeking to withdraw two items:

24 the adversary and the settlement.  Okay?  The settlement motion

25 was filed in the main case.  We're not seeking to withdraw the

1  entire proceeding.  We're not shutting down the whole case as

2  the debtors have said in their papers.

3         And we're seeking the stay principally under

4  Bankruptcy Rule 5011(c).  Our fallback position, our

5  alternative position, is a stay pending appeal under Rule 8007.

6  So we have two bases for that.

7         If Your Honor is familiar with all the briefs, I

8  won't go over all of them, all those points again.  I think we

9  have here a matter that doesn't involve bankruptcy law.  The

10  issues relating to surplus and its potential for successor

11  liability exemption is going to be complicated.  It's not a

12  standard application of a known federal statute to a simple set

13  of facts, and the Court will need to think through what's going

14  to happen, not only in our case but in the Occidental case, if

15  these findings and conclusions are entered.

16         They go back to agreements entered into in the 1980s.

17  There's a discussion about the Century settlement from 2006.

18  My client wasn't a party to that.  The 2010 confirmation order,

19  as far as we've been able to dig up, that was never noticed to

20  my -- to our clients.  The claims they have weren't known until

21  2015.

22         We're going to have to weed through all that in the

23  District Courts if the settlement is approved, and we're going

24  to have piecemeal litigation in that part of the issues in

25  dispute in the District Court will be decided in the Bankruptcy

1  Court and sent up and might be subject to appeal, et cetera.

2  They've been raised and discussed previously.  Bath Iron Works

3  is fully capable of advocating for itself in the District

4  Court.

5        So it just seems to me that there's no reason not to

6  let it proceed in the District Court.  And we had asked for

7  relief from the automatic stay to proceed against Bath Iron

8  Works and any insurance proceeds.  We would not attempt to

9  collect a judgment against the debtor.

10        I also would like to mention a couple of the cases

11  that were cited in the brief that I -- we didn't address in our

12  reply that we don't think really apply at all.  Bath Iron Works

13  cited <u>Connie's Trading</u> out of the Southern District of New

14  York.  I just would point out that at least the version of that

15  that appears on Lexis is the magistrate's recommendation.  It's

16  not a court opinion.

17        And the trustee in that case had brought a fraudulent

18  transfer action under the provisions of the Bankruptcy Code

19  and -- about the strong arm powers in Section 548, I believe.

20  And they were -- the movants were attempting to withdraw the

21  reference of that.  Well, no one's ever going to get that.

22  That's clearly a bankruptcy claim.  And they were seeking to

23  apply the Wagoner rule and so forth to bar the fraudulent

24  transfer claim which is also just a deadpan loser.  It's

25  completely inapplicable to the current situation.

1           We have the same situation -- or similar situation

2   in Hudson Palmer Homes, an EDPA case that was cited by the Bath

3   Iron Works.  And in that, the trustee filed a motion to approve

4   the settlement under 9019 and then moved to withdraw the

5   reference of his very own 9019 motion which certainly didn't

6   seem to make a lot of sense.

7           Lazy Days, which they also cite -- that's a Third

8   Circuit opinion -- really had to do with Section 350(a) of the

9   Code and whether the Bankruptcy Court could reopen a case and

10  whether or not it had given an advisory opinion to a state

11  court.  So there were two Bankruptcy Code issues.  We don't

12  have any Bankruptcy Code issues in the substance of this

13  settlement.

14          I think the Third Circuit and the Supreme Court say

15  you look past the labels and ask what is really being done.

16  And the Court's being asked to adjudicate issues between two

17  non-debtors in two CERCLA actions in the District Court.

18  There's no need for it.  There's absolutely no reason why this

19  has to be done in the Bankruptcy Court.  It doesn't relate to

20  the case.

21          And, I think, given the unique nature of the

22  settlement and, I think, particularly the way the

23  million-dollar payment is going, Bath Iron Works would normally

24  negotiate a proof of claim amount of some kind.  And the debtor

25  would agree to pay it.  Whatever cents on the dollar would be

1    allowed -- would be paid based on the allowed amount.  We have

2    Bath Iron Works basically paying to get the results it wants

3    and then not agreeing to pay if it doesn't get the results it

4    wants.

5           So we are seeking withdrawal of the reference of the

6    settlement motion as well as the adversary.  And, Your Honor, I

7    understand that it's made unique in that the settlement motion

8    resolves the adversary.

9           As far as the harms go, you know, that's

10   well-briefed.  There's nothing that the debtor is doing that

11   couldn't wait.  They're liquidating.  They have no employees,

12   They have no operations.  They don't have a bank or investors

13   that are being hurt like they did in Millennium Labs and some

14   of those other larger cases where there were many, many people

15   who would have been hurt if the appeal had been granted.  We

16   don't have anything like that here.

17          My client is going to be stuck with a settlement to

18   undo, possibly in one or two different courts: Occidental in

19   the Occidental case, DVL in the DVL case.  And there's no

20   reason to do it.  I mean, I think Bath Iron Works simply

21   figures it's the easiest place to go.  They can offer some

22   money.  The debtor needs it, I'm sure.  That's no reason to

23   approve it.

24          To the public interest, I think -- I think, you know,

25   we do have a right to preserve the integrity of the judicial

1   process in the District Court and not have this broken up into

2   piecemeal litigation and decided in this way.  There's no

3   reason for it.

4          Bath Iron Works' rights are fully protected in the

5   District Court.  This is the second place they've gone outside

6   the District Court to try to get this resolved.  As the Court

7   knows, they filed in Maine.  That got kicked back to New

8   Jersey.

9          Why is this any different?  It doesn't really affect

10  the estate anymore.  They won't get their million dollars, at

11  least for now.  But Bath Iron Works admits in its papers this

12  can be decided in the District Court.  There's nothing core

13  about this at all.  It was the subject of one interlocutory

14  opinion that's on Lexis already.

15         THE COURT:  Counsel, are you there?  I'm not hearing

16  you.

17         MR. FORTE:  You're not hearing me?

18         THE COURT:  I just --

19         MR. FORTE:  Okay.  I'm here.  I'm --

20         THE COURT:  No.  You're --

21         MR. FORTE:  Your Honor, I'm basically done with my

22  presentation unless the Court has questions.

23         THE COURT:  Not at this juncture.  Thank you.

24         Is there anyone who wants to argue in further support

25  of the movant's position?

1          MR. SILBERGLIED:  Yes, Your Honor.  Russ Silberglied,

2   Richards, Layton & Finger on behalf of Occidental.  May I be

3   heard?

4          THE COURT:  Yes, please.

5          MR. SILBERGLIED:  Thank you very much, Your Honor.

6   So we did file a joinder in the stay motion which said that it

7   was in support of the motion to withdraw the reference, and we

8   were careful to say not with respect to the stay pending appeal

9   portion, because, obviously, we were not involved in the

10  adversary proceeding in any way.  So that portion is not

11  applicable to us, but it is a motion to stay in support of

12  withdrawal of the reference specifically of the 9019 motion.

13         So, Your Honor, with that, our attendance today is

14  because of our concern over jurisdiction.  So as I mentioned at

15  the last hearing, we neither filed a proof of claim nor made an

16  appearance.  And that was intentional.  We certainly had claims

17  we could have filed against Congoleum, and we chose not to

18  which, therefore, lowered the unsecured claims pool in this

19  case already.

20         And we did that specifically because we did not want

21  to be subject to the jurisdiction of this Court while we're

22  litigating in other courts.  But what BIW is expressly

23  intending on doing is drawing us back in here anyways.  And

24  that is why we support the withdrawal.

25         So, with that, I have some comments here.  We didn't

21

1  think it was procedurally proper for us to file a reply after

2  BIW filed its objection since we had just filed a joinder, but

3  we have some things to say about it.

4          The first thing is, BIW spends a lot of ink briefing

5  the low legal standard for a 9019 motion and, specifically, the

6  fact that the Court has jurisdiction to approve settlement

7  motions.  The problem with that is, what we're arguing about

8  today is not fairly characterized as a 9019 motion or just a

9  9019 motion.  So those standards are not relevant.

10         A standard settlement would be the portions of this

11 settlement that are the payment of cash in exchange for

12 release, covenant not to sue, take positions in existing

13 litigation.  But this settlement asks the Court to hold the

14 evidentiary hearing, which Your Honor knows.  The case law on

15 9019 motions is that the Court is not supposed to make

16 findings, but, rather, it's supposed to canvass the issues to

17 see if the settlement is fair.  So, in a real sense, this is

18 actually the antithesis of a 9019 motion, and the case law on

19 jurisdiction of the Court to hear a 9019 motion is simply not

20 relevant to that portion.

21         Just so the Court doesn't think that we're

22 exaggerating when we say that the entire point of this exercise

23 is to use those findings in existing District Court litigation

24 against us and DVL, let's focus on just two of those proposed

25 fact findings: NM(b) and NN.  NM(b) says:

1          "Congoleum is the only successor entity potentially

2          liable for any alleged environmental liabilities

3          arising from the former Resilient Flooring Business

4          operations in Kearny, New Jersey, including those

5          complained of in the DVL and Occidental lawsuits

6          pending against Congoleum and BIW.  BIW is not

7          responsible for environmental liabilities" there, et

8          cetera, et cetera.

9      And then NN says:

10         "All of the Court's findings of fact made herein,

11         including those related to successorship, were

12         actually litigated, are necessary to the Court's

13         decision in this settlement order.  The foregoing

14         findings are intended to have preclusive effect under

15         the doctrines of res judicata and collateral

16         estoppel."

17     So they're being very clear.  They're going to use

18 these findings against us, including OCC which has not been a

19 party to these proceedings.

20     And if that weren't enough, let's just think about

21 this logically about what's BIW's need for such findings.  If

22 it were worried that Congoleum was going to take a contrary

23 position in litigation, it would not need 15 pages of findings.

24 Because Section 2.2 of the settlement agreement called

25 "Congoleum's Covenant" would be enough.  Congoleum -- and this

1  is standard stuff:

2          "Congoleum covenants and agrees that the Congoleum

3          parties will not allege and assert in already-pending

4          or future proceedings, including the DVL lawsuit and

5          the Occidental lawsuit, that BIW is a successor," et

6          cetera, et cetera, et cetera.

7          That's the typical way of dealing things.  The

8  addition of 15 pages of findings, therefore, has nothing to do

9  with the two settling parties.  It is to use those findings as

10 an offensive weapon against third parties' impending litigation

11 outside of this court, and that's exactly why there's a

12 jurisdictional problem here.

13         I also want to dispel the notion, Your Honor, which

14 is all over BIW's papers that the 15 pages of findings are

15 simply about interpreting the prior bankruptcy judge's order.

16 While I don't agree, BIW at least has a plausible argument that

17 some of the findings go to that category.

18         But if Your Honor were -- would turn to Roman V or

19 five of those findings -- so it's proposed findings Y through

20 KK, five full pages' worth of findings.  The first sentence of

21 Y reads in relevant part -- I'll ellipse over the very

22 beginning: "The findings" -- excuse me, finding, meaning the

23 2010 order, "that BIW was not responsible for any of the

24 liabilities of the Congoleum flooring business is consistent

25 with the historical operations of BIW and Congoleum."

1        And it goes on then for the next five pages to talk

2   about and to try to make findings of fact concerning the

3   historical operations in an attempt to buttress the prior

4   order.  There's no conceivable way that those can be

5   characterized as interpreting what the Court already found.

6   It's an attempt to buttress it now and, once again, in this

7   Bankruptcy Court, while the litigation is pending in the

8   District Court.

9        Now, even with respect to any findings that could be

10  interpreted as clarifying the prior order, when this Court is

11  deciding whether or not to enter a stay to allow the District

12  Court to consider the motion to withdraw the reference, it

13  should consider that no matter what BIW is telling you, we know

14  that the issue is not cut and dry.

15       First of all, the debtor itself tells you right in

16  this very 9019 motion, paragraph 34 to 35, that its position

17  today remains unchanged that it disagrees with BIW's position.

18  I mean, it specifically says "All liabilities not directly

19  associated with the transferred assets," et cetera, et cetera,

20  "BIW as the surviving corporation."  And then it says, "The

21  debtor disputes BIW's reliance on the prior Congoleum

22  bankruptcy and statements in connection with the Century

23  settlement as an admission on the issue of who has

24  responsibility," et cetera, et cetera.  "The debtor asserts

25  that nothing in the prior Congoleum bankruptcy," et cetera, et

1  cetera, "absolves BIW of environmental liabilities."

2          So that's what the debtor thinks about this position.

3  But it's settling.  And I understand why the debtor might want

4  to do that, but this is not cut and dry.  But the even better

5  evidence of that is that, as Mr. Forte was just mentioning in

6  passing, this very issue was teed up before the New Jersey

7  District Court in the DVL litigation, and the District Court

8  wrote an opinion that's available on Lexis.  It's 2018 U.S.

9  District Lexis 143437, Judge McNulty.

10          Now, certainly, I understand.  It was a motion to

11  dismiss.  The court couldn't grant -- held that it couldn't

12  grant BIW's motion to dismiss, in part based upon 12(b)(6)

13  requirements.  But, in fact, it considered the very competing

14  interpretations of the order at issue here, and it wrote things

15  that are very revealing:

16              "I note that Congoleum has made a reasonable

17              argument.  For example, Congoleum says that its

18              disclaimer of liability in the earlier case

19              encompassed only BIW's liability for asbestos-related

20              personal injury claims, not all possible liability

21              including environmental damage to property.

22              Congoleum's reference to any of the liabilities of

23              Congoleum Flooring Business cannot be divorced from

24              its context which was the adjustment of

25              asbestos-related personal liability claims and

1           insurance coverage therefore in the bankruptcy."

2           The District Court went on to note: "The confirmed

3    plan itself, which is appended to the order as an exhibit,

4    carves out environmental liability from its scope."

5           Now, I'm sure BIW is going to argue in its reply that

6    a motion -- it's just a motion to dismiss opinion, but the

7    Court goes on to say that significant discovery and fact

8    findings would be needed to resolve this point.  That's the New

9    Jersey District Court.

10          So that brings us back to the fundamental question.

11   With this already pending in the District Court, and a motion

12   to withdraw the reference also pending so that it would wind up

13   in the same court, why does it make sense for this Court to

14   make that significant fact finding, especially given the

15   concerns raised about jurisdiction?

16          BIW argues that the Court has the power to clarify

17   its prior order even though it was entered in a prior Chapter

18   11 case by a different judge.  Let's leave aside for a moment

19   whether it can.  The question is why it should.

20          If Your Honor was the judge who entered the prior

21   order, I suppose you might have said I can cut through this,

22   because I know what I meant.  But as of now, the District Court

23   has had to look at this and grapple with these issues more than

24   Your Honor has.

25          Now, BIW, nevertheless, argues that there's no

27

1  jurisdictional issue here, because whether or not BIW is the

2  successor to Congoleum, allegedly it's just a bankruptcy issue,

3  relates to interpreting prior court orders.  Again, looking at

4  the findings that I just showed Your Honor before, they go well

5  beyond that issue.  But in any event --

6        THE COURT:  Counsel?  Counsel?  I'm just going to

7  interject.  I've been pretty generous both -- so far for all

8  counsel, because I recognize this is, essentially, a trial run

9  for the 28th.  But we're not arguing the merits of the

10 settlement motion, just the basis for a stay.

11       MR. SILBERGLIED:  Thank you, Your Honor.  May I leave

12 you, Your Honor, with one final point that goes to

13 jurisdiction?

14       THE COURT:  Sure.

15       MR. SILBERGLIED:  Because, again, the -- jurisdiction

16 is why we believe that it is appropriate to enter a stay.  This

17 is a CERCLA issue.  It's not only a state issue.  Under CERCLA

18 Section 107(e), while the parties can agree between and among

19 themselves to absolve each other of liability or indemnify each

20 other of liability, that has no force and effect against third

21 parties.

22       So even if the 2010 order means that Congoleum agrees

23 with BIW, that can't be used against us.  That can't be used

24 against DVL.  That's what they're trying to do by getting Your

25 Honor to enter these findings.

1    Now, again, I -- I'm not asking Your Honor to make

2  any ruling on that specific issue.  The only reason I'm

3  bringing it up, Your Honor, is to say in deciding over an

4  objection to jurisdiction who should resolve this, whether Your

5  Honor should enter a stay, BIW is telling you only bankruptcy

6  issues are involved here, so you have no jurisdictional issue.

7  This is very much a CERCLA issue, Your Honor.  It's very much

8  an issue of whether, even if that were an interpretation, can

9  you go this far.  And it does not make sense for this Court to

10  be weighing in on that CERCLA issue.

11    Apologies for going beyond what -- where Your Honor

12  expected, Your Honor, and I thank you for the indulgence on

13  that last point.

14    THE COURT:  Thank you, counsel.  Anyone else in

15  support of the movant's position?

16    Then let me turn to the other side of the equation.

17  We'll start with debtor's counsel, unless they want to defer to

18  General Dynamics.  You tell me.  Mr. Usatine?

19    MR. USATINE:  Thank you, Your Honor.  Ms. Yudkin is

20  going to address the motion today on behalf of the debtor.

21    THE COURT:  Thank you.  Ms. Yudkin?

22    MS. YUDKIN:  Thank you, Your Honor.  Felice Yudkin on

23  behalf of the debtor.  I would allow Bath Iron Works to make

24  their arguments first since the debtor filed a joinder to those

25  arguments.  And then, to the extent necessary, the debtors can

1 | weigh in.

2 | THE COURT:  All right.  Let me hear then from Bath

3 | Iron Works and General Dynamics.  Thank you.

4 | MS. STEEGE:  Good afternoon again, Your Honor.

5 | Catherine Steege on behalf of Bath Iron Works.  Your Honor,

6 | first, with respect to the question of withdrawing the

7 | adversary proceeding, we do not believe that DVL has standing

8 | to withdraw that adversary proceeding.  By taking the

9 | procedural route that it did, it was, in fact, ignoring your

10 | order denying their intervention request.  And, more

11 | importantly, it was ignoring what Your Honor said when you

12 | denied that request.  You denied that request, because the

13 | motion was untimely, because the adversary proceeding had been

14 | settled, and a settlement motion was about to be filed.

15 | Every case that was cited to Your Honor by our side,

16 | and no opposing authority was cited by DVL, holds that a motion

17 | to intervene, whether as of right or permissive intervention,

18 | must be timely and that when you seek to intervene into a case

19 | after it's settled, that's not a timely motion.  So they lack

20 | standing to withdraw the reference.

21 | They have a right to appeal that order.  We don't

22 | think they have any chance of success on the merits given the

23 | timeliness requirement and the lack of any case law cited to

24 | Your Honor suggesting you can intervene after a settlement.

25 | And they are not harmed, because they can't object to the

30

1  settlement at the hearing on the 28th.  So, therefore, a stay

2  pending appeal is not appropriate, but a withdrawal of the

3  reference is clearly outside of something they can do because

4  of a lack of standing in that adversary proceeding.

5        Counsel made the comment that 157(d) suggests that

6  anybody in the world can seek to withdraw anything, but that's

7  not actually what 157(d) states.  It states that: "The District

8  Court may withdraw, in whole or in part, any case or proceeding

9  referred under this section, on its own motion or on a timely

10 motion of any party."

11       By denying the intervention motion, DVL was not a

12 party.  Therefore, under 157(d), it's not one of the entities,

13 because it's not a party that can seek to withdraw the

14 reference.  So we do think that the request on the adversary

15 proceeding should be denied.

16       But, in addition, with respect to the settlement

17 motion, Bankruptcy Rule 5011 makes it pretty clear that the

18 grant of a stay pending a District Court's decision on a motion

19 to withdraw the reference is the exception and not the rule.

20 Rule 5011 assumes that the bankruptcy case is going to continue

21 rather than be stayed for very good reason.

22       If a movant could easily bring a bankruptcy case to a

23 halt by filing a motion to withdraw the reference and then

24 seeking a stay while the District Court, which has its own

25 caseload and has to sort through everything to figure out what

1  it's going to do with that motion, such motions will become a

2  tactical choice of every creditor who disagrees with something

3  that's happening in the bankruptcy case.  Withdrawal motions,

4  which by their very nature are breeding grounds for forum

5  shopping, would become even more prone to mischief.  And so,

6  for that reason -- and DVL doesn't really dispute this -- the

7  case law imposes a very heavy burden on movants who seek a stay

8  under Rule 5011.

9       And despite all of the rhetoric and despite

10 Occidental's comments about the merits of the settlement, which

11 we think are appropriately heard on December 28th -- and if

12 they're going to make their objections to the settlement, they

13 should do so, I think, in writing.  I don't think -- I didn't

14 really understand the comment that they didn't put anything in

15 writing, because we had filed our response.  I don't understand

16 how it's more fair to us to start arguing merits without giving

17 us any notice that that's what you're going to do.

18      But in any event -- and I would also note that

19 they're a creditor.  Whether they choose to participate or not,

20 under Tennessee Student Loan vs. Hood (sic), the Supreme Court

21 has made it clear it doesn't matter.  You can choose to stay on

22 the sidelines, but you're still going to be bound if you're a

23 creditor in a bankruptcy case with notice, which they clearly

24 are.

25      But the basic problem with the stay motion and with

32

1  the withdrawal of the settlement motion is that it's built on a

2  series of incorrect premises which, when you go through them,

3  it becomes pretty clear why the motion should be denied.

4  First, they claim that we have to withdraw the reference,

5  because there's forum shopping going on.  Well, what's before

6  the Court is a motion to settle and, as part of that, a

7  determination which really is at the heart of determining what

8  Bath Iron Works' claims are against the estate.  It can't be

9  forum shopping for a debtor to present a settlement motion to

10  the Bankruptcy Court that's presiding over its Chapter 11 case.

11        This Court has exclusive jurisdiction under 1334(e)

12  of all property of this bankruptcy estate.  The reference has

13  been sent to it of the bankruptcy estate pursuing (sic) to the

14  standing orders of the District Court.  It's the only court

15  where the debtor could have filed its settlement motion.  So

16  all of the screaming about forum shopping is really incorrect.

17        Second, the settlement motion is not the same case as

18  DVL's lawsuit against Congoleum and BIW or Occidental's

19  lawsuit.  All of the arguments that they make about jury trial

20  rights and other things of that nature are all premised on

21  blurring the lines between the lawsuit and the settlement

22  motion.  And the Court recognized this, I think, when you

23  denied intervention where you said that the transaction at

24  issue is not any environmental contamination.  The transaction

25  at issue is the agreement reached and the findings and,

33

1 ultimately, the order of the Court confirming the initial

2 Chapter 11 plan in 2020.

3       And to Occidental counsel's point about CERCLA will

4 be involved, citing to Section 107(e), which I note DVL does

5 not cite in their motion, that parties can't agree, the last

6 time I checked, a court order is a court order.  It's not an

7 agreement of the parties.  And there was an order entered by

8 the court -- the District Court in the last bankruptcy case

9 that made a finding.  That's not an agreement of the parties

10 that folks can disregard.  It's an order of the court.  And

11 that's what the issue is that will be before the Court in

12 connection with the settlement hearing, nothing having to do

13 with CERCLA and how parties' agreements interact with each

14 other.

15       Third, nobody's going to be denied any due process or

16 deprived of any procedural rights if they're required to make

17 their objections at the hearing on the 28th.  For starters,

18 with the continuance that the Court granted, DVL and Occidental

19 will have had substantially more than the 21 days' notice

20 that's required under Bankruptcy Rule 2002, and that very

21 substantial notice satisfies DVL's and Occidental's due process

22 rights, notwithstanding all of the rhetoric that appears in

23 their moving papers.

24       Further, because the settlement motion is a contested

25 matter under Rule 9014, all of the relevant Part 7 procedural

1  rules apply.  Those rules incorporate all of the Federal Rules

2  of Civil Procedure that could apply.  And pursuant to

3  Bankruptcy Rule 9017, the Federal Rules of Evidence apply.  So

4  the bottom line is, whichever courts were to hear this matter,

5  either this Court or the District Court, all of the same rules

6  would apply.

7          So there's nothing procedurally unfair to DVL about

8  proceeding this court.  And, as a practical matter, this Court

9  has been very consideration of DVL's interests.  It told the

10 Court it needed more time.  And, over objections of my client,

11 the debtor, the committee, the Court gave them additional time.

12 So they're getting a full and fair opportunity to make any

13 objection they want, and the same with Occidental if they

14 choose to do so.  And there's nothing about this process that's

15 so unfair that it would require the District Court to withdraw

16 the reference.

17         Finally, the District Court did not decide

18 (indiscernible) breach for enforceability of the 2010

19 confirmation order.  It was deciding a Rule 12(b)(6) motion,

20 and it punted on the issue.

21         I'd also note that withdrawing the reference is not

22 going to terminate the settlement.  There seems to be some

23 suggestion here that if you grant a stay, and the reference is

24 withdrawn, the settlement goes away.  No.  All that happens is

25 a fourth judge, Judge Shipp, who doesn't have the DVL lawsuit

1    or the Occidental lawsuit, both of which are pending in front

2    of different District Court judges, will be now brought into

3    the matter to decide whether to approve that settlement and how

4    to interpret an order as it relates to claims against the

5    estate.   This Court's the only court that has everybody before

6    it, has the debtor before it where you can proceed against the

7    debtor, and it's the Court where the motion should be heard.

8         And when you go through all of those things and

9    understand those facts, it becomes clear that DVL cannot

10   demonstrate why the District Court will ever grant its motion

11   to withdraw the reference even -- either on a mandatory or a

12   permissive withdrawal basis.   With regard to mandatory

13   withdrawal, the debtor points to CERCLA.   Occidental points to

14   CERCLA.   But it's not enough to say a federal statute might

15   apply.   You have to show that there is some intersection with

16   the Bankruptcy Code that creates an unsettled issue of first

17   impression.

18        And so the -- one of the cases that DVL cites in its

19   moving papers, Anthony Tammaro, Inc., which is a District Court

20   of New Jersey decision, kind of illustrates what you have to

21   show.   There, there was a question of whether property that was

22   considered held in trust under the Perishable Agricultural and

23   Commodities Act, a PACA trust, whether that property could be

24   property of the bankruptcy estate under Section 541, and no

25   court had addressed that issue at that point.

1        That's the type of unique issue that you have to have

2   in order to withdraw the reference.  The other two cases that

3   DVL cites in its brief are both cases where the Court said,

4   sure, there's maybe some other federal interest or law at issue

5   here, but there's nothing unsettled about it, and we're not

6   going to withdraw the reference.

7        And but even if we assume for the sake of argument

8   that CERCLA was somehow relevant to the settlement motion, DVL

9   has actually pled itself out of any mandatory withdrawal of the

10  reference.  It states at page 15 of its brief that it believes

11  its lawsuit falls squarely within established CERCLA case law

12  and that the legal issues do not implicate bankruptcy law.

13  Well, those two things would cause the District Court to deny

14  mandatory withdrawal of the reference.

15       There has to be an intersection between some other

16  federal law that affects interstate commerce and the Bankruptcy

17  Code.  There has to be a consideration of both laws.  So saying

18  it doesn't implicate the bankruptcy law means you don't satisfy

19  one of the standards.  The <u>Federated Dept. Store</u> case that they

20  cite in their brief actually says that.

21       And they haven't shown that there's anything

22  undisputed about CERCLA.  They say it fits squarely.  So it's

23  not an undecided issue that this Court would have to address

24  and, therefore, mandatory withdrawal of the reference doesn't

25  apply.

1   Similarly, with permissive withdrawal of the

2 reference, they cannot establish that they're likely to

3 prevail.  It's important to keep in mind that DVL has not cited

4 a single case where a District Court has withdrawn the

5 reference of a settlement motion.  We cited several where the

6 courts have denied that.

7   Counsel referenced <u>Connie's Trading</u> in its argument

8 and said, well, that was a recommendation by the magistrate to

9 the District Court judge not to withdraw the reference.  Well,

10 I looked it up on the docket while we were sitting here, and

11 the District Court, in fact, entered a minute order -- a

12 clerk's order adopting the recommendation, stating it saw no

13 good reason why the Bankruptcy Court couldn't decide the

14 settlement motion.  So I think that report and recommendation

15 and its rationale are good law, and it was, in fact, adopted by

16 the District Court in denying withdrawal of the reference

17 there.

18   And turning to the specific elements that courts

19 examine, there's been a lot of talk about jurisdiction.  Of

20 course this Court has jurisdiction over this.  Jurisdiction is

21 determined by Section 1332.  This Court has jurisdiction over

22 the case.

23   The question that I think parties are really saying

24 is, is there some constitutional authority to enter a final

25 judgment?  Is the matter core or not, or is it something where

1  the Court can only enter proposed findings of fact and

2  conclusions of law?

3          And if we look at this as a settlement motion, of

4  course it's core.  And the reason for that is the Third Circuit

5  has said settlements of claims in bankruptcy in the New Century

6  Holdings (sic) case "clearly constitute a core proceeding."

7  The weight of authority within and outside of the Third Circuit

8  supports that conclusion.  A settlement motion essential to

9  bankruptcy administration is based on the bankruptcy rules and

10 the Code.  You only have approval of settlements in bankruptcy

11 cases in bankruptcy cases, so it arises in the Chapter 11

12 process.

13         And when you look at, at base, what it does, it's

14 determining what's going to happen with property of the estate,

15 how a debtor's claims or causes of action are going to be

16 resolved.  Those claims or causes of action are property of the

17 estate, and that's central to what the Bankruptcy Court has the

18 ability to rule on to a final basis.

19         And, for that reason, that's why all of the citations

20 to Stern v. Marshall don't amount to much of anything in DVL's

21 brief.  Stern addressed what happens when a court is faced with

22 a prepetition cause of action based on state law, and it has to

23 decide it's a judgment, and it doesn't resolve a claim against

24 the estate.  Approving a settlement addresses a debtor's

25 property interest in the matters being settled, and that's why

1 the many cases we cite in our brief all hold that, even if the

2 underlying adversary proceeding would be non-core, a settlement

3 motion can still be decided to a final order by the Bankruptcy

4 Court, because it doesn't invoke <u>Stern v. Marshall</u> and, in

5 fact, invokes the basic administrative authority of the Court

6 to oversee bankruptcy cases.

7        If we look at this as deciding what the meaning and

8 enforceability of the 2010 confirmation order is, it's also

9 within the Court's core authority.  It's an order entered in a

10 bankruptcy case that Congoleum was a party to.  And what the

11 settlement does is, essentially, asks this Court to determine

12 what the scope of that order was and how and if it is

13 enforceable.

14        And I would take issue with Occidental's discussion

15 and DVL's discussion of whether this Court can do that under

16 its core authority.  The <u>Lazy Days RV Center</u> case is, in fact,

17 directly on point.  There, the order in question wasn't a

18 confirmation order, but it was an order dealing with the

19 assignment of a lease.

20        And a question arose, and there was litigation

21 pending in the Florida state courts, about how that order

22 impacted the parties' rights under the lease.  And one of the

23 parties went back to the bankruptcy court, reopened the case,

24 and sought a declaration about what the order meant.  And the

25 Third Circuit held that deciding that question was in the

1  bankruptcy court's authority, even though "This proceeding may

2  have been provoked by a state court action and surely impacted

3  them."

4       _Millennium Lab_, which deals with approving

5  confirmation of a plan that contained third-party releases that

6  would impact pending litigation, reaches the same conclusion

7  that there is no constitutional impediment to the Court

8  entering an order simply because that order might affect third-

9  party rights.  I think as the court mentioned in _Lazy Days_,

10 every order impacts rights of parties down the road.  That's

11 not a reason why the bankruptcy court can't enter an order.

12 It's otherwise within its constitutional authority and

13 determining the order of the prior bankruptcy clearly is within

14 this Court's constitutional authority to decide.

15       Cementing the conclusion that DVL has no chance of

16 success on the merits is this whole notion of its right to a

17 jury trial.  There is no right to a jury trial at a hearing on

18 a settlement motion.  There is no right to a jury trial in

19 determining the meaning of an order.  We think that order can

20 be decided as a matter of law.  We don't think the Court needs

21 to go into whether the finding was correct or not.

22       _United Student Aid Association vs. Espinosa_ clearly

23 says that an order can be wrongly decided.  There, the Supreme

24 Court said bankruptcy courts ought not to grant these types of

25 discharges in Chapter 13 plans.  It's really not allowed, but

41

1  it nonetheless enforced the discharge granted in the plan in

2  that case because no one objected and the order became final

3  and subject to res judicata affect.  We point that out only to

4  show that the evidence that Congoleum presented back in 2006

5  when it obtained the finding was in fact correct evidence.  But

6  the Court doesn't ever have to really get there to be able to

7  find what that order means.

8          And because there is no question that this settlement

9  motion is a core proceeding, there's no question there's no

10 jury trial right, it seems highly unlikely, if not improbable,

11 that the Court would ever withdraw the reference of a

12 settlement motion.  Second, there wasn't much discussion about

13 irreparable harm other than Counsel made the comment, which it

14 raised in its reply brief, that somehow the standard of review

15 on appeal creates irreparable harm for us.  But that can't

16 possibly be true.

17         Whatever the standard of review is, if they appeal an

18 order in which you grant the settlement motion, that would be

19 the same standard of review that the Third Circuit would apply

20 if the District Court granted the settlement motion and they

21 chose to appeal that.

22         In the cases they cite in their reply for the notion

23 that the standards are different, that somehow it's a harder

24 standard if you appeal to the District Court but a lesser

25 standard if you can appeal to the Third Circuit, don't say

1  that.  <u>W.R. Grace vs. Chakarian</u> says it's not a settlement

2  case.  It deals with whether a preliminary injunction should

3  have been extended.  But what it says in passing at the start

4  of its opinion is that it reviews the bankruptcy court's

5  decision under the same standard of review as the District

6  Court.

7        Similarly, in <u>Will vs. Northwestern</u>, which is a

8  settlement case, the court doesn't say there's different

9  standards based on which court you're in as the appellate

10  court, the District Court, or the court of appeals.  What it

11  says is, that whether a settlement meets the settlement factor,

12  the factors under the <u>Martin</u> case, is judged under an abuse of

13  discretion.  That's going to be true whether they appeal up to

14  the District Court or up to the Third Circuit.  But that if

15  you're looking at whether the correct legal standard was

16  applied, that that's a question of law and that gets reviewed

17  under a *de novo* standard.

18        The court did not make any distinction between what

19  would be decided in the District Court if it was acting as an

20  appellate court versus what would happen in the Third Circuit.

21  So that's not any type of irreparable harm the same way their

22  original argument that they would have to expend money to get

23  ready to deal with the case on the 28th doesn't constitute

24  irreparable harm because they'd have to do the same thing in

25  the District Court if it heard the settlement motion.

43

1          And because there's no irreparable harm, because

2    there's no chance of success on the merits, you don't even have

3    to look at whether the debtor is harmed.  You don't have to

4    look at whether the public policy favors or disfavors a stay

5    here.  But I would say that because this settlement is tied to

6    confirmation, there is harm to the debtor.  It's not fair for

7    DVL to say everything should be put on hold while it tries to

8    move the forum of this settlement motion for no apparent reason

9    because presumably if they have good objections, Your Honor

10   will grant them in the same way a District Court would.  And if

11   they don't have good objections, they're going to be denied in

12   the District Court.

13         Who decides it shouldn't make that much of a

14   difference.  But it will delay confirmation inevitably.  It

15   will take the District Court time to figure out whether it's

16   going to withdraw the reference, to set a hearing, to do things

17   that are much easier done in the bankruptcy court, and that

18   will cause delay, that will delay confirmation, and as

19   Mr. Usatine argued last week at the continuance hearing,

20   whenever anything gets continued, that always results in more

21   costs for the estate and therefore reduces distribution to

22   creditors.  So there is harm to the debtor as a result of the

23   stay.

24         And finally, DVL has not cited any public interest

25   that is served by having a stay here.  The public interest

1  favors settlements in bankruptcy, favors a quick resolution of

2  bankruptcy matters.  Therefore, we think the public interest

3  would favor denying the stay here, and we would ask that the

4  Court deny the stay motion as it relates to the settlement

5  motion and deny the request for a stay pending appeal as it

6  relates to the intervention appeal.

7         And if Your Honor has any other questions for me, I'm

8  happy to answer them.  Otherwise, we would just ask that you

9  deny the relief sought.

10        THE COURT:  All right.  Thank you, Counsel.

11        Go back now to the debtor.  Do you wish to add

12 anything to the argument that's been presented, Ms. Yudkin?

13        MS. YUDKIN:  Thank you, Your Honor, Felice Yudkin,

14 Cole Schotz on behalf of the debtor.

15        Your Honor, I believe Ms. Steege covered the

16 arguments in opposition to the motion for stay.  The only point

17 that I would emphasize is the prejudice to the debtor if a stay

18 is in fact granted.  Your Honor has moved confirmation, or

19 adjourned confirmation to January 8th, and as Ms. Steege

20 referenced, every additional day that the debtor remains in

21 Chapter 11 does produce additional administrative expenses that

22 must be satisfied.

23        The debtor sale closed back in November.  I believe

24 it was November 20th, and the debtor had intended to close that

25 sale and move expeditiously to confirmation as soon as

45

1  possible.  And so that is the only additional point that I

2  wanted to make was to emphasize that any additional delay does

3  prejudice the debtors and ultimately impinges on the creditor

4  recovery in this case.

5          THE COURT:  All right.  Thank you, Ms. Yudkin.

6          Does the Committee wish to weigh in?

7          MR. PROL:  Yes, Your Honor.  This is Jeff Prol from

8  Lowenstein Sandler.

9          I don't want to belabor the point, but we join in the

10 arguments made by Ms. Steege and particularly emphasize the

11 points made by Ms. Yudkin in that this estate is -- there's not

12 a heck of a lot here and any additional, you know, expense and

13 further delay has the financial possibility to render the

14 estate administratively insolvent and so we would urge Your

15 Honor to keep this case on a path towards confirmation without

16 any further delay.

17         Thank you.

18         THE COURT:  All right.  Thank you.

19         Anyone else in opposition to the pending motions?

20                  (No audible response)

21         THE COURT:  All right.

22         DVL, any brief response.

23         MR. TWARDOWSKI:  Yes, briefly Your Honor.

24         First of all, the confirmation order that Bath Iron

25 Works and the debtor seek to be interpreted was written and

1   signed by the court where the DVL case is pending and the

2   Occidental case.  That's the best place to go to have it

3   interpreted and applied.

4          On a settlement motion, because of the nature of it,

5   it's designed to canvass the issues, I think the word is from

6   the In re Martin factors and some of the other cases.  It's not

7   intended to be a thorough adjudication.  There would be no

8   point in settling if that were the case.

9          And Counsel for BIW mentioned about the effects of

10  the order on other people down the road.  There's nothing down

11  the road about this.  This order will have in it the closest

12  affects against our client's claims and Occidental's claims in

13  two cases pending in the District Court at the time it's signed

14  and they will try to use it that way.  Our alternative would be

15  to undo it.  So there's nothing down the road about it.

16         As far as the public interest goes and resolving the

17  bankruptcy disputes, if this was a bankruptcy dispute that was

18  being resolved, solely, maybe there would be some credence to

19  that position, but they're trying to resolve certain claims

20  brought against them by other parties in other proceedings.  We

21  don't intend to have more judges involved in all of this.  If

22  reference is withdrawn, we would certainly seek to consolidate

23  the withdrawn items, the pending case in front of Judge

24  McNulty.  That's what we've been trying to do from the very

25  beginning.

1          On the issue of whether it's core or not, it's very

2    easy to say that any type of settlement you slap a 9019 number

3    on is core.  Certainly the proceeding to approve a settlement

4    is core, but what the Third Circuit and Supreme Court

5    emphasized is that you have to look past the label.  This is

6    not a disposition of bankruptcy issue.  We do have an

7    intersection with the 9019 standards, which are bankruptcy

8    rules, we have CERCLA decisions and so forth, so there are

9    bankruptcy issues clashing with other federal statutes.  But

10   there's no Code provisions at issue and there's no Bankruptcy

11   Code law provisions that are being disposed of.

12          And I would point out, the <u>Lazy Days</u> case that was

13   referred to by Counsel to Bath Iron Works, did address rights

14   under Section 350(a) of the Bankruptcy Code concerning the

15   power of a bankruptcy clerk to reopen a case, and

16   Section 365(f)(3), which has to do with anti-assignment

17   provisions.  There's nothing like that here.

18          So I'm finished for now, Your Honor, unless there's

19   some further reason to respond or to answer the Court's

20   questions.

21          THE COURT:  All right.  Thank you, Counsel.

22          MR. TWARDOWSKI:  Thank you.

23          THE COURT:  Anyone else?

24          MR. SILBERGLIED:  Yes, Your Honor.  Russ Silberglied

25   for Occidental, again.  Four quick points.

48

1          First of all, we heard that there was no

2    jurisdictional issue that was stated.  Similarly, the issue on

3    whether it's jurisdiction or adjudicatory authority is this:

4    is it appropriate for this Court to enter findings for use not

5    in this Court but in a CERCLA case which have an affect on

6    CERCLA law to be used against not the debtor but a party that

7    is not subject to the Court's jurisdiction?

8          Second point, Your Honor, Counsel for BIW argued that

9    the 2010 order doesn't fall into the CERCLA 107(e) issue that I

10   talked about because it's an order not an agreement.  There's

11   actually significant irony in that argument, Your Honor,

12   because what they are now asking Your Honor to do is to enter

13   an order without thinking about whether that order will then be

14   used 10 seconds later in the CERCLA case to argue that whatever

15   107(e) would have provided, it's too late because now we have

16   an order of the court.  That actually heightens the concern

17   before Your Honor rather than ameliorates it.

18         Third point.  As I predicted, Counsel for BIW argued

19   that you have jurisdiction because this is a Rule 9019 motion,

20   citing traditional settlements.  Not one of the cases that she

21   cited, certainly not (indiscernible), had as a component of

22   that case a requirement that that settlement include 15 pages

23   of fact findings about an issue that the debtor has no

24   incentive to contest.

25         Final point, Your Honor.  You heard about irreparable

49

1  harm.   There is irreparable harm here to OCC and that

2  irreparable harm is that we are being put to a Hobson's choice

3  because if we participate, there was a request of us that we

4  respond item by item to pages and pages of evidence, to put in

5  our own evidence, etcetera, etcetera.   If we do that, Your

6  Honor, there is an argument that we will have waived our

7  argument on subject matter jurisdiction, which we have no

8  intention of doing.   So we are being put to a Hobson's choice

9  if this goes forward of participating and waiving our arguments

10  concerning jurisdiction or not participating and getting an

11  adverse ruling, and that is most certainly harm that can be

12  considered by this Court on a stay motion.

13          Thank you, Your Honor.

14          THE COURT:   Thank you.

15          All right.   Thank you, Counsel.   All well argued.

16          Bear with me a couple of moments.

17          All right.   Before the Court are two motions filed on

18  behalf of DVL and DVL Kearny Holdings, joined in by Occidental,

19  seeking -- Occidental as to only part of the motions -- seeking

20  either to stay the Court's consideration of a proposed

21  settlement pending resolution by the District Court of a motion

22  to withdraw the reference filed by DVL with respect to the

23  adversary proceeding and the settlement itself or

24  alternatively, to stay consideration of the settlement pending

25  appeal of this Court's prior order entered approximately

1  November 10, 2020, denying DVL the opportunity to intervene in

2  the pending adversary proceeding.  The Court has heard oral

3  argument on both matters simultaneously as they involve many of

4  the same issues.

5          The Court has jurisdiction over these two motions

6  pursuant to 28 U.S.C. Section 1334.  The consideration of the

7  motion to stay pending the withdraw of the reference, as well

8  as the motion to stay pending the appeal, are core matters

9  under 28 U.S.C. Section 157(b).

10          The Court is not inclined to grant either of the

11  motions for the following reasons:

12          With respect to the request for a stay pending

13  disposition of the withdrawal of the reference motion, pursuant

14  to Federal Rule of Bankruptcy Procedure 5011(c), the Court

15  notes that it has discretion to enter a stay, however, that the

16  presumption is in fact that the administration of a bankruptcy

17  proceeding will continue pending the motion to withdraw the

18  reference.  Because this Court is of the view that the

19  withdrawal of the reference with respect to the settlement in

20  the adversary proceeding are unlikely to succeed and that there

21  would be substantial harm to the delay in the administration of

22  the Chapter 11 proceeding, the Court is exercising its

23  discretion not to stay the matter further under 5011(c).

24          The Court is taking into account the fact that

25  unfortunately, in this era of judicial vacancies in the

51

1   District Court, the substantial delay in civil proceedings

2   moving forward in the District Court as a result of COVID-19,

3   the speed in which the District Court can address these motions

4   to withdraw the reference and/or a motion to approve a

5   settlement, does not persuade the Court that that is the more

6   expeditious route to go and is not beneficial to the parties,

7   to the litigants, and is certainly not consistent with public

8   policy to move a Chapter 11 proceeding forward in a expeditious

9   matter.  As long as the Chapter 11 remains open, there's

10  potential for administrative expenses, including the occurrence

11  of quarterly fees, the obligation to file monthly reports, and

12  the like.

13          This Court has serious doubts and is not persuaded by

14  any case law put forward that DVL nor any other non-party to an

15  adversary proceeding has standing to indeed withdraw the

16  reference of a particular adversary proceeding.  Nor does it

17  make sense for a non-party to withdraw the reference with

18  respect to a settlement of an adversary proceeding in which it

19  is not a litigant.

20          There is no discernible to this Court prejudice to

21  DVL or Occidental or other parties in moving forward with this

22  case and moving forward towards a hearing on the proposed

23  settlement.  The lack of prejudice or irreparable harm, or any

24  harm, to DVL and others in denying either the right to

25  intervene, which was initially determined, or by hearing the

1  settlement is found in the fact that DVL and others maintain

2  their rights as creditors, to the extent they are creditors, to

3  object to a settlement, to object to confirmation, and most

4  importantly, to contest the applicability of this Court's

5  potential findings in the District Court or any other forum.

6        Indeed, the prejudice this Court finds to DVL or the

7  posited prejudice to DVL and Occidental, is bottom dog

8  conjecture.  Conjecture that the Court will approve a

9  settlement, conjecture that the Court will agree to employ

10 certain language in its findings and conclusions of law in

11 approving the settlement, and conjecture that the non-

12 bankruptcy courts, including the District Court in pending

13 CERCLA litigation will apply these Court's findings and

14 conclusions to the detriment of DVL and others, contrary to the

15 law.

16       All of that alleged prejudice is simply conjecture

17 and the parties are protected for due process concerns by the

18 ability to contest the settlement, take issue with the proposed

19 findings and conclusions, appeal any erroneous rulings, and

20 argue that those rulings should or should not have any bearing

21 on the decisions being litigated -- on the issues being

22 litigated in the District Court.

23       With respect to a stay pending appeal, the Court

24 recognizes that a stay is an extraordinary remedy to be granted

25 only in limited circumstances.  Under Federal Rule of

53

1    Bankruptcy Procedure 8007, a party can move to stay the effect

2    of the bankruptcy court order.  In this case, it would be the

3    stay pending the Court's denial of the right to intervene

4    pending an appeal, and that's under Rule 8007.  Whether the

5    stay applicant can prevail requires that the applicant make a

6    strong showing that it is likely to succeed on the merits, that

7    the applicant will be irreparably injured absent a stay, that

8    the issuance of the stay will substantially injure the other --

9    the Court must determine whether the issuance of a stay will

10   substantially injure other parties interested in the

11   proceeding, and where the public interest lies.

12          With respect to these factors, the most significant

13   as determined by the Third Circuit in In re Revel AC, Inc.,

14   802 F.3d 558 (3d Cir. 2015), the most significant among these

15   factors are of course the movant's ability to demonstrate a

16   likelihood of success and that is arguably the most important

17   consideration as well as the irreparable harm.

18          With respect to the first factor, there is a

19   requirement that there be a sufficient degree of success for a

20   strong showing that there is a probability of prevailing.  And

21   then, based on the strength of that showing, the movant must

22   demonstrate based on a sliding scale approach that the court's

23   assessment of the remaining factors will impact the degree of

24   possibility of success that the movant must show.

25          To sum up, all four factors are interconnected and

1   the analysis should be did the applicant make a sufficient

2   showing that it can win on the merits, has to be significantly

3   better than negligible but not greater than 50 percent, and

4   whether it will suffer irreparable harm.  This Court is not

5   persuaded that movant has prevailed on either of those two

6   factors.

7           This Court is confident that it has jurisdiction to

8   hear a settlement of an adversary proceeding under Rule 9019

9   that had been brought before this Court, that it is a core

10  proceeding.  And whether the Court is considering the proposed

11  settlement or the Court is considering determining the

12  parameters, the scope, and the meaning of a prior order of

13  confirmation and sale order in a prior Chapter 11, this Court,

14  again, is confident that those are core matters.  And as core

15  matters, the Court is confident that the appropriate place to

16  resolve those issues are before the bankruptcy court.

17          The bankruptcy court is in a, if not better, it's

18  certainly an equal position to rule on the scope, the meaning,

19  the parameter, the interpretation of the 2010 confirmation

20  order or the prior order of sale as compared to the selection

21  of a District Court judge on a rotating wheel who has no

22  familiarity respectfully -- or no greater familiarity with the

23  issues at hand.  The Court, as I've said, also takes into

24  account the delays that would incur.

25          So for all of those reasons, as well as those that

55

1  have been expressed in the briefing -- I'm not going to simply

2  repeat the positions which the Court adopts put forward on

3  behalf of Bath Iron Works -- the Court is not prepared to enter

4  a stay on either the Rule 8007 or Federal Rule of Bankruptcy

5  Procedure 5011(c).  The Court, just to make clear, finds no

6  likelihood of success, no potential harm, a burden on the

7  administration of this case, and a lack of prejudice given the

8  options remaining available to DVL and Occidental.

9          The Court has some concerns, obviously, with the

10  scope of the requested proposed findings, which the Court will

11  address on the 28th.  I am sure we're going to discuss some of

12  those concerns when we address the process for that hearing at

13  our pre-hearing conference in a few moments.

14          At this point in time, are there any questions or

15  concerns with the Court's ruling, or rulings?

16                      (No audible response)

17          THE COURT:  All right.

18          I am simply going to enter straightforward orders

19  referencing the Court's ruling from the bench and incorporating

20  same to avoid having to have a contest over language in the

21  proposed orders.

22          Before we get to our pre-hearing conference, there is

23  also a pending stay relief motion.  What are the parties'

24  intentions with that stay relief motion?

25          MR. FORTE:  Your Honor, it's Earl Forte for DVL.

1  Just speaking very frankly, can I ask Your Honor is there a

2  snowball's chance in you know what of me getting a stay relief

3  right now?

4                    (Laughter)

5          MR. FORTE:  I think I won that last one.

6          THE COURT:  What I would venture to say is there's a

7  strong chance you might get it on the 28th one way or the

8  other.

9          MR. FORTE:  (Audio interference) that.  I'd like to

10 win once in a while, Your Honor.  Thank you.

11         THE COURT:  But you know, everybody should get

12 parting gifts.  Why don't we carry it to the 28th?

13         MR. FORTE:  I'm sorry.  What did you say, Your Honor?

14 I didn't hear it.

15         THE COURT:  I'm sorry.  Why don't we carry the motion

16 to the 28th?

17         MR. FORTE:  Agreed Your Honor, thank you.

18         THE COURT:  Thank you, Counsel.

19         All right.

20         Then, turning to the conference on how we're going to

21 proceed on the 28th, I need to clarify what's expected of the

22 Court.  You know, and it's granted, I have reviewed somewhat

23 what's been filed to date.  Have I reviewed the four volumes

24 that have been submitted?  No.

25         But there were comments made in the arguments that

1  concern me in that it seems to me that the issue in the

2  adversary proceeding, and what has always been requested of the

3  bankruptcy court, is to rule on the scope.  I've set

4  parameters, and potentially, the impact on Bath Iron Works of

5  the orders entered by Judge Pisano confirming the case in 2010

6  by the bankruptcy court in approving the sale.  It is not my

7  understanding that I am determining, as you pointed out

8  Ms. Steege, whether those decisions were right or wrong.  It's

9  just whether or not they -- well, whether or not they were

10 actually made.

11           And what concerns me is the discussion and the proofs

12 put in as to the expert testimony with respect to mergers and

13 acquisition and the like.  I mean, I would think the evidence

14 should be what was put before the bankruptcy court and the

15 District Court over a decade and a decade and a half ago.  It's

16 not for me now to prove or to rule on the underlying liability

17 issues.  I may not be clear because it's been a long morning,

18 but Counsel for Bath Iron Works, do you understand my issues?

19           MS. STEEGE:  Yes, Your Honor, we do.  And the

20 reason -- well, a couple of things.

21           First off, the reason why the expert reports were

22 submitted to you, if that -- in discussing this with

23 Mr. Usatine, he wanted to make certain that you have all of the

24 expert reports for whatever you would do with them, so we did

25 that and we submitted those.  Our basic position is that the

58

1  language of the 2010 confirmation order, which was based on a

2  finding at a contested hearing where parties objected in 2006,

3  is clear and unambiguous on its face.  It says Bath Iron Works

4  has no responsibility for any liabilities, which means every

5  liability including environmental liability.

6        The focus of the arguments against that order have

7  always been to go behind the order and somehow say the order

8  wasn't correct in the first instance.  I don't think under

9  United Student Aid vs. Espinosa, Your Honor has to get into

10 that, or Stoll v. Gottlieb, or any of a number of Supreme Court

11 decisions dealing with orders when they're done and they're

12 final (audio interference) what they say, whether they were

13 right or wrong or somewhere in between.

14       But having said that, because the debtor previously,

15 and DVL, have tried to argue that somehow that order wasn't

16 correct or whatever, we put all that out there so that Your

17 Honor can see it.  We think you could make the findings.  We

18 don't really think that you're the subject to any legitimate

19 contest, but it's more in the nature of, I think, belts and

20 suspenders if you will, because everything anybody ever wants

21 to talk about is not what the order says but what they think

22 happened back in the '80s, and that's why we put that forth.

23       So I hope that clarifies what Your Honor's asking,

24 but that's why it's there.  It's not because we think it's

25 necessary to interpret the order.  We think you can read that

1  paragraph, look at what happened in the bankruptcy case, and

2  come to the conclusion that that order covered all liabilities

3  of every type and character, including environmental

4  liabilities.

5          THE COURT:  So let's talk practically.  What

6  witnesses do the movants on the settlement motion intend to put

7  forward?

8          MS. STEEGE:  What do we intend to put forward?

9          THE COURT:  Yeah, as far as in evidence.  Right now,

10 we're talking process.  We're having a Zoom evidentiary hearing

11 on the settlement.  And I've always said that I would prefer to

12 have direct by certification and leave the parties the

13 opportunity to cross-examine.  We have to identify the exhibits

14 that will go in.  It's a lot of work on chambers and my staff.

15 I want to streamline this for everybody's benefit.  So I'm

16 trying to get a handle on who the witnesses will be and how

17 best to approach this.

18         MS. STEEGE:  I mean, much of the evidence, Your

19 Honor, and Mr. Thomson can speak to it.  Maybe I should just

20 let him talk.  But most of it is basically in those four

21 volumes.  Most of it's court records, so it would just go in on

22 the authenticity certification of itself.  It's what happened

23 in the prior case.  And then there is deposition testimony of

24 various parties saying what happened in the bankruptcy case.

25 And then there might be one witness where we've done a

1 declaration where we make him available for cross but I'll let

2 Mr. Thomson address it.

3          MR. THOMSON:  Judge Kaplan, this is --

4          THE COURT:  Yes.

5          MR. THOMSON:  -- Wade Thomson on behalf of Bath.  I'm

6 a colleague, a partner of Ms. Steege.

7          So Ms. Steege is exactly right, and we submitted to

8 the Court a proposed schedule for the exchange of objections.

9 But certainly in regards to Your Honor's questions just now

10 about what the Court is to rule on, if you look just at our

11 primary request and our request about the interpretation of the

12 prior order, indeed, you know, the overwhelming amount of

13 evidence that we have put forth in the appendices are just

14 documents, pleadings, and the, you know, confirmation order

15 itself and the settlement that's subject to that into evidence

16 so it can all be recognized by judicial notice.

17          We have been seeking ever since we filed these proofs

18 three weeks ago, whether anybody has any objections.  We

19 finally got DVL to agree to a schedule for them giving us

20 objections yesterday.  They're going to give us their

21 objections.  But as it relates to those pleadings, I don't know

22 what real, you know, non-frivolous objection there could be.

23 They're exactly what we've always said.  So those would be our

24 primary, Your Honor.  And what we would propose is that we

25 first, you know, since this is where the action is and this all

1  we think Your Honor needs to make a decision, is that we --

2  once we hear back from DVL on the date within our proposed

3  scheduling order that there is no objection on those things,

4  presumably, we'll be in a position to tell Your Honor which

5  exhibits are going to go in without any objection.  And

6  presumably, they will be the bankruptcy filings and pleadings

7  and orders from the previous bankruptcy.

8         And frankly, we could then have oral argument and

9  that could be all that's needed on December 28th.  However, to

10 the extent necessary, our second bucket of evidentiary

11 materials relating to the confirmation order is we provided,

12 you know, deposition designations from witnesses who testified

13 in that bankruptcy hearing, which corroborate our

14 interpretation.  And again, our primary position is, you don't

15 even need to read that.

16        The bankruptcy filings are unambiguous.  Nobody in

17 the DVL action, including Congoleum or DVL, has ever suggested

18 they're ambiguous.  Congoleum admitted in discovery in our

19 matter, and we put this into our brief that we filed with Your

20 Honor, that the only thing the Court needs to interpret the

21 settlements that were at issue in the bankruptcy are the

22 settlements themselves.

23        So in other words, Your Honor, everyone agrees, no

24 one said otherwise, that Your Honor can read the papers and

25 interpret them.  And so, you know, the overwhelming majority of

1  all our evidence is that, and we can have a summary argument on

2  that.  And again, to Ms. Steege's point, the rest of our

3  appendices are evidence, including both documents and

4  deposition testimony, concerning the 1986 agreements, as well

5  as some, essentially, admission type evidence over many years

6  from Congoleum that they were indeed the successor.

7          Now, again, to Ms. Steege's argument, that's

8  essentially going behind or above, in this position, what the

9  bankruptcy order was and just confirms what we've said all

10 along and what was said in very plain English many, many years

11 ago in bankruptcy court in New Jersey, that BIW has no

12 liability relating to the flooring business.  So we're prepared

13 to also march through that.  That will have a ton of deposition

14 designations.  We filed those designations weeks ago.

15         We've asked DVL and Occidental if they want to give

16 us any counter designations.  DVL wouldn't respond until last

17 night.  They finally agreed to dates.  Occidental, as they

18 admitted today, said they decline to participate in the

19 process.  So I'm frankly hopeful that we're not going to have

20 very many objections at all because none of should really be

21 contested.

22         If we do have to get into that evidence on the 28th,

23 and by that evidence, I mean anything beyond arguing the

24 filings in the previous bankruptcy.  To the extent we are going

25 to do that, our request, and even to the extent you want to

63

1   hear testimony from people who participated in the previous

2   bankruptcy.  So for example, we deposed twice Mr. Feist who is

3   the former CFO of Congoleum.  He is the one that signed the

4   declaration to the key settlement agreement there where

5   Congoleum acknowledged that BIW has no responsibilities for the

6   flooring business.  We deposed him, and he admitted that, yes,

7   environmental issues were in play at the time, directly

8   contrary to what Occidental and DVL have tried to argue today

9   on the merits.

10          But you don't need to do that.  You can read the

11   order just like we've always said.  It says any liabilities,

12   that includes environmental.  But to the extent you have a

13   question, Judge, we have sworn deposition testimony from

14   Mr. Feist on Congoleum admitting that environmental liabilities

15   were at issue in that settlement.

16          To the extent you want to hear that evidence, Your

17   Honor, what we would propose to do, typical of any trial, we

18   would say on behalf of BIW, we would now call Mr. Howard Feist

19   and we would tender into evidence his designated deposition

20   testimony.  Mr. Feist lives in Boston.  He is no longer

21   employed by Congoleum.  He's beyond the 100 miles.  So under

22   Rule 32 of Federal Procedure, he's not available for trial.  We

23   don't control him, and so we would submit his deposition

24   testimony.  They can submit their counter designations to the

25   extent they have them.

64

1            Again, I mean that's a lot of work, but from

2    everybody, including the Court before the holidays and around

3    the holidays.  We appreciate that.  But this is because this is

4    the argument they want to make.  We're only putting all of this

5    forward to show Your Honor, look, we're not scared of going

6    beyond.  The Court didn't get it wrong before.  Congoleum

7    didn't get it wrong before.  To the extent anybody wants to go

8    beyond what and try to say, oh, this didn't include

9    environmental.  No, no, no, Mr. Feist admitted it included

10   environmental.  We're happy to show that.

11           Our proposed process, Your Honor, is to go witness by

12   witness, but first go through the bankruptcy pleadings.  We can

13   have oral argument on that because it's judicial -- you know,

14   as I mentioned before, it's judicial notice and it's pleadings,

15   and it's an interpretation.  We don't think Your Honor needs

16   anything more than that.  To the extent we go beyond that, we

17   are happy to tender by depositions all the various testimony.

18   We can either just tender it en masse and hopefully we can work

19   this out with the parties between now and then and submit all

20   of the designations and counters highlighted and just -- and

21   say something along the lines that we tender the testimony of

22   Mr. Feist. It's designated and we move it into evidence.  And

23   we can give one or two, you know, minutes of explanation as to

24   what that evidence is, but I think that would suffice for our

25   purposes.

1          To the extent we need to -- you know, to the extent

2    we need to have any dispute over whether any evidence or

3    specific testimony should come in, we're happy to have that,

4    but to try to work that out -- excuse me, with DVL between now

5    and then.  DVL was at all of these depositions, I should

6    mention, as was Congoleum, so any objections are presumably

7    argued in the deposition record and we can work them out,

8    hopefully.

9          So I'm hopeful that there's not too much action on

10   that.  You know, alternatively, if Your Honor wants, we could

11   read the Q and A exchanges in from the depositions.  I don't

12   think that's necessary.  I think that would take --

13          THE COURT:  Oh, God no.

14          Go ahead.

15          MR. THOMSON:  I'm very -- thank you for saying that,

16   Your Honor, I think, for all of us.

17          So that's our position as to how we would proceed in

18   this, very much like a trial, but you know, we're prepared to

19   go as a trial.  But because of what Your Honor has just said,

20   you know, we don't want to waste anyone's time in the next

21   couple of weeks on objections and designations to evidence that

22   may not be necessary.  We think it's important, but you know,

23   if Your Honor thinks that you're constrained to just review the

24   bankruptcy pleadings, we have no problem with that.  That's

25   what we've been saying all along that that's all we need

1  because it's plain as day, but we also have the backup on that.

2  So at least on the bankruptcy stuff, not getting into the 1986

3  stuff, we can do all that evidence on the papers.

4        I will say the one exception to that, Your Honor, is

5  we have one live BIW witness and because we control him, we are

6  prepared to bring him live -- live virtually -- and tender him

7  for cross-examination.  I will say I don't think that's

8  necessary either because he was also deposed by Congoleum and

9  DVL and we've submitted a declaration and his testimony is

10 going to be very consistent with that declaration.  And as we

11 set forth in our brief, it's very clear what it was.

12       BIW did not object to the previous bankruptcy when

13 all the millions and tens of millions of dollars in insurance

14 rights were being sold precisely because Congoleum said we're

15 the successor and BIW (audio interference) --

16       THE COURT:  I don't want to get into the weeds or

17 into arguments.  I appreciate it.

18       MR. THOMSON:  Yeah.  (Audio interference)

19       THE COURT:  Thank you.  Thank you, Counsel.

20       MR. THOMSON:  Sorry.

21       And that's all I was going to say.  That's the one

22 live witness we may have, Your Honor.

23       THE COURT:  And who is that witness?

24       MR. THOMSON:  His name is Dan Ferguson.  He's

25 essentially in charge of risk for BIW and he was -- he's still

1  employed by us and he was there in 2000-whenever it was, when

2  we got notice of the settlement.

3          THE COURT:  All right.

4          Mr. Twardowski, your thoughts, or Mr. Forte?

5          MR. TWARDOWSKI:  Your Honor, this is Mr. Twardowski.

6          Again, without getting into argument, we reached an

7  agreement last night as to a process going forward over the

8  next week and a half.  It's going to be a very tight schedule

9  to accommodate, but given the hearing scheduled for the 28th

10  and the objection deadline of the 18th, we'll obviously need to

11  and have to live with it.

12          Mr. Thomson's right that we've seen the proof that he

13  has submitted.  We've got now deadlines to file counter

14  designations and raise objections, to the extent there are any.

15  I suspect there will be at least some.

16          We've got a meet and confer deadline to resolve or

17  try to resolve anything.  And to the extent there's anything

18  unresolved, we'll present that to Your Honor timely before the

19  hearing so Your Honor will have an opportunity to review it and

20  address.  We'll provide, according to our schedule, by the

21  17th, which is next Thursday, a day before our objections are

22  due, whatever counter proof we have and we've built in a window

23  for BIW to respond with any rebuttal evidence of its own.

24          So again, without arguing the issues or the merits, I

25  think there's a process in place to go forward with the hearing

1  on the 28th.  I do think, and I'm just repeating what Mr. Forte

2  had said previously, that we're cramming an awful lot in in a

3  very short period of time, and in my judgment for no good

4  reason.  If the confirmation hearing is not going to take place

5  until 2022, to me there's no magic in having a hearing on the

6  settlement motion on December 28th, the first business day

7  after the Christmas holiday, with all the other things that

8  need to be done in the interim.  But I recognize Your Honor's

9  already made that scheduling decision, I simply offer that as

10  an observation.

11         THE COURT:  All right.  Thank you.

12         So I have -- Mr. Schotz had sent down on behalf of

13  Bath Iron Works a joint stipulation among Congoleum, DVL, and

14  Bath Iron Works.  That's the reference.  I'm staring at it now.

15  I don't really -- it's only, what?  Two paragraphs.  I don't

16  see dates in here.  Do you have separate dates?

17         MR. TWARDOWSKI:  It's eight paragraphs long, Your

18  Honor, and there's dates starting with the 17th, which is the

19  date the objections are required to be filed along with counter

20  designations.  A pre-hearing responsive brief if we'll file any

21  will be due on the 18th of December.  BIW's reply proof in

22  response to whatever counter proof we submit will be due on

23  December 22nd.  That same day, we've agreed to meet and confer

24  and attempt to resolve objections.  And to the extent those

25  objections or issues are not resolved, we've agreed to present

1  them to the Court the following day on the 23rd.  And then

2  finally, no later than Christmas Eve, the parties will provide

3  the Court with a bound copy of the exhibits and deposition

4  designations.

5        I'm not sure what Your Honor's looking at that

6  doesn't have the dates, but I printed out Mr. Schotz's letter

7  to the Court (audio interference).

8        MR. TWARDOWSKI:  (Audio interference) Twardowski.

9  Your Honor, I think the confusion might be that we submitted

10  two separate documents.  One was with regard to the experts and

11  then this morning, we submitted the one with the dates in it.

12  So Your Honor may be looking at the first one we submitted,

13  which was only as to the experts.

14        THE COURT:  All right.  That's what the difference. I

15  didn't get a chance to see this morning.  Just bear with me one

16  second.

17        All right.  Well, we will get these stipulations

18  filed.  I think to the extent the parties are going to

19  stipulate as to the admissibility, obviously, not the weight,

20  but the admissibility of documents, great.  It makes

21  everybody's life easier.  I am looking to try to do that.

22        I will tell you now, I'm looking at the calendar, we

23  set this down for the 28th.  It's the Court's intent to move

24  this forward, which is why I wanted it in the last week of

25  December.  If the parties agree and need another day or two for

1  that week, I will rearrange my schedule.  I will do what it

2  takes.

3      I understand it's the first day back after the

4  Christmas holiday.  If the parties could talk and think the

5  29th or 30th or even the 31st are better, just let me know and

6  I'll rearrange the schedule.

7      I don't mean to make this punitive on the lawyers,

8  just on my staff, apparently.  So then you'll let me know.

9      To the extent I have to make a call on either

10  exhibits or witnesses, I'll be prepared to do that for you.

11  And it sounds to me that the bulk of what is going to go on is

12  simply oral argument referencing documents to which there have

13  been stipulations, but that's at this juncture.  I'm going to

14  give DVL an opportunity to put forward its position on the

15  various proffered evidence.

16      All right.  What we will need to know in advance of

17  the hearing and we'll send out the email addresses and contact

18  information for anyone who will be arguing or testifying on the

19  date of the hearing so that we can have proper Zoom invites go

20  out.  If there are any issues in the course of the next two

21  weeks and you need the Court's assistance, just contact

22  chambers.  I'll make myself available.

23      Actually, my law clerk has just suggested we could

24  actually have the trial on New Year's Eve.  It's been a lousy

25  year anyway.  Maybe she's right.

1          UNIDENTIFIED SPEAKER:  I'll vote for that, Your

2  Honor.

3          THE COURT:  Can't argue with that.

4          UNIDENTIFIED SPEAKER:  It would be a fitting end to

5  2020.

6          THE COURT:  It sure would be.  So I'll leave that for

7  you all to discuss.

8          I also always throw this out.  If the Court can be of

9  assistance in trying to bridge any gap in any settlement, I

10  understand you've had a plethora of mediation efforts or

11  several mediation efforts, I believe, but if the Court can

12  assist, reach out for the Court as well.  I'm not going to put

13  pressure on anyone, but it's got to be consensual.

14          Anything else I can assist with?

15          MR. MILLNER:  Your Honor, it's Robert Millner.  Good

16  afternoon.

17          Can I raise a housekeeping issue about this case

18  that's not having to do with any of the motions today?

19          THE COURT:  Sure.

20          MR. MILLNER:  The confirmation is set for January 8,

21  and I did receive, I think, one or two emails from somebody in

22  your office saying that an objection deadline to confirmation

23  would be set.  I've heard the date January 4th, but I don't

24  know that.  I don't think there's anything on your docket which

25  publicly --

1                    THE COURT:  I'm sorry.  I thought we put a text

2    order.

3                    MR. MILLNER:  Maybe I missed it.

4                    MS. YUDKIN:  Yes, this is Felice Yudkin from Cole

5    Schotz, Your Honor.  It was posted to the docket earlier this

6    week, I believe --

7                    MR. MILLNER:  Okay.  I'm sorry.

8                    MS. YUDKIN:  -- in a separate minute entry.

9                    MR. MILLNER:  I'm sorry, Your Honor.  I must have

10   missed it.  I'm sorry.

11                   THE COURT:  No.  It's a big docket.  Make sure you

12   are looking in the main case and not the adversary.

13                   MR. MILLNER:  (Audio interference)

14                   THE COURT:  All right.

15                   Anything else I can help anyone with?

16                   MR. MILLNER:  May I ask, what is the objection

17   deadline?

18                   THE COURT:  Ms. Yudkin, do you know it offhand?

19                   MS. YUDKIN:  It is January 4th, I believe.  I'm just

20   pulling up my calendar.  January 4th is the objection deadline

21   and the new voting deadline is January 5th.

22                   MR. MILLNER:  Okay.  Thank you.

23                   THE COURT:  All right.

24                   All right.  Anyone else?  Otherwise --

25                   MR. TWARDOWSKI:  Not from DVL, Your Honor.  We

1    appreciate your participation.  Thank you.

2              THE COURT:  Thank you.

3              All right.  Everyone, have a good weekend.

4              MR. TWARDOWSKI:  Thank you.

5              UNIDENTIFIED SPEAKER:  You too.

6              MS. YUDKIN:  Thank you, Your Honor.

7              UNIDENTIFIED SPEAKER:  You, too, Your Honor.

8                        * * * * *

9                **C E R T I F I C A T I O N**

10       We, LIESL SPRINGER and KAREN K. WATSON, court approved

11   transcribers, certify that the foregoing is a correct

12   transcript from the official electronic sound recording of the

13   proceedings in the above-entitled matter, and to the best of

14   our ability.

15

16   /s/ Liesl Springer

17   LIESL SPRINGER

18

19   /s/ Karen K. Watson

20   KAREN K. WATSON

21   J&J COURT TRANSCRIBERS, INC.        DATE:  December 15, 2020

22

23

24

25