UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Eitan D. Blanc, Esquire
Anthony R. Twardowski Esquire (*admitted Pro Hac Vice*)
Earl M. Forte, Esquire (*admitted Pro Hac Vice*)
**Zarwin Baum DeVito Kaplan Schaer Toddy, P.C.**
2005 Market Street, 16th Floor
Philadelphia, PA 19103
215-569-2800
edblanc@zarwin.com
artwardowski@zarwin.com
emforte@zarwin.com

*Counsel for DVL, Inc. and DVL Kearny Holdings, LLC*

---

| | |
|---|---|
| In Re:<br><br>CONGOLEUM CORPORATION,<br><br><br>Debtor.[1] | Chapter 11<br><br>Case No. 20-18488 (MBK) |
| Bath Iron Works Corporation,<br>        Plaintiff<br><br>v.<br><br>Congoleum Corporation,<br>        Defendant | Adv. Pro. No.: 20-01439 (MBK)<br><br>Judge: Honorable Michael B. Kaplan<br><br>Hearing Date: December 30, 2020 at 11:00 A.M. |

**EVIDENTIARY OBJECTIONS AND COUNTERDESIGNATIONS OF DVL, INC. AND DVL KEARNY HOLDINGS, LLC IN OPPOSITION TO BATH IRON WORKS CORPORATIONS PROPOSED FINDINGS AND OFFER OF PROOF[2]**

---

[1] The last four digits of the Debtor's federal tax identification number are 8678. The Debtor's corporate headquarters is located at 3500 Quakerbridge Road, Mercerville, New Jersey 08619.

[2] DVL does not consent to the entry of final orders or judgments by the bankruptcy court and nothing

Case 20-18488-MBK    Doc 571    Filed 12/18/20    Entered 12/18/20 13:51:50    Desc Main
Document    Page 2 of 21

DVL, Inc. and DVL Kearny Holdings, LLC (together, "DVL"), creditors and parties-in-interest in the chapter 11 proceeding of Debtor, Congoleum Corporation (the "Debtor" or "Congoleum"), hereby submit their evidentiary objections to the proffered proof of Bath Iron Works Corporation ("BIW") in support of the Proposed Findings, and also designate proof in opposition to the Proposed Findings.[3]

## I.    DVL's General Objections to BIW's Proposed Proofs

DVL asserts the following General Objections to BIW's Proposed Proofs.  These General Objections do not waive any other objections  DVL has to the Settlement, the Settlement Motion or the hearing thereon, or the specific proofs offered by BIW purportedly in support of its proposed findings, including those objections and positions DVL will set forth in DVL's forthcoming filings.

A.    DVL objects to the Proofs proffered by BIW to the extent they relate to or purportedly support the proposed findings and conclusions which this Court has no jurisdiction to issue or decide, including but not limited to:

   a.    "[T]he question of BIW's responsibility for the liabilities of the Congoleum Flooring Business was actually litigated at the hearing to approve the Century Settlement Agreement and a ruling on this issue was necessary to the relief granted because the Century Settlement Agreement was conditioned upon a finding that BIW had no responsibility for any of the liabilities of the Congoleum Flooring

_____

in this filing or otherwise shall be deemed to be a consent, waiver or other relinquishment of any such rights by DVL.  Nor does DVL in any way waive or otherwise relinquish its right to seek to withdraw the reference of this or any other case or proceeding pursuant to 28 U.S.C. § 157(d).

[3] DVL objects to this Court even considering the Proposed Findings, and this filing does not waive in any manner the objections DVL will set forth in full within its Objections to the Settlement Motion and Opposition to BIW's Proposed Findings, which will be filed on December 18, 2020 pursuant to the Court's Scheduling Order. (Dkt. No. 555).

2

Business." BIW Proposed Finding M.

b. The **District Court** presiding over the First Bankruptcy Case found in paragraph 104 of the Confirmation Order that BIW has "no responsibility for *any* of the liabilities of the Congoleum Flooring Business (as defined in the Century Settlement)." BIW Proposed Finding O (emphasis added).

c. The basis for the finding contained in paragraph 104 of the Confirmation Order was the 2006 Feist Declaration filed in support of the Century Settlement Agreement and the bankruptcy court's Order approving the Century Settlement Agreement. BIW Proposed Finding P.

d. The district court's finding of fact that BIW was not responsible for any of the liabilities of the Congoleum Flooring Business (as defined in the Century Settlement Agreement) was necessary to confirm Congoleum's Fourth Amended Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of The Debtors, The Official Asbestos Claimants' Committee, The Official Committee Of Bondholders For Congoleum Corporation, Et Al., And The Futures Representative Dated As Of March 11, 2010 (the "**Plan**") because the Plan was dependent upon the Century Settlement Agreement which in turn was dependent upon this finding. BIW Proposed Finding Q.

e. The finding contained in paragraph 104 allowed Congoleum: (i) to strip BIW of its interests in insurance coverage for the Congoleum

Flooring Business (as defined in the Century Settlement Agreement) as a named insured on some of the Century insurance policies (and on other of the Century insurance policies in which it was not a named insured but would have had rights if it had been a successor to any of the liabilities of the Congoleum Flooring Business); and (ii) to obtain nearly $17 million from Century to help fund its plan of reorganization. *Id.*

f.   The District Court could not have allowed for the sale of the Century policies and others free of any of BIW's contractual rights as to coverage for the Congoleum Flooring Business without providing BIW with protection in the form of the finding from liability related to the Congoleum Flooring Business. BIW Proposed Finding R.

g.   BIW did not object to such a sale in reliance upon the protection of a finding that would confirm, consistent with the fact that BIW had never owned or operated the Resilient Flooring Business or the Kearny, New Jersey property, that BIW had no responsibilities for the Congoleum Flooring Business liabilities covered by those policies. *Id.*

h.   All of these entities and BIW, plus unknown creditors such DVL Inc. and DVL Kearny Holdings, LLC (collectively, "DVL"), through publication notice, were parties to the First Bankruptcy Case.  BIW Proposed Finding U.

i.   The Confirmation Order's finding that BIW was not responsible for

4

"any of the liabilities" of the Congoleum Flooring Business included all liabilities of any kind or nature, including environmental liabilities. BIW Proposed Finding V.

j. By using the phrase "*any* of the liabilities," the Confirmation Order absolved BIW of liability for *every* liability of the Congoleum Flooring Business, including environmental liabilities. *Id.*

k. Mr. Feist's "testimony was the basis for this finding." BIW Proposed Finding W.

l. Concluding that the Confirmation Order found that BIW was not responsible for any of the liabilities of the Congoleum Flooring Business, including environmental liabilities, also is consistent with the fact that the Century Settlement Agreement extinguished Century's obligation to provide coverage for environmental liabilities as to the Congoleum Flooring Business. BIW Proposed Finding X.

m. The Court therefore finds that the Confirmation Order found that BIW was not responsible for any of the liabilities of the Congoleum Flooring Business, including any environmental liabilities. *Id.*

n. Mr. Feist's Testimony That BIW Was Not Responsible For Any Of The Liabilities Of The Congoleum Flooring Business Is Supported By BIW's And Congoleum's Operations, Corporate History, And Congoleum's Conduct Prior To And After The Entry Of The Confirmation Order. *See* Entirety of Section V, including but not limited to the conclusions that:

5

    i.   The Court finds that BIW never operated any business in Kearny, New Jersey or owned any real property in Kearny, New Jersey. BIW Proposed Finding AA;

    ii.  The 1986 Restructuring Documents demonstrate that Congoleum (the Debtor in the First Bankruptcy Case and in this bankruptcy case) is responsible for all of the Congoleum Flooring Liabilities and that BIW has never been responsible for any of the liabilities of the Congoleum Flooring Business. BIW Proposed Finding II;

    iii.  The Court also has reviewed the competing corporate expert opinions that Congoleum and BIW obtained and rejects the opinion of Congoleum's expert and accepts the opinions of BIW's experts. The evidence demonstrates that BIW is not responsible for any of the liabilities of the Congoleum Flooring Business. BIW Proposed Finding KK

o.  Having considered the evidence presented at the Approval Hearing, the Court hereby finds and reaffirms the 2010 finding in the First Bankruptcy Case that BIW has no responsibility for any of the liabilities of the Congoleum Flooring Business, as defined above and in the Century Settlement Agreement, or for the Resilient Flooring Business, as defined in the Agreement, and BIW is not a successor of the Resilient Flooring Business, including its former operations in Kearny, New Jersey. BIW Proposed Finding LL.

p.  Additionally, the Court hereby finds:

    i.   Liabilities of the Resilient Flooring Business, for which BIW has no responsibility, include environmental liabilities, including, but not limited to, environmental liabilities allegedly stemming from the former Resilient Flooring Business operations in Kearny, New Jersey. BIW Proposed Finding MM.a.

    ii.  Congoleum is the only successor entity potentially liable for any alleged environmental liabilities

arising the former Resilient Flooring Business operations in Kearny, New Jersey, including those complained of in the DVL and Occidental Lawsuits pending against Congoleum and BIW, as previously determined by the court in the First Bankruptcy Case, and as reaffirmed by Congoleum in this bankruptcy case; BIW is not responsible for environmental liabilities stemming from the Resilient Flooring Business operations in Kearny, New Jersey. BIW Proposed Finding MM.b.

q. All of the Court's findings of fact made herein, including those related to successorship, were actually litigated and are necessary to the Court's decision to enter this settlement order. The foregoing findings are intended to have preclusive effect under the doctrines of res judicata and collateral estoppel. BIW Proposed Finding NN.

B. For clarity, DVL objects to various findings and conclusions other than those specifically enumerated within paragraph A above; however, DVL identified the above language because it appeared to reflect the conclusory findings which BIW is seeking. DVL reserves and preserves its rights to continue to oppose and object to the entirety of BIW's Proposed Findings. Further, DVL preserves and reserves the right to contest the factual and legal veracity of each of BIW's Proposed Findings.

C. DVL objects to the use of the Transcript of Brett Ferguson unless Mr. Ferguson is also made available for cross-examination during the hearing.

D. DVL objects to the admission of extrinsic evidence in regard to the meaning of the words within ¶ 104 of the Confirmation Order beyond consideration of the Confirmation Order and Plan as violating the parol evidence rule.

E. DVL objects to the admission of extrinsic evidence in regard to the meaning of the words within the 1986 Transaction Documents, including the Resilco Assignment

Agreement, as violating the parol evidence rule.

**II.    DVL's Submission of Proofs Counter to BIW's Proposed Findings**

The following are submitted without prejudice to DVL's continued objection to this Court considering BIW's proposed findings within this improper proceeding.  Further, to the extent BIW has cited a document or other proof that is not specifically mentioned below, DVL reserves the right to present such document or other proof to the Court and make arguments to the Court relating to any such document or other proof.  DVL does not intend to limit its arguments or facts to those set forth below. Rather, DVL below is solely designating the field of potential evidence, and DVL reserves the right to make any and all arguments based on the evidence presented by BIW, by DVL, or by any other participant in the hearing.

DVL requests the court take judicial notice of the cited documents from the dockets of the Debtor's Prior Bankruptcy (03-51524-KCF and 3:09-cv-04371-JAP). To the extent the hearing reaches the point of introduction of BIW's designations from the Prior Bankruptcy, DVL agrees that the Court may take judicial notice of those documents, while reserving and preserving all other objections.

**This Court Cannot Enter BIW's Proposed Findings
Because DVL was Deprived of Due Process and *Res Judicata* is Not Applicable**

A.    On December 31, 2003, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, which was docketed at 03-51524-KCF (the "Prior Bankruptcy").

B.    The case was pending in the United States Bankruptcy Court for the District of New Jersey until August 17, 2009, at which time the United States District Court for the District of New Jersey withdrew the reference and thereafter handled the bankruptcy matter through confirmation of a plan and post-confirmation under docket number 3:09-cv-04371-JAP. *See* First Bankr. Dkt. at No.

7620; Dist Ct. Dkt. at No.1.[4]

C.      DVL was not listed on the Debtor's schedules in the Prior Bankruptcy in any capacity, especially not as a Creditor. *See* First Bankr. Dkt. at No. 321, Schedule F.

D.      DVL was not on the Master Service List for the Prior Bankruptcy. *See* First Bankr. Dkt. at No. 1940.[5]

E.      DVL did not receive a mailed copy of any filing in the Prior Bankruptcy, whether in the Bankruptcy Court or District Court. A. Casnoff Cert. at ¶ 5.

F.      The Century Settlement Motion, which is the subject of the BIW's proposed findings, was filed on August 21, 2006. First Bankr. Dkt. at No. 4439 *et seq.*[6]

G.      A legal notice for the Century Settlement Motion was published in the USA Today newspaper on August 24 and 28 of 2006. First Bankr. Dkt. at No. 4521.[7]

H.      At the time of the newspaper notice, the Debtor was well aware of environmental contamination issues emanating from the former Kearny Plant. *See e.g.* BIW Proposed Findings at JJ.1.(o),(q)-(v), (x)-(z).

I.      Despite being aware of environmental contamination issues emanating from the former Kearny Plant the Debtor did not publish the notice in local newspapers or send notice to the then current owners of the Kearny Plant, whose identities could easily have been obtained through review of the Debtor's corporate records. *See* First Bankr. Dkt. at No. 4521.[8]

J.      The legal notice gave no indication that any claims or rights vis-à-vis third parties such as BIW could or would be impacted by the proposed Century settlement. *Id.*

---

[4] All references to the Prior Bankruptcy in the Bankruptcy Court are cited as "First Bankr. Dkt." and all references to the District Court Docket in the Prior Bankruptcy are cited as "Dist. Dkt".
[5] Included within BIW's Appendix II at Exhibit 2.
[6] Included within BIW's Appendix II at Exhibits 4-6.
[7] Included within BIW's Appendix II at Exhibit 9.
[8] Included within BIW's Appendix II at Exhibit 9.

K.      The notice stated objections were due, in writing, by 4:00 P.M. on September 4, 2006, 11 days after the first USA Today publication. *Id.*

L.      Copies of the actual Century Settlement motion, including its supporting papers, were not mailed to DVL. A. Casnoff Cert at ¶ 8.

M.      The twenty seven page, sixty-two paragraph Century Settlement Motion did not mention BIW or suggest that any rights against BIW would be impaired. *See* First Bankr. Dkt. No 4439.

N.      The Notice of Hearing corresponding to the Century Settlement Motion likewise made no mention of BIW or suggest that any rights against BIW would be impaired. *See* First Bankr. Dkt. No. 4439-5.

O.      Nor did the proposed order. First Bankr. Dkt. No. 4439-2.

P.      A reader would need to wade through the Century Settlement Agreement itself, a sixty- three page single spaced document attached to the motion, to find any mention of the proposed finding as to BIW, buried in non-descript type on the fifth page of the document. *See* First Bankr. Dkt. No. 4439-2 at Ex. "A."

Q.      Section J(v), located inconspicuously under the definition of "Confirmation Order," mentions that the Debtor and Century contemplated a potential finding, in a later confirmation order, that BIW has no responsibility for liabilities of the Congoleum Flooring Business. *Id.*

R.      Section J(v) further provided "that Century Indemnity Company may waive this requirement in writing." *Id.*

S.       One of the cross referenced definitions within J(v) is the definition of "Congoleum Flooring Business," a phrase which has been subject of much dispute within the District Court Action by the Debtor and BIW, with BIW contending it includes environmental liabilities and Congoleum contending it was limited to asbestos product-line liabilities. *See* Settlement Motion, Bankr. Dkt. No.

483-1 at ¶ 25; *See also* District Court Action Dkt. No. 95 at pp. 2, 8-9.[9]

T.      DVL did not know about, nor participate in, the hearing regarding the Century

Settlement Motion. A. Casnoff Cert. at ¶ 10; Transcript of Century Motion Hearing Tr.[10]

U.      There is no third party release or injunction within the Century Settlement Order. *See*

First Bankr. Dkt. 4572.

V.      There are no findings in the Century Settlement Order in support of a release or

injunction in favor of BIW. *See* First Bankr. No. 4572.

W.      There is no mention in the Century Settlement Order of BIW. *Id.*

X.      Howard Feist testified that the issue of whether BIW had responsibility for any of the

liabilities of the Congoleum Flooring Business was not negotiated between the Debtor and Century.

Feist May 21, 2019 Dep. Tr. 168:8-168:21.

Y.      Following submission of an initial plan and ten modified versions, on February 25,

2008 the Debtor filed a proposed Chapter 11 Plan and Disclosure Statement (the "2008 Proposed

Plan" and "2008 Disclosure Statement"). First Bankr. Dkt. at Nos. 6166-6167.

Z.      The 2008 Proposed Plan and 2008 Disclosure Statement do not mention BIW in any

way, and do not state that claims against BIW could or would be affected by the Plan or a

Confirmation Order. *Id.*

AA.    The 2008 Proposed Plan contained a statement in section 11.8 that:

"[n]othing in the Confirmation Order or Plan shall be construed as releasing or
relieving any Entity of any liability under any Environmental Law."

2008 Proposed Plan, First Bankr. Dkt. at no. 6166, p. 60, § 11.8.

BB.    On April 17, 2008, USA Today published a legal notice of the order approving the

---

[9] Included within BIW's Appendix II at Exhibit 23.
[10] Included within BIW's Appendix II at Exhibit 13.

2008 Disclosure Statement, setting a confirmation hearing date, setting the deadline to object to the proposed plan, and setting procedures and deadlines for voting on the plan. First Bankr. Dkt. at No. 6432.[11]

CC.    The April 10, 2008 legal notice indicated that objections to the plan were due the prior day, April 9, 2008, and stated that any objections not timely filed "shall not be considered and shall be overruled." *Id.*

DD.    The April 10, 2008 legal notice did not state any claims against third parties such as BIW would be impaired. *Id.*

EE.    DVL did not receive a copy of the 2008 Proposed Plan or 2008 Disclosure Statement and did not have knowledge of those documents, the deadline to object to confirmation or any other details regarding that ultimately rejected plan. *See* A. Casnoff Cert. at ¶¶ 11-12.

FF.    On June 5, 2008 the Bankruptcy Court found the 2008 Proposed Plan was not confirmable as a matter of law. First Bankr. Dkt. at No. 6575.

GG.    No subsequent proposed plans or disclosure statements were published in any newspapers. *See* First Bankr. Dkt.; Dist Ct. Dkt.

HH.    Ultimately, the Bankruptcy Court denied confirmation of a Twelfth Proposed Plan and dismissed the Debtor's Bankruptcy in February of 2009, with the dismissal being reversed by the District Court on August 17, 2009. *See* First Bankr. Dkt. at No. 7620.

II.    Within the same Order, the District Court withdrew the reference of the entire bankruptcy proceeding. *Id.*

JJ.    Nearly a full two years after the 2008 proposed plan was rejected, on March 11, 2010, the Debtor filed the subject Proposed Plan and corresponding Disclosure Statement. Dist. Dkt. at Nos.

---

[11] Included within BIW's Appendix II at Exhibit 15.

434, 435-1.

KK.    Section 6.11(f) of the Disclosure Statement stated:

"[n]o third party releases are being granted pursuant to the Plan nor are the Plan Proponents seeking approval of any such third party releases, except as set forth specifically herein."

Dist Ct. Dkt. at No. 434, p. 66, § 6.11(f).

LL.    Likewise, Section 11.5 of the Proposed Plan stated:

"[n]o third party releases are being granted pursuant to the Plan nor are the Plan Proponents seeking approval of any such third party releases, except as set forth specifically in this Plan."

Dist Ct. Dkt. at No. 434-1, p. 39, § 11.5.

MM.    The Proposed Plan and its Disclosure Statement instead **expressly** **preserved** all environmental claims and **directed that participation by entities holding such claims was neither necessary nor appropriate**.

*Id.*

NN.    Section 6.11(j) of the Fourth Amended Plan Disclosure Statement stated:

Environmental rights and Claims of Governmental Units and rights of contribution, reimbursement and indemnity by other Entities (other than ABI) under applicable Environmental Laws will survive the Reorganization Cases, will not be discharged, impaired or adversely affected by the Plan and the Reorganization Cases and will be determined in the manner and by the administrative or judicial tribunals in which such rights or Claims would have been resolved or adjudicated if the Reorganization Cases had not been commenced. Governmental Units and other Entities, other than ABI whose claims, if any, shall be discharged, need not file any Proofs of Claim under Environmental Laws in the Reorganization Cases in order to preserve Claims under Environmental Laws. Nothing in the Confirmation Order or Plan will be construed as releasing or relieving any Entity of any liability under any Environmental Law.

Dist Ct. Dkt. at No. 435-1, p. 68, § 6.11(j).

OO.    Likewise, Section 11.9 of the Proposed Plan stated:

Environmental rights and Claims of Governmental Units and rights and claims of injury, damages, cost recovery contribution, reimbursement and indemnity by other

Entities (other than ABI) under applicable Environmental Laws shall survive the Reorganization Cases, shall not be discharged, impaired or adversely affected by the Plan and the Reorganization Cases and shall be determined in the manner and by the administrative or judicial tribunals in which such rights or Claims would have been resolved or adjudicated if the Reorganization Cases had not been commenced. Governmental Units and other Entities, other than ABI whose claims, if any, shall be discharged, need not file any Proofs of Claim under Environmental Laws in the Reorganization Cases in order to preserve Claims under Environmental Laws. Nothing in the Confirmation Order or Plan shall be construed as releasing or relieving any Entity of any liability under any Environmental Law.

Dist Ct. Dkt. at No. 434-1, p. 40, § 11.9.

PP.    Neither the Proposed Plan nor the Disclosure Statement made any reference to a third party release of BIW, or to any factual findings as to BIW which would be submitted in a proposed confirmation order. In fact, neither the Proposed Plan nor the Disclosure Statement made any mention of BIW. Dist Ct. Dkt. at Nos. 434-1, 435-1.

QQ.    Neither the Proposed Plan nor the Disclosure Statement contained notices which would be required under Fed R. Bankr. P. 2002(c)(3) and Fed R. Bankr. P. 3016(c) as to an injunction or release of BIW. *Id.*

RR.    Notice of the confirmation hearing was mailed on April 16, 2010 to mailing lists which did not include DVL. *See* First Bankr. Dkt. No. 8023; Dist. Dkt. No. 554.[12]

SS.    Notice was not published in any newspapers.

TT.    DVL was not aware of the Proposed Plan or the Disclosure Statement. A. Casnoff Cert at ¶¶ 13-16.

UU.    On June 2, 2010, five days before the confirmation hearing, counsel for the Debtor filed a proposed confirmation order. *See* Dist. Dkt. at No. 641.

VV.    The proposed confirmation order was not served on DVL or noticed by publication. *See* Dist. Dkt., On June 7, 2010, the District Court confirmed the Proposed Plan, including the

---

[12]  Included within BIW's Appendix II at Exhibit 15.

language from the Proposed Plan within § 11.5 and 11.9. *See* Dist Dkt. Nos. 664, 664-1.

WW.    There is no third party release or injunction within the Plan as to BIW. *See* Dist. Dkt. No. 664-1.

XX.    There is no third party release or injunction within the Confirmation Order as as to BIW. *See* Dist. Dkt. No. 664.

YY.    At the confirmation hearing, there was no mention of ¶ 104 of the confirmation order and no mention whatsoever of BIW, including especially no mention of a release or injunction as to BIW. *See* Transcript of Confirmation Hearing.

ZZ.    There are no findings in the Confirmation Order in support of a release or injunction in favor of BIW. *See* Dist. Dkt. No. 664.

AAA.   At no time during the pendency of the First Bankruptcy did DVL receive notice that any claims against BIW would be impaired, including its then unknown claim against BIW. *See* A. Casnoff Cert. at ¶¶ 17-19.

BBB.   Neither BIW nor DVL made any appearances, filed any papers, or took any action in the Prior Bankruptcy.

CCC.   The issue of whether BIW is responsible for liabilities resulting from the Congoleum Flooring Business was never presented in a motion, pleading, or other adversary document, and was never challenged to adjudication by any participant in the First Bankruptcy.

DDD.   The issue of whether BIW is liable under CERCLA, even if its interpretation of the 1986 Transactions is correct, was never litigated by any participant in the First Bankruptcy.

### The DVL Lawsuit

A.    On June 12, 2017, DVL filed the District Court Action seeking damages of over $19 million as a result of the need to remediate environmental contamination on property located in Kearny, New Jersey (the "DVL Parcel") that was previously owned by BIW.  *See* Amended

Complaint, DVL Lawsuit, Docket No. 24-1 at pp. 16-17.  Dkt. No. 18.

B.      In that proceeding, DVL asserts causes of action under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et. seq.*, ("CERCLA") and the New Jersey Spill Compensation and Control Act (the "Spill Act"), as well as under New Jersey common law for public nuisance, negligence, strict liability/abnormally dangerous activity and unjust enrichment.  *Id.* at pp. 8-17.

C.      On December 5, 2017, after the Debtor had joined BIW as a third party in the DVL Lawsuit and DVL had amended its complaint to name BIW as a direct defendant, BIW filed a motion to dismiss, arguing that DVL's claims against BIW were barred by *res judicata*, because the confirmation order entered by the District Court on June 7, 2010, in Debtor's prior bankruptcy case, precluded liability against BIW.  *See DVL, Inc. v. Congoleum Corp.*, 2018 U.S. Dist. LEXIS 143437, *8, *15 (D.N.J. 2018); DVL Lawsuit, Docket No. 24-1 at pp. 16-17.

D.      DVL and the Debtor opposed BIW's motion to dismiss and, after full briefing and argument, the District Court rejected BIW's *res judicata* and estoppel arguments.  *DVL, Inc. v. Congoleum Corp.,* 2018 U.S. Dist. LEXIS 143437, *13-17 (D.N.J. 2018) (a/k/a the "2018 District Court Opinion"); DVL Lawsuit, Docket No. 32, Docket No. 63 at pp. 9-12.

E.      Judge McNulty held that "[t]he context of the confirmation order suggest that *res judicata* does not apply to the claims made by DVL []." *DVL, Inc. v. Congoleum Corp,* 2018 U.S. Dist. LEXIS 143437 at *15.

F.      In so stating, Judge McNulty expressly pointed to the environmental liability carve out within the plan. *Id.* at * 16.

G.      Judge McNulty stated "the entire subject matter of the order's disclaimer of liability might legitimately be understood to be the asbestos claims alone, and the plan itself tends to confirm that." *Id.* at 17.

16

H.      Judge McNulty has already held that a party reading the confirmation order together with the Plan, including its express environmental carve out, would have been correct to legitimately understand that the disclaimer of liability relates to asbestos claims alone *Id.* at *15-17.

**BIW Holds Liabilities Flowing from Historical Operations of the Congoleum-Nairn Flooring Business, Precluding BIW's Proposed Findings from Being Entered**

**The 1986 Transactions**

I.      As recited in the District Court record, Congoleum-Nairn, Inc. ("Congoleum-Nairn") operated a flooring-manufacturing facility in Kearny, New Jersey (the "Kearny Plant").[13] Congoleum-Nairn and its successors subsequently subdivided the Kearny Plant property into separate parcels and sold them to various purchasers, including the DVL Parcel, which was sold in 1960.

J.      Congoleum-Nairn went through mergers and name changes, and by 1984, its successor was part of a conglomerate headed by the parent company Congoleum Industries, Inc. ("CII"). *See* BIW Proposed Finding EE.

K.      It is undisputed that prior to the 1986 Transactions, the historic liabilities from the Kearny Plant rested within a CII subsidiary named "Congoleum Corporation," which has been referred to throughout the DVL Lawsuit as "1984 Congoleum." *See DVL, Inc. v. Congoleum Corp.,* 2018 U.S Dist. LEXIS at * 5; BIW Proposed Finding EE.

L.      The flooring business was a division within 1984 Congoleum, while BIW was a wholly-owned subsidiary of 1984 Congoleum. *See* BIW Proposed Finding EE.

M.      Within the 1986 Transactions 1984 Congoleum spun off its operating divisions into separate stand-alone subsidiary companies and eventually sold each subsidiary company to a different buyer. *See* BIW Proposed finding EE.

N.      Ultimately, as part of the 1986 transactions, BIW and 1984 Congoleum merged, with

---

[13] The DVL Parcel is a portion of the former Kearny Plant property.

BIW being the surviving corporation, with BIW expressly inheriting all responsibilities and liabilities of 1984 Congoleum. *See* Articles of Merger of Congoleum Corporation into Bath Iron Works Corporation, BIW022536-022540; BIW022540, ¶6; West. 30(b)(6) Dep. Tr. 46:10-47:16, 49:23-50:1, 51:6-54:5.

O.    A purchaser, TG Holding, then bought CII and BIW and, after a series of name changes and mergers between CII, BIW and the purchaser, present day BIW again became the surviving entity. *See* GGVA Merger Agreement, BIW22000-BIW022137;[14] Certificate of Merger of Bath Acquisition Corp into BIW Industries Inc. (formerly Congoleum Industries, Inc.), SA CNGLM 005340-005345; Articles of Merger of Bath Acquisition Corp. and BIW, Exhibit 15 to deposition of J. Gregory Milmoe; Milmoe Dep. Tr. 113:18-114:7, 180:6-181:14; West 30(b)(6) Dep. Tr. 123:13-129:10.

P.    The GGvA Merger Agreement included a disclosure schedule, wherein there was an explanatory note stating "it should be noted that, because of the merger of 1984 Congoleum into BIW, BIW may be contingently liable for these matters." *See* GGVA Merger Agreement at BIW 022117; Milmoe Dep. Tr. 94:5-95:24, 174:4-174:14. The phrase "these matters" referred to lawsuits and liabilities relating to the flooring business, including environmental liabilities, and even included specific lawsuits related to environmental contamination. *Id.* at BIW 022124-022129. BIW's 30(b)(6) representative, Brent West, acknowledged that BIW believes the document indicates it is contingently, or secondarily liable, to Congoleum. West. 30(b)(6) Dep. Tr. 116:10-118:17.

Q.    In 2011, BIW acknowledged in a Form 10_Q filed with the United States Securities and Exchange Commission that Congoleum Corporation is its predecessor.  See Form 10-Q, Exhibit 8 to West Dep. At Exhibit B, p. B-2 (for ease of reference, located on the 71st page of the Exhibit).

---

[14] Included within BIW's Appendix I at Exhibit 7.

R.    BIW's expert, Edward Rock, opined that the sentence in the GGvA Merger Agreement

was meant to address and put the purchaser on notice of CERCLA liability due to the merger of 1984

Congoleum and BIW. *See* Report of Edward B. Rock at ¶ 79.

## III.    DVL's Deposition Objections and Designations including Counter Designations

| Edward Bramsom |
| --- |
| page and line |
| 28:19-23 |
| 32:1-2 |
| 32:3-14 |
| 35:5-18 |
| 36:9-15 |
| 37:1-2 |
| 54:15-55:2 |
| 70:22-71:1 |
| 72:1-10 |
| 80:13-81:14 |

| Gregory Milmoe |
| --- |
| Page:line |
| 88:4-25 |
| 90:4-91:7 |
| 94:5-95:24 |
| 98:8-99:20 |
| 113:18-114:7 |
| 127:21-128:12 |
| 139:7-14 |
| 152:6-22 |
| 174:4-14 |
| 180:6-181:13 |

| Christopher O'Connor |
| --- |
| Page:line |
| 3:5 |
| 32:3-12 |
| 36:21-37:13 |
| 346:19-347:5 |
| 393:13-18 |
| 398:2-399:4 |

DVL Objects to the following of BIW's designations as to Christopher O'Connor based on lack of personal

knowledge: 3:5, 36:21-37:13, 393:13-18

| Theresa Garrod |
| --- |
| **Page:line** |
| 70:23-71:21 |
| 91:23-93:18 |
| 208:-209:18 |

| Donald Golemme |
| --- |
| **Page:line** |
| 33:21-24 |
| 37:19-22 |
| 41:15-19 |
| 60:11-61:8 |
| 165:11-166:11 |
| 168:8-21 |
| 174:4-6 |
| 179:1-20 |
| 181:4-9 |
| 184:13-22 |
| 195:7-19 |
| 204:14-21 |
| 259:14-260:14 |
| 266:17-267:3 |
| 268:10-20 |
| 269:22-270:1 |

| Daniel Ferguson |
| --- |
| **Page:line** |
| 93:3-94:13 |
| 168:8-21 |

| Howard N. Feist, III May 21, 2019 |
| --- |
| **Page:line** |
| 80:8-84:4 |

| BIW 30(b)(6)- Brent West |
| --- |
| **Page:line** |
| 46:10-47:16 |
| 49:23-50:1 |
| 51:6-54:5 |
| 55:14-58:4 |
| 116:10-118:17 |
| 123:13-129:10 |

## IV.    DVL's Witnesses

DVL reserves the right to call any and all witnesses on rebuttal, even if not listed above or below. To the extent the hearing reaches the point of DVL's submission of evidence over DVL's objections, DVL intends to present the Certification of Alan E. Casnoff as evidence, and reserves the right to supplement the certification with live testimony, and DVL will present Mr. Casnoff for cross-examination.

Respectfully submitted,

Dated: December 17, 2020

By: */s/Eitan D. Blanc*
Eitan D. Blanc, Esq.
Anthony R.  Twardowski, Esq. (admitted *pro hac vice*)
Earl M. Forte, Esq. (admitted *pro hac vice*)
**Zarwin Baum DeVito Kaplan Schaer Toddy, P.C.**
2005 Market Street, 16th Floor One Commerce Square Philadelphia, PA 19103
Tel: (215) 569-2800
E-mail: eblanc@zarwin.com
artwardowski@zarwin.com
emforte@zarwin.com

**POST & SCHELL, P.C.**

By:  */s/ Paul M. Schmidt*
Paul M. Schmidt, Esquire
**POST & SCHELL, P.C**
Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
215-587-1095
Fax: (215) 587-1444
Email:pschmidt@postschell.com

Attorneys for DVL, Inc. and
DVL Kearny Holdings, LLC