**THOMPSON HINE LLP**

Jeremy M. Campana, Esq.
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
T: (216) 566-5936 / F: (216) 566-5800
jeremy.campana@thompsonhine.com

*Attorney for Ashland LLC, International*
*Specialty Products Inc. and*
*Givaudan Fragrances Corporation*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IN RE:**<br><br>**CONGOLEUM CORPORATION,**<br><br>Debtor. | **CHAPTER 11**<br><br>**CASE NO. 20-18488 (MBK)** |
| **BATH IRON WORKS CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**CONGOLEUM CORPORATION,**<br><br>Defendant. | **ADV. PROC. NO. 20-01439 (MBK)** |

**OBJECTION TO (I) MOTION FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AGREEMENT PURSUANT TO FED. R. BANKR. P. 9019 BY AND BETWEEN CONGOLEUM CORPORATION AND BATH IRON WORKS CORPORATION AND (II) THE MEMORANDUM OF LAW IN SUPPORT OF THE ENTRY OF AN ORDER CONTAINING FINDINGS SET FORTH IN THE OFFER OF PROOF FILED BY BATH IRON WORKS CORPORATION**

Ashland LLC, its subsidiary International Specialty Products Inc. (collectively, "Ashland"), and Givaudan Fragrances Corporation ("Givaudan" and together with Ashland, the "Environmental Claimants"), by and through their undersigned counsel, hereby submit this

objection to the (i) Motion for Entry of an Order Approving the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019 by and between Congoleum Corporation and Bath Iron Works Corporation filed by Congoleum Corporation ("Debtor") (Dkt. No. 483) (the "Settlement Motion"), and (ii) the Memorandum of Law in Support of the Entry of an Order Containing Findings Set Forth in the Offer of Proof filed by Bath Iron Works Corporation ("BIW") (Dkt. No. 546) (the "BIW Memo"). The Environmental Claimants respectfully request that the Court either deny the Settlement Motion or condition its approval on limiting the preclusive effect of the findings requested by BIW.

## I. PRELIMINARY STATEMENT

The Environmental Claimants urge this Court to consider the Settlement Motion from the perspective of creditors, particularly the substantial environmental creditors of this estate. This is a liquidating case; thus, the interests of creditors are paramount. The confirmation hearing for the Debtor's proposed plan of liquidation is currently scheduled for January 8, 2020, about one week after the hearing on the Settlement Motion. With a mere .1% to 2% projected recovery, unsecured creditors will receive minimal financial benefit from the proposed settlement. Quite the opposite from any negligible monetary benefit, however, the settlement will cause significant harm to all non-settling environmental creditors by eviscerating their rights against BIW.

BIW seeks vast relief and benefits from this bankruptcy case as if it were a chapter 11 debtor itself (of course, without carrying the substantial burdens). The proposed findings—which are akin to providing BIW with a nonconsensual third-party release, or even a non-debtor discharge—will impair the rights of all environmental creditors of this estate to assert claims

against BIW related to past and future clean-up costs at the Passaic River.[1] The Court should not permit such non-essential, harmful relief for the benefit of a non-debtor.

Beyond the substantive issues, there is an important due process concern. The relief requested in the Settlement Motion *is* the same relief that BIW was seeking in the declaratory judgment action before this Court, but without the very important procedural protections for the affected creditors. The affected environmental creditors are not parties to the adversary proceeding between BIW and the Debtor, nor are they parties to the settlement. Instead, just over one month after receiving notice of the Settlement Motion—which motions are generally common, innocuous and routinely granted in bankruptcy cases—unsuspecting creditors may be bound by a preclusive judgment that declares BIW is *not* responsible for the Debtor's environmental liabilities (legacy or otherwise) and is *not* the successor to the Debtor.

Moreover, contrary to BIW's views, the settlement is not essential to the resolution of the case. Confirmation of the Debtor's liquidating plan is not contingent on settlement approval. The "best interests of creditors" test would still be met if the Court either denied the Settlement or limited the findings causing BIW to walk away from the deal. BIW may then decide to appropriately take this battle with its currently active foe, DVL, Inc., back to the District Court where it belongs. Finally, if the Court decides to limit the findings and BIW is still at the table, then the findings should be limited to the two parties for res judicata purposes, and collateral estoppel has no place with a consensual compromise.

## II.   THE INTERESTS OF THE ENVIRONMENTAL CLAIMANTS AND OTHER ENVIRONMENTAL CREDITORS

Both Ashland and Givaudan hold substantial liquidated and unliquidated claims arising under state and federal environmental protection laws related to response costs incurred in the

---

[1] BIW also seeks a standard bar date order finding relating to the first bankruptcy, requesting that the Court find the publication notice bound all "unknown creditors." (Dkt. No. 483-2, proposed finding III.U).

Lower Passaic River to address contamination emanating from an industrial site in Kearny, NJ ("Kearny Site"), the responsibility for which Congoleum and BIW have been litigating for years without resolution.[2] Givaudan timely filed Claim 112 in the amount of $4,735,011.78 plus additional unliquidated future costs, and Ashland timely filed Claim 118 in the amount of $5,124,484.62 plus additional unliquidated future costs. Due to extensive legacy environmental liabilities that contributed to the Debtor's demise, there are a multitude of other environmental creditors of this estate. *See* Disclosure Statement, § 2.3.4. (Dkt. No. 456). Most notably, The Lower Passaic River Study Area (LPRSA) Cooperating Parties Group (CPG) filed a claim on behalf of 41 different members where the combined claims could reach staggering amounts. *See* Claim 116. If such members have claims 50% of the size of Ashland and Givaudan, that is $100 million.

Bottom line, to the extent that the Environmental Claimants or *any* environmental creditor in the Debtor's case desires to assert claims against BIW as a potentially responsible party ("PRP") related to the Passaic River Superfund site, BIW's proposed findings could bar them from doing so.

### III. THE SETTLEMENT AGREEMENT IS NOT FAIR AND EQUITABLE TO ENVIRONMENTAL CREDITORS AND FALLS BELOW THE LOWEST POINT IN THE RANGE OF REASONABLENESS

The Third Circuit has "recognize[d] four criteria that a bankruptcy court should consider" in weighing a motion to approve a settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) *the paramount interest of the creditors*." *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (emphasis

---

[2] More detail regarding the facts underlying Environmental Claimants' proofs of claim can be found in the riders attached to their filed proofs of claim.

4

added) (citing *Protective Comm. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). "Regarding, [the fourth factor], courts must consider the effect of the settlement on all parties to the proceeding—the entire creditor body—and not individual creditor interests." *In re Roper & Twardowsky, LLC*, 559 B.R. 375, 394 (Bankr. N.J. 2016) (citing *In re Biolitec, Inc.*, 528 B.R. 261, 270 (Bankr. D.N.J. 2014)). "It remains a court's duty to ensure that compromises are fair and equitable, as are the other aspects of reorganizations. Under the fair and equitable standard, we look to the fairness of the settlement to other persons, i.e.*, the parties who did not settle*." *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 645 (3d Cir. 2006) ("The court must act independently, out of its own initiative, for the benefit of all creditors. This obligation prevails even where the creditors are silent…") (emphasis added; citations omitted). "In analyzing the compromise or settlement agreement under the *Martin* factors, courts should not have a 'mini trial' on the merits, but rather it should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.R. Grace & Co.*, 475 B.R. 34, 77-78 (D. Del. 2012). The "court must determine whether the trustee has. . . settled too cheaply or compromised too much." *In re NJ Affordable Homes Corp.*, 2007 Bankr. LEXIS 4091, at *7 (Bankr. D.N.J. 2007). "The bankruptcy court need not, however, conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by doing so, there would be no need of settlement." *Nebo Ventures, LLC v. Stanziale (In re Novapro Holdings, LLC),* 2019 U.S. Dist. LEXIS 49047, at *11 (D. Del. Mar. 25, 2019) (emphasis added).

Considering the Debtor is a liquidating shell who will not be receiving a discharge, the *primary* consideration for this Court is the impact on creditors. Even in reorganization cases, the law is that the Court must consider the interests of the creditors and non-settling parties. Here,

the settlement does not pass muster under the applicable standards. The Court must balance the harm of the impact of the settlement on a large class of creditors with the alleged benefits received. What benefit do the creditors receive by the Debtor "settling" if there nothing left to protect? Under clear res judicata and collateral estoppel principles, see *infra*, if the Debtor would have simply defaulted and handed over the findings (which seems to be happening anyway), the environmental creditors would not be precluded. Additionally, the liquidating plan would still get confirmed and the estate would be properly administered and closed. Instead, BIW opportunistically offered the estate $1 million in exchange for an agreement by the Debtor to look the other way and let BIW try to convince this Court to give BIW the declaratory judgment it so desperately seeks—all in the name of the Court's ability to interpret its own orders (which seems to be a red herring, see *infra*). But where is the $1 million going? Will there be any meaningful impact on unsecured creditors? That seems highly unlikely. BIW's payment of $1 million (along with giving up its $14 million claim, which if allowed in full *might* be worth $140,000), in exchange for extremely valuable preclusive findings that it plans to use against creditors and anyone who merely received notice, is hardly fair and equitable. It seems obvious that losing the ability to bring a claim against BIW as a PRP for indemnification or contribution in the future for 100% dollars far outweighs the mere .1 to 2% recovery (even if BIW waives its claim). And as previously mentioned, the future damage claims of all environmental creditors for the multi-billion-dollar Passaic River Superfund site will likely flood the unsecured claim pool. BIW could be saving itself tens of millions of dollars in response costs, if not more, when all is said and done. Its persistent, aggressive litigation efforts are telling in that regard.

In sum, this Court should not immunize BIW against any potential Passaic River related environmental liability that may take place long after the Congoleum estate is closed in exchange for $1 million. Environmental creditors who are owed, at a minimum, tens of millions of dollars in past and future response costs by the Debtor *and* BIW should not be forced to accept that fate. This settlement is far from in the paramount interest of Congoleum's creditors and well below the lowest point in the range of reasonableness. Accordingly, the Court should deny the Settlement Motion or condition its approval on making clear that the findings are binding only between the settling parties and not on all creditors of the Debtor's estate.

### IV.     OTHER DEFICIENCIES WITH THE SETTLEMENT MOTION

#### A. If the Court Approves the Settlement, the Court Should Limit the Preclusive Effect of the Findings and Not Provide BIW with a Nonconsensual Third-Party Release.

The effect of the findings proposed by BIW to be included in the settlement order, and eventually the plan, would be akin to a nonconsensual third-party release or a non-debtor discharge. *See Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 213-14 (3d Cir. 2000). "In the Third Circuit, nonconsensual third-party releases are permissible *in plans of reorganization* if they meet the *Continental* standard of fairness and necessity to the reorganization." *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 272 (Bankr. D. Del. 2017) (emphasis added); *see also In re Continental Airlines*, 203 F.3d at 214 ("The hallmarks of permissible non-consensual releases [are] fairness, necessity to the reorganization, and specific factual findings to support these conclusions."). Bankruptcy courts in this Circuit have made clear that the findings that support the approval of a settlement do not support a third-party release at confirmation. *See, e.g., In re Lower Bucks Hosp.*, 471 B.R. 419 (Bankr. E.D. Pa. 2012) *affirmed by Bank of N.Y. v. Becker (In re Lower Bucks Hosp.)*, 488 B.R. 303 (E.D. Pa. 2013) *affirmed by In re Lower Bucks Hosp.*, 571 F. App'x 139 (3d Cir. 2014).

7

The *Lower Bucks* case illustrates a bankruptcy court's critical and skeptical thought process on similar issues. In *Lower Bucks*, the court held that a third-party release could not be included in a confirmation order despite it having been included in the settlement of an adversary proceeding that the court had previously approved. *In re Lower Bucks Hosp.*, 471 B.R. at 425. In approving the settlement, the *Lower Bucks* court noted "that the intended consequences of the order were narrow." *Id.* at 435. The court made clear that it was *not* directing that the findings in its order be given preclusive effect because the Court doubted that those findings were necessary to the order approving the settlement. *Id.* at 435-36. Later, during the confirmation process, the Court amended its 9019 order to specifically provide "that nothing in the Stipulation or this Order shall waive, release, discharge or impair any claims" that may be asserted against the settling creditor by other parties. *Id.* at 441.

Here, the proposed findings which essentially force the release of potentially very valuable claims by third parties for the benefit of a non-debtor cannot be justified. The Debtor has no remaining operations and is liquidating; thus, the releases do not serve an important purpose for reorganization. The releases serve only one purpose: to inoculate BIW against future environmental clean-up liabilities. With Congoleum left as a liquidating shell, BIW understands the value in that release. The Court simply cannot make findings that the releases are fair and equitable. In fact, they are patently unfair and inappropriate, and have nothing to do with the administration of this liquidating estate (aside from generating an inadequate amount of cash). Like the court in *Lower Bucks*, this Court should include language limiting the preclusive effect of any findings included in an order granting the Settlement Motion because those findings are not necessary to the settlement (or the later confirmation order).

### B. The Proposed Settlement Goes Beyond the Purpose of Bankruptcy Rule 9019 by Seeking to Curtail Potential Future Litigation against a Non-Debtor, BIW.

"[T]he unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them." *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006). Several "courts have highlighted the preeminent interests of creditors, noting that the court's duty to protect their interests should only be set aside in certain circumstances." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 837 (Bankr. D. Del. 2008) (collecting cases). And courts have disapproved settlements where the proposed settlement "would have the effect of curtailing" litigation against one of the settling parties outside of bankruptcy. *See, e.g., In re Covington Props., Inc.*, 255 B.R. 77, 80 (Bankr. N.D. Fla. 2000).

In *Covington*, the proposed settlement would have resolved not only all claims held by the debtor but also all claims held by certain non-settling creditors against the other non-debtor parties to the settlement. The *Covington* court expressly held "such settlement agreement purporting to unilaterally settle a creditor's state court claims against non-debtors is *not* 'fair and equitable.'" (emphasis in original). *Covington Props., Inc.*, 255 B.R. at 78. In *Nutraquest*, the Third Circuit affirmed the bankruptcy court's approval of the settlement over the creditor's objection, in part, because the creditor "would retain all of its defenses in the" other litigation, including the ability to argue that the other party to the settlement had been contributorily negligent. *Id.* at 646.

Here, the proposed findings in the settlement would eviscerate the claims of non-settling environmental creditors against non-debtor BIW. The Environmental Claimants and all environmental creditors would no longer be able to argue that BIW is a proper party to pay for contamination at the Kearny Site. For a nominal consideration from which the affected creditors will hardly benefit, such creditors' rights will be severely impacted for years to come. Therefore,

9

the Settlement Motion should be denied, or the preclusive effect of the findings should be expressly limited.

### C. The Requested Relief in the Settlement Motion Does not Afford the Environmental Claimants and Other Environmental Creditors with Adequate Due Process.

The procedural protections for the extraordinarily impactful findings in the order are simply not present in the Fed. R. Bankr. P. 9019 context. The Settlement Motion has been pending for one month. BIW filed just under 4000 pages of evidentiary support during that one-month span. The proposed findings will have the same preclusive effect on all environmental creditors as if BIW brought a declaratory action against each potentially barred entity for such findings. Except they didn't. The Settlement Motion itself, an 88-page document, does not spell out *front and center* what effect the findings will have on the environmental creditors of Congoleum.[3] It does not adequately explain that such creditors will be barred from pursuing BIW with respect to past, current and future cleanup costs at the Passaic River superfund site caused by contamination from the Kearney operations. The Settlement Motion itself says very little about the requested findings. Instead, the findings are laid out in 16 pages of an *attachment* to the settlement agreement, which itself is an *attachment* to the Motion.

More appropriate for the requested relief would be either[4] a declaratory action against all PRPs who BIW seeks to bind, where such PRPs have a full and fair opportunity to litigate the exact nature and effect of the findings (obviously more risky and expensive), or perhaps a notice where creditors could "opt-out" of the third- party releases that are essentially being provided to BIW in the settlement and plan, and the failure to respond would *not* be deemed consent.

---

[3] For that matter the Disclosure Statement merely states the settlement requires the Court to make "certain findings of fact." Disclosure Statement, § 2.4.5 (Dkt. No. 456).

[4] Or a voluntary chapter 11 petition (as previously mentioned).

## V. OBJECTION TO THE BIW MEMO

### A. This Court's Interpretation of the 2010 Confirmation Order is Far from Essential to the Debtor's Plan of Liquidation.

The 2010 Confirmation Order[5] is simply a hook for BIW to obtain favorable findings in an expedited fashion through the 9019 settlement process. BIW argues: "[d]etermining what the 2010 Confirmation Order means and whether Congoleum (and its creditors) must abide by the deal Congoleum made to emerge from its First Bankruptcy Case is essential to confirmation of Congoleum's current plan of reorganization [sic] and approval of a highly favorable settlement for creditors of this estate." (BIW Memo, p. 2). This assertion is inaccurate in many respects.

The settlement was announced in open court on October 13, 2020. If the settlement is so "essential" then why is it not prominently displayed in the Debtor's Disclosure Statement which was filed on November 11, 2020? To the contrary, it received a single paragraph discussion. See *supra*, FN 3. There are no references in the Plan or Disclosure Statement that confirmation is *contingent* on approval of the settlement and payment of $1 million. To the contrary, the liquidation analysis shows that the liquidating plan would provide a better return to unsecured creditors in chapter 11 *even if* the $1 million were not forthcoming. (Dkt. No. 456). In short, it appears the liquidating plan will be confirmed without BIW's settlement payment, and a large class of creditors will not be stripped of their valuable rights.

### B. BIW is Blatantly Forum Shopping.

BIW argues that "this Court is the appropriate court to determine the meaning of the 2010 Confirmation Order in Congoleum's first bankruptcy case." (Dkt. No. 546 at 10). The 2010 Confirmation Order, the clarity of which BIW grossly mischaracterizes as evidenced by Judge

---

[5] Congoleum's first chapter 11 case was docketed as no. 03-51524 (Bankr. D.N.J.), but the New Jersey District Court entered the confirmation order in case no. 09-04371 (D.N.J.).

McNulty's opinion,[6] need not be revisited considering the inequitable deficiencies with the settlement and the fact that the identical issues are pending in the District Court of New Jersey (case no. 17-04261).

As correctly stated in DVL, Inc.'s Motion to Withdraw the Reference (Dkt. No. 508) and the Debtor's (now withdrawn) Motion to Withdraw the Reference (Adv. Pro. Dkt. No. 8), BIW is unashamedly forum shopping in search of any court who will enter the requested findings. BIW's mission is more appropriately handled by the District Court.

Revisiting confirmation orders typically arises when parties seek to reopen previously confirmed cases. Rulings in that vein are instructive. In *In re Fansteel, Inc.*, the court was asked to reopen the case "for the purpose of interpreting and enforcing" the plan and the orders on confirmation. *In re Fansteel, Inc.*, 2017 Bankr. LEXIS 2439, at *8 (Bankr. D. Del. Aug. 28, 2017). The *Fansteel* court noted that "[a]lthough [it] ha[d] jurisdiction to enforce its confirmation orders, that jurisdiction [was] not exclusive." *Id.* at 12 (citing *In re Continental Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999); 28 U.S.C. § 1334(b); *Conseco, Inc. v. Schwartz (In re Conseco, Inc.)*, 330 B.R. 673, 680-81 (Bankr. N.D. Ill. 2005)). The *Fansteel* court held that "any court of competent jurisdiction, bankruptcy or otherwise, is capable of adjudicating" the issues before it and denied the motion to reopen. *Id.* Likewise, the issues at stake in interpreting the 2010 Confirmation Order do not require this Court's specific expertise and are already fully developed and pending before the District Court.

The Court should decline BIW's invitation to interpret the 2010 Confirmation Order to enter the proposed findings in any order approving the settlement.

---

[6] *See DVL, Inc. v. Congoleum Corp.*, 2018 U.S. Dist. LEXIS 143437, at *13-17 (D.N.J. 2018) (finding the purpose of the 2010 bankruptcy was to resolve *asbestos* claims and the plan of reorganization *expressly carved out environmental claims*; and noting the court could not find a "direct conflict" between the plan and the confirmation order for purposes of a motion to dismiss).

12

### C. Any Order Approving the Settlement Should not be Given Preclusive Effect.[7]

"The preclusive effect of a judgment is defined by [the doctrines of] claim preclusion and issue preclusion." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion,[8] a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "Issue preclusion,[9] in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire*, 532 U.S. at 748-49). "[T]hese two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

As an initial matter, orders approving compromises and settlements under Fed. R. Bankr. P. 9019 do not preclude later litigation of any *issue* because no issue is considered "actually litigated." *See Arizona v. California*, 530 U.S. 392, 414 (2000) ("It is the general rule that issue preclusion attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment. In the case of a

---

[7] Courts typically apply the preclusion law of the forum in which the judgment was rendered. *See Binney v. Binney (In re Binney)*, 2015 Bankr. LEXIS 1160, at *7 (Bankr. D.N.J. Apr. 7, 2015). Therefore, the Environmental Claimants analyze preclusion under principles of federal common law.

[8] The elements of claim preclusion are: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).

[9] The elements of issue preclusion are: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009).

judgment entered by confession, *consent,* or default, none of the issues is actually litigated.") (emphasis added).

Here, after hard fought litigation, the Debtor and BIW have consensually resolved claims among each other. The order approving the settlement should be given res judicata effect among <u>just those parties</u>. If not, and if all creditors and noticed parties were bound, that would create an incentive to place findings in 9019 orders in the hopes of creating a res judicata effect on unsuspecting third parties. Bankruptcy Rule 9019 is not intended for such a result.

Further, per Supreme Court precedent, due to its consensual nature, there should be no collateral estoppel on the issues of BIW's liability for other PRPs at the Kearny Site. For the reasons discussed at length, BIW's plan of "noticing the world" and binding every creditor under the settlement and the plan, which if allowed by this Court could have a horrible effect, is wholly inappropriate. That is the type of relief afforded only to companies in chapter 11 by way of a discharge, bar date orders and perhaps consensual third-party releases. BIW is not a debtor, has not had to go through the rigors of bankruptcy and should not be afforded this unorthodox relief.

## VI. CONCLUSION

For the foregoing reasons, the Court should deny the Settlement Motion unless the preclusive effect of the findings is expressly modified as requested herein.

Dated: December 18, 2020                                  Respectfully Submitted,


By: */s/ Jeremy M. Campana*
   Jeremy M. Campana
   **THOMPSON HINE LLP**
   3900 Key Center
   127 Public Square
   Cleveland, Ohio 44114-1291
   T: (216) 566-5936 / F: (216) 566-5800
   Jeremy.Campana@ThompsonHine.com

   *Attorney for Ashland LLC, International*
   *Specialty Products Inc. and*
   *Givaudan Fragrances Corporation*

**THOMPSON HINE LLP**
Jeremy M. Campana, Esq.
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
T: (216) 566-5936 / F: (216) 566-5800
jeremy.campana@thompsonhine.com

*Attorney for Ashland LLC, International*
*Specialty Products Inc. and*
*Givaudan Fragrances Corporation*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE:**<br><br>**CONGOLEUM CORPORATION,**<br><br>Debtor. | **CHAPTER 11**<br><br>**CASE NO. 20-18488 (MBK)** |
| **BATH IRON WORKS CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**CONGOLEUM CORPORATION,**<br><br>Defendant. | **ADV. PROC. NO. 20-01439 (MBK)** |

## CERTIFICATE OF SERVICE

1.    I, Jeremy Campana, am counsel for Ashland LLC, International Specialty Products Inc. and Givaudan Fragrances Corporation.

2.    On December 18, 2020, I sent a copy of the following pleadings and/or documents to the parties listed in the chart below:

OBJECTION TO (I) MOTION FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT PURSUANT TO FED. R. BANKR. P. 9019 BY AND BETWEEN CONGOLEUM CORPORATION AND BATH IRON WORKS CORPORATION AND (II) THE MEMORANDUM OF LAW IN SUPPORT OF THE ENTRY OF AN ORDER CONTAINING FINDINGS SET FORTH IN THE OFFER OF PROOF FILED BY BATH IRON WORKS CORPORATION

3. I certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Date: December 18, 2020  /s/ Jeremy M. Campana
Signature

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Warren A. Usatine, Esq.<br>Felice R. Yudkin, Esq.<br>Rebecca W. Hollander, Esq.<br>Cole Schotz P.C.<br>25 Main Street, P.O. Box 800<br>Hackensack, New Jersey 07602-0800 | Attorneys for the Debtor | Other Electronic Filing through CM/ECF as authorized by Fed R. Bankr. P. 8011(c)(2) |
| Margaret McGee, Esq.<br>Jeffrey M. Sponder, Esq.<br>U.S. Dept. Of Justice- Office of U.S. Trustee<br>One Newark Center<br>1085 Raymond Blvd., Ste. 21st Floor<br>Newark, NJ. 17102 | U.S. Trustee | Other Electronic Filing through CM/ECF as authorized by Fed R. Bankr. P. 8011(c)(2) |
| Mary E. Seymour, Esq.<br>Jeffrey d. Prol, Esq.<br>Bruce S. Nathan, Esq.<br>Jennifer Kimble, Esq.<br>Lowenstein Sandler LLP<br>One Lowenstein Drive<br>Roseland NJ, 07068<br>And<br>1251 Avenue of the Americas<br>New York, NY 10020 | Proposed counsel to the Official Committee of Unsecured Creditor | Other Electronic Filing through CM/ECF as authorized by Fed R. Bankr. P. 8011(c)(2) |

| Daniel M. Stolz, Esq. Donald W. Clarke, Esq. WASSERMAN, JURISTA & STOLZ, P.C. 110 Allen Road, Suite 304 Basking Ridge, NJ 07920 | Counsel for Bath Iron Works Corporation | Other Electronic Filing through CM/ECF as authorized by Fed R. Bankr. P. 8011(c)(2) |
|---|---|---|
| Wade A. Thomson, Esq. Catherine L. Steege, Esq, Esq. Michael A. Doornweerd, Esq. JENNER & BLOCK, LLP 353 N. Clark Street Chicago, IL 60654 | Counsel for Bath Iron Works Corporation | Other Electronic Filing through CM/ECF as authorized by Fed R. Bankr. P. 8011(c)(2) |
| All other parties receiving electronic notification through the Court's CM/ECF system | | Other Electronic Filing through CM/ECF as authorized by Fed R. Bankr. P. 8011(c)(2) |