UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Maggie H. McGee, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email: jeffrey.m.sponder@usdoj.gov
Email: maggie.mcgee@usdoj.gov

<div align="center">

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

</div>

| | |
|---|---|
| | : |
| In re: | : Case No. 20-18488 (MBK) |
| | : |
| Congoleum Corporation, | : Chapter 11 |
| | : |
| Debtor. | : Honorable Michael B. Kaplan |
| | : |
| | : Hearing Date: January 8, 2021 at 1:00 p.m. |
| | : |

<div align="center">

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE FIRST AMENDED
JOINT PLAN OF LIQUIDATION OF CONGOLUEM CORPORATION AND THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CONGOLEUM
CORPORATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

</div>

Andrew R. Vara, The United States Trustee for Regions 3 and 9 ("U.S. Trustee") by and

through his undersigned counsel, in furtherance of his duties and responsibilities under 28 U.S.C.

§ 586(a)(3) and (5), hereby submits this objection ("Objection") to confirmation of the *First

Amended Joint Plan of Liquidation of Congoleum Corporation and the Official Committee of

Unsecured Creditors of Congoleum Corporation  Pursuant to Chapter 11 of the Bankruptcy Code*

("Amended Joint Plan") (ECF No. 451)[1], and respectfully states as follows:

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Joint Plan.

## PRELIMINARY STATEMENT

1.      The U.S. Trustee objects to the Amended Joint Plan provisions for numerous reasons, including: 1) the exculpation provisions include non-fiduciaries and extend to post-confirmation activities; 2) the release provisions require further proof on the part of the Debtor, clarification, and unless clarification is made, appear to include non-consensual impermissible third-party releases, and 3) the injunction provisions are improper under existing law.[2]

## JURISDICTION

2.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of New Jersey issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear the above-referenced Objection.

3.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code ("Bankruptcy Code").  This duty is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under section 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

---

[2] The U.S. Trustee acknowledges that this Court overruled a similar objection filed in *In re SLT Holdco, Inc., et al.,* case no. 20-18368 (MBK) (Bankr. D. N.J. 2020).  However, the U.S. Trustee urges the Court to reconsider these issues and, at a minimum, 1) exclude interest holders who are a) receiving nothing under the Amended Joint Plan, b) unsecured creditors who fail to return a ballot, and c) those creditors who reject the Amended Joint Plan as third party releasors, and 2) limit the exculpation clause to fiduciaries and to the time period between the filing of the case and the Effective Date of the Amended Joint Plan.

4.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor and comment on plans and disclosure statements filed in Chapter 11 cases.

5.      Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard regarding the above-referenced Objection.

## **BACKGROUND**

6.      On July 13, 2020 (the "Petition Date"), Congoleum Corporation (the "Debtor") filed a voluntary petition for relief under the Bankruptcy Code.  ECF No. 1.

7.      Pre-petition, the Debtor manufactured resilient flooring, selling vinyl sheet and tile products for both residential and commercial markets.  ECF No. 18 at ¶ 7.

8.      On July 28, 2020, the U.S. Trustee appointed an Official Committee of Unsecured Creditors ("Committee").  ECF No. 93.

9.      On July 15, 2020, the Debtor filed a *Motion For An Order Pursuant To 11 U.S.C. 363 And 365 And Fed. R. Bankr. P. 2002, 6004, And 6006: (1) Approving "Stalking Horse" Asset Purchase Agreement For The Sale Of Substantially All Of The Debtor's Assets; (2) Approving Bidding Procedures And Form, Manner And Sufficiency Of Notice; (3) Schedule (A) An Auction Sale And (B) A Hearing To Consider Approving The Highest And Best Offer; (4) Authorizing The Debtor To Sell Substantially All Of Its Assets Free And Clear Of Liens, Claims, Encumbrances And Interests And To Assume And Assign Certain Related Executory Contracts And Unexpired Leases; And (5) Granting Other Related Relief* ("Bid Procedures Motion").  ECF No. 48.

10.     On September 4, 2020, the Court entered an Order approving the Bid Procedures Motion ("Bid Procedures Order").  ECF No. 275.  However, the auction of the Debtor's assets was cancelled when no qualifying bids were received by the September 29, 2020 deadline.  ECF No. 331.

11.    On October 14, 2020, the Court entered an *Order Under 11 U.S.C. §§ 105(A), 363 And 365 (I) Authorizing And Approving The Sale Of Substantially All Of The Debtor's Assets Free And Clear Of Liens, Claims, Encumbrances, And Interests, (II) Authorizing And Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Of Nonresidential Real Property In Connection With The Sale, And (III) Granting Related Relief* (the "Sale Order").  ECF No. 380.

12.    Pursuant to the Sale Order, the Debtor's assets were sold to the stalking horse bidder, Congoleum Acquisition, LLC.  *Id.*

13.    On October 29, 2020, the Debtor filed a *Joint Plan of Liquidation of Congoleum Corporation and the Official Committee of Unsecured Creditors of Congoleum Corporation. Pursuant to Chapter 11 of the Bankruptcy Code* along with the *Disclosure Statement for the Joint Plan of Liquidation of Congoleum Corporation Pursuant to Chapter 11 of the Bankruptcy Code*. ECF Nos. 410 and 411.

14.    On November 10, 2020, the Debtor filed the Amended Joint Plan, which is the subject of this Objection.  ECF No. 451.

15.    On November 11, 2020, the Court entered an *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice, and Tabulation Procedures and the Forms Related Thereto: and (IV) Granting Related Relief (*"Solicitation Order").  ECF No. 455.

16.    The Amended Joint Plan provides for the creation of a Liquidation Trust.  ECF No. 451, Article IV.C at 20.

17.     The Amended Joint Plan includes release, exculpation and injunction provisions. ECF No. 451, Article VII.  The releases include releases by the Debtor and releases by third parties. *Id*.

18.     On December 3, 2020, the Debtor filed a Plan Supplement, which attached as exhibits an unexecuted copy of the Liquidation Trust Agreement ("Liquidation Trust Agreement") and related documents.  ECF No. 524.  Matthew Dundon is identified as the Liquidation Trustee. *Id.* at 42.  The Advisory Board Members are identified as Eastman Chemical, Quaint Oak Bank, and another entity to be decided.  *Id. at* 43.

19.     With respect to Class 6 General Unsecured Claims, the Amended Joint Plan provides that such claimants shall receive a Pro Rata share of the Beneficial Trust Interest.  Class 6 is Impaired.  Holders of Allowed Class 6 claims are entitled to vote to accept or reject the Amended Joint Plan. ECF No. 451 at Article III. B. 6, Article III. C. 6 and Article I, 11.

20.     Pursuant to the First Amended Disclosure Statement to the Amended Joint Plan, Class 6 is estimated to receive between 0.1% to 2.00% of their claims.  ECF No. 452, Executive Summary, Section I.

## OBJECTION

## I.     The Exculpation Clause Impermissibly Includes Non-Estate Fiduciaries and Post Confirmation Activities

21.     A chapter 11 plan cannot be confirmed unless the Court finds the plan complies with the provisions of 11 U.S.C. § 1129(a).  *Matter of Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000).  Even where there are no objections to a plan, a court must find that the debtor fulfilled the requirements of Section 1129(a).  *In re Friese*, 103 B.R. 90, 91 (Bankr. S.D.N.Y. 1989).  A plan proponent bears the burden of proof with respect to each and every

element of section 1129(a). *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D.

Del. 2001).

22.     "Release and exculpation clauses have been found to be subject to review pursuant

to section 1129(a)(1)." *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 133 (Bankr. D.N.J. 2010), *citing*

*In re Whispering Pines Estates, Inc.*, 370 B.R. 452, 459 (1st Cir. BAP 2007).   Accordingly,

complying with Section 1129(a) requires that a plan not include improper release and exculpation

language.

23.     There are numerous ways in which the Release and Exculpation provisions set forth

in the Amended Joint Plan are contrary to applicable case law, including the standards set forth in

*In re Washington Mutual, Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011), *In re Tribune Company*,

464 B.R. 126, 186 (Bankr. D. Del. 2011) *and In re Continental Airlines*, 203 F.3d 203, 211-218

(3d Cir. 2000).

24.     The Amended Joint Plan defines "Exculpated Party" as follows:

> (a) the Debtor; (b) the Creditors' Committee; (c) the members of the
> Creditors' Committee solely in their capacities as such; and (c) with respect
> to each of the foregoing Entities in clauses (a) and (b), such Entity's current
> officers and directors, managers, members, employees, agents,
> representatives, financial advisors, professionals, accountants, attorneys,
> and each of their predecessors, successors, and assigns, but only to the
> extent that such party served in such a capacity during the Chapter 11 Case.

ECF 451-1, Article I.A., ¶ 46.

25.     The Amended Joint Plan defines "Exculpated Claim" as follows:

> any Cause of Action, arising during the period commencing on the Petition
> Date through the closing of the Chapter 11 Case, related to any act or
> omission derived from, based upon, related to or arising from (a) the
> Chapter 11 Case; (b) the formulation, preparation, dissemination, or
> negotiation of any document in connection with the Chapter 11 Case, the
> Disclosure Statement, the Plan, and/or the Plan Supplement; (c) the
> formulation, preparation, or negotiation of any documents with respect to,
> or the consummation of, any sale of the Debtor's assets during the Chapter

11 Case; (d) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the foregoing subsections (a), (b), or (c); (e) the pursuit of Consummation; and/or (f) the filing, administration, and/or implementation of the Chapter 11 Case, the Plan, or the distribution of property in connection therewith or thereunder.

ECF 451-1, Article I.A., ¶ 45.

26.     The section of the Amended Joint Plan entitled "Exculpation" provides, in part, that:

> as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; *provided, however,* that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

*See id*. at Article VII.C.

27.     These provisions exceed permissible parameters for exculpation.  The Amended Joint Plan includes non-estate fiduciaries and extends to events occurring post-confirmation.  As stated by the Court in *Washington Mutual*, an "exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceedings: estate professionals, the Committees and their members, and the Debtors' directors and officers."  442 B.R. at 350-51 (emphasis added).  The Court in *In re Tribune Company*, *supra*, agreed with the holding in *Washington Mutual* relating to exculpated parties, and held that the exculpation clause in *Tribune*, "must exclude non-fiduciaries." *In re Tribune Company* at 189, *quoting Washington Mutual*, 422 B.R. at 350-51; *accord*, *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013).

28.     Contrary to these limits of exculpation, the Amended Joint Plan includes as "Exculpated Parties" numerous entities that are not fiduciaries of the estate.  The Exculpated Parties should be limited to the following:  the Debtor; the directors and officers of the Debtor who

served during the case; the Debtor's professionals retained in these cases; the Committee Members;

the members of the Committee, in their capacity as such; the individuals who sat on the Committee

in their capacity as such; and the Committee's professionals retained in these cases. *Washington*

*Mutual*, 442 B.R. at 350-51 (an "exculpation clause must be limited to the fiduciaries who have

served during the chapter 11 proceeding: estate professionals, the Committees and their members,

and the Debtors' directors and officers.").

29.    Even with respect to the estate fiduciaries that may be covered, the exculpation

provision is impermissibly broad because it includes post-confirmation activity. *Washington*

*Mutual*, 442 B.R. at 350, *citing PWS Holding Corp*., 228 F. 3d 224, 246 (3d Cir. 2000).

**II.    The Release Provisions Contained In The Debtor's Amended Joint Plan Require Supporting Evidence and Clarification.**

    **A.    The Release Provisions.**

30.    The Amended Joint Plan defines "Released Party" as follows:

> (a) the Debtor; (b) the Creditors' Committee; (c) the members of the Creditors' Committee (but only in their capacity as such); (d) the DIP Lender;(e) the Pre-Petition Senior Note Secured Parties; and (f) the Pre-Petition Exchanged Note Secured Parties; and (g) with respect to each of the foregoing in clauses (a) through (f) such Person's or Entity's predecessors, successors and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in their capacity as such.

ECF 451-1 at Article I.A. ¶ 95.

31.    The section of the Amended Joint Plan entitled "Settlement, Compromise, and

Release of Claims and Interests" provides, in part, that:

> the distributions, rights, and treatment that are provided in the Plan shall, except as expressly provided in the Plan, be complete settlement,

> compromise, and release . . . of Claims . . . Interests, and Causes of Action
> of any nature whatsoever ....

ECF 451-1 at Article VII.A.

32.    The section of the Amended Joint Plan entitled "Releases by the Debtor" provides,

in part, that:

> for good and valuable consideration . . . each Released Party is expressly,
> unconditionally, generally, and individually and collectively released,
> acquitted, and discharged by the Debtor and its Estate from any and all
> causes of action, claims, obligations, rights, suits, judgments, damages,
> demands, debts, rights, remedies, Causes of Action, and liabilities of any
> nature whatsoever, or any other claim against any Released party, asserted
> on behalf of the Debtor, whether known or unknown . . . existing or
> hereafter arising, in law, equity, or otherwise . . . that the Debtor or its Estate
> would have been legally entitled to assert in its own right . . . or on behalf
> of the holder of any Claim or Interest or other Entity . . . *provided, however*,
> that the foregoing releases shall have no effect on the liability of any person
> or Entity that results from any act or omission based on or arising out of
> gross negligence, fraud or willful misconduct.

ECF No. 451-1 at Article VII.D.1.

33.    The section of the Amended Joint Plan entitled "Consensual Third-Party Releases"

provides, in part, that:

> Unless a holder of a Claim in an Impaired Class that is entitled to vote (i)
> votes to reject the Plan or (ii) opts out of the Consensual Third-Party
> Releases, for good and valuable consideration, the adequacy of which is
> hereby confirmed, each holder of an Allowed Claim, shall be deemed to
> forever release, waive, and discharge the Released Parties of all claims,
> obligations suits, judgments, damages, demands, debts, rights, remedies,
> Causes of Action, and liabilities of any nature whatsoever . . . provided,
> however, that the foregoing releases shall have no effect on the liability of
> any person or Entity that results from any act or omission based on or arising
> out of gross negligence, fraud or willful misconduct.[3]

---

[3] The language in the Amended Joint Plan appears to differ from the language in Exhibit B of the
Solicitation Order, entitled  *Notice Of Non-Voting Status And Opt-Out Form To Holders Or
Potential Holders Of Unimpaired Claims Conclusively Presumed To Accept The Plan And/Or
Holders Or Potential Holders Of Impaired Claims Or Interests Deemed To Reject The Plan*.

ECF 451-1 at Article VII.D.2.

34.     The Notice sent to holders of unimpaired claims who are deemed to accept the Amended Joint Plan and to holders of impaired claims that are deemed to reject, includes an "Opt-Out Form."  ECF No. 455, Exhibit B.

35.     The ballot for the creditors with Unsecured Claims includes a check box to opt out of the Third-Party Release Provision.  ECF No. 455, Exhibit C.

36.     The Amended Joint Plan provides for a release by the Debtor to each Released Party.  ECF No. 451-1, Article VII.D., ¶ 1.

**B.     Debtor Has Failed To Meet Its Burden To Show Its Releases Are Appropriate.**

37.     The Amended Joint Plan does not establish that each Released Party is providing adequate consideration in exchange for receiving such releases.   In addition, certain persons included in the Released Party definition do not appear to be entitled to such releases under applicable case law.

38.     In *In re Zenith Elecs. Corp.*, the Court identified five factors that are relevant to determine whether a debtor's release of a non-debtor is appropriate:

> (1)     an identity of interest between the debtor and non-debtor such that a suit against the non-debtor will deplete the estate's resources;
>
> (2)     a substantial contribution to the plan by the non-debtor;
>
> (3)     the necessity of the release to the reorganization;
>
> (4)     the overwhelming acceptance of the plan and release by creditors and interest holders; and

---

Exhibit B provides an opt-out form to unimpaired classes deemed to accept the Amended Joint Plan and those creditors deemed to reject the Amended Joint Plan, but the language in the Amended Joint Plan itself appears to allow only those with impaired claims entitled to vote with the option to opt-out of the releases.

(5)    the payment of all or substantially all of the claims of the creditors and interest holders under the plan.

See *Zenith*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (*citing Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994). These factors are neither exclusive nor conjunctive requirements but provide guidance in the Court's determination of fairness. *See Master Mortgage*, 168 B.R. at 935 (finding there is no "rigid test" to be applied in every circumstance and that the five factors are neither exclusive, nor conjunctive). The Debtor bears the burden of showing its entitlement to the releases and the Debtor should be made to prove each of the elements recited in *Zenith*.

39.    The first *Zenith* factor requires an "identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate." *See In re Spansion, Inc.*, 426 B.R. 114, n. 47 (Bankr. D. Del. 2010), *citing Zenith*, 241 B.R. at 110. An identity of interest exists when, among other things, the debtor has a duty to indemnify the non-debtor receiving the release. *See Washington Mutual*, 442 B.R. at 347 (recognizing that indemnification may create an identity of interest thereby satisfying the first factor of *Zenith*). Here, it is unclear whether an identity of interest exists between the Debtor and each of the Released Parties.

40.    The second *Zenith* factor involves whether the non-debtor party benefiting from the release made a substantial contribution of assets to the debtor's reorganization. *See In re Congoleum Corp.*, 362 B.R. 167, 193 (Bankr. D.N.J. 2007). In considering releases, substantial contribution does not include contributions to the reorganization related to operational restructuring or negotiating for the financial restructuring. *In re Genesis Health*, 266 B.R. at 606-7 ("the officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of 'assets' to the

reorganization.").  Here, it does not appear that each Released Party provided a substantial contribution of assets.  Again, the Debtor bears the burden as to this issue and should be required to show the substantial contribution of assets by each Released Party.

41.    As to the third *Zenith* factor, there is no information provided to support a contention that the releases are necessary to a reorganization, or even an orderly liquidation.

42.    The fourth *Zenith* factor concerning acceptance of the plan cannot be assessed at this time as the Debtor has not filed a certification of ballots.  And the fifth *Zenith* factor is not satisfied as the unsecured creditors will not receive all or substantially all of their claims. Accordingly, these factors do not support the Releases.

**C.    The Third- Party Release Provisions Should Be Clarified in Order to Comply With Applicable Law.**

43.    The Amended Joint Plan provides for third-party releases for the benefit of the Released Parties.  ECF No. 451, Article VII.D, ¶ 2.  The Non-Debtor Third-Party Releases are referred to as "consensual" but appears to cover anyone who votes in favor of the Amended Joint Plan *and* fails to affirmatively opt-out of the releases, those who reject the Amended Joint Plan *and* fail to opt out of the releases, and those who fail to return opt-out forms or ballots.  Further, the Amended Joint Plan language (which appears to contradict the notice sent to non-voting classes) appears to allow only those with impaired claims entitled to vote to opt out of the releases. *See fn 2, infra*.[4]  Even if non-voting creditors are allowed to opt-out of the releases, further clarification of their rights is necessary.

---

[4]  The treatment of the Unsecured Creditor Class also raises questions as to the applicability of the releases.  Article III, section C, 6, ii, could be interpreted to say that unless an unsecured creditor provides a release, they may forfeit any right to a distribution under the Amended Joint Plan.  Article III, C, 6,ii, states as follows:  "Treatment: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed General Unsecured Claim, each holder

44.     Courts in this Circuit have determined that third-party releases of non-debtors should be allowed only to the extent the releasing parties have given affirmative consent. *See In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011); *Emerge Energy Services, LP,* 2019 Bankr. LEXIS 3717, Case No. 19-11563 (Bankr. D. Del. 2019) (Owens, J.).  In *Washington Mutual*, the Court held that "any third-party release is effective only with respect to those who *affirmatively consent* to it by voting in favor of the Plan and not opting out of the third-party releases." *Id.* at 355 (emphasis added).  The Court clarified that merely having an opt out mechanism is not enough, holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (*or are not entitled to vote in the first place*)." *Id.* (emphasis added).  *Failing to return a ballot is not a sufficient manifestation of consent to a third party release.*" *Id.* (emphasis added), citing *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).  Therefore, the Court concluded that any third-party release is effective only with respect to those who affirmatively consent to it by voting in favor of the plan and not opting out of the third-party releases. *Washington Mutual*, 442 B.R. at 355.

45.     In a recent opinion issued in *Emerge Energy Services,* the Court ruled that consent to a third-party release "cannot be inferred by the failure of a creditor or equity holder to return a ballot or Opt-Out Form." *Emerge Energy*, at *52.  The Court also rejected the debtor's argument that inferred consent from "silence' should be approved as typical, customary, and routine. *Id.* The Court held that it could not "on the record before it find that the failure of a creditor or

---

of such Allowed General Unsecured Claim shall receive its pro rata share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their pro rata share of the  Liquidation Trust Assets."  What does "release of allowed general unsecured claim" mean?  Is the Debtor providing a release to the claimant, and, if so, why?  Or is the claimant required to give a release to the Debtor in exchange for receiving a distribution?

equity holder to return a ballot or Opt-Out Form manifested their intent to provide a release.

Carelessness, inattentiveness, or mistake are three reasonable alternative explanations." *Id*. at

*53.

46.    The Court in *Emerge Energy* indicated further that it "has concluded that a waiver

cannot be discerned through a party's silence or inaction unless specific circumstances are

present." *Id*. at *54-55.  The Court clarified that, "[a] party's receipt of a notice imposing an

artificial opt-out requirement, the recipient's possible understanding of the meaning and

ramifications of such notice, and the recipient's failure to opt-out simply do not qualify" as such

circumstances.  *Id.* at *55.

47.    Other decisions in this Circuit are in accord with *Washington Mutual* and *Emerge*

*Energy.  See In re Coram Healthcare Corp*., 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding

that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on

behalf of third parties," and that such release must be based on consent of the releasing party); *In*

*re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were

binding only on those creditors and equity holders who accepted the terms of the plan); *In re*

*Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (release provision had to be

modified to permit third parties' release of non-debtors only for those creditors who voted in

favor of the plan).

48.    Certain decisions in this Circuit have reached a different conclusion such as *In re*

*Indianapolis Downs, LLC*, 486 B. R. 286, 304-05 (Bankr. D. Del. 2013) and *In re Spansion, Inc.*,

426 B.R. 114, 144 (Bankr. D. Del 2010) (court reached a different conclusion with respect to

affirmative consent, but only as to releases given by unimpaired classes, who were "being paid in

full.").  However, requiring affirmative consent is the only way to ensure that creditors and interest holders are actually and knowingly consenting to grant third party releases.

49.     Under *Washington Mutual*, and the other cases cited above, the procedure where the affected parties must file written objections or opt-out of the third-party releases must be rejected.  If "[f]ailing to return a ballot is not a sufficient manifestation of consent to a third-party release" (id.), then failing to return an opt-out form cannot be a manifestation of such consent.  *See, Washington Mutual, Inc*., 442 B.R. at 355.

50.     In this case, under Article VII.D.2., "Unless a holder of a Claim in an Impaired Class that is entitled to vote (i) votes to reject the Plan or (ii) opts out of the Consensual Third-Party Releases, each holder of an Allowed Claim, shall be deemed to forever release… the Released Parties."  The definition of Released Party includes the following, "(a) the Debtor; (b) the Creditors' Committee; (c) the members of the Creditors' Committee (but only in their capacity as such); (d) the DIP Lender;(e) the Pre-Petition Senior Note Secured Parties; and (f) the Pre-Petition Exchanged Note Secured Parties" and virtually everyone related to those parties. The above language would appear to mean that any party who fails to opt-out of the release or fails to vote, or who does not return either a ballot or an opt-out form (either by mistake, inadvertence, neglect or intent), or is not entitled to vote, will be deemed to give the release.

51.     Requiring an affirmative expression of consent from creditors and interest holders before such parties are deemed to give releases would ensure that there is true consent, rather than consent assumed by silence, which could be caused by factors such as the notice or ballot merely being wrongly addressed, misdelivered, other mail failures or delays or the party not being able to comply with the Amended Joint Plan voting and objection procedures.

52.    With respect to creditors in voting classes who reject the Amended Joint Plan, to the extent the Debtor is also requiring them to opt-out of third-party releases, such a requirement should be rejected.  As stated by the court in *In re Chassix Holdings, Inc.,* 553 B.R. 64 (Bankr. S.D.N.Y. 2015), it is "difficult to understand why any other action should be required to show that the creditor also objected to the proposed third-party releases.  If (as prior cases have held) a creditor who votes in favor of a plan have implicitly endorsed and 'consented' to third party releases that are contained in that plan, then by that same logic a creditor who votes to reject a plan should also be presumed to have rejected the proposed third party releases that are set forth in the plan. The additional 'opt out' requirement in the context of this case, would have been little more than a Court-endorsed trap for the careless or inattentive creditor." *Id*. at 79.

53.    In this case, where unsecured creditors are receiving a miniscule amount on their claims, most creditors are unlikely to even read the Amended Joint Plan and Disclosure Statement after they realize what they may receive and therefore are unlikely to return the ballot or the opt out form.  This Court should question why creditors who are receiving a tiny fraction of their claim would want to give a third-party release.

### D.    This Court Should Not Rely On Unreported Decisions.

54.    In a recent case in this District, *In re* Modell*'s Sporting Goods, Inc., et al.,* case no. 20-14179 (VFP) (Bankr. D. N.J. 2020) ("Modell*'s*"), counsel to the debtor in Modell*'s*, the same counsel that represents the Debtor in the present case, attached as Exhibit A to the *Debtors' Memorandum of Law In Support of (A) Final Approval of the Disclosure Statement, and (B) Confirmation of the Plan*, a document entitled *Chapter 11 Plan Approval Overruling U.S. Trustee ("UST") Objection to Third-Party Releases, U.S. Bankruptcy Court for the District of Delaware*, (hereinafter referred to as the "Modell's Chart" and attached hereto as Exhibit A).  ECF No. 816

in Modell's.  The Modell's Chart purports to show unreported decisions from the District of Delaware upholding opt-out clauses for all creditors.  As evidenced below, this chart cannot be relied upon to provide a complete picture of the decisions in the Delaware Court and exemplifies why courts should not rely on rulings that are not embodied in written opinions.

55.    For instance, in *Bluestem Brands, Inc.,* case no. 20-10566-MFW (Bankr. D. Del. 2020) ("*Bluestem*"), the debtors clarified in the findings of Fact and Conclusions of Law that "any Holder that (xx) is deemed to accept or reject the Plan (i.e., a nonvoting Holder), or (yy) abstains from voting by not returning a signed ballot (i.e., an abstaining Holder), in either case shall **not** be deemed a "Releasing Party" or "Released Party" under the Plan unless such Holder has manifested its consent to the Third-Party Release by indicating in writing to the debtors that it has **elected** to provide and receive such release (i.e., it has elected to "opt into" the Plan's release provisions)." ECF No. 744 in *Bluestem* at ¶ 38 (emphasis added).  The only issue before the Court at the time of confirmation relating to releases was whether voting creditors who rejected the plan and failed to check the opt out box should be interpreted as consenting to the releases.  *Tr. Hearing, August 21, 2020, before the Honorable Mary F. Walrath, United States Bankruptcy Judge, at 6: 11-17 and 17:2-12, in Bluestem.*[5]  The Court found that where the voting creditors were provided with specific certifications in the ballot which conspicuously provided that any holder that votes to reject the plan and does not opt out of the third-Party release is deemed a "Releasing Party" under the plan.  *Id.* at 25:13- 26:13.  The Court found that since the ballot was very clear, and the releases were in bold, the creditors were deemed to consent to the releases.  *Id.*  The Modell's Chart fails to include concessions made by the debtors to key release provisions made both before and after

---

[5] Transcript provided upon request.

the filing of an objection by the U.S. Trustee and fails to present all of the facts and circumstances relevant in the Court's decision.

56.       Similarly, the information provided in connection with *Elk Petroleum, Inc.,* case no 19-11157 (Bankr. D. Del. 2019) ("Elk Petroleum*")* is incorrect.  First, Elk Petroleum involved a number of jointly administered debtors including:  1) Elk Petroleum; 2) Elk Petroleum Aneth, LLC ("Aneth") (case no. 19-11158 - LSS); 2) Resolute Aneth, LLC ("Resolute") (case no. 19-11159-LSS); and 3) Elk Operating Services, LLC.  Multiple plans were proposed.  *See, e.g.,* ECF No. 15, Elk Petroleum (Plan proposed by Aneth, and Resolute).  The release provisions cited by the Debtor in the Modell's Chart were part of a plan proposed by Aneth and Resolute, not Elk Petroleum.  *Id.*  Second, the non-debtor unsecured creditors, including creditors of Elk Petroleum, and unsecured creditors deemed to have rejected the plan were excluded from the definition of "Releasing Parties."  ECF No. 15 in Elk Petroleum at 15 (Joint Plan of Reorganization of Aneth and Resolute).  Thus, unlike the present case, the U.S. Trustee did not object to an opt-out requirement of parties deemed to have rejected the plan.  Importantly, by the time of the confirmation hearing on the Aneth and Resolute Third Amended Plan of Reorganization (ECF No. 594 in Elk Petroleum), all of the U.S. Trustee's objections to confirmation (ECF No. 484 in Elk Petroleum) had been consensually resolved.  ECF No. 611 in Elk Petroleum at 75:8-14 (Confirmation Hr'g transcript).[6]  Thus, there was no U.S. Trustee objection pending before the Bankruptcy Court to be overruled as inferred from the Modell's Chart.

57.       The Modell's Chart also cites to *In re Melinta Therapeutics, Inc.,* case no. 19-12748 (Bankr D. Del. 2019) ("Melinta"), where contrary to the information provided in the Chart, the debtor agreed pre-confirmation to limit the exculpation clauses to fiduciaries.  ECF No. 502 at

---

[6] Transcript provided upon request

13:10-13 and 76:23- in Melinta.  The Chart also fails to reflect that the U.S. Trustee reached an

agreement with the debtors, prior to confirmation, in which the debtor's deleted shareholders as

consenting third party releasors, because they were receiving nothing under the plan.  *Id.* at 13:

14-20.   At confirmation, there existed an unresolved U.S. Trustee objection related to the

applicable time period covered by the exculpation clause, i.e., the effective date or the date the

case is closed, with the U.S. Trustee arguing the former and the Debtor the later.  *Id.* at 121:1-16

and 165:20-166-24.  At a hearing held on April 3, 2020, the Court sustained the U.S. Trustee's

remaining objection to the exculpation clause and limited the application of the exculpation clause

to the period between the filing date and the effective date.  ECF No. 503 (transcript of April 3,

2020 hearing in Melinta).[7]

58.    Should the Debtor submit a similar chart in the present case, the U.S. Trustee

requests that the Court disregard it in its entirety, as any chart of cases in which no written decision

has been issued would fail to provide full disclosure of all of the relevant facts and circumstances

surrounding the decision and holds no precedential weight.

**III.    The Injunction Provisions are Impermissible**

59.    The section of the Amended Joint Plan entitled "Injunction" provides as follows:

> Except as otherwise provided in the Plan or the Confirmation Order, as of
> the Effective Date, all Entities that held, hold or may hold any Interest in
> the Debtor or a Claim, Cause of Action, or other debt or liability against the
> Debtor or against any Released Party that have been released and/or
> exculpated under [the] this Plan (the "Released Claims and Interests") are
> permanently enjoined from taking any of the following actions against the
> Debtor, the Estates, the Liquidation Trust, the Liquidation Trustee, the
> Liquidation Trust Assets, or the Released Parties or their respective
> predecessors, successors and assigns, subsidiaries, Affiliates, current (as of
> the Effective Date) directors, officers, principals, shareholders, members,
> partners, employees, agents, advisory board members, financial advisors,
> attorneys,   accountants   (sp),   investment   bankers,   consultants,

---

[7] Transcript provided upon request.

representatives, and other Professionals solely in their respective capacities as such or any property of the same, on account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any king against any debt, liability or obligation on account of or in connection with or with respect to any Released Claims or Interests; and (c) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; provided, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

ECF 451-1 at Article VII.E.

60.     Pursuant to Section 524(a)(3), confirmation of a plan does not operate as an injunction.  Only a discharge operates as an injunction.  Instead, pursuant to Section 362(c), the automatic stay remains in effect until such time as a discharge is granted or the case is closed. Additionally, pursuant to Section 1141(a), the provisions of a confirmed plan bind all parties, including debtors and creditors, to the terms of the plan.

61.     Because the Bankruptcy Code protects debtors by continuing the automatic stay until the earlier of entry of a discharge or the case is closed (11 U.S.C. § 362(c)), and by binding all parties to the terms of the Amended Joint Plan (11 U.S.C. § 1141(a)), the U.S. Trustee submits that Article VII.E be removed.

**IV**.     **The Liquidation Trust Agreement Requires Additional Disclosures and Provisions**

62.     Exhibit D to the Plan Supplement is the Identity of Liquidation Trust Advisory Board.  ECF No. 524, Exhibit D.  As filed, the document only identifies two of three members of the Trust Advisory Board with the other members to be identified.  *Id*.  The Debtor should identify all the Advisory Board Members prior to Confirmation.

63.    The Liquidation Trust Agreement includes a provision for "Reporting Requirements."  ECF No. 524 at Article VII, ¶ 7.9.  This section states:

> Reporting and Filing Requirements.
>     A. Within thirty (30) days after the last day of each calendar twelve month period in which the Trust shall remain in existence, the Trustee shall file a report with the Bankruptcy Court of all Assets held and received by the Trust, all Available Trust Cash disbursed to Beneficiaries, and all fees, income, and expenses related to the Trust during the receding calendar year. The Trustee's report shall be provided to the Liquidating Trust Advisory Board upon filing with the Bankruptcy Court and shall be available to any Beneficiary upon written request.
>     B. The Trustee shall also timely prepare, file and distribute such additional statements, reports and submissions as may be necessary to cause the Trust and the Trustee to be in compliance with applicable law, such as the filing of tax or informational returns.
>     C. The Trustee shall provide such additional statements, reports, submissions and information to the Liquidating Trust Advisory Board as may reasonably be requested, including without limitation, periodic updates on the status of the Trust, its Assets (including tax refunds), and the projected timing of future distributions (to the extent known by the Trustee).

64.    The U.S. Trustee submits that proper transparency and disclosure is necessary.  As such, the Liquidating Trustee should be required to file with the Bankruptcy Court a report every six (6) months, starting six (6) months from the Effective Date, without the need for a request to be made by the U.S. Trustee or any other party.  The report should include, at the very least, receipts and disbursements.

## V.    **Statutory Fees**

65.    In Article II, section D of the Amended Joint Plan, the Debtor set forth that it will be responsible for statutory fees pursuant to section 1930 of Title 28 of the U.S. Code until the Effective Date and that the Liquidation Trust will be responsible for such statutory fees after the Effective Date until the entry of a final decree or until the case is closed or dismissed:

> All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("**Quarterly Fees**") prior to the Effective Date shall be paid by the Debtors on the Effective Date. On and after the Effective Date, the Liquidation Trust shall be responsible for (i) filing post-Confirmation quarterly reports and any pre-Confirmation monthly reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines and (ii) all Quarterly Fees (as defined below) for the Chapter 11 Cases until the entry of a final decree or until such Chapter 11 Cases are closed or dismissed.

ECF No. 451-1 at Article II.D.

66.     The Amended Joint Plan should be revised to reflect that the Debtor and the Liquidation Trust are joint and severally liable for the payment of statutory fees.

### VI.     Reservation of Rights

67.     The U.S. Trustee leaves the Debtor to meet its burden and reserves all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection.

### CONCLUSION

For the reasons set forth above, the U.S. Trustee respectfully requests that the Court deny confirmation of the Amended Joint Plan and grant such other relief as the Court deems just and proper.

<div style="margin-left: 40%">

Respectfully submitted,
ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9

By: */s/ Jeffrey M. Sponder*
        Jeffrey M. Sponder
        Trial Attorney

        */s/ Maggie H. McGee*
        Maggie H. McGee
        Trial Attorney

</div>

Dated: January 4, 2021