UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**
**GENOVA BURNS**
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
*Local Counsel for Bath Iron Works Corporation*
**DANIEL M STOLZ, ESQ.**
**DONALD W. CLARKE, ESQ.**

**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350
*Counsel for Bath Iron Works Corporation*
**WADE A. THOMSON, ESQ.**
**CATHERINE STEEGE, ESQ.**
**MICHAEL A. DOORNWEERD, ESQ.**

| | |
|---|---|
| In re:<br><br>**CONGOLEUM CORPORATION,**[1]<br><br>               Debtor. | Chapter 11<br><br>Case No. 20-18488 (MBK)<br>Judge: Hon. Michael B. Kaplan |
| **BATH IRON WORKS CORPORATION,**<br><br>               Plaintiff,<br><br>v.<br><br>**CONGOLEUM CORPORATIO**N,<br><br>               Defendant. | Adv. 20-01439 (MBK) |

## BATH IRON WORKS CORPORATION'S BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

[1] The last four digits of the Debtor's federal tax identification number are 8678. The Debtor's corporate headquarters is located at 3500 Quakerbridge Road, Mercerville, New Jersey 08619.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I.    The Entry Of Declaratory Relief Is Appropriate Here ............................................... 3

II.   There Is No Dispute Of Material Fact About Each Of The Declarations That BIW Asks This
      Court To Make ............................................................................................................ 6

      A. Legal Standard. ..................................................................................................... 6

      B. There Is No Dispute Of Material Fact That BIW Is Not A Successor To The
         Congoleum Flooring Business Liabilities. ............................................................ 7

         1. Paragraph 104 Of The 2010 Confirmation Order Is Unambiguous. ............... 7

         2. The Context Surrounding The 2010 Confirmation Order Supports Its Plain
            Language. ...................................................................................................... 9

      C. The Finding Was Actually Litigated And Necessary To The Approval Of The
         2010 Confirmation Order And Therefore Is Binding On Congoleum And
         Enforceable Against Congoleum. ........................................................................ 20

         1. The Finding Was Actually Litigated ............................................................ 20

         2. The Finding Was Necessary To The 2010 Confirmation Order. .................. 22

      D. Congoleum Was A Party To Its Own First Bankruptcy Case And Is Bound By
         The 2010 Confirmation Order. ........................................................................... 24

      E. Based On The Foregoing Undisputed Facts, Congoleum Is Bound By The Finding
         That BIW Is Not Responsible For Any Of The Liabilities Of The Congoleum
         Flooring Business ................................................................................................ 26

CONCLUSION .................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Azeglio*,
    422 B.R. 490 (Bankr. D.N.J. 2010) ...................................................................................21

*Berke v. Bloch*,
    242 F.3d 131 (3d Cir. 2001)...........................................................................................8

*In re Birnbaum*,
    513 B.R. 788 (Bankr. E.D.N.Y. 2014)..........................................................................20

*In re Brown's Chicken & Pasta, Inc.*,
    503 B.R. 86 (Bankr. N.D. Ill. 2013) ...........................................................................4, 5

*In re Chateaugay Corp.*,
    193 B.R. 669 (S.D.N.Y. 1996).........................................................................................4

*In re Christ Hosp.*,
    502 B.R. 158 (Bankr. D.N.J. 2013) ...............................................................................3

*In re Congoleum*,
    414 B.R. 44 (D.N.J. 2009) .............................................................................................25

*In re Cubic Energy, Inc.*,
    587 B.R. 848 (D. Del. 2008)...........................................................................................5

*Delgrosso v. Spang & Co.*,
    903 F.2d 234 (3d Cir. 1990)..........................................................................................27

*In re Docteroff*,
    133 F.3d 210 (3d Cir. 1997).........................................................................................22

*DVL, Inc. v. Congoleum Corp.*,
    No. CV174261KMJBC, 2018 WL 4027031, (D.N.J. Aug. 23, 2018)....................................18

*In re Forty-Eight Insulations, Inc.*,
    149 B.R. 860 (Bankr. N.D. Ill. 1992) ..............................................................................11

*In re Galluzzo*,
    No. 06-15392-SLM, 2018 WL 4191476 (Bankr. D.N.J. Aug. 14, 2018)................................8

*Gecker v. Flynn (In re Emerald Casino, Inc.)*,
    459 B.R. 298 (Bankr. N.D. Ill. 2011) ..............................................................................27

*In re Graham*,
    973 F.2d 1089 (3d Cir. 1992)................................................................20

*Grede v. FCStone, LLC*,
    746 F.3d 244 (7th Cir. 2014) ...............................................................8

*Henglein v. Colt Industries Operating Corp.*,
    260 F.3d 201 (3d Cir. 2001)................................................................22

*Jackson v. State Board of Pardons & Paroles*,
    331 F.3d 790 (3d Cir. 2003)................................................................9

*Katchen v. Landy*,
    382 U.S. 323 (1966)..........................................................................29

*In re Keaty*,
    397 F.3d 264 (5th Cir. 2005) .............................................................20

*In re Lazy Days' RV Center Inc.*,
    724 F.3d 418 (3d Cir. 2013)................................................................4

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..........................................................................6

*Miller v. Indiana Hosp.*,
    843 F.2d 139 (3d Cir. 1988)................................................................6

*Murray v. Siberstein*,
    882 F.2d 61 (3d Cir. 1989)................................................................27

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)......................................................................27, 28

*Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*,
    989 F.2d 570 (1st Cir. 1993)..............................................................27

*Penn W. Associates, Inc. v. Cohen*,
    371 F.3d 118 (3d Cir. 2004)..............................................................10

*Read v. Profeta*,
    397 F. Supp. 3d 597 (D.N.J. 2019) .....................................................6

*In re Ruitenberg*,
    745 F.3d 647 (3d Cir. 2014)..............................................................25

*In re Samson Res. Corp.*,
    590 B.R. 643 (Bankr. D. Del. 2018) ..................................................8, 9

*Scarano v. Central Railroad Company of New Jersey*,
  203 F.2d 510 (3d Cir. 1953)...........................................................................................27

*In re Shenango Group, Inc.*,
  501 F.3d 338 (3rd Cir. 2007) ...........................................................................................7

*Matter of Shondel*,
  950 F.2d 1301 (7th Cir. 1991) ..........................................................................................4

*In re SportStuff, Inc.*,
  430 B.R. 170 (B.A. P. 8th Cir. 2010)...............................................................................11

*Stoll v. Gottlieb*,
  305 U.S. 165 (1938)..........................................................................................................26

*In re Swinton*,
  287 B.R. 634 (W.D. Pa. 2003)...........................................................................................9

*Szehinskyj v. Attorney General of the United States*,
  432 F.3d 253 (3d Cir.2005)..............................................................................................29

*In re Szostek*,
  886 F.2d 1405 (3d Cir. 1989)...........................................................................................26

*Tenn. Student Assistance Corp. v. Hood*,
  541 U.S. 440 (2004)....................................................................................................25, 26

*Travelers Indemnity Co. v. Bailey*,
  557 U.S. 137 (2009)..................................................................................................3, 6, 26

*United Federal Leasing, Inc. v. United States*,
  126 F. App'x 60 (3d Cir. 2005) .......................................................................................20

*United States v. Price*,
  901 F.3d 746 (6th Cir. 2018) .............................................................................................9

*United Student Aid Funds, Inc. v. Espinosa*,
  559 U.S. 260 (2010)..........................................................................................................26

*In re Vanguard Natural Resources, LLC*,
  No. 17-30560, 2020 WL 7332890 (Bankr. S.D. Tex. Dec. 11, 2020).............................23

**Statutes**

11 U.S.C. § 101(5), (10) ...........................................................................................................25

11 U.S.C. § 1141(a) .................................................................................................2, 24, 25, 26

28 U.S.C. § 2201.........................................................................................................................4

**Other Authorities**

Federal Rule of Civil Procedure 56(a) ............................................................................6

Bankruptcy Code Rule 7056 ..........................................................................................6

MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 108.70[1] (3d ed. 2004)...................................25

Restatement (Second) of Judgments § 27 (1982) ..................................................20, 23

*Webster's Third New International Dictionary* ............................................................9

Bath Iron Works Corporation ("**BIW**") respectfully submits this Brief in Support of its

Motion for Summary Judgment against Congoleum Corporation ("**Congoleum**" or "**Debtor**").[2]

### INTRODUCTION

In Congoleum's first chapter 11 case (the "**First Bankruptcy Case**"), the District Court

(acting as the Bankruptcy Court) found that that BIW, which has built ships in Maine for over a

century and has never operated a flooring business in Kearny, New Jersey or anywhere else, had

"*no* responsibility for *any* of the liabilities of the Congoleum Flooring Business (as defined in the

Century Settlement)."[3] Congoleum asked for this finding, over the objection of certain of its

creditors, as part of a sale agreement with one of its insurers, Century Indemnity Company

("**Century**"). Congoleum sought this finding, which it supported with competent evidence, so that

it could sell its Century policies free and clear of BIW's contractual rights under these policies to

coverage for the liabilities of the Congoleum Flooring Business, including coverage for

environmental liabilities. Relying upon Congoleum's evidence, the Bankruptcy Court approved

the sale, which was incorporated into Congoleum's plan of reorganization and Congoleum

---

[2] Virtually all of the documents that support the facts set forth herein and in BIW's accompanying Statement of Material Uncontested Facts are found on the Bankruptcy Court's docket (Case No. 03-51524) ("**First Bankr. Dkt.**") or the District Court docket (Case No. 09-04371) ("**Dist. Dkt.**") in Congoleum's first bankruptcy case. BIW previously submitted the cited filings and orders in three appendices attached to the Declaration of Daniel Stolz (Second Bankr. Dkt. 501-1) and provided copies to the Court. References to documents found in Appendix I (deposition transcripts) are "**App. I, Ex. __**"; references to Appendix II (public filings) are "**App. II, Ex. __**"; and references to Appendix III (DVL Lawsuit discovery) are "**App. III, Ex. __**." Each of these references is followed by a citation to the original docket entry for the document. References to materials found on the Bankruptcy Court's docket in Congoleum's currently pending bankruptcy case (Case No. 20-18488) are to "**Second Bankr. Dkt.**" and to materials from the DVL Lawsuit (Case No. 17-04261) are to "**DVL Lawsuit Dkt.**"

[3] App. II, Ex. 21 (Dist. Dkt. No. 664, (the "**2010 Confirmation Order**"), Findings ¶104 (emphases added)).

obtained the funding it needed to pay its creditors.[4] Without the protection of this finding or some other form of compensation for BIW, it is highly doubtful that the Bankruptcy Court would have allowed Congoleum to sell those insurance policies free and clear of BIW's interests in coverage for the liabilities of the Congoleum Flooring Business solely for Congoleum's own benefit.

And the finding, based on the testimony of Congoleum's chief financial officer and undoubtedly drafted by Congoleum, could not have been clearer. The District Court (which was sitting as the bankruptcy court) found that: BIW has "***no*** responsibility for ***any*** of the liabilities of the Congoleum Flooring Business (as defined in the Century Settlement)."[5] Once entered, this finding was intended to replace BIW's rights to insurance coverage for the liabilities of the Congoleum Flooring Business under any of the sold insurance policies with something just as protective—a judicial finding binding by operation of 11 U.S.C. §1141(a) on, at a minimum, Congoleum, that BIW was not liable for any of (*i.e.,* all of) the Congoleum Flooring Business liabilities.

For years after the District Court made this finding, Congoleum abided by the finding it asked the District Court to enter, accepting responsibility, as it always had, for the liabilities of the Congoleum Flooring Business it operated both before and after the finding was made. But having obtained the benefits of this finding, Congoleum has spent the last several years trying to escape its reach, arguing that BIW is responsible for environmental liabilities of a business it never operated and for real estate it never owned. The result of Congoleum's decision is BIW's very

---

[4] App. II, Exs. 7, 8, 10, 13 (First Bankr. Dkt. No. 4515, ¶¶11-16; First Bankr. Dkt. No. 4517, ¶12; First Bankr. Dkt. No. 4531, ¶¶1-4; First Bankr. Dkt. No. 4568, at 27:12-23; 30:1-31:21; 41:8-42:24; 45:13-22; 52:1-3); App. II, Ex. 21 (2010 Confirmation Order, at Ex. A (Plan), at Art. X, ¶10.1(a)(xix), ¶10.1(b), ¶10.2; App. I, Ex. 20 (Dist. Dkt. No. 625, ¶73 ("**2010 Feist Declaration**")).

[5] App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order, Findings ¶104 (emphases added)).

substantial and growing claim against this estate and a trail of litigation. To end at least the disputes

between BIW and Congoleum, BIW seeks a judgment from this Court declaring that:

1)  the finding contained in paragraph 104 of the 2010 Confirmation Order – that BIW
    has **no** responsibility for **any** of the liabilities of the Congoleum Flooring Business
    – covers **all** liabilities, including environmental liabilities, and that it was a finding
    that BIW was not a successor to the Congoleum Flooring Business;

2)  the finding was actually litigated and was necessary to the approval of the Century
    sale motion and 2010 Confirmation Order, and, as such, to Congoleum's emergence
    from Chapter 11 bankruptcy;

3)  Congoleum and BIW were parties to Congoleum's first bankruptcy case; and

4)  the 2010 Confirmation Order is binding on and enforceable against Congoleum and
    that Congoleum is estopped from arguing otherwise.

## ARGUMENT

## I.    The Entry Of Declaratory Relief Is Appropriate Here.

Much ink has been spilled in this case about the Court's jurisdiction and constitutional

authority to interpret the meaning and enforceability of the 2010 Confirmation Order. But each

time the issue has been raised, this Court has concluded, consistent with controlling case law, that

it has the "historic and time-honored jurisdiction" and authority to decide what the 2010

Confirmation Order meant and whether the Debtor is bound by it.[6] *See In re Christ Hosp.*, 502

B.R. 158, 182 (Bankr. D.N.J. 2013); *accord Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151

(2009) (holding that the bankruptcy court retained jurisdiction more than a decade after entry of

---

[6] Second Bankr. Dkt. 484 (11/10/20 Tr. 59-60); Second Bankr. Dkt. 558 (12/11/20 Tr. 54:10-16)
("And whether the Court is considering the proposed settlement or the Court is considering
determining the parameters, the scope, and the meaning of a prior order of confirmation and sale
order in a prior Chapter 11, this Court, again, is confident that those are core matters. And as core
matters, the Court is confident that the appropriate place to resolve those issues are before the
bankruptcy court").

orders confirming a Chapter 11 plan to interpret and enforce its own prior orders); *In re Chateaugay Corp.*, 193 B.R. 669, 674 (S.D.N.Y. 1996) (retaining jurisdiction because the issue to be decided involved the bankruptcy court's interpretation and review of its prior orders).

The Court should now exercise that authority in this adversary proceeding and grant summary judgment holding that Congoleum is bound by the 2010 Confirmation Order's finding that BIW is not responsible for any of the liabilities of the Congoleum Flooring Business, including environmental liabilities, and thus, not a successor to the Congoleum Flooring Business. BIW is entitled to this relief under the Declaratory Judgment Act, 28 U.S.C. §2201, because the relief it seeks will decide an actual controversy. "In a bankruptcy context, the Third Circuit has determined that an opinion is not advisory where it actually invalidates a clause, orders a party to do something, or otherwise resolves the parties' litigation."[7] The *In re Lazy Days'* court ruled that because the bankruptcy judge issued a decree that invalidated the lease's "anti-assignment clause and ordered the parties to do something, it 'affected the rights of litigants,' and was not an advisory opinion." 724 F.3d at 421 (citing *In re McDonald*, 205 F.3d 606, 609 (3d Cir. 2000)); *see also Matter of Shondel*, 950 F.2d 1301, 1309 (7th Cir. 1991) (bankruptcy court opinion modifying its previous injunction to allow a wrongful death claimant to proceed in state court against a bankruptcy estate affected the legal rights of the parties and was a "case" within the meaning of Article III and was therefore not an advisory opinion); *In re Brown's Chicken & Pasta, Inc*., 503 B.R. 86, 89 (Bankr.

---

[7] Memorandum Opinion at 9 (Second Bankr. Dkt. No. 619) (citing *In re Lazy Days' RV Center Inc*., 724 F.3d 418, 421-22 (3d Cir. 2013)).

N.D. Ill. 2013) (holding that it had the authority to determine, via declaratory relief, the scope and effect of its prior confirmation order).

Here, the requested judgment will provide actual relief to BIW. Congoleum has filed suit against BIW claiming that BIW is the actual successor to the Congoleum Flooring Business, not Congoleum, taking a position that is diametrically opposed to the position it took in its First Bankruptcy Case. If this Court makes the requested declarations, it will effectively end the dispute between the parties, and bind Congoleum to the position it took in its First Bankruptcy Case. Moreover, Congoleum recently changed its position with regards to an Environmental Protection Agency ("**EPA**") Notice of Potential Liability for environmental contamination stemming from its former property in Kearny, New Jersey, again taking position that BIW, and not Congoleum, is responsible for Congoleum's environmental liabilities.[8] Obtaining the requested declaration will prevent Congoleum from continuing to falsely claim that BIW is responsible for Congoleum's past operations, exposing BIW to actual harm. Further, determining that the 2010 Confirmation Order means what it says directly impacts the size of BIW's claims against this estate. Without that determination, BIW's $14.8 million claim will continue to grow under an indemnity agreement it has with Congoleum, because BIW will continue to incur at, a minimum, legal fees defending against Congoleum in multiple arenas.

The pending claims that Congoleum has brought against BIW, along with the positions it has taken with the EPA's investigation of environmental contamination at its former property, distinguishes this case from *In re Cubic Energy, Inc*., 587 B.R. 847 (D. Del. 2008), a decision the Court has previously cited. In *Cubic Energy*, the court held that a motion asking the bankruptcy

---

[8] App. I, Ex. 9 (April 17, 2019 Congoleum Amended Response to the EPA's 104(e) Request for Information); *see also* App. I, Ex. 18 (Congoleum Original Response to the EPA's 104(e) Request for Information).

court to decide the meaning of a provision in a confirmation order was not ripe and thus any decision would be advisory because there was no case pending between the parties, noting that "[w]hile the dispute may fall within the scope of the Court's power at some point in the future, it does not fall within its jurisdiction today." *Id*. at 857.

Here, of course, there are pending disputes. The Order this Court is being asked to enter will end those disputes at least as between BIW and Congoleum and force Congoleum to honor the judicial finding it sought and successfully obtained in its First Bankruptcy Case. Accordingly, this Court has jurisdiction to determine the meaning and enforceability of the 2010 Confirmation Order. *See, e.g.*, *Travelers Indem.*, 557 U.S. at 151.

## II.    There Is No Dispute Of Material Fact About Each Of The Declarations That BIW Asks This Court To Make.

### A.    Legal Standard.

"Federal Rule of Civil Procedure 56(a), made applicable here by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). Once the movant has carried its initial burden, the burden shifts to the nonmoving party. *Id*. The nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial. *Miller v. Indiana Hosp*., 843 F.2d 139, 143 (3d Cir. 1988). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. at 587. Further, summary judgment may be granted if the nonmoving party's "evidence is merely

colorable or is not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

Here, as set forth in BIW's accompanying Statement of Material Uncontested Facts, the requested summary judgment is based entirely upon filings and orders entered in the First Bankruptcy Case, about which there can be no valid dispute. Subsequent testimony and admissions from Congoleum also confirm each of the requested declarations, but the Court need not consider those to rule for BIW. Accordingly, summary judgment is the appropriate vehicle for resolving this adversary proceeding.

> **B.      There Is No Dispute Of Material Fact That BIW Is Not A Successor To The Congoleum Flooring Business Liabilities.**

The first finding that BIW asks this Court to make is about the meaning of paragraph 104 of the 2010 Confirmation Order. BIW asks the Court to declare that the finding contained in paragraph 104 of the 2010 Confirmation Order – that BIW has ***no*** responsibility for ***any*** of the liabilities of the Congoleum Flooring Business – covers ***all*** liabilities of any type, including environmental liabilities, and that it was a finding that BIW was not a successor to the Congoleum Flooring Business.[9] Both the unambiguous words the Court used to make this finding and the undisputed record from the First Bankruptcy Case support this declaration.

> **1.      Paragraph 104 Of The 2010 Confirmation Order Is Unambiguous.**

"In construing a confirmed plan of reorganization, [the Court] appl[ies] contract principles." *In re Shenango Group, Inc.*, 501 F.3d 338, 344 (3rd Cir. 2007). When the text of the confirmation order is unambiguous, like the 2010 Confirmation Order is here, its meaning presents a question of law. *Id.* The over-riding principle that governs this legal analysis is that courts should

---

[9] App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order, Findings ¶104).

adopt the meaning of an order that comports with the plain and natural words used in that order. *See Berke v. Bloch*, 242 F.3d 131, 136 (3d Cir. 2001) (explaining that the "judicial process works best when orders mean what they say" and that when the order is "clear and unambiguous," the court should not consider anything but the order); *In re Samson Res. Corp.*, 590 B.R. 643, 649 (Bankr. D. Del. 2018) (explaining that unless there is ambiguity, the terms control).

As the Third Circuit has explained, "[t]he judicial process works best when orders mean what they say." *See Berke*, 242 F.3d at 136. "Just as parol evidence is excluded in contracts cases when the plain language is clear, so too this type of *ex parte* evidence about a party's intentions must be considered irrelevant to an unequivocal and final order." *Id.* Simply put, "[p]arties and non-parties alike should be able to rely on the text of a court order where the text is clear, rather than having to dig through the docket and record to determine the order's true meaning." *Grede v. FCStone, LLC*, 746 F.3d 244, 257 (7th Cir. 2014).

Thus, where the language of a confirmation order "'is unequivocal, . . . a Court must adopt the plain and natural meaning only of the words contained within the text of the instrument itself.'" *Samson*, 590 B.R. at 649 (quoting *In re Victory Markets, Inc.*, 221 B.R. 298, 303 (2d Cir. BAP 1998)). "In a nutshell, unless there is ambiguity, the terms of the [2010] Confirmation Order and the Plan are controlling and the Court is not free to look to material beyond the provisions of the [2010] Confirmation Order and the Plan." *Id.* at 649; *accord In re Galluzzo*, No. 06-15392-SLM, 2018 WL 4191476, at *17 (Bankr. D.N.J. Aug. 14, 2018) (rejecting contention that court should look to record of prior bankruptcy case to interpret prior order where the order was "unambiguous and left no loose ends").

In *In re Samson Resources*, for example, the trustee "ask[ed] that the Court largely disregard its textual analysis of the Plan and the Confirmation Order and look instead to the tangled

and protracted history of the Chapter 11 proceedings." 590 B.R. at 654. The court rejected that invitation, noting that it would be "inconsistent with applicable law and contrary to sound policy. The Plan . . . was confirmed by an Order that has become final. Its provisions control." *Id.* at 655.

So too here. The 2010 Confirmation Order is final and its terms are clear. Congoleum itself has admitted that the text of the 2010 Confirmation Order is unambiguous.[10] The District Court found that "Bath Iron Works Corp. [and certain other entities] have **no** responsibility for **any** of the liabilities of the Congoleum Flooring Business."[11] "'[A]ny' means all." *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 795 (3d Cir. 2003). "It is a broad, inclusive term." *In re Swinton*, 287 B.R. 634, 638 (W.D. Pa. 2003); *accord United States v. Price*, 901 F.3d 746, 750 (6th Cir. 2018) ("*Webster's Third New International Dictionary* provides that the word 'any' means 'all'"). By using the broad, inclusive, and unambiguous term "any" to describe the liabilities for which BIW had no responsibility, the District Court ensured that the analysis of what liabilities the finding in the 2010 Confirmation Order covers begins and ends with its text. There is no legitimate dispute of material fact about what the text in the 2010 Confirmation Order means. It means exactly what it states – that BIW has no responsibility for every type of liability that might arise related to the Congoleum Flooring Business including environmental liabilities – and the inquiry can end here.

### 2.    The Context Surrounding The 2010 Confirmation Order Supports Its Plain Language.

Because the text of the 2010 Confirmation Order is plain on its face, controlling Third Circuit precedent prevents Congoleum, or anyone else, from "look[ing] past the clear and

---

[10] App. II, Ex. 23 (DVL Lawsuit Dkt. 95, Congoleum Opposition to BIW's Motion to Compel, at 10-11).

[11] App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order, Findings ¶104 (emphases added).)

unambiguous words used in" the 2010 Confirmation Order to determine "what the . . . parties intended or understood the order to mean." *See Penn W. Assocs., Inc. v. Cohen*, 371 F.3d 118, 129-30 (3d Cir. 2004) (rejecting "proposition" that litigants may go beyond the order's text even though "the factual predicate" on which the court based the order "was certainly erroneous"). Nonetheless, if the Court were to look at the context, the undisputed facts about that context would only confirm what the plain text of the 2010 Confirmation Order states—that BIW is not responsible for ***any*** of the liabilities of the Congoleum Flooring Business including environmental liabilities.

***First***, the undisputed fact is that when Congoleum sold its insurance policies back to the carriers that issued those policies to raise money to fund a trust to pay asbestos claims, it sold back *all* of the coverage available under those policies for Congoleum Flooring Business liabilities, including hundreds of millions of dollars (if not more than a billions dollars) of coverage available to insure against not just asbestos liabilities but also environmental liabilities.[12] The policy buyback settlement with Century Indemnity Company, individually and as successor to CCI Insurance Company, as successor to Insurance Company of North America ("**Century**"), which directly led to the finding in the 2010 Confirmation Order (the "**Century Sale Agreement**"), was conditioned upon Century buying back *all* of the coverage under the policies it had issued for Congoleum Flooring Business liabilities, not just coverage related to asbestos claims.[13] Because BIW and certain other entities were additional named insureds under some of those policies, Century also conditioned the settlement on an extinguishment of all of the rights as to coverage

---

[12] See App. II, Ex. 20 (Dist. Dkt. No. 625, ¶72 (2010 declaration of Congoleum's then-CFO Howard N. Feist, III testifying that all of its carriers insisted on a buy-back of all asbestos and non-asbestos coverage).

[13] App. II, Ex. 4 (First Bankr. Dkt. No. 4439-1, ¶52); App. II, Ex. 3 (First. Bankr. Dkt. No. 4446, ¶7); App. II, Ex. 20 (Dist. Dkt. No. 625, ¶72).

for Congoleum Flooring Business liabilities of all of the additional insureds under the Century policies, including BIW.[14] As Congoleum stated in its motion seeking approval of the settlement (the "**Century Sale Motion**"), the Century Sale Agreement was conditioned on Century being "released fully from, and hav[ing] injunctive protection against, all Claims, *including non–asbestos claims....*"[15] Maria Matteo Thompson, on behalf of Century, confirmed this, testifying that "[a]s a condition of the Settlement and Buyback Agreement [the Century Sale Agreement], Century will pay the Settlement and Buyback Amount only if it can have certainty that the Century Entities will be released fully from, and have injunctive protection against, *all Claims, including non–asbestos claims . . . .*"[16]

Because the Bankruptcy Court could not extinguish BIW's contractual rights as to coverage under the Century policies for Congoleum Flooring Business liabilities without providing BIW with compensation for this loss, Century conditioned its agreement to buy back the Century policies upon the Bankruptcy Court making a finding that BIW and the other named additional insureds had "no responsibility for any of the liabilities of the Congoleum Flooring Business."[17] *See, e.g., In re SportStuff, Inc.*, 430 B.R. 170, 177-181 (B.A.P. 8th Cir. 2010) (holding debtor could not sell insurance policies back to carrier without providing protection for non-debtor additional insured); *In re Forty-Eight Insulations, Inc.*, 149 B.R. 860, 865 (Bankr. N.D. Ill. 1992) (same). This finding was intended to protect BIW for the sale of the Century insurance coverage

---

[14] App. II, Ex. 5 (First Bankr. Dkt. 4439-2, Century Sale Agreement, §II, ¶D, §I ¶C, §I ¶J(iv), §I ¶K, §XI ¶¶ H, I).

[15] App. II, Ex. 4 (First Bankr. Dkt. No. 4439, Century Sale Motion, ¶52 (emphasis in original)).

[16] App. II, Ex. 3 (First Bankr. Dkt. No. 4446, ¶7 (emphasis added)).

[17] App. II, Ex. 5 (First Bankr. Dkt. 4439-2, Century Sale Agreement, §II, ¶D, §I ¶J(iv), §XI ¶¶ H, I).

for Congoleum Flooring Business liabilities by giving it absolute protection to any future lawsuit. And because the insurance for Congoleum Flooring Business liabilities that BIW lost as a result of this buy-back included coverage for environmental liabilities along with every other type of liability, the finding designed to protect BIW from all future claims necessarily had to be drafted broadly to cover "any" liability. Otherwise any protection would have been illusory. Therefore, even if Congoleum's reason for filing bankruptcy was to resolve its asbestos liabilities, the Century Sale Agreement went beyond asbestos claims as did the finding that was necessary to deprive BIW of its insurance rights as to Congoleum Flooring Business liabilities and protect BIW from future claims.

*Second*, Congoleum made various declarations and representations that it owned the rights to the coverage being sold as to Congoleum Flooring Business liabilities and therefore could sell them because Congoleum was the successor to all of the entities which over time operated out of the Kearny, New Jersey property. For instance, Congoleum's former Chief Financial Officer, Howard N. Feist, III, submitted a sworn declaration to support the Century Sale Motion, in which he testified that BIW had "no responsibility for any of the liabilities of the Congoleum Flooring Business" as defined in the Century Sale Agreement.[18] In this same declaration, Mr. Feist also represented to the Bankruptcy Court that Congoleum was "the successor in interest to Congoleum-Nairn Inc." named in the Century policies and that it was the "sole successor" with regard to coverage and "own[ed] the rights to coverage" under the Century policies.[19] He further testified that the "flooring operations" to which "they [i.e. Congoleum] succeeded" included "the manufacture, sale, distribution, installation, formulation, marketing, transport, handling or any

---

[18] App. II, Ex. 6 (First Bankr. Dkt. No. 4439-3, 2006 Feist Declaration, ¶14(B)).

[19] *Id*. at ¶14(A).

other activity involving in any flooring, vinyl sheeting flooring or floor tile products of any kind"

and "were headquartered in Kearney, New Jersey, continuously from *before* 1965 to 1987."[20]

Similarly, in a separate declaration submitted to the Bankruptcy Court, Mr. Feist admitted,

"Congoleum was incorporated in Delaware in 1986, but traces its corporate history back to the

Nairn Linoleum Company which commenced operations in 1886."[21]

　　And, in a third declaration, submitted in support of Congoleum's Plan, Mr. Feist swore that

all of Congoleum's carriers insisted on a buy-back of both the asbestos and non-asbestos coverage

under their policies.[22] Moreover, although it is unnecessary to consider this evidence for purposes

of deciding this Motion, in 2019, Mr. Feist confirmed under oath that what he told the Bankruptcy

Court in his 2006 declaration was true and accurate, including his representation "that BIW had

no responsibility for any of the liabilities of the Congoleum Flooring Business."[23] He also testified

again that BIW had no responsibility for environmental liabilities of the Congoleum Flooring

Business, as defined.[24]

---

[20] *Id*. at ¶14(C) (emphasis added). Reading Mr. Feist's testimony in conjunction with paragraph K of Section XI of the Century Sale Agreement makes it clear that the "they" in Mr. Feist's Declaration refers to Congoleum. Section XI, Paragraph K parrots the language of Mr. Feist's Declaration and states: "***The Debtors*** represent and warrant that the flooring operations of the Congoleum Entities to which ***they*** succeeded, including the manufacture, sale, distribution, installation, formulation, marketing, transport, handling or any other activity involving in any flooring, vinyl sheeting flooring or floor tile products of any kind, were headquartered in Kearney, New Jersey, continuously from before 1965 to 1987." App. II, Ex. 5 (First Bankr. Dkt. No. 4439-2, Century Sale Agreement, §XI, ¶K (emphasis added)).

[21] App. II, Ex. 16 (Dist. Dkt. No. 7146-19, ¶2.)

[22] App. II, Ex. 20 (Dist. Dkt. No. 625, 2010 Feist Declaration, ¶72 (testifying that all of its carriers insisted on a buy-back of all asbestos and non-asbestos coverage)).

[23] App. I., Ex. 22 (Congoleum 30(b)(6) (Feist) Dep. Tr. at 156:10-157:9).

[24] App. I., Ex. 24 (Feist Dep. Tr. at 169:24-170:24).

***Third***, the issue of coverage for environmental liabilities available under the Century policies was directly addressed in the First Bankruptcy Case. In its moving papers, Congoleum expressly addressed how the Century Sale Agreement would impact coverage for other types of liabilities because Congoleum intended to sell all coverage for Congoleum Flooring Business liabilities back to Century.[25] Congoleum's attorneys made similar representations to the Bankruptcy Court at a hearing on the Century Sale Motion (the "**Century Sale Hearing**") in 2006 in response to objections from four insurance carriers that had issued excess policies for the same policy years as Century.[26] Those excess carriers were concerned that they might be called upon in the future to indemnify BIW or the other additional insureds under the Century policies for the liabilities of the Congoleum Flooring Business if Congoleum were allowed to buy back the underlying Century policies free of BIW's interests in those policies.[27] To address that concern, Congoleum's counsel assured the carriers and the Bankruptcy Court that Congoleum was the *only* successor to any of the liabilities related to Congoleum's Flooring Business, including non-asbestos claims.[28] Congoleum's lawyer told the bankruptcy court that they had done due diligence on Congoleum's corporation history and that: "Congoleum is the successor to all of the flooring businesses that had been run by predecessors" and that the Century Sale Agreement was "a sale of the, ***of nonasbestos coverages***, as well as asbestos coverages here for flooring business claims."[29]

---

[25] App. II, Ex. 4 (First Bankr. Dkt. No. 4439-1, Century Sale Agreement, ¶52).

[26] App. II, Ex. 7 (First Bankr. Dkt. No. 4515, ¶¶11-16); App. II, Ex. 8 (First Bankr. Dkt. No. 4517, ¶12); App. II, Ex. 10 (First Bankr. Dkt. No. 4531, ¶¶1-4); App. II, Ex. 13 (First Bankr. Dkt. No. 4568, at 27:12-23; 30:1-31:21; 41:8-42:24; 45:13-22; 52:1-3).

[27] *Id*.

[28] App. II, Ex. 13 (First Bankr. Dkt. No. 4568, Century Sale Hearing Tr. at 51:3-52:14).

[29] *Id*. (emphasis added).

Congoleum's counsel made clear that there was no question that the non-asbestos coverage referenced included coverage for environmental liabilities when he stated:

> So Your Honor, I think 105 is a compliment to 524(g) insofar as it applies to the nonasbestos coverages that are being bought back. What are those principally anyway? I mean these are old policies, as Mr. Schiavoni said. **They're long latency claims, essentially environmental claims, long latency pollution claims, that sort of ilk**, and Century paid us for that as well as, as well as for the asbestos claims. They wanted a complete policy buy back of all their liabilities, which I think it is within their right to bargain for and our right to grant, and I don't think the Insurers are suggesting to the contrary.[30]

Given counsel's argument, it would have been more than passing strange for BIW to agree to an order—or the District Court to enter an order—that extinguished BIW's insurance coverage pertaining to *all* liabilities of the Congoleum Flooring Business, but that only provided BIW with protection for *some* of those liabilities. Simply put, BIW would have objected if it had been left exposed to liability in this manner. And the Bankruptcy Court could not have approved a sale stripping BIW of its interests in the policies as to liabilities of the Congoleum Flooring Business, without compensating BIW in full for all of the rights BIW as a result of that sale. The only reading of paragraph 104 that accomplishes that is one that reads the word "any" to mean "all" liabilities, including environmental liabilities.

Moreover, if the Court were to adopt this after-the-fact limitation on the broad language of the finding that was approved of as part of the Century Sale Agreement and included in the 2010 Confirmation Order, the notice that Congoleum gave BIW of the Century Sale Motion would have been seriously misleading, if not outright fraudulent. Congoleum notified BIW that Congoleum was selling the Century policies, including BIW's rights as an additional insured for coverage for Congoleum Flooring liabilities, but that BIW was being protected with a judicial finding that it

---

[30] *Id*. at 53:5-15 (emphasis added).

had no responsibility for "*any* of the liabilities" of the Congoleum Flooring Business.[31] The notice

BIW received did not advise BIW that it would be responsible for environmental liabilities or that

"any of the liabilities" did not mean what those words would convey to any ordinary reader of the

English language or even hint that this might be the case.[32] Additionally, BIW understood the

finding to cover all liabilities of any type and based on the promise of this broad finding, it did not

object to the Century Sale Agreement.[33] For this Court to post-hoc read a limitation into that

finding that severely reduces BIW's rights would be tantamount to finding that Congoleum

perpetrated a fraud on BIW with the Bankruptcy Court's tacit blessing. Plainly, the more straight-

forward result is to conclude that the finding in the 2010 Confirmation Order as approved as part

of the Century Sale Agreement means what it says and the broad term "any of the liabilities"

includes environmental liabilities.[34]

   **Fourth**, the fact that Congoleum chose not to seek a discharge of environmental claims is

not a reason to conclude that the finding in the 2010 Confirmation Order did not cover BIW's

potential environmental liabilities. BIW's, Congoleum's, and Century's rights under the Century

policies were all determined in 2006 when the Bankruptcy Court approved the Century Sale

Agreement. Nothing in the 2006 Century Sale Motion advised BIW that its rights could or would

be modified by a plan that was not yet on file and would not be on file until March 11, 2010 (almost

three and one-half years later). To the contrary, the Order approving the Century Sale Agreement

---

[31] App. II, Ex. 4 (First Bankr. Dkt. No. 4439, Century Sale Motion); App. II, Ex. 5 (First Bankr. Dkt. No. 4439-2, Century Sale Agreement).

[32] *See generally id.*

[33] Second Bankr. Dkt. No. 501-11 (Declaration of Daniel Ferguson, BIW's Director of Risk Management, ¶¶ 8-13).

[34] App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order, Findings ¶104).

(the "**Century Sale Approval Order**") deemed all of the terms of the Century Sale Agreement incorporated into any future plan of reorganization and provided that "[n]o part of any plan offered by the Debtor shall be interpreted in a manner inconsistent with this Order and Settlement and Buyback Agreement."[35] That 2006 sale and its terms required a judicial finding in any future confirmation order using clear, unambiguous language that BIW has *no* responsibility for "*any* of the liabilities" of the Congoleum Flooring Business.[36] The fact that Congoleum agreed *after* the 2006 Century Sale Approval Order was approved to something different when it came to its own discharge of environmental claims is simply irrelevant for purposes of determining whether "any" meant all liabilities, including environmental liabilities.

*Fifth*, to the extent that the confirmed Plan's provisions regarding the discharge of environmental liabilities could be read to conflict with the finding that BIW has no responsibility for "*any* of the liabilities" of the Congoleum Flooring Business, the finding in the 2010 Confirmation Order controls. The 2010 Confirmation Order directed that, "[i]f there is any direct conflict between the terms of the Plan or any exhibit thereto and the terms of [the] Confirmation Order, the terms of the Confirmation Order shall control."[37] The Century Sale Approval Order also directed that any future plan not be interpreted in a manner inconsistent with the Century Sale Agreement.[38] In other words, the 2010 Confirmation Order (along with the Century Sale Approval Order) trumps any suggestion in the confirmed Plan that the Court's finding that BIW had no responsibility for "*any* of the liabilities" of the Congoleum Flooring Business did not include *every*

---

[35] App. II, Ex. 14 (First. Bankr. Dkt. No. 4572, Century Sale Approval Order, ¶12).

[36] App. II, Ex. 21 (Dist. Dkt. 664, 2010 Confirmation Order, Findings ¶104).

[37] App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order, Ordering ¶1).

[38] App. II, Ex. 14 (First. Bankr. Dkt. No. 4572, Century Sale Approval Order, ¶12).

liability.

In the DVL Lawsuit,[39] the district court recognized that the 2010 Confirmation Order

trumped any contrary provision in the Plan, but concluded that at the motion to dismiss stage it

could not find that the finding and the Plan were in "direct" conflict only after Congoleum

strenuously argued that the Court could not decide the issue at that stage without discovery and

"context," a position Congoleum subsequently reversed course on during discovery. *See DVL, Inc.*

*v. Congoleum Corp.,* No. CV174261KMJBC, 2018 WL 4027031, at *6 (D.N.J. Aug. 23,

2018).[40] But a reading of the finding that turns "any" liability into only "some" liabilities is a direct

conflict as it directly changes the meaning of the finding.

Further, when the District Court wanted to make it clear in the 2010 Confirmation Order

that a provision of the 2010 Confirmation Order was "subject to" something in the Plan, the Court

so stated, noting at least five times that a provision of its 2010 Confirmation Order was or was not

subject to an express provision in the Plan.[41] Notably, the finding that BIW has "no responsibility

for any of the liabilities of the Congoleum Flooring Business" was not made subject to the

environmental claims carve-out found in Section 11.9 of the Plan.[42] Instead the finding referenced

the Order approving the Century Sale Agreement stating that the finding was being made "[i]n

---

[39] BIW and Congoleum are currently co-defendants, with cross-claims against each other, in a separate lawsuit regarding cleanup costs for environmental contamination at Congoleum's former property in Kearny, New Jersey, in a case styled *DVL, Inc. and DVL Kearny Holdings, LLC. v. Congoleum Corp. and Bath Iron Works Corp.*, No. 2:17-cv-04261(KM)(JBC) (D.N.J.) (the "**DVL Lawsuit**").

[40] App. II, Ex. 23 (DVL Lawsuit Dkt. 95, Congoleum Opposition to BIW's Motion to Compel, at 10-11).

[41] *See*, e.g., App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order, Ordering ¶¶15, 27, 37, 53, 54, 55, 59).

[42] *Id*. (Findings ¶104).

support of the Century Sale and Century Approval Order....,"[43] And as explained above, the Century Sale Agreement contained no limitation on the liabilities for which BIW had no responsibility, nor could it given that this finding was to substitute for the rights BIW lost as a result of the Century Sale Agreement. The fact that the District Court (and the parties that drafted the 2010 Confirmation Order, which undoubtedly included Congoleum) were careful to reference those instances where contrary provisions in the Plan modified provisions of the 2010 Confirmation Order and they did not do that with respect to the finding in favor of BIW supports the conclusion that the phrase "any of the liabilities" included every type of liability including environmental liabilities. Cementing that conclusion is the language in the Century Sale Approval Order making it clear that no future plan would trump the terms of the Century Sale Agreement, including the requirement that the finding in favor of BIW be included in any confirmation order.[44]

Accordingly, there is only one credible conclusion: that the 2010 Confirmation Order's finding – that BIW has "no responsibility for any of the liabilities of the Congoleum Flooring Business" – means exactly what it says and includes every liability of any kind, including environmental liabilities.

---

[43] *Id*.

[44] App. II, Ex. 14 (First. Bankr. Dkt. No. 4572, Century Sale Approval Order, ¶12).

C.    **The Finding Was Actually Litigated And Necessary To The Approval Of The 2010 Confirmation Order And Therefore Is Binding On Congoleum And Enforceable Against Congoleum.**

BIW also asks this Court to find that Congoleum actually litigated the finding contained in paragraph 104 of the 2010 Confirmation Order and that this finding was necessary to the approval of the sale of the Century policies and confirmation of Congoleum's Plan. The undisputed record again supports these declarations.

1.    **The Finding Was Actually Litigated.**

The undisputed Bankruptcy Court record demonstrates that (1) the question of BIW's responsibility for the liabilities of the Congoleum Flooring Business was actually litigated at the hearing to approve the Century Sale Agreement and (2) the Century Sale Approval Order required the finding to be included in any subsequent confirmation Order. An issue is actually litigated when it is properly raised, by pleadings or otherwise, is submitted for determination, and is determined. *United Fed. Leasing, Inc. v. United States*, 126 F. App'x 60, 61 (3d Cir. 2005) (citing *O'Leary v. Liberty Mutual Insurance Co*., 923 F.2d 1062, 1066 (3d Cir.1991); Restatement (Second) of Judgments § 27 comment d, at 255 (1982). *See also In re Keaty*, 397 F.3d 264, 272 (5th Cir. 2005) (same).

Bankruptcy courts have looked to the record in the prior proceeding to determine whether an issue was actually litigated and determined in the prior proceeding. *See In re Birnbaum*, 513 B.R. 788, 805 (Bankr. E.D.N.Y. 2014) (finding that the record showed that the issue was raised by the pleadings or otherwise placed in issue and that the issue was the subject of extensive proceedings, demonstrating the issue was actually litigated). The Third Circuit has found that, when there are *factual findings necessary to a judgment*, as here, and they are incorporated into an order, they satisfy the actually litigated element of issue preclusion and are given preclusive effect. *See In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992). Moreover, a "canvassing of New Jersey

20

case law governing collateral estoppel reveals that the requirement that a matter be 'actually litigated' means just that: the party against whom the doctrine is sought to be applied must have had a full and fair opportunity to litigate the issue to be precluded, so that a judgment on the merits, reached after an adversarial hearing, is entered." *In re Azeglio*, 422 B.R. 490, 497 (Bankr. D.N.J. 2010).

Here, there is no dispute that the finding of fact that BIW has no responsibility for the liabilities of the Congoleum Flooring Business was actually litigated. For starters, Congoleum asked for this finding as a condition to the relief it sought and supported it with competent evidence.[45] Congoleum gave notice of its Century Sale Motion to all creditors and gave those noticed parties an opportunity to object.[46] And in fact four insurance carriers filed objections to the Century Sale Agreement on the basis that if the Court eliminated coverage for the additional insureds, including BIW, that this could increase their exposure for claims made against the additional insureds.[47]

The Bankruptcy Court then held a hearing on the objections,[48] during which BIW was even mentioned by name during the argument.[49] In response, Congoleum told the Court that "[a]fter a

---

[45] App. II, Ex. 4 (First Bankr. Dkt. No. 4439, Century Sale Motion); App. II, Ex. 5 (First Bankr. Dkt. No. 4439-2, Century Sale Order); App. II, Ex. 6 (First Bankr. Dkt. 4439-3, Feist Declaration in support of the Century Sale Motion and Agreement).

[46] App. II, Ex. 14 (First Bankr. Dkt. 4572, Century Sale Approval Order, at 3 (Bankruptcy Court finding that adequate notice was provided)); *see* also App. II, Exs. 2, 9, 11, 12 (First Bankr. Dkt. Nos. 1940, 4521, 4469, 4544 (certificates of service)).

[47] App. II, Ex. 7 (First Bankr. Dkt. No. 4515, ¶14); App. II, Ex. 8 (First Bankr. Dkt. No. 4517, ¶12); App. II, Ex. 10 (First Bankr. Dkt. No. 4531, ¶¶1-4).

[48] App. II, Ex. 13 (First Bankr. Dkt. No. 4568, Century Sale Hearing Tr., at 27:12-23, 30:1-31:21; 41:8-42:24; 45:13-22; 52:1-3).

[49] *Id*. at 30:11-22.

great deal of diligence there is no question in my client's mind that we are the successor, the company that is now called Congoleum is the successor to all of the flooring business."[50] Congoleum counsel even referenced the representations Congoleum made on this point and argued that broad notice it gave of the motion was intended to force anyone who objected to that fact to come in and object.[51] The Bankruptcy Court sided with Congoleum and overruled the objections.[52] After which, the Century Sale Approval Order required that this finding be included in the 2010 Confirmation Order.[53]

Accordingly, there is no genuine dispute of material fact that the finding contained in paragraph 104 of the 2010 Confirmation Order was actually litigated when the Bankruptcy Court considered whether to approve the Century Sale Agreement.

### 2.    The Finding Was Necessary To The 2010 Confirmation Order.

There also is no genuine dispute that the finding was necessary to the Century Sale Approval Order and the 2010 Confirmation Order. A finding is necessary to the judgment for preclusive purposes when that determination is "essential to the [] judgment." *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997); *see also Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 212 (3d Cir. 2001) (explaining to have preclusive effect, the challenged ruling must be necessary to the prior judgment). For this element, the appropriate question to ask "is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment."

---

[50] *Id*. at 51:3-52:14.

[51] *Id*.

[52] App. II, Ex. 14 (First Bankr. Dkt. No. 4572, Century Sale Approval Order); *see* also App. II, Ex. 13 (First Bankr. Dkt. No. 4568, Century Sale Hearing Tr. at 61:23-67:24).

[53] App. II, Ex. 14 (First Bankr. Dkt. No. 4572, Century Sale Approval Order, ¶12).

*See* Restatement (Second) of Judgments §27 (1982). In determining whether an issue was necessary or essential to a prior judgment, courts will review the record of prior proceeding. *See, e.g., In re Vanguard Nat. Res., LLC,* No. 17-30560, 2020 WL 7332890, at *12 (Bankr. S.D. Tex. Dec. 11, 2020). Upon review, the court must determine whether the issue could have been presented in the prior proceeding and, if so, whether it was presented. *See id.*

The finding at issue was indeed necessary to the Century Sale Agreement and, as such, to the 2010 Confirmation Order, and a review of the record confirms this. To emerge from its First Bankruptcy Case, Congoleum entered into settlement agreements with many insurers, including Century.[54] The Bankruptcy Court's approval of all of these settlements, including the Century Sale Agreement, were a condition to confirmation of the Plan.[55] Paragraph 10.1 of the Plan – entitled Conditions to Confirmation – provided that "Confirmation of the Plan shall not occur unless . . . [a]fter confirmation, each of the Asbestos Insurance Settlement Agreement" of which Century was one, were in place and binding.[56] Mr. Feist confirmed this under oath when he testified in support of confirmation and stated that the insurance settlement agreements, including the Century Sale Agreement, "have been critical to the success of this reorganization."[57]

Moreover, in its Disclosure Statement, Congoleum told its creditors that the means for execution of the Plan was the hundreds of millions of dollars of funding from the various insurance settlement agreements, including the approximately $16.95 million payment that Century would make pursuant to the Century Sale Agreement and that the Plan was conditioned upon these

---

[54] App. I, Ex. 20 (Dist. Dkt. No. 625, 2010 Feist Declaration, ¶¶69-70, 72).

[55] App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order, at Ex. A, ¶10.1).

[56] *Id.*

[57] App. II, Ex. 20 (Dist. Dkt. No. 625, 2010 Feist Declaration, ¶73).

insurance settlement agreements, including the Century Sale Agreement.[58] Accordingly, there is no question that the Century Sale Agreement was one of the agreements that needed to be implemented for Congoleum's Plan to be confirmed and become effective.

And for the Century Sale Agreement to be implemented, it was necessary that the District Court (acting as the Bankruptcy Court) enter the finding contained in paragraph 104 of the 2010 Confirmation Order. Section II, paragraph D of the Century Sale Agreement made the entry of a Confirmation Order in accordance with section I, paragraph J of the Century Sale Agreement a condition to closing the Century Sale Agreement.[59] Section I, paragraph J required, among other things, that the 2010 Confirmation Order contain a finding that BIW has "no responsibility for any of the liabilities of the Congoleum Flooring Business."[60] And one the Century Sale Agreement was approved, the Century Sale Approval Order required that the terms of any plan and confirmation order incorporate the provisions of the Century Sale Agreement.[61] Thus, the Century Sale Agreement required this finding and the Plan required the Century Sale Agreement, making this finding necessary to the District Court's confirmation of Congoleum's Plan.

### D. Congoleum Was A Party To Its Own First Bankruptcy Case And Is Bound By The 2010 Confirmation Order.

There is no question that Congoleum was a party to the 2010 Confirmation Order as it was the debtor in its own chapter 11 case. Section 1141(a) of the Bankruptcy Code provides that a confirmed plan "bind[s] the debtor…" 11 U.S.C. §1141(a). Thus, Congoleum is bound by the

---

[58] App. II, Ex. 18 (Dist. Dkt. 435-1, Disclosure Schedule, at §5.10; §6.4 (2) (G).)

[59] App. II, Ex. 5 (First Bankr. Dkt. No. 4439-2, Century Sale Agreement, §II. ¶D).

[60] *Id*. at §I. ¶J(iv).

[61] App. II, Ex. 14 (First Bankr. Dkt. No. 4572, Century Sale Approval Order, ¶12).

finding that it sought from the Bankruptcy and District Courts (and undoubtedly wrote).

Likewise, BIW was a party to executory contracts at issue in the Congoleum's First Bankruptcy Case by virtue of being included as an additional named insured in the Century insurance policies and in other policies that were sold. As an entity with an interest in one of the debtor's assets, BIW also was a creditor in the First Bankruptcy Case because it held a right to payment as a result of its interest in Congoleum's insurance policies. 11 U.S.C. § 101(5), (10); *In re Ruitenberg*, 745 F.3d 647, 651 (3d Cir. 2014) ("both Congress and the Supreme Court have instructed that a 'claim' under the Bankruptcy Code be given the broadest possible definition").

Despite the fact that BIW never formally appeared in the Bankruptcy, this Court has previously held – in Congoleum's First Bankruptcy Case, that a "party in interest" "has been construed broadly to encompass anyone with a 'practical stake in the outcome of the proceedings.'" *In re Congoleum*, 414 B.R. 44, 56 (D.N.J. 2009) (quoting *In re Amatex Corp.*, 775 F.2d 1034, 1041-42 (3d Cir. 1985)). A party's decision not to file an appearance does not strip it of its party status. The Supreme Court has long held that all parties to a bankruptcy proceeding are bound by the orders of a bankruptcy court "whether or not they choose to participate in the proceeding." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004) (collecting cases). The strength of the bankruptcy system as a whole hinges on a court's ability to "determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is 'one against the world.'" 16 J. Moore, et al., Moore's Federal Practice ¶108.70[1] (3d ed. 2004). Accordingly, a creditor is a creditor whether it chooses to appear or not, and it is a party bound by the court's orders. Thus, the fact that BIW did not appear in the bankruptcy case did not change its party status. As a creditor, BIW also was bound by the 2010 Confirmation Order. 11 U.S.C. §1141(a).

> **E.**     **Based On The Foregoing Undisputed Facts, Congoleum Is Bound By The Finding That BIW Is Not Responsible For Any Of The Liabilities Of The Congoleum Flooring Business.**

The foregoing declarations, all of which are supported by uncontested facts, support the final declaration that BIW seeks – the finding in paragraph 104 of the 2010 Confirmation Order that BIW has no responsibility for any of the liabilities of the Congoleum Flooring Business, including environmental liabilities, is binding on Congoleum and enforceable against Congoleum. This finding is binding for multiple reasons.

*First*, Section 1141(a) of the Bankruptcy Code makes this finding binding on Congoleum.

*Second*, the long-standing rule that a confirmation order is entitled to *res judicata* effect and is binding on a debtor and all of its creditors, prevents Congoleum for disputing in any other forum the finding contained in paragraph 104 of the 2010 Confirmation Order. *See, e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010); *Travelers Indem.*, 557 U.S. at 152-53 (2009); *Stoll v. Gottlieb*, 305 U.S. 165, 170-71 (1938).  The preclusive effect of a confirmation order is broad: "a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989).

Here, the District Court (acting as the Bankruptcy Court) unambiguously found as part of the 2010 Confirmation Order that BIW has "*no* responsible for *any* of the liabilities of Congoleum Flooring Business."[62] Not only did Congoleum fail to object to that finding, *Congoleum sought this very finding from the District Court,* as it was essential to Congoleum's Century Sale Agreement and the ultimate confirmation of the Plan. The District Court's finding therefore has *res judicata* effect and binds Congoleum.

---

[62] App. II, Ex. 21 (Dist. Dkt. 664, 2010 Confirmation Order, Findings ¶104 (emphasis added)).

*Third*, the doctrine of judicial estoppel bars Congoleum from taking any position that is inconsistent with the finding that BIW "has *no* responsibility for *any* of the liabilities of the Congoleum Flooring Business.[63] This doctrine prevents a party who obtains relief by successfully taking one position in one matter from later contradicting itself in a second case "in an effort to establish against the same adversary a second claim inconsistent with [its] earlier contention." *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953). "Such use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate." *Id.*; *accord Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) (obtaining judicial relief in two cases on the basis of inconsistent positions "is an unacceptable abuse of judicial proceedings"). Put simply, the doctrine's purpose "'is to prevent a litigant from prevailing 'twice on opposite theories.'" *Gecker v. Flynn (In re Emerald Casino, Inc.)*, 459 B.R. 298, 304 (Bankr. N.D. Ill. 2011) (*quoting Butler v. Vill. of Round Lake Police Dept.*, 585 F.3d 1020, 1022 (7th Cir. 2009)). Courts deem the application of judicial estoppel to be "particularly appropriate . . . where the party benefited from its original position." *Delgrosso v. Spang & Co.*, 903 F.2d 234, 242 (3d Cir. 1990); *accord Murray v. Siberstein*, 882 F.2d 61, 66 (3d Cir. 1989) (same).

The Supreme Court's decision in *New Hampshire v. Maine*, 532 U.S. 742 (2001), is instructive. In that case, the State of New Hampshire had previously litigated a boundary dispute with Maine. *Id.* at 746. In the earlier case, the two states eventually agreed to a consent decree in which the boundary line would be drawn through the middle of the Piscataqua River. *Id.* at 747. Twenty-five years later, the states once again feuded over their shared boundary. *Id.* at 751. This time, New Hampshire asserted that the boundary should be drawn at the high-water mark of the

---

[63] App. II, Ex. 21 (Dist. Dkt. 664, 2010 Confirmation Order, Findings ¶104 (emphases added)).

river and not in its middle. *Id.* In a unanimous decision, the Supreme Court held that the doctrine

of judicial estoppel barred New Hampshire from changing its position. *Id.* at 749. The Supreme

Court rejected New Hampshire's argument that the prior consent decree did not truly reflect New

Hampshire's position on the matter because it was the result of a compromise with Maine. *Id.* at

752. The Supreme Court noted that "that 'compromise' enabled New Hampshire to settle the case"

on beneficial terms and that both states had "represented to [the] Court that the proposed judgment

was 'in the best interest of each State.'" *Id.* Therefore, the doctrine of judicial estoppel applied to

protect the integrity of the judicial process. *Id*. at 756.

Here the integrity of the bankruptcy process is at stake. Congoleum told the District Court

(acting as the bankruptcy court) that it alone was responsible for the Congoleum Flooring Business

liabilities.[64] Congoleum used that representation, which its CFO swore was true both at the time

and in subsequent proceedings, to obtain hundreds of millions of dollars in settlements of insurance

coverage to fund its Plan, while releasing BIW's interests in such insurance coverage as to

Congoleum Flooring Business liabilities.[65] To now allow Congoleum to claim the finding that it

undoubtedly drafted and supported is not binding on it, would make a mockery out of the

bankruptcy process. Simply put, a debtor who seeks relief should be made to stand by the relief it

seeks and not change its positions post-confirmation to the detriment of its creditors, like BIW,

that have no ability to challenge or unwind the rulings the debtor no longer supports.

*Finally*, the doctrine of collateral estoppel or issue preclusion compels the conclusion that

the Congoleum is bound by the finding dictated by the Century Sale Approval Order and contained

---

[64] App. II, Ex. 5 (First Bankr. Dkt. No. 4439-2, Century Sale Agreement, §II ¶D, §I ¶J(iv), §XI ¶¶H, I); App. II, Ex. 13 (First Bankr. Dkt. No. 4568, Century Sale Hearing Tr. at 51:3-52:14).

[65] App. II, Ex. 6 (First Bankr. Dkt. No. 4439-3, 2006 Feist Declaration, ¶14(B)); App. I, Ex., 22 (Congoleum 30(b)(6) (Feist) Dep. Tr. at 152:2-13; 156:10-157:9).

in the 2010 Confirmation Order. "The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts." *Katchen v. Landy*, 382 U.S. 323, 334 (1966). The Third Circuit requires that the following four elements are met for issue preclusion to apply: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *Szehinskyj v. Attorney Gen. of the United States*, 432 F.3d 253, 255 (3d Cir.2005) (citation omitted).

Here, as the undisputed facts demonstrate, Congoleum actually litigated the question of BIW's responsibility for Congoleum's liabilities, the finding that BIW was not responsible was necessary to the Bankruptcy Court and District Court's decisions, Congoleum asked for the finding and so had a full and fair opportunity to litigate and Congoleum's position that BIW is now responsible for Congoleum's environmental liabilities is the exact issue raised in the First Bankruptcy Case. Accordingly, Congoleum is barred by the doctrine of collateral estoppel from arguing against the finding contained in paragraph 104 of the 2010 Confirmation Order.

BIW therefore requests that the Court declare that the finding that BIW has no responsibility for any of the liabilities of the Congoleum Flooring Business, a finding that includes environmental liabilities, binds Congoleum and is enforceable against Congoleum.

## CONCLUSION

For all of the reasons stated herein, BIW respectfully requests that the Court grant its

Motion for Summary Judgement and declare that:

i.   Paragraph 104 of the 2010 Confirmation Order which implements the terms of the
     Century Sale Order and states that BIW has no responsibility for any of the
     liabilities of the Congoleum Flooring Business, was a finding that BIW was not a
     successor to the Congoleum Flooring Business and that the phrase "any liabilities"
     included all liabilities, including environmental liabilities;

ii.  Paragraph 104 of the 2010 Confirmation Order, which implements the terms of the
     Century Sale Order and states that BIW has no responsibility for any of the
     liabilities of the Congoleum Flooring Business, was actually litigated and was
     necessary to the approval of the Century Sale Agreement and to the 2010
     Confirmation Order and ultimately to Congoleum's emergence from its First
     Bankruptcy Case;

iii. BIW and Congoleum were both parties to Congoleum's First Bankruptcy Case;

iv.  Paragraph 104 of the 2010 Confirmation Order is binding on Congoleum and
     enforceable against Congoleum.

v.   This Court is making no determination about the extent to which the 2010
     Confirmation Order is binding on other creditors or parties in interest in the First
     Bankruptcy Case as that issue was not presented by this Motion.

Dated:  January 28, 2021                 Respectfully submitted,

                                         /s/ Daniel M. Stolz
                                         Daniel M. Stolz
                                         GENOVA BURNS
                                         110 Allen Road, Suite 304
                                         Basking Ridge, NJ 07920
                                         (973) 230-2095

                                         Wade A. Thomson (*pro hac vice*)
                                         Catherine L. Steege (*pro hac vice*)
                                         Michael A. Doornweerd (*pro hac vice*)
                                         JENNER & BLOCK LLP
                                         353 N. Clark Street
                                         Chicago, IL 60654
                                         (312) 222-9350

                                         *Attorneys for Plaintiff*
                                         *Bath Iron Works Corporation*