| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)**<br>**GENOVA BURNS**<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>(973) 230-2095<br>*Local Counsel for Bath Iron Works Corporation*<br>**DANIEL M STOLZ, ESQ.**<br>**DONALD W. CLARKE, ESQ.**<br><br>**JENNER & BLOCK LLP**<br>353 N. Clark Street<br>Chicago, IL 60654-3456<br>(312) 222-9350<br>*Counsel for Bath Iron Works Corporation*<br>**WADE A. THOMSON, ESQ.**<br>**CATHERINE STEEGE, ESQ.**<br>**MICHAEL A. DOORNWEERD, ESQ.** | |
| In re:<br><br>**CONGOLEUM CORPORATION**,[1]<br><br>                        Debtor. | Chapter 11<br><br>Case No. 20-18488 (MBK)<br>Judge: Hon. Michael B. Kaplan |
| **BATH IRON WORKS CORPORATION,**<br><br>                        Plaintiff,<br><br>v.<br><br>**CONGOLEUM CORPORATIO**N,<br><br>                        Defendant. | Adv. 20-01439 (MBK) |

**BATH IRON WORKS CORPORATION'S STATEMENT OF UNCONTESTED FACTS**

---

[1] The last four digits of the Debtor's federal tax identification number are 8678. The Debtor's corporate headquarters is located at 3500 Quakerbridge Road, Mercerville, New Jersey 08619.

Bath Iron Works Corporation's ("**BIW**") respectfully submits this Statement of Material Uncontested Facts in Support of its Motion for Summary Judgment against Congoleum Corporation ("**Congoleum**" or "**Debtor**").[2]

**A. The Parties.**

1. BIW is a corporation with its principal place of business at 700 Washington Street, Bath, Maine 0453. Since its founding, BIW has built private, commercial, and military ships at a shipyard located in Bath, Maine and has only ever operated in Bath, Maine.[3]

2. BIW has never (1) operated its ship-building business in Kearny, New Jersey or (2) manufactured ships in Kearny, New Jersey.[4]

3. Congoleum is a corporation formed in the State of Delaware with a principal place of business of 3500 Quakerbridge Road, P.O. Box 3127, Mercerville, NJ 08619-0127.[5]

---

[2] Almost all of the documents that support the facts set forth herein are found on the Bankruptcy Court's docket (Case No. 03-51524) ("**First Bankr. Dkt.**") or the District Court docket (Case No. 09-04371) ("**Dist. Dkt.**") in Congoleum's first bankruptcy case. BIW previously submitted the cited filings and orders in three appendices attached to the Declaration of Daniel Stolz (Second Bankr. Dkt. 501-1) and provided copies to the Court. References to documents found in Appendix I (deposition transcripts) are "**App. I, Ex. __**"; references to Appendix II (public filings) are "**App. II, Ex. __**"; and references to Appendix III (DVL Lawsuit (as defined in the Motion for Summary Judgment) discovery) are "**App. III, Ex. __.**" Each of these references is followed by a citation to the original docket entry for the document. References to materials found on the Bankruptcy Court Docket in Congoleum's currently pending bankruptcy case (Case No. 20-18488) are to "**Second Bankr. Dkt.**" and to materials from the DVL Lawsuit (Case No. 17-04261) are to "**DVL Lawsuit Dkt.**"

[3] Ferguson Decl., Second Bankr. Case No. 501-11, ¶¶3-5.

[4] *Id*. ¶5.

[5] Second Bankr. Dkt. No. 1.

2

4. In 1886, Congoleum established the U.S. headquarters of its business in Kearny, New Jersey and operated its resilient flooring business, the Congoleum Flooring Business, in Kearny, New Jersey.[6]

5. Congoleum's chief financial officer during its first 2003 bankruptcy case, Howard N. Feist, III, testified in Congoleum's First Bankruptcy, that "Congoleum . . . traces its corporate history back to the Nairn Linoleum Company which commenced operations in 1886."[7]

6. Congoleum previously operated under the name Congoleum-Nairn Inc. before it became Congoleum Corporation.[8]

7. Between 1968 and July, 1986, BIW was owned by the same corporate parent that owned Congoleum. BIW and Congoleum were separate corporate entities throughout this time period.[9]

8. Between 1968 and 1986, Congoleum conducted its flooring business in Kearny, NJ and BIW conducted its shipbuilding business in Bath, Maine under separate corporations.[10]

9. BIW never conducted its business operations in Kearny, New Jersey.[11]

10. In 1986, the corporate parent sold its Congoleum business and sold BIW to different buyers.[12]

---

[6] App. III., Ex. 12 (September 25, 2019 Congoleum Responses to BIW's Second Requests for Admission ("RFA"), Nos. 53 and 56); Second Bankr. Dkt. No. 18, ¶11 (O'Conner First Day Declaration).

[7] App. II, Ex. 16 (Dist. Dkt. No. 7146-19, 2009 Feist Declaration, ¶2.)

[8] Second Bankr. Dkt. No. 18, ¶11 (O'Conner First Day Declaration).

[9] App. I, Ex. Nos. 3-5, 7-8 (Congoleum and BIW corporate history transactional documents).

[10] *Id.*

[11] Ferguson Decl., Second Bankr. Case No. 501-11, ¶¶3-5.

[12] App. I, Ex. Nos. 3-5, 7-8 (Congoleum and BIW corporate history transactional documents).

3

**B. Congoleum's First Bankruptcy Filing.**

11. On December 31, 2003, Congoleum along with two affiliates, Congoleum Sales, Inc. and Congoleum Fiscal, Inc., filed petitions for relief under chapter 11 of title 11 of the United State Code in the United States Bankruptcy Court for the District of New Jersey. The cases were jointly administered and captioned *In re Congoleum Corporation*, 03-51524 (KCF) (the "**First Bankruptcy Case**").[13]

12. To fund its plan of reorganization in the First Bankruptcy Case, Congoleum entered into settlement agreements with a number of its insurance carriers pursuant to which the carriers "bought back" their policies as to liabilities for the Congoleum flooring business in exchange for cash contributions into a trust established under Congoleum's plan.[14]

13. The policy "buybacks" completely released coverage for any and all claims against the policies as to liabilities for the Congoleum flooring business, including environmental claims.[15]

14. One of those policy buyback settlements was with Century Indemnity Company, individually and as successor to CCI Insurance Company, as successor to Insurance Company of North America ("**Century**") (the "**Century Sale Agreement**").[16]

15. Century had issued excess/umbrella general liability insurance policies to Congoleum and several additional named insured parties, including BIW, for bodily injury or

---

[13] First Bankr. Dkt. No. 1.

[14] App. I, Ex. 20 (Dist. Dkt. No. 625, 2010 Feist Declaration, ¶¶69-70, 72).

[15] *Id.* ¶72.

[16] App. II, Ex. 4 (First Bankr. Dkt. No. 4439, Century Sale Motion); App. II, Ex. 5 (First Bankr. Dkt. No. 4439-2, Century Sale Agreement).

4

property damage liability, including as to asbestos and environmental claims, and including those claims stemming from the operation of Congoleum's Kearny, New Jersey property.[17]

16. On August 21, 2006, Congoleum filed a motion seeking an order authorizing and approving the Century Sale Agreement (the "**Century Sale Motion**").[18]

17. Under the Century Sale Agreement, Century agreed to pay $16,950,000 to a "Plan Trust" to be established under a confirmed plan of reorganization for Congoleum.[19]

18. Because BIW (and other entities) were also named insureds under some of the Century policies, the Century Sale Agreement required Congoleum to obtain two findings in any order confirming a plan of reorganization for Congoleum: (1) that Congoleum had full authority to negotiate and sell the Century policies as to Congoleum flooring business liabilities; and (2) "Bath Iron Works Corp. [and certain other entities] have no responsibility for any of the liabilities of the Congoleum Flooring Business."[20]

19. Century also required that its buyback cover non-asbestos environmental claims.

20. Century submitted the Declaration of Maria Matteo Thompson in support of the Century Sale Motion, which sought the approval of the Century Sale Agreement. Ms. Thompson, who participated in the negotiation of the Century Sale Agreement on behalf of Century, testified that that "[a]s a condition of the Settlement and Buyback Agreement, Century will pay the Settlement and Buyback Amount only if it can have certainty that the Century Entities [defined as

---

[17] App. II, Ex. 4 (First Bankr. Dkt. No. 4439, Century Sale Motion); App. II, Ex. 5 (First Bankr. Dkt. No. 4439-2, Century Sale Agreement); App. II, Ex. 3 (First Bankr. Dkt. No. 4446, Thompson Declaration in support of Century Sale Agreement ("**Thompson Declaration**"), ¶10).

[18] App. II, Ex. 4 (First Bankr. Dkt. No. 4439, Century Sale Motion).

[19] *Id.* ¶15.

[20] App. II, Ex. 5 (First Bankr. Dkt. No. 4439-2, Century Sale Agreement, §II ¶D, §I ¶J(iv), §XI ¶¶H, I).

5

Century, its predecessors and successors, and certain related parties] will be released fully from, and have injunctive protection against, all Claims, *including non–asbestos claims. . .*"[21]

21. Congoleum also represented in the Century Sale Motion that Century had conditioned its agreement to the Century Sale Agreement upon the Century Entities being "released fully from, and hav[ing] injunctive protection against, all Claims, *including non-asbestos claims*, that may be based on, or derive from, the Subject Policies."[22]

22. When Congoleum presented it plan of reorganization for approval, its Chief Financial Officer, Howard N. Feist III, testified that insurance carriers, like Century, that provided coverage for non-asbestos claims along with coverage for asbestos claims insisted that their settlement buy-backs include a release of all asbestos and non-asbestos claims.[23]

---

[21] App. II, Ex. 3 (First Bankr. Dkt. No. 4446, Thompson Declaration, ¶7 (emphasis in original)).

[22] App. II, Ex. 4 (First Bankr. Dkt. No. 4439, Century Sale Motion, ¶52 (emphasis in original)).

[23] App. II, Ex. 20 (Dist. Dkt. No. 625, 2010 Feist Declaration, ¶72). After the First Bankruptcy Case, Mr. Feist testified about the negotiations that led to the Century Settlement. In both his personal capacity and as Congoleum's corporate representative, Mr. Feist testified that before Congoleum filed its First Bankruptcy Case, it had filed a coverage action against Century and others and that the Century Settlement resolved this dispute against Century. App. I, Ex. 24 (Feist Dep. Tr. at 57:17-23; 60:17-61:1; 108:22-110:2); App. I, Ex., 22 (Congoleum 30(b)(6) (Feist) Dep. Tr. at 14:23-15:12). He testified that Congoleum brought its "disputes for environmental liabilities into the [insurance] coverage action," including claims relating to the Passaic River, and that in 2006, Century and Congoleum corresponded regarding Congoleum's "environmental exposure," and then "negotiated for [Congoleum's] environmental rights to be extinguished." App. I, Ex. 24 (Feist Dep. Tr. at 57:17-23; 60:17-61:1; 107:13-110:2). Mr. Feist testified further that Century represented to the Bankruptcy Court that it would only agree to the Century Settlement if it had certainty that Century would have "injunctive relief against all claims going forward, including for environmental claims." App. I, Ex., 22 (Congoleum 30(b)(6) (Feist) Dep. Tr. at 87:1-89:2). Congoleum itself has also admitted that "the [insurance coverage action] addressed coverage disputes related to alleged environmental claims (including claims concerning the Passaic River)." App. III, Ex. 12 (Sept. 25, 2019 Congoleum Responses to BIW's Second RFAs, No. 55). Mr. Feist's testimony and Congoleum's privilege log also demonstrate that (a) during the coverage action, Congoleum communicated with its attorneys about BIW, and (b) Congoleum and its attorneys discussed Congoleum's corporate history prior to Mr. Feist submitting his declaration in support of the Century Settlement. App. I, Ex., 22 (Congoleum 30(b)(6) Dep. Tr. (Feist) 32:16-

23. Congoleum agreed with Century to seek a finding in the First Bankruptcy Case confirming that BIW had no responsibility for any liabilities of its resilient flooring business in Kearny, New Jersey (the "**Congoleum Flooring Business**"), including at the site of Congoleum's former operations in Kearny, New Jersey.[24]

24. Congoleum represented and warranted in the Century Sale Agreement that "Bath Iron Works Corp. ha[s] no responsibility for any of the liabilities of the Congoleum Flooring Business."[25]

25. In support of its representation in the Century Sale Agreement and to support the requested finding, Congoleum offered into evidence the testimony of Mr. Feist, who testified under oath that BIW had "no responsibility for any of the liabilities of the Congoleum Flooring Business" as defined in the Century Sale Agreement.[26]

26. The Century Sale Agreement defined the phrase "Congoleum Flooring Business" to mean "the business involved in the manufacture, sale, distribution, installation, formulation, marketing, transport, handling or any other activity involving in any way flooring, vinyl sheeting

---

49:14); App. I, Ex. 24 (Feist Dep. Tr. at 101:15-131:16); Stolz Decl., Ex. A, Feist 30(b)(6) Dep. Ex. 5 (Congoleum Privilege Log).

[24] App. II, Ex. 5 (First Bankr. Dkt. No. 4439-2, Century Settlement Agreement, §I.¶¶J,L, §II.¶D, §XI ¶I).

[25] *Id*. at §XI ¶I.

[26] App. II, Ex. 6 (First Bankr. Dkt. No. 4439-3, 2006 Feist Declaration, ¶14(B)). After the First Bankruptcy Case, in 2019, Mr. Feist testified in both his personal capacity and as Congoleum's corporate representative that his representation to the Bankruptcy Court that BIW was not responsible for "any liabilities of the Congoleum Flooring Business" included the "environmental liabilities" of the Congoleum Flooring Business. App. I, Ex. 22 (Congoleum 30(b)(6) (Feist) Dep. Tr. at 152:2-13); App. I, Ex. 24 (Fiest Dep. Tr. at 57:17-23; 60:17-61:1; 108:22-110:2). Mr. Feist also testified that his testimony in the First Bankruptcy Case was accurate. App. I, Ex. 24 (Feist Dep. Tr. at 169:24-170:24); App. I, Ex. 22 (Congoleum 30(b)(6) (Feist) Dep. Tr. at 155:3-157:9). And Congoleum itself has subsequently admitted that the representations Mr. Feist made in his 2006 Feist Declaration are true and accurate. App. III, Ex. 13 (October 10, 2019 Congoleum Amended Responses to BIW's RFAs, No. 6).

flooring or floor tile products of any kind (including but not limited to, battleship linoleum, resilient sheet vinyl flooring and tile flooring) as such activities may have been engaged in by one or more of the Congoleum Entities; provided, however, that Congoleum Flooring Business does not include carpets within its definition or the definition of flooring and does not include the shipbuilding operations of Bath Iron Works Corp., or of Bath Industries, Inc., if any, (it being understood that such operations exclude the products of the Congoleum Flooring Business). Solely for informational purposes and to assist the parties, but not to restrict or limit the definition of the term 'Congoleum Flooring Business,' the Debtors represent that the above defined business was headquartered continuously in Kearny, New Jersey, from before 1965 to 1987 and none of the Congoleum Entities conducted a Congoleum Flooring Business from a headquarters other than in Kearny, New Jersey during this time."[27]

27. Congoleum represented to the bankruptcy court through Mr. Feist's testimony that "Congoleum is the successor in interest to the entity Congoleum-Nairn Inc. named in Policies XBC-1838 and XBC- 40971" as well as other entities named in other Century policies, and that "with respect the Congoleum Flooring Business, [Congoleum] is the sole successor in all respects with regard to coverage, and that [Congoleum] . . . owns the rights to coverage under the [Century Policies] identified on Exhibit C to the Settlement and Buyback Agreement as may ever have been held by such entities with and in all respects to the Congoleum Flooring Business."[28]

28. Mr. Feist also testified that "[t]he flooring operations of the Congoleum Entities [defined to include Congoleum-Nairn] to which they succeeded, including the manufacture, sale, distribution, installation, formulation, marketing, transport, handling or any other activity

---

[27] App. II, Ex. 5 (First Bankr. Dkt. No. 4439-2, Century Settlement Agreement, §I ¶L).

[28] App. II, Ex. 6 (First Bankr. Dkt. No. 4439-3, 2006 Feist Declaration, ¶14(A)).

involving in any flooring, vinyl sheeting flooring or floor tile products of any kind were headquartered in Kearney [sic], New Jersey, continuously from *before 1965 to 1987*."[29]

29. Congoleum published notice of the hearing on the motion to approve the Century Sale Agreement in the national and international editions of *USA Today* on August 24, 2006 and August 28, 2006.[30]

30. Congoleum also provided mail/e-mail notice of the hearing on the motion to the Master Service List.[31]

31. When it approved the Century Sale Agreement (the "**Century Sale Approval Order**"), the Bankruptcy Court found that adequate notice of the Motion and of the hearing on the Motion was given by mailing, or emailing in the case of the Master E-Mail service list, and by publication, and that "such publication notice, together with the notices described in the preceding paragraph, are adequate and reasonable under the circumstances and no other or further notice is required or need be sent."[32]

32. Certain excess insurance carriers objected to the Century Sale Motion, in part, based on the concern that an additional named insured, like BIW, could one day be faced with liability and demand coverage under their policies because of the inability to obtain coverage under

---

[29] *Id.* ¶14(C) (emphasis added). Mr. Feist subsequently testified that "Congoleum is the successor to Congoleum Nairn, Inc." App. I, Ex., 22 (Congoleum 30(b)(6) Dep. Tr. (Feist) at 19:13-20:8).

[30] App. II, Ex. 9 (First Bankr. Dkt. No. 4521, Publication Verification).

[31] App. II, Exs. 2, 11, 12 (First Bankr. Dkt. Nos. 1940, 4469, 4544 (certificates of service)).

[32] App. II, Ex. 14 (First Bankr. Dkt. 4572, Century Sale Approval Order, at 3).

the primary policies that Century sought to buy back as to Congoleum Flooring Business liabilities in the Century Sale Agreement.[33]

33. At the September 11, 2006 hearing before the bankruptcy court (the "**Century Sale Hearing**"), Congoleum's attorneys argued in response that Congoleum was the only successor to the liabilities related to Congoleum's Flooring Business, including non-asbestos claims such as environmental claims.

34. Specifically, Congoleum's attorneys argued:

> After a great deal of due diligence **there is no question in my client's mind that we are the successor, the company that is now called Congoleum is the successor to all of the flooring businesses that had been run by predecessors**. We've given that representation to Century in this agreement, and we've told other people, anybody who could have been a predecessor, "If you think we're wrong come in here and object.
>
> [...]
>
> So Your Honor, what's being sought . . . is a sale of the, **of nonasbestos coverages, as well as asbestos coverages here for flooring business claims**.
>
> [...]
>
> It's very clear that insurance policies, **not just the asbestos parts of them, but all of the insurance policies** are property of the estate and as such can be sold if you comply with 363.[34]

35. On September 20, 2006, the bankruptcy court entered an order approving the Century Sale Agreement and authorizing the sale of the Century policies pursuant to 11 U.S.C.

---

[33] App. II, Exs. 7, 8, 10, 13 (First Bankr. Dkt. No. 4515, ¶¶11-16; First Bankr. Dkt. No. 4517, ¶12; First Bankr. Dkt. No. 4531, ¶¶1-4; First Bankr. Dkt. No. 4568, Century Sale Hearing Tr. at 27:12-23; 30:1-31:21; 41:8-42:24; 45:13-22; 52:1-3).

[34] App. II, Ex. 13 (First Bankr. Dkt. No. 4568, Century Sale Hearing Tr. at 51:3-52:14 (emphasis added)).

§363, conditioned upon confirmation of a plan of reorganization incorporating all of the conditions of the Century Sale Agreement.[35]

36. The Order approving the Century Sale Agreement is a final order and no longer subject to appeal.[36]

37. The order approving the Century Sale Agreement stated that the order and settlement agreement were deemed part of any plan for Congoleum and incorporated by reference as if set forth in full: "This Order and Settlement and Buyback Agreement will be deemed part of any plan of reorganization for the Debtors and shall be incorporated by reference as if set forth in full. No part of any plan offered by the Debtors shall be interpreted in a manner inconsistent with this Order and Settlement and Buyback Agreement."[37]

38. On June 7, 2010, the United States District Court for the District of New Jersey entered an "*Order Confirming Fourth Amended Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of The Debtors, The Official Asbestos Claimants' Committee, The Official Committee Of Bondholders For Congoleum Corporation, Et Al., And The Futures Representative Dated As Of March 11, 2010 (As Modified)*" (the "**2010 Confirmation Order**") in the First Bankruptcy Case.[38]

39. Congoleum provided notice of the hearing on its Plan which the District Court found was "good and sufficient."[39]

---

[35] App. II, Ex. 14 (First Bankr. Dkt. No. 4572, Century Sale Approval Order); *see also* App. II, Ex. 13 (First Bankr. Dkt. No. 4568, Century Sale Hearing Tr. at 61:23-67:24).

[36] *See generally* First. Bankr. Dkt.

[37] App. II, Ex. 14 (Dist. Dkt. 4572, Century Sale Approval Order, ¶12).

[38] App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order).

[39] *Id.* at 5; *see also id.* at 3; App. II, Ex. 19 (First Bankr. Dkt. No. 8023).

11

40. The District Court acting as the bankruptcy court in the First Bankruptcy Case, found in paragraph 104 of the 2010 Confirmation Order:

> In support of the Century [Sale Agreement] and the Century [Sale] Approval Order, the Court finds that the following Century Additional named Insureds have no responsibility for any of the liabilities of the Congoleum Flooring Business (as defined in the Century Settlement): . . . Bath Iron Works Corp.[40]

41. The basis for the finding contained in paragraph 104 of the 2010 Confirmation Order was Mr. Feist's Declaration filed in support of the Century Sale Agreement and the bankruptcy court's Order approving the Century Sale Agreement.[41]

42. The District Court's finding of fact that BIW was not responsible for any the liabilities of the Congoleum Flooring Business (as defined in the Century Sale Agreement) was necessary to confirm Congoleum's *Fourth Amended Plan Of Reorganization Under Chapter 11 Of The Bankruptcy Code Of The Debtors, The Official Asbestos Claimants' Committee, The Official Committee Of Bondholders For Congoleum Corporation, et al., And The Futures Representative Dated As Of March 11, 2010* (the "**Plan**") because the Plan was dependent upon the Century Sale Agreement which in turn was dependent upon this finding.[42]

43. Paragraph 10.1 of the Plan – entitled Conditions to Confirmation – provided that "Confirmation of the Plan shall not occur unless . . . [a]fter confirmation, each of the Asbestos Insurance Settlement Agreement" of which Century was one, were in place and binding.[43]

---

[40] *Id.*, Findings ¶104 (emphasis added).

[41] App. II, Ex. 6 (First Bankr. Dkt. No. 4439-3, 2006 Feist Declaration); App. II, Ex. 14 (First Bankr. Dkt. No. 4572, Century Sale Approval Order, ¶12).

[42] App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order, at Ex. A, the Plan, at Art. X, ¶10.1(a)(xix), ¶10.1(b), ¶10.2).

[43] *Id.*

44. Mr. Feist testified in a sworn declaration that he filed in support of the Plan that the insurance settlement agreements, including the Century Sale Agreement, "have been critical to the success of this reorganization" and that, without the settlements, Congoleum would not have been able to reorganize.[44]

45. Moreover, in its Disclosure Statement, Congoleum told its creditors that the means for execution of the Plan was funding from the various insurance settlement agreements, including the approximately $16.9 million payment that Century would make pursuant to the Century Sale Agreement and that the Plan was conditioned upon these insurance settlement agreements, including the Century Sale Agreement.[45]

46. The 2010 Confirmation Order stated that it controlled over any conflicting provisions in the Plan, stating: "If there is any direct conflict between the terms of the Plan or any exhibit thereto and the terms of this Confirmation Order, the terms of this Confirmation Order shall control."[46]

47. When the District Court intended to make the 2010 Confirmation Order subject to the Plan, it made that clear by stating as such.[47]

48. Paragraph 104 does not cross reference any provision of the Plan; it only cross references the Century Sale Agreement.[48]

49. The finding contained in paragraph 104 allowed Congoleum: (i) to release BIW's interests in the bought back insurance coverage for the Congoleum Flooring Business (as defined

---

[44] App. II, Ex. 20 (Dist. Dkt. No. 625, 2010 Feist Declaration, ¶73).

[45] App. II, Ex. 18 (Dist. Dkt. 435-1, Disclosure Schedule, at §5.10; §6.4 (2)(G)).

[46] App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order, Ordering ¶1).

[47] *See id.*, Ordering ¶¶15, 27, 37, 53, 54, 55, 59.

[48] *Id.*, Findings ¶104.

in the Century Sale Agreement) as an additional named insured on the Century insurance policies (and on other of the Century insurance policies in which it was not a named insured but would have had rights if it had been a successor to any of the liabilities of the Congoleum Flooring Business); and (ii) to obtain nearly $17 million from Century to help fund its plan of reorganization.[49]

50.     BIW did not object to such a sale in reliance upon the protection of a finding that would confirm that BIW had no responsibilities for the Congoleum Flooring Business liabilities covered by those policies, a finding consistent with the fact that BIW had never owned or operated the Congoleum Flooring Business or the Kearny, New Jersey property.[50]

51.     On July 2, 2011, the transactions contemplated in Congoleum's Plan were consummated and the Plan because effective.[51]

52.     As a result, Congoleum emerged from bankruptcy and was able to discharge over $300 million in asbestos liabilities using, in part, the $16,950,000 it obtained from Century to fund its Plan, along with hundreds of millions it netted from similar settlement with other insurers.[52]

---

[49] *Id*.

[50] Declaration of Ferguson, Second Bankr. Dkt. No 501-11, ¶¶8-13.

[51] App. II, Ex. 22 (Dist. Dkt. 703, Notice of Effective Date).

[52] App. II, Ex. 21 (Dist. Dkt. No. 664, 2010 Confirmation Order, Findings ¶29(iv); ¶¶46-47, ¶¶103-04).

53. Also as a result of the Plan becoming effective, BIW lost its interests in the Century insurance policies, and many other historical liability insurance policies, as to coverage for the Congoleum Flooring Business.[53]

Dated: January 28, 2021                                    Respectfully submitted,

/s/ Daniel M. Stolz
Daniel M. Stolz
GENOVA BURNS
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
(973) 230-2095

Wade A. Thomson (*pro hac vice*)
Catherine L. Steege (*pro hac vice*)
Michael A. Doornweerd (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Attorneys for Plaintiff*
*Bath Iron Works Corporation*

---

[53] *See* Ferguson Decl., Second Bankr. Dkt. No. 501-11, ¶¶8-13. Mr. Ferguson provided this same testimony in a deposition at which Congoleum was present and examined Mr. Ferguson. App. I, Ex. 34, BIW 30(b)(6) Dep. Tr. (Ferguson) at 76:5-80:7). *See also* Stolz Decl., Ex. B, December 21, 2018 letter from Brandywine Group on behalf of Century Indemnity Company to Mr. Ferguson at BIW denying BIW insurance coverage under policies Congoleum sold back during the First Congoleum Bankruptcy Proceeding as a part of the Century Sale Agreement.